UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAN ANTONIO FIRE AND POLICE PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DENTSPLY SIRONA INC., DONALD M. CASEY, JR., and JORGE GOMEZ,<br><br>Defendants. | Case No. 1:22-cv-06339-JPC-SLC<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF SAN ANTONIO FIRE AND POLICE PENSION FUND FOR APPOINTMENT AS LEAD PLAINTIFF AND <u>APPROVAL OF ITS SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ..................................................................................................1

II. FACTUAL BACKGROUND ......................................................................................................2

III. ARGUMENT ................................................................................................................................5

    A. San Antonio FPPF Should Be Appointed Lead Plaintiff .........................................5

        1. San Antonio FPPF Satisfied The PSLRA's Procedural Requirements ..................................................................................................5

        2. San Antonio FPPF Believes It Has The Largest Financial Interest In The Relief Sought By The Class ..............................................................6

        3. San Antonio FPPF Otherwise Satisfies The Requirements Of Rule 23 ............................................................................................................7

    B. San Antonio FPPF Selected Well-Qualified Counsel To Represent The Class .............................................................................................................................9

IV. CONCLUSION ...........................................................................................................................10

## **TABLE OF AUTHORITIES**

**Cases**

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
  20-cv-9132 (AJN), 2021 WL 396343 (S.D.N.Y. Feb. 4, 2021) ............................................ 6, 9

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................................................ 2

*Lax v. First Merchants Acceptance Corp.*,
  No. 97 C 2715, 1997 WL 461035 (N.D. Ill. Aug. 11, 1997) .................................................... 7

*Sallustro v. CannaVest Corp.*,
  93 F. Supp. 3d 265 (S.D.N.Y. 2015) ........................................................................................ 6

*Stitt v. On Deck Capital, Inc.*,
  No. 15 Civ. 6126 (AT), 2016 WL 889535 (S.D.N.Y. Feb. 17, 2016) ................................... 7, 8

**Statutes**

15 U.S.C. § 78j .................................................................................................................................. 1

15 U.S.C. § 78u ......................................................................................................................... passim

15 U.S.C. §§ 78t ................................................................................................................................ 1

17 C.F.R. § 240.10b-5 ....................................................................................................................... 1

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995) ............................................................................................. 2, 9

S. Rep. No. 104-98 (1995) ................................................................................................................ 2

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................................... 2, 8

San Antonio Fire and Police Pension Fund ("San Antonio FPPF") respectfully submits this memorandum of law in support of its motion: (1) to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) for approval of its selection of Bleichmar Fonti & Auld LLP ("BFA") as Lead Counsel for the Class; and (3) for any such further relief as the Court may deem just and proper.

I.  **PRELIMINARY STATEMENT**

The above captioned securities class action alleges that Dentsply Sirona Inc. ("Dentsply" or the "Company"), its former Chief Executive Officer Donald M. Casey ("Casey") and its former Chief Financial Officer Jorge Gomez ("Gomez") (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).[1]  Specifically, the action alleges that from June 9, 2021 to May 9, 2022, inclusive (the "Class Period"), Defendants violated Generally Accepted Accounting Principles ("GAAP") and engaged in a scheme to inflate Dentsply's revenue and earnings so that Dentsply executives could meet certain incentive-based compensation targets.

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is to determine which movant has the "largest financial interest" in the relief sought by the class in this litigation and whether that movant has made a *prima facie* showing that it is a typical and adequate class

---

[1] In addition to the above captioned action, plaintiff City of Miami General Employees' & Sanitation Employees' Retirement Trust ("City of Miami") filed a substantially related action in the Southern District of Ohio on June 2, 2022. *See City of Miami General Employees' & Sanitation Employees' Retirement Trust*, No. 2:22-cv-02371 (S.D. Ohio) ("*City of Miami*").  San Antonio FPPF has simultaneously filed a motion seeking Lead Plaintiff appointment in *City of Miami*.

representative under Federal Rule of Civil Procedure 23(a). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, San Antonio FPPF believes it is the "most adequate plaintiff" by virtue of, among other things, the $2,405,614.96 in losses it incurred on its investments in Dentsply common stock during the Class Period, as assessed under the U.S. Supreme Court's ruling in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).

San Antonio FPPF also satisfies the relevant requirements of Rule 23 because its claims are typical of all members of the Class, and it will fairly and adequately represent the Class. Indeed, San Antonio FPPF is more than adequate; it is precisely the type of institutional investor that Congress intended to lead securities class actions. *See* H.R. Conf. Rep. No. 104-369 at *34 (1995); S. Rep. No. 104-98 at *6 (1995). As a sophisticated institution, San Antonio FPPF has significant experience serving in a fiduciary capacity and supervising the work of outside counsel and can leverage its resources to help maximize the recovery for the Class. Additionally, San Antonio FPPF fully understands the Lead Plaintiff's obligations to the Class under the PSLRA, and it is willing and able to take on the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this case. *See* Declaration of Javier Bleichmar ("Bleichmar Decl."), Ex. A.

Finally, San Antonio FPPF has selected BFA, a law firm with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class. Accordingly, San Antonio FPPF respectfully requests that the Court appoint it as Lead Plaintiff and otherwise grant its motion.

## II. FACTUAL BACKGROUND

Dentsply is the world's largest manufacturer of professional dental products such as artificial teeth, anesthetics, and plaque and gum disease prevention treatments. ¶3.[2] The Company

---

[2] All citations to ¶__ refer to the complaint filed in the above-captioned action, ECF No. 1.

2

sells approximately two-thirds of its products through third-party distributors such as Patterson Companies, Inc., Henry Schein, Inc., and Benco Dental Supply Co. *Id.* A large portion of the annual compensation for Dentsply's senior executives, including Defendants Casey and Gomez, was linked to the Company's ability to meet certain targets with respect to Dentsply's financial performance. ¶4. In response to the disruption in the dental industry caused by the COVID-19 pandemic, Dentsply bifurcated its executive compensation plans into two six-month periods, giving executives two opportunities to receive incentive compensation in 2021 based on the Company's financial performance in each six-month period. *Id*.

In the first half of 2021, Dentsply met the applicable financial performance targets, entitling its top executives to the maximum compensation under the compensation plan. ¶5. When Dentsply announced its financial results for the first half of 2021, Defendants stated that the Company's strong financial results stemmed from a "faster recovery" to start the year but warned that the "second half ramp is going to be a little bit less than what we thought initially when we modeled 2021." ¶6. In the face of a looming slow-down in the second half of 2021, Defendants orchestrated a scheme to inflate Dentsply's revenue and earnings by manipulating the Company's revenue recognition practices and certain distributor rebate and incentive programs. ¶7.

In furtherance of their scheme, Defendants repeatedly attributed the sources of Dentsply's financial success to legitimate business factors such as price increases and its improved "go-to-market strategy" which included "more sophisticated and strategic incentive plans," and that Dentsply was "bringing together all of [its] capabilities into one cohesive offering with the right commercial approach from an incentives perspective." ¶¶8-9. Defendants also stated that the Company's inventory levels were stable, and when inventory levels increased, Defendants stated that the increase was simply due to lower-than expected sales. ¶9. Additionally, Defendants

repeatedly assured investors that Dentsply's financial results complied with GAAP and asserted that it maintained adequate internal controls in Dentsply's SEC filings throughout the Class Period. ¶¶9, 38-39.

These statements were materially false and misleading. In truth, Defendants improperly recognized revenue tied to certain dealer incentive or rebate programs to allow Company executives to meet certain incentive-based compensation targets. ¶10. As a result, Dentsply's financial statements were not prepared in accordance with GAAP and the Company's internal controls suffered from a material weakness throughout the Class Period. ¶¶10, 47.

On April 11, 2022, Dentsply announced that Defendant Gomez had "resigned" as Chief Financial Officer but assured investors that his departure was "not the result of any dispute or disagreement with the Company, the Company's management or the Board of Directors of the Company on any matter relating to the Company's operations, policies or practices." ¶11.

Then, on April 19, 2022, Dentsply announced the sudden termination of Defendant Casey by the Company's Board of Directors effective immediately and with no succession plan in place. ¶12. On this news, the price of Dentsply stock fell $6.52 per share, or more than 13%, from $48.72 per share on April 18, 2022, to $42.20 per share at the close of trading on April 19, 2022. *Id*.

Finally, on May 10, 2022, Dentsply announced that the Audit Committee of its Board of Directors had commenced an internal investigation regarding "certain financial reporting matters submitted by current and former employees of the Company." ¶13. Specifically, Dentsply revealed that the Audit Committee was investigating "the Company's use of incentives to sell products to distributors in the third and fourth quarters of 2021" and "whether those incentives were appropriately accounted for" in the Company's financial statements with the SEC. *Id*. The Audit Committee also stated that it was investigating allegations that "certain former and current

members of senior management directed the Company's use of these incentives and other actions to achieve executive compensation targets in 2021." *Id.* On this news, the price of Dentsply stock fell $2.87 per share, or more than 7%, from $39.25 per share on May 9, 2022 to $36.38 per share on May 10, 2022. ¶14.

## III.  ARGUMENT

### A.  San Antonio FPPF Should Be Appointed Lead Plaintiff

San Antonio FPPF respectfully submits that it should be appointed Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Here, San Antonio FPPF believes that it is the presumptively "most adequate plaintiff" because it: (1) complied with the PSLRA's procedural requirements; (2) believes it asserts the largest financial interest in the relief sought by the Class; and (3) satisfies Rule 23's typicality and adequacy requirements.

#### 1.  San Antonio FPPF Satisfied The PSLRA's Procedural Requirements

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days after publication of notice of the pendency of the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). On June 2, 2022, Plaintiff City of Miami filed *City of Miami* alleging that Defendants defrauded investors during the period of June 9, 2021 to May 9, 2022. *City of Miami*, ECF No. 1 at ¶1. On the same day, counsel for City of Miami published notice of the pendency of the action on *Business Wire*, setting the deadline to seek Lead Plaintiff status by August 1, 2022. *See* Bleichmar Decl. Ex. B.

On July 26, 2022, San Antonio FPPF filed the above-captioned substantially similar action against Dentsply asserting the same Class Period.  ECF No. 1 at ¶1.  On the same day, San Antonio FPPF's counsel, BFA published a notice on *Accesswire* alerting investors to the filing of this action and reminding them of the deadline of August 1, 2022 to seek to serve as Lead Plaintiff.  *See* Bleichmar Decl. Ex. C.  Accordingly, San Antonio FPPF's motion is timely.

### 2. San Antonio FPPF Believes It Has The Largest Financial Interest In The Relief Sought By The Class

San Antonio FPPF believes that it has the "largest financial interest in the relief sought by the Class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  San Antonio FPPF incurred a recoverable loss of $2,405,614.96 on its investments in Dentsply common stock during the Class Period as assessed under the Supreme Court's ruling in *Dura*.  "Though *Dura* concerned a motion to dismiss a securities class action, courts [in this District] nonetheless apply *Dura* when considering the financial interest for the purposes of appointing a lead plaintiff."  *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 20-cv-9132 (AJN), 2021 WL 396343, at *3 (S.D.N.Y. Feb. 4, 2021) (collecting cases).  This is because "courts should consider only those losses that will actually be recoverable in the class action . . . and make determinations of largest financial interest only based on the facts alleged in the complaint."  *Id.* (quotations omitted).

Courts in this district may also rely on the last-in, first-out ("LIFO") accounting method to determine the movant with the largest financial interest, while a small minority consider the first-in, first-out ("FIFO") method.  *See Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 & n.5 (S.D.N.Y. 2015).  Under both the LIFO and FIFO methodologies, which do not consider *Dura*,

San Antonio FPPF also incurred a loss of $2,405,614.96 on its investments in Dentsply common stock.[3]

To the best of San Antonio FPPF's knowledge, there is no other qualified applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation.[4] Accordingly, San Antonio FPPF has the largest financial interest of any qualified movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 3. San Antonio FPPF Otherwise Satisfies The Requirements Of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, San Antonio FPPF also otherwise satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, the movant must make only "a preliminary showing" that it satisfies the adequacy and typicality requirements of Rule 23. *Stitt v. On Deck Capital, Inc.*, No. 15 Civ. 6126 (AT), 2016 WL 889535, at *2 (S.D.N.Y. Feb. 17, 2016) (citation omitted). San Antonio FPPF clearly satisfies both requirements.

San Antonio FPPF's claims are typical of the claims of other purchasers of Dentsply common stock. Typicality is satisfied when each Class member's claims "arise from the same course of events, and the other class members make similar legal arguments to prove liability." *Id.*

---

[3] In addition to losses, courts often consider various other metrics, typically referred to as "*Lax* factors," to further analyze a movant's financial interest when warranted. *See Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) (identifying (1) total number of shares purchased; (2) number of net shares purchased; (3) total net funds expended; and (4) approximate losses suffered, as four factors for courts to consider when determining the largest financial interest).

[4] San Antonio FPPF's PSLRA-required Certification is attached as Exhibit A to the Bleichmar Decl. submitted herewith. A chart setting forth the calculation of San Antonio FPPF's interest is attached as Exhibit D to the Bleichmar Decl. San Antonio FPPF's motion, PSLRA certification, and loss calculation provide all the trading information necessary to calculate its financial interest under all possible metrics and does not presuppose that there is only one valid methodology.

Here, San Antonio FPPF sustained injuries virtually identical to those of other Class members and its claims are based on the same course of conduct because, like all other Class members, San Antonio FPPF: (1) purchased Dentsply common stock during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and omissions; and (3) was damaged thereby. *Id.* at *3 (typicality satisfied when movant "claims that [defendant] issued false and misleading statements that caused the company's shares to trade at an inflated price [and] claims arise from the same course of conduct affecting each member of the proposed class"). As such, San Antonio FPPF satisfies the typicality requirement.

San Antonio FPPF also satisfies the adequacy requirement of Rule 23. The adequacy inquiry focuses on whether the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order for the interests of the Class to be fairly and adequately represented, a Lead Plaintiff must not have interests that are antagonistic to the Class that it seeks to represent, must have a sufficient interest in the outcome of the case to ensure vigorous advocacy, and must retain counsel that is capable and qualified to vigorously represent the interests of the Class. *See On Deck Capital*, 2016 WL 889535, at *2. San Antonio FPPF satisfies these elements because its substantial financial stake in the litigation provides it with the incentive to vigorously represent the Class's claims and because San Antonio FPPF's interests are perfectly aligned with those of other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between San Antonio FPPF and other Class members.

Indeed, San Antonio FPPF—responsible for overseeing approximately $3.7 billion in total investments on behalf of approximately 7,000 police officers, firefighters, retirees, beneficiaries and disabled persons—is precisely the type of large and sophisticated institutional investor that

Congress encouraged to act as Lead Plaintiff in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 (1995) ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Finally, San Antonio FPPF has demonstrated its adequacy through its selection of BFA as Lead Counsel to represent the Class. As discussed more fully below, BFA is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated an ability to conduct complex securities actions effectively.

**B.     San Antonio FPPF Selected Well-Qualified Counsel To Represent The Class**

Under the PSLRA, the Lead Plaintiff is given the right, "subject to the approval of the court," to "select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The Lead Plaintiff's choice of counsel is not to be disturbed unless doing so is "necessary to protect the interests of the class." *City of Sunrise*, 2021 WL 396343, at *6.

BFA is among the foremost securities class action law firms in the country. BFA's partners have served as Lead and Co-Lead counsel on behalf of dozens of institutional investors and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades. *See* Bleichmar Decl., Ex. E (BFA firm resume). The firm's recent matters include a $420 million resolution on behalf of investors in *Ontario Teachers' Pension Plan Board v. Teva Pharms. Indus. Ltd.*, No.3:17-cv-00558 (D. Conn.) and a $129 million resolution for the benefit of the class in *The Police Retirement System of St. Louis v. Granite Construction Inc.*, No.3:19-cv-04744 (N.D. Cal.).

In this District, BFA secured a $234 million resolution for the benefit of the class in *In re MF Global Holdings Sec. Litig.*, No.1:11-cv-07866 (S.D.N.Y.) and a $120 million recovery in *Freedman v. Weatherford Int'l, Ltd.*, No.1:12-cv-02121 (S.D.N.Y.). BFA also achieved a record $219 million resolution in *In re Genworth Fin. Inc. Sec. Litig.*, No.3:14-cv-00682 (E.D. Va.), which represents the largest securities class action recovery ever achieved in the Eastern District of Virginia.

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation. Accordingly, the Court should approve San Antonio FPPF's selection of BFA as Lead Counsel for the Class.

## IV. CONCLUSION

For the foregoing reasons, San Antonio FPPF respectfully requests that the Court appoint it as Lead Plaintiff, approve its selection of BFA as Lead Counsel for the Class, and grant such other relief as the Court may deem just and proper.

DATED: August 1, 2022

Respectfully Submitted,

*/s/ Javier Bleichmar*
Javier Bleichmar
Nancy A. Kulesa
Ross Shikowitz
**BLEICHMAR FONTI & AULD LLP**
7 Times Square, 27th Floor
New York, NY 10036
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com
nkulesa@bfalaw.com
rshikowitz@bfalaw.com

*Counsel for Proposed Lead Plaintiff
San Antonio Fire and Police Pension Fund and
Proposed Lead Counsel for the Class*