# EXHIBIT H

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM, <br><br> Plaintiff, <br><br> v. <br><br> META PLATFORMS, INC., et al., <br><br> Defendants. | Case No. 21-cv-08812-JST <br><br> **ORDER CONSOLIDATING CASES, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD COUNSEL** <br><br> Re: ECF Nos. 22, 27 |
| BARRY G. DEPOT, <br><br> Plaintiff, <br><br> v. <br><br> META PLATFORMS, INC., et al., <br><br> Defendants. | Case No. 21-cv-08873-JST |
| JUAN PEREZ, <br><br> Plaintiff, <br><br> v. <br><br> META PLATFORMS, INC., et al., <br><br> Defendants. | Case No. 21-cv-09041-JST |

Five competing motions to consolidate, appoint lead plaintiff, and approve selection of counsel were filed in these cases. The Court previously terminated the motions brought by Rahul Saraf, KBC Asset Management NV, and Wee Ann Ngian, all of whom conceded that they are not the presumptively most adequate plaintiff because they do not have "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The remaining movants

are Ohio Public Employees Retirement System ("Ohio PERS") and PFA Pension, Forsikringsaktieselskab ("PFA Pension"), ECF No. 25, and California Public Employees' Retirement System ("CalPERS"), ECF No. 27.[1] The Court will grant Ohio PERS and PFA Pension's motion and deny CalPERS's motion.

## I. CONSOLIDATION

All movants agree that these cases should be consolidated. Rule 42(a) of the Federal Rules of Civil Procedure allows for consolidation of cases that "involve a common question of law or fact." Courts have "broad discretion under this rule to consolidate cases pending in the same district." *Invs. Rsch. Co. v. U.S. Dist. Ct.*, 877 F.2d 777, 777 (9th Cir. 1989). As this Court has previously explained:

> In determining whether or not to consolidate cases, the Court should weigh the interest of judicial convenience against the potential for delay, confusion and prejudice. Courts have recognized that class action shareholder suits are particularly well suited to consolidation pursuant to Rule 42(a) because unification expedites pretrial proceedings, reduces case duplication, avoids the need to contact parties and witnesses for multiple proceedings, and minimizes the expenditure of time and money for all parties involved.

*Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018) (quotation marks and citation omitted).

These cases do not deviate from this norm. They involve nearly identical factual issues and legal claims, and consolidating them would promote judicial economy without creating any delay, confusion, or prejudice. The Court therefore grants the unopposed motions to consolidate.

## II. LEAD PLAINTIFF

The Private Securities Litigation Reform Act ("PSLRA") "instructs district courts to select as lead plaintiff the one 'most capable of adequately representing the interests of class members.'" *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)). This does not require a "wide-ranging comparison to determine which plaintiff is best suited to represent the class." *Id.* Instead, the "presumptive lead plaintiff . . . is the movant with the largest

---

[1] Docket numbers cited in this order refer to Case No. 21-cv-08812.

financial interest and who has made a prima facie showing of adequacy and typicality. Once the presumption is established, competing movants can rebut the presumption by showing that the presumptive lead plaintiff will not fairly or adequately represent the class." *In re Mersho*, 6 F.4th 891, 896 (9th Cir. 2021) (citing 15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(I)(bb)-(cc) & (II)(aa)). "The statute requires proof that the presumptive lead plaintiff is not adequate. . . . If the presumption is not rebutted, the presumptively most adequate plaintiff must be selected as lead plaintiff" *Id.* at 899 (citing *In re Cavanaugh*, 306 F.3d at 729 n.2 and 15 U.S.C. § 78u-4(a)(3)(B)(i)). "If the movant with the largest losses does not satisfy the Rule 23 requirements, the district court must then look to the movant with the next largest losses and repeat the inquiry." *Id.*

Here, Ohio PERS and PFA Pension claim the largest financial interest. CalPERS, which claims the second largest financial interest, contends that it should be appointed lead plaintiff because PFA Pension's claimed financial interest cannot be considered, and because Ohio PERS and PFA Pension do not satisfy the requirements of Rule 23. The Court disagrees.

First, the Court is persuaded that PFA Pension has disclosed all of its transactions, and that these transactions occurred on the open market. PFA Pension is owned by PFA Holding A/S. ECF No. 22-4 ¶ 4. PFA Pension submitted a sworn declaration stating that "other PFA entities owned Facebook stock during the class period," but that these "entities are legally separate from PFA Pension." ECF No. 63-3 at 8 (¶ 16). It further declared that PFA Pension "does not have legal title to the Facebook shares owned by those other PFA entities," and that "[t]hose other PFA entities . . . did not purchase any Facebook stock during the class period." *Id.* Likewise, PFA Pension has submitted proof, in the form of transaction statements from J.P. Morgan, that its transactions occurred on the open market through a third-party broker. ECF No. 63-3 at 7 (¶ 13) & 16-28. CalPERS argues that PFA Pension's own website lists more far more Facebook shares than PFA Pension's loss chart indicates, but PFA Pension persuasively observes that the website includes shares held by both PFA Holding and PFA Pension. ECF No. 74 at 7 (citing https://pfa.dk/-/media/pfa-v2/dansk/dokumenter/om-pfa/aarsrapporter/aktielister-halvaar-2021.pdf?la=da-dk&hash=35544B102C25498F059D789F85920E1A18F36E49); ECF No. 75 at 7 (citing https://pfa.dk/om-pfa/finasiel-information/aarsrapporter/). CalPERS's speculation that

United States District Court
Northern District of California

PFA Pension has failed to disclose all of its transactions, or that some of the claimed transactions were internal trades that did not occur on the open market, is insufficient to overcome PFA Pension's sworn testimony and transaction statements.

Second, the Court rejects CalPERS's argument that PFA Pension "is subject to unique defenses that render [it] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). CalPERS contends that PFA Pension has not established Article III standing because it "did not engage in any Class Period transactions in Facebook stock, but rather asserts that 'economic entities within PFA Pension' did." ECF No. 74 at 3 (quoting ECF No. 63-3 at 8 (¶ 15)). However, PFA Pension has submitted two declarations stating that it holds legal title to all Facebook shares identified in PFA Pension's certification, and the second declaration further states that PFA Pension "has the authority to sue in its own name for damages suffered on those investments." ECF No. 63-3 at 8 (¶ 15); ECF No. 22-4 ¶ 4. This is sufficient to establish that PFA Pension has "suffered injury-in-fact and has standing to serve as Lead Plaintiff." *Hufnagle v. RINO Int'l Corp.*, No. CV 10-8695-VBF (VBKx), 2011 WL 710704, at *5 (C.D. Cal. Feb. 14, 2011) (finding sufficient to establish standing a declaration that "Stream was the beneficial owner and held legal title to the RINO stock purchased and sold"), *tentative ruling adopted*, 2011 WL 710676 (C.D. Cal. Feb. 16, 2011); *see also W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) (discussing *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269 (2008)) ("[T]he minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim.").

It is irrelevant that "PFA Pension's trading in Facebook was done through four units of PFA Pension: Høj Risiko PFAPlus, PFA Klima Aktier, PFA Indeks Global Aktier, and PFA Indeks USA Aktier." ECF No. 63-3 at 8 (¶ 15). Unlike in the cases relied on by CalPERS, PFA Pension has affirmatively stated that it holds title in the securities at issue; it therefore need not rely on principles of third-party standing or establish whether it received a valid assignment of rights. *See, e.g., Gross v. AT&T Inc.*, No. 19-CV-2892 (VEC), 2019 WL 3500496, at *2 (S.D.N.Y. July 31, 2019) ("Because the Funds, not KBC, have legal title to the relevant AT & T shares, there is no question in this case that the claims alleging violations of federal securities law

4

belonged, at least in the first instance, to the Funds. The only question, therefore, is whether the Funds have since conveyed a property interest in those claims to KBC, either through an assignment or through some other means." (citations omitted)); *Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distrib. Corp.*, Civ. Action No. 11-6247 (JBS/KMW), 2012 WL 3638629, at *11 (D.N.J. Aug. 22, 2012) ("In terms of the Prosperity Group, the only entities that actually purchased or owned CEDC stock, and thus incurred any losses, are the Subsidiaries. They are the only entities who suffered an injury-in-fact. PCM has authority to bring a lawsuit, but the Subsidiaries have not assigned their claims to it. The PCM Managed Funds have neither authority to bring lawsuits nor title to the claims." (citations omitted)); *Baydale v. Am. Express Co.*, No. 09 Civ. 3016 (WHP), 2009 WL 2603140, at *3 (S.D.N.Y. Aug. 14, 2009) ("LFAB does not attempt to show that it has 'legal title to, or a proprietary interest in, the claim,' *Huff*, 549 F.3d at 108, but instead contends that it qualifies for 'third-party standing.'"); *Smajlaj v. Brocade Commc'ns Sys. Inc.*, No. C 05-02042 CRB, 2006 WL 7348107, at *2 (N.D. Cal. Jan. 12, 2006) ("Because it is unclear which funds held Brocade stock, whether Intrepid Capital Management has authority to act on behalf of those funds, and whether any other Intrepid management companies would need to authorize this suit and the production of any documents, Intrepid is likely to face unique defenses.").

CalPERS does not suggest that an entity that owns legal title to the stock in question lacks standing and instead argues that PFA's declaration is insufficient to establish that it holds legal title to the Facebook stock. But CalPERS has cited no authority requiring additional proof. PFA Pension has submitted sworn declarations stating that it holds title to the stock, and CalPERS has introduced no persuasive evidence suggesting that it does not. "[A] sworn declaration of ownership trumps speculation as to a party's property interest in relevant shares." *In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 447 (S.D.N.Y. 2013).

Third, Ohio PERS and PFA Pension's claims are typical, if not identical, to those of other class members. Like other members of the class, they purchased Facebook stock "during the Class Period at prices they allege were artificially inflated by the defendants' materially false and misleading statements," and they allege that they suffered losses as a result. *Huang v. Depomed,*

United States District Court
Northern District of California

5

*Inc.*, 289 F. Supp. 3d 1050, 1054 (N.D. Cal. 2017).

Finally, the Court finds the group formed by Ohio PERS and PFA Pension to be adequate. "District courts have 'latitude' in what information they can consider to assess adequacy" of a potential lead plaintiff group. *In re Mersho*, 6 F.4th at 901 (quoting *In re Cavanaugh*, 306 F.3d at 732). Courts have considered "the size of the group, how the members found their counsel, and the prosecution procedures set out in their filings," as well as whether members of the group have a pre-litigation relationship. *Id.* at 901-02. Absence of a pre-litigation relationship "may indicate that members may not work together well to vigorously prosecute the litigation or they might not be able to control counsel." *Id.* at 901.

Here, Ohio PERS and PFA Pension lack a pre-litigation relationship, but the Court is persuaded from reviewing their joint declarations, ECF No. 22-4; ECF No. 63-3, that these sophisticated institutional investors, one of which has received separate legal advice from the Office of the Attorney General of the State of Ohio, will appropriately supervise counsel. *See, e.g.*, *Cohen v. Luckin Coffee Inc.*, No. 1:20-cv-01293-LJL, 2020 WL 3127808, at *5 (S.D.N.Y. June 2, 2020) (noting that the "combined experience and resources" of two institutional investors "give some confidence that the group members will have the knowledge and background to appropriately supervise counsel and protect against lawyer-driven litigation"). They each have separate structures in place for consideration of securities litigation matters, and they followed those procedures before deciding to move jointly for appointment as lead plaintiff. ECF No. 22-4 ¶ 11; ECF No. 63-3 at 5-6 (¶ 8). That the group consists only of two members "provides additional assurance that the Group itself, and not its attorneys, will control the litigation." *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 533 (N.D. Cal. 2009) (reaching this conclusion as to a three-member group). Ohio PERS and PFA Pension appear to have communicated well together, both before and after filing their joint motion to be appointed as lead plaintiff, and there is no reason to doubt that they will be unable to resolve any conflicts that might arise in the future. While they could have presented a more robust decisionmaking structure that included more than a plan "to engage in thorough discussion with each other and our counsel to come to a resolution" if disputes arise, ECF No. 63-3 at 6 (¶ 10), the Court does not find the absence of such a structure to

be disqualifying.

PFA Pension has the largest financial interest standing alone, and it would have achieved lead plaintiff status alone had it sought such appointment. This is the same situation the Court faced in *Huang v. Depomed*, 289 F. Supp. 3d 1050. In that case, a competing movant criticized a group seeking lead plaintiff status by arguing "that there is no evidence the group members have spoken before the start of the litigation or otherwise demonstrated the cohesion and adequacy required to attain lead plaintiff status." *Id.* at 1053-54. The Court rejected those criticisms because:

> even if the DIG group is disaggregated, one of its members – Scarpatetti – still has the highest loss. Had Scarpatetti sought lead plaintiff status on his own, he would have achieved it. Therefore, to appoint Pontiac because of the DIG group's alleged deficiencies would effectively be to penalize Scarpatetti because he joined DIG. The Court fails to see how that outcome furthers any goal of the PSLRA.

*Id.* at 1054. The same is true in this case. The Court will not penalize PFA Pension for its decision to join with Ohio PERS to seek to lead this litigation. The cases relied on by CalPERS are distinguishable because the groups in those cases did not include a member that, standing alone, would have the largest financial interest, or the proposed group suffered from other deficiencies, or both. *See, e.g.*, *In re Cloudera, Inc. Sec. Litig.*, No. 19-CV-03221-LHK, 2019 WL 6842021, at *5-7 (N.D. Cal. Dec. 16, 2019) (finding competing claimant to have higher potential recovery than either member of proposed group, and characterizing declarations, including description of only one joint call, as "conclusory"); *Isaacs v. Musk*, No. 18-cv-04865-EMC, 2018 WL 6182753, at *3 (N.D. Cal. Nov. 27, 2018) (noting that group members participated in only a single conference call and "will likely be subject to unique defenses," without indicating whether any member of the group had the largest financial interest standing alone, and explaining that group's "suggestion that the group may be broken apart if the Court has concerns about any specific member . . . suggests that the group is artificial and should not have been brought in the first place"); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289, at *8-10 & n.8 (N.D. Cal. Aug. 22, 2008) (finding "that a pre-existing relationship between entities that comprise a group is not required if the resulting group is small and cohesive enough such that

United States District Court
Northern District of California

7

it can adequately control and oversee the litigation," but rejecting proposed group of five investors, "which are competitors," due to "inherent" coordination problems with so many entities, where there was "no rationale for this grouping other than to manufacture the greatest financial interest in order to be appointed lead plaintiff," and where investor with the largest losses would be subject to unique defenses).

Ohio PERS and PFA Pension are the presumptive lead plaintiff by virtue of having the largest financial interest and making a prima facie showing of typicality and adequacy. Neither CalPERS nor any other movant has presented proof to rebut this presumptive status. CalPERS requests an evidentiary hearing, but it has not "demonstrate[d] a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of representing the class" – a prerequisite to discovery. 15 U.S.C. § 78u-4(a)(3)(B)(iv); *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1055 n.1 (N.D. Cal. 2010). The Court appoints Ohio PERS and PFA Pension as lead plaintiff.

## III.   LEAD COUNSEL

Once the Court has found the "most adequate plaintiff," that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice"; it "should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently." *Cohen v. U.S. Dist. Ct.*, 586 F.3d 703, 711-12 (9th Cir. 2009).

Ohio PERS and PFA Pension have selected Bernstein Litowitz Berger & Grossmann LLP to serve as lead counsel. The firm has significant experience litigating securities class actions, including in this district, and no movant contends that selecting Bernstein Litowitz as lead counsel would be unreasonable. The Court approves as reasonable Ohio PERS and PFA Pension's choice of counsel.

### CONCLUSION

These cases are consolidated for all purposes under Rule 42(a) of the Federal Rules of Civil Procedure. The consolidated action shall be maintained under Case No. 21-cv-08812 and captioned as "*In re Meta Platforms, Inc., Securities Litigation*." The Clerk shall close Case Nos.

United States District Court
Northern District of California

21-cv-08873 and 21-cv-09041.

Any subsequently filed, removed, or transferred securities class action that alleges the same or substantially similar claims as this consolidated action shall be consolidated for all purposes. Any party objecting to such consolidation must file a motion requesting relief from this order within 14 days after the action is consolidated.

Ohio PERS and PFA Pension's motion for appointment as lead plaintiff and approval of selection of counsel is granted. CalPERS's motion seeking the same relief is denied. Ohio PERS and PFA Pension are appointed as lead plaintiff, and Bernstein Litowitz Berger & Grossmann LLP is appointed as lead counsel.

As previously ordered, the parties shall submit a proposed schedule, within 14 days of this order, for the filing of a consolidated complaint and Defendants' responses thereto. ECF No. 19 at 3.

**IT IS SO ORDERED.**

Dated: July 26, 2022



JON S. TIGAR
United States District Judge