**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAN ANTONIO FIRE AND POLICE PENSION FUND, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> DENTSPLY SIRONA INC., DONALD M. CASEY, and JORGE GOMEZ, <br><br> Defendants. | Case No. 1:22-cv-06339-JPC <br><br><br> <u>CLASS ACTION</u> |

**THE CITY OF MIAMI GENERAL EMPLOYEES' & SANITATION EMPLOYEES'
RETIREMENT TRUST'S AND THE LOUISIANA SHERIFFS' PENSION & RELIEF
FUND'S MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING
<u>MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF</u>**

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ......................................................................................................................... 5

    A.    Miami And Louisiana Sheriffs Should Be Appointed Lead Plaintiff ..................... 5

        1.    Miami And Louisiana Sheriffs Have The Largest Financial Interest In The Relief Sought By The Class ............................................................. 5

        2.    Miami And Louisiana Sheriffs Satisfy The Requirements Of Rule 23 ..... 10

    B.    The Competing Motions Should Be Denied ............................................................. 12

    C.    The Court Should Hold These Motions In Abeyance ............................................... 12

CONCLUSION ..................................................................................................................... 12

## TABLE OF AUTHORITIES

CASES                                                                                                   PAGE(S)

*Ash v. Powersecure Int'l, Inc.*,
  2014 WL 5100607 (E.D.N.C. Oct. 10, 2014) ............................................................................6, 9

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  258 F.R.D. 260 (S.D.N.Y. 2009) .................................................................................................4

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ......................................................................................................1

*Clark v. Barrick Gold Corp.*,
  2013 WL 5300698 (S.D.N.Y. Sept. 20, 2013) ..........................................................................10

*Dura Pharms, Inc. v. Broudo*,
  544 U.S. 336 (2005) ....................................................................................................................7

*Faris v. Longtop Fin. Techs. Ltd.*,
  2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ..............................................................................12

*Glavan v. Revolution Lighting Techs., Inc.*,
  2019 WL 3406582 (S.D.N.Y. July 29, 2019) ..............................................................................6

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
  2004 WL 3314943 (N.D. Ohio May 12, 2004) ........................................................................2, 6

*Hedick v. Kraft Heinz Co.*,
  2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) ...............................................................................11

*Hom v. Vale, S.A.*,
  2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ...............................................................................10

*Hurst v. Enphase Energy, Inc.*,
  2020 WL 7025085 (N.D. Cal. Nov. 30, 2020) ....................................................................6, 7, 8

*Lax v. First Merchs. Acceptance Corp.*,
  1997 WL 461036 (N.D. Ill. Aug. 11, 1997) .............................................................................1, 6

*Mehedi v. View, Inc.*,
  2022 WL 377406 (N.D. Cal. Feb. 8, 2022) .................................................................... *passim*

*Pelletier v. Endo Int'l PLC*,
  316 F. Supp. 3d 846 (E.D. Pa. 2018) ..........................................................................................2

*Richman v. Goldman Sachs Grp., Inc.*,
  274 F.R.D. 473 (S.D.N.Y. 2011) .........................................................................................1, 2, 6

ii

*Rosi v. Alcaris Therapeutics, Inc.*,
    2019 WL 5778445 (S.D.N.Y. Nov. 6, 2019) ............................................................................10

*In re Wells Fargo & Co. Sec. Litig.*,
    No. 20-cv-4494, ECF No. 59 (S.D.N.Y. Aug. 29, 2020) ...........................................................4

**STATUTES**

15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(bb) ...............................................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(i) ........................................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(ii) ...................................................................................................5, 12

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ...............................................................................................1, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ..........................................................................................10

**OTHER AUTHORITIES**

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 (1995) .......................................7

Miami and Louisiana Sheriffs respectfully submit this memorandum of law in opposition to the competing motions for appointment as Lead Plaintiff filed by City of Birmingham Retirement and Relief System, El Paso Firemen & Policemen's Pension Fund, and Wayne County Employees' Retirement System (collectively, the "Public Pension Group") (ECF No. 13), and San Antonio Fire and Police Pension Fund ("San Antonio") (ECF No. 5).[1]

## PRELIMINARY STATEMENT

Miami and Louisiana Sheriffs should be appointed Lead Plaintiff because they are the "most adequate plaintiff," by virtue of having the "largest financial interest" in the securities class action against Dentsply under the standards of the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Miami and Louisiana Sheriffs are also sophisticated institutional investors with the proven ability to work together as Lead Plaintiff.  *See* ECF No. 10 at 3, 10-13.

In addition to Miami and Louisiana Sheriffs, two other movants filed motions seeking appointment as Lead Plaintiff.  Of the three pending motions for appointment as Lead Plaintiff, Miami and Louisiana Sheriffs have the "most to gain from the lawsuit."  *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).  Courts throughout the country have considered the following four factors when assessing financial interest: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  *See, e.g.*, *Lax v. First Merchs. Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997).  Courts treat these factors in ascending order of importance, with the number of shares purchased as the least important and the size of the loss the most important.  *See Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 475-76 (S.D.N.Y. 2011) (finding the "*Lax* factors are properly ordered, so that

---

[1] All capitalized terms are defined in Miami's and Louisiana Sheriffs' moving brief, unless otherwise indicated.  *See* ECF No. 10.  All citations are omitted and all emphasis is added, unless noted.

the number of shares purchased . . . is the least important and the loss suffered . . . is the most important").  Given that Miami and Louisiana Sheriffs exceed any competing movant under the two most critical factors—net shares purchased and approximate losses suffered—they have the "largest financial interest" in this case.  *See, e.g.*, *id.*

While the Public Pension Group—a combination of three public pension funds that have never previously worked together to prosecute securities fraud claims—claims a larger financial interest under the fourth factor, the loss methodology it uses is flawed given the circumstances of this particular case.[2]  Unlike Miami and Louisiana Sheriffs (or San Antonio for that matter), the Public Pension Group inflated its financial interest by including shares sold prior to any pleaded disclosure of Dentsply's alleged fraud.  Numerous courts have recognized that loss estimates can produce an inaccurate or "illusory" picture of a movant's true financial interest in certain cases, such as when they include losses incurred prior to any disclosure of the alleged fraud.  *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 2004 WL 3314943, at *3 (N.D. Ohio May 12, 2004); *see also Mehedi v. View, Inc.*, 2022 WL 377406, at *5 (N.D. Cal. Feb. 8, 2022) (explaining the disadvantage of the LIFO net loss formula is that "it takes into account losses that resulted from fluctuations in [the company's] stock prior to the Corrective Disclosure that potentially have nothing to do with the . . . alleged fraud").  For that reason, many courts seek to isolate only those losses that are causally related to the alleged fraudulent conduct, and therefore potentially recoverable through the litigation.  Even Wayne County Employees' Retirement System, a member of the Public Pension Group, has acknowledged that courts should only "consider

---

[2] While it is true that the Public Pension Group purchased more total shares during the Class Period, that total includes shares that did not result in damages because they were bought and then sold prior to any corrective disclosure.  Such shares have no bearing on an investor's financial interest.  *See Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 849 (E.D. Pa. 2018) (calculating largest financial interest by "[e]xcluding from the calculation those shares purchased at inflated prices and sold at inflated prices before disclosure of the relevant misrepresentation").  This is one reason that the "total shares" metric is the least important of the four factors courts consider.  *See Goldman Sachs Grp.*, 274 F.R.D. at 476.

movants' recoverable losses, *i.e.*, those proximately caused by the fraud." *Chun v. Flour Corp.*, No. 3:18-cv-01338-S, ECF No. 23 at 2 (N.D. Tex. Aug. 28, 2018) (Ross Opp. Decl., Ex. A).[3] Under a "Recoverable Loss" methodology, courts typically "consider[] only the shares retained at the time of the Corrective Disclosure" and "ignore[] the losses the parties experienced from their stocks depreciating prior to the Corrective Disclosure." *View*, 2022 WL 377406, at \*6.  Indeed, counsel for the Public Pension Group has also advocated for using a recoverable loss methodology. *See Ward v. Upstart Holdings Inc.*, No. 5:22-cv-02856-BLF, ECF No. 30-3 at 27 (N.D. Cal. July 12, 2022) (Ross Opp. Decl., Ex. B) (using an approach that calculated "the value of each party's retained stock just before the Corrective Disclosure").  A proper calculation of each movant's Recoverable Loss demonstrates that Miami and Louisiana Sheriffs suffered the largest recoverable losses of any movant.  *See infra* Section A.1.

Here, because Miami and Louisiana Sheriffs purchased more shares on a net basis and incurred a greater recoverable loss than either competing movant, Miami and Louisiana Sheriffs have the largest financial interest in this litigation:

| Movant | Net Shares Purchased | Recoverable Loss |
| --- | --- | --- |
| Miami and Louisiana Sheriffs | 170,938 | $1,605,108 |
| Public Pension Group | 164,940 | $1,565,087 |
| San Antonio | 105,450 | $990,175 |

As demonstrated in their motion, Miami and Louisiana Sheriffs unquestionably satisfy Rule 23's requirements.  *See* ECF No. 10 at 8-9.  Miami and Louisiana Sheriffs are also an ideal "group" under the PSLRA and standards set by courts throughout the country.  The PSLRA expressly endorses the appointment of Lead Plaintiff groups such as Miami and Louisiana Sheriffs

---

[3] All references to "Ross Opp. Decl., Ex. _" are to the exhibits to the Declaration of Hannah Ross filed herewith.

that are capable of overseeing counsel and the litigation, and courts routinely appoint such groups to serve as Lead Plaintiff.  *See, e.g.*, *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing group of five investors); *In re Wells Fargo & Co. Sec. Litig.*, No. 20-cv-4494, ECF No. 59 at 1 (S.D.N.Y. Aug. 29, 2020) (appointing a group of four institutional investors, including Louisiana Sheriffs).  As established by their Joint Declaration, Miami and Louisiana Sheriffs comprise a small, cohesive and like-minded partnership of sophisticated institutional investors—with experience working together to prosecute securities class actions and oversee counsel—that is capable of supervising the litigation.  *See* ECF No. 11-3 ¶¶3, 5-6, 10-11.  Miami and Louisiana Sheriffs came together on their own volition and, prior to filing their motion, held a conference call to discuss their leadership of this case to ensure that it will be litigated in the interests of all Class members.  *See id.* ¶12.  As such, Miami and Louisiana Sheriffs are the presumptive Lead Plaintiff.

Further, as set forth in a pre-motion letter filed with the Court earlier today, Miami and Louisiana Sheriffs intend to file a motion to transfer this Action to the United States District Court for the Western District of North Carolina, which is where Dentsply is headquartered and the alleged misrepresentations were made.[4]  *See* ECF No. 17.  As set forth in that letter, the grounds for transferring this Action to the Western District of North Carolina are compelling, while the connections to this District are negligible.  Transfer of this Action to the Western District of North Carolina will further the interests of efficiency, judicial economy, and justice.  Upon transfer of both related actions to North Carolina, Miami and Louisiana Sheriffs will seek consolidation of

---

[4] Miami filed the first securities class action against Dentsply in the Southern District of Ohio.  Miami's basis for filing in Ohio was its counsel's belief that Defendant Casey resided in Ohio following his termination from Dentsply. Based on subsequent discussions with counsel for Dentsply, however, counsel for Miami learned that Casey no longer resides in Ohio, severing the only tie between the securities fraud claims and that district.  As a result, Miami and Louisiana Sheriffs have filed a motion to transfer the *Miami* action from the Southern District of Ohio to the Western District of North Carolina.  Because the Western District of North Carolina is the proper venue for this Action, counsel for Miami and Louisiana Sheriffs relies on North Carolina case law here.

the related actions.  Given the PSLRA's requirement that courts "shall" consider motions for consolidation prior to the appointment of Lead Plaintiff, and the fact that such a motion cannot be considered until after the issue of transfer is resolved, Miami and Louisiana Sheriffs respectfully request that the Court hold the pending Lead Plaintiff motions in abeyance until after the Court decides Miami's and Louisiana Sheriffs' transfer motion.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii).

## ARGUMENT

### A.   Miami And Louisiana Sheriffs Should Be Appointed Lead Plaintiff

The PSLRA directs that the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be . . . the 'most adequate plaintiff'"— *i.e.*, the movant that the Court determines is "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA requires further that the Court "shall adopt a presumption that the most adequate plaintiff . . . is the person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the [adequacy and typicality] requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

In this case, Miami and Louisiana Sheriffs have the "largest financial interest" in these claims because they stand to recover the most of any competing movant.  Moreover, Miami and Louisiana Sheriffs—public pension funds with a history of serving together as lead plaintiffs and significant successes serving as fiduciaries and lead plaintiffs in securities class actions—readily satisfy the relevant requirements of Rule 23, and should be appointed as Lead Plaintiff.

### 1.   Miami And Louisiana Sheriffs Have The Largest Financial Interest In The Relief Sought By The Class

When determining financial interest in a case under the PSLRA, courts throughout the country look to four factors: (1) the number of shares purchased during the class period; (2) the

number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *See Lax*, 1997 WL 461036, at *5. Of those four factors, net shares and loss are the most important. *See Goldman Sachs Grp.*, 274 F.R.D. at 476. In situations like this, where news of the Defendants' fraud reached the market and caused a decline in the price of the subject securities, courts use the recoverable loss method to isolate losses on shares retained at the pleaded disclosure from those losses incurred prior to such disclosure or otherwise attributable to market fluctuations rather than the alleged fraud. *See, e.g.*, *View*, 2022 WL 377406, at *6; *Hurst v. Enphase Energy, Inc.*, 2020 WL 7025085, at *4 (N.D. Cal. Nov. 30, 2020); *Ash v. Powersecure Int'l, Inc.*, 2014 WL 5100607, at *3 (E.D.N.C. Oct. 10, 2014); *see also* ECF No. 10 at 7 (Miami and Louisiana Sheriffs noting they purchased "170,938 shares of Dentsply common stock, all of which were purchased before and held through all pleaded corrective disclosures"); ECF No. 6 at 6-7 (San Antonio doing the same).

Contrary to the self-serving assertions in its Lead Plaintiff motion, the Public Pension Group lacks the largest financial interest in this case, and its motion should be denied. While the Public Pension Group claims to have a larger financial interest, its methodology in this case is flawed. Numerous courts have recognized that FIFO and LIFO estimates can produce an inaccurate or "illusory" picture of a movant's true financial interest in certain cases, such as this one. *In re Goodyear*, 2004 WL 3314943, at *3. Here, the Public Pension Group's FIFO and LIFO estimates include shares of Dentsply common stock that members of the Public Pension Group sold prior to any corrective disclosure, and which cannot give rise to any compensable damages. Such losses therefore are irrelevant to any consideration of financial interest in the relief sought by the class. *See Glavan v. Revolution Lighting Techs., Inc.*, 2019 WL 3406582, at *4 (S.D.N.Y. July 29, 2019) (noting that rather than taking into account shares sold prior to corrective

disclosures, "when evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's *recoverable* loss") (emphasis in original).

Unlike loss estimates under FIFO and LIFO—which are highly subjective and include non-recoverable losses that are unrelated to the fraud—the "Recoverable Loss" methodology instead "formulat[es] as accurate an estimate of the parties' recoverable loss as possible at this preliminary stage of litigation." *View*, 2022 WL 377406, *7. Indeed, "methods focusing on recoverable loss are preferable to economic loss methods because [they] exclude [ ] losses incurred during the class period that are likely attributable to normal market fluctuations rather than fraud." *Enphase Energy*, 2020 WL 7025085, at *4.

Such focus on losses that are actually recoverable most closely aligns with the language and legislative history of the PSLRA's lead plaintiff provisions. The statute itself refers to the movant having the "largest financial interest in the relief sought by the class" (15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(bb)), and the case law is clear that investors cannot seek to recover losses incurred prior to the disclosure of the alleged fraud. *See Dura Pharms, Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (noting "if . . . the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss"). The Congressional record similarly emphasizes that the PSLRA was "intended to limit damages to those losses caused by the fraud and not by other market conditions." S. Rep. No. 104-98, at *28 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 707 (1995).

Here, as evidenced in the below stock chart, Dentsply's stock price steadily declined throughout the Class Period leading up to the first disclosure on April 19, 2022. As a result, in this case, LIFO and FIFO calculations of financial interests take into account—and are heavily biased by—market fluctuations that are not alleged to be related to the fraud. Such financial

interest estimates are therefore inflated.



Given Dentsply's stock movement prior to the corrective disclosures alleged in the filed complaints, "methods focusing on recoverable loss are preferable to economic loss methods" such as simplistic LIFO and FIFO loss estimates. *Enphase Energy*, 2020 WL 7025085, at *4. In order to determine each movant's recoverable losses, the Court must first determine the number of each movant's retained shares on the date of each alleged corrective disclosure. *See View*, 2022 WL 377406, at *6. Here, as set forth in their motion, Miami and Louisiana Sheriffs purchased 170,938 shares of Dentsply common stock during the Class Period and held all of those shares through both of the pleaded corrective disclosures, on April 19, 2022 and May 9, 2022. *See* ECF Nos. 10 at 7; 11-2. In contrast, the Public Pension Group held 167,440 shares through the April 19, 2022 corrective disclosure, and only 164,940 through the May 9, 2022 disclosure. *See* ECF No. 15-4. Significantly, the Public Pension Group sold 14,000 shares prior to the first corrective disclosure, and an additional 2,500 shares between the April 19, 2022 and May 9, 2022 corrective disclosures. *See id*. Lastly, San Antonio held 105,450 shares through both disclosures. *See* ECF No. 7-4.

Next, the Court calculates the total value of those shares by applying the price of the stock at the time immediately before the disclosure of the purported fraud. *See View*, 2022 WL 377406,

8

at *6.  Here, the price of Dentsply's stock prior to the April 19, 2022 disclosure was $48.72.  *See* ECF No. 1 ¶12.  That number is then multiplied by the number of retained shares to determine what the "stock was worth . . . just prior to the Corrective Disclosure."  *View*, 2022 WL 377406, at *6.  The Court then "subtract[s] from these the relevant values *after* the Corrective Disclosure" in order to "yield[] the recoverable loss values."  *Id.* (emphasis in original).  Dentsply's stock fell $6.52 as a result of the April 19, 2022 disclosure.  *See* ECF No. 1 ¶12.  Explained another way, the Court can calculate recoverable loss by multiplying the decline in stock value as a result of the corrective disclosure by the number of retained shares.  *See PowerSecure Int'l*, 2014 WL 5100607, at *3 (calculating financial interest by "determining the drop in the value of [] securities . . . that the corrective disclosure caused" and multiplying that by the number of retained shares).

As set forth in the table below, the total recoverable losses for each fund is: $1,605,108 for Miami and Louisiana Sheriffs, $1,565,087 for the Public Pension Group, and $990,175 for San Antonio.

| Movant | Retained Shares | 4/19/22 Stock Decline | 4/19/22 Recoverable Loss | 5/9/22 Stock Decline | 5/9/22 Recoverable Loss | **Total Recoverable Loss** |
|---|---|---|---|---|---|---|
| Miami and Louisiana Sheriffs | 170,938 | $6.52 | $1,114,516 | $2.87 | $490,592 | **$1,605,108** |
| Public Pension Group | 167,440; 164,940[5] | $6.52 | $1,091,709 | $2.87 | $473,378 | **$1,565,087** |
| San Antonio | 105,450 | $6.52 | $687,534 | $2.87 | $302,642 | **$990,175** |

Accordingly, under the Recoverable Loss approach, Miami and Louisiana Sheriffs have the greatest recoverable loss, and therefore have the largest financial interest in this Action.

---

[5] The Public Pension Group sold 2,500 shares of Dentsply common stock between the April 19, 2022 disclosure and the May 9, 2022 disclosure.  *See* ECF No. 15-4.

### 2.    Miami And Louisiana Sheriffs Satisfy The Requirements Of Rule 23

In addition to having the largest financial interest in this Action, Miami and Louisiana Sheriffs readily satisfy the typicality and adequacy requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  On a motion to serve as Lead Plaintiff, a movant need only "make a preliminary showing that the adequacy and typicality requirements have been met." *Hom v. Vale, S.A.*, 2016 WL 880201, at \*6 (S.D.N.Y. Mar. 7, 2016).  As demonstrated in their opening brief, Miami and Louisiana clearly satisfy both requirements. *See* ECF No. 10 at 8-13.

Miami and Louisiana Sheriffs are sophisticated institutions that are committed to actively prosecuting this litigation, and have chosen counsel with extensive experience prosecuting securities class actions. *See id.* at 10-15 .  Miami's and Louisiana Sheriffs' claims are also typical of those of the Class as they are based on purchases of Dentsply common stock throughout the Class Period.  Miami and Louisiana Sheriffs submitted a joint declaration with their motion attesting that, based upon their significant investments and losses in Dentsply, each is "highly motivated to recover the substantial losses" incurred by the Class and are keenly focused on "maximiz[ing] the Class's recovery." ECF No. 11-3 ¶7. As a result, Miami and Louisiana Sheriffs have made a preliminary showing that they meet the typicality and adequacy prerequisites of Rule 23. *See Rosi v. Alcaris Therapeutics, Inc.*, 2019 WL 5778445, at \*3 (S.D.N.Y. Nov. 6, 2019) ("A party moving to be appointed lead plaintiff is only required to make a prima facie showing that he or she meets the Rule 23 prerequisites, and courts need only consider the typicality and adequacy requirements."); *Clark v. Barrick Gold Corp.*, 2013 WL 5300698, at \*2 (S.D.N.Y. Sept. 20, 2013) (same).

Miami and Louisiana Sheriffs also submitted evidence of their cohesiveness and ability to direct this litigation jointly and in the best interests in the Class. *See* ECF No. 11-3 ¶¶10-11.  As

10

set forth in their Joint Declaration, Miami and Louisiana Sheriffs have demonstrated that they fully appreciate the Lead Plaintiff's role under the PSLRA to supervise the prosecution of the Action in the best interests of the Class. *See id.* ¶¶2-6.  Indeed, Miami and Louisiana Sheriffs are committed to satisfying the fiduciary obligations of a Lead Plaintiff and to ensuring that this Action will be vigorously litigated in the best interest of the Class. *See id.* ¶17.

Further, there is no conflict of interest between Miami's and Louisiana Sheriffs' interests and those of other Class members.  To the contrary, the interests of Miami and Louisiana Sheriffs and other Class members are directly aligned because all suffered damages from their purchases of Dentsply stock at prices artificially inflated by Defendants' misconduct.  Miami and Louisiana Sheriffs have demonstrated their sufficient interest in this case and commitment to ensure the vigorous prosecution of this litigation, and have demonstrated their commitment to prosecuting this Action efficiently and in the best interest of the Class.  *See id.* ¶¶8, 12, 17.

Miami and Louisiana Sheriffs have an exemplary record of protecting the interests of its members and other shareholders, and have a demonstrated history of successfully prosecuting U.S. securities class action as lead plaintiffs.  Miami and Louisiana Sheriffs have a relationship that predates this motion by two decades, and served together as lead plaintiffs in two coordinated securities class actions arising from an accounting and revenue recognition fraud similar to the allegations in this Action, achieving a combined recovery of $163 million for investors and overseeing Bernstein Litowitz as co-lead counsel.  *See id.* ¶6; *see also Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at *7 (N.D. Ill. Oct. 8, 2019) (appointing group of two institutional investors who had previously worked together as co-lead plaintiffs).

**B.      The Competing Motions Should Be Denied**

Because Miami and Louisiana Sheriffs have met all of the requirements for appointment as Lead Plaintiff, the Court need not consider the competing motions. *See Faris v. Longtop Fin. Techs. Ltd.*, 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) ("[T]he inquiry can stop here, now that the Court has determined [which movant] has the largest financial interest and is otherwise typical and adequate.").

**C.      The Court Should Hold These Motions In Abeyance**

The PSLRA requires courts to consider motions for consolidation prior to the appointment of Lead Plaintiff.  Further, such a motion cannot be considered until after the issue of transfer is resolved.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii).  Therefore, Miami and Louisiana Sheriffs respectfully request that the Court hold the pending Lead Plaintiff motions in abeyance until after the Court decides Miami's and Louisiana Sheriffs' forthcoming transfer motion.

<u>**CONCLUSION**</u>

For the reasons discussed above and in their opening motion, Miami and Louisiana Sheriffs respectfully request that the Court appoint them as Lead Plaintiff and otherwise grant their motion.

Dated:  August 15, 2022                                          Respectfully submitted,

                                                                         BERNSTEIN LITOWITZ BERGER
                                                                            & GROSSMANN LLP

                                                                         */s/ Hannah Ross*
                                                                         Hannah Ross
                                                                         Avi Josefson
                                                                         Scott R. Foglietta
                                                                         1251 Avenue of the Americas
                                                                         New York, New York 10020
                                                                         Telephone: (212) 554-1400
                                                                         Facsimile: (212) 554-1444
                                                                         hannah@blbglaw.com
                                                                         avi@blbglaw.com
                                                                         scott.foglietta@blbglaw.com

*Counsel for Proposed Lead Plaintiff City of Miami General Employees' & Sanitation Employees' Retirement Trust and Louisiana Sheriffs' Pension & Relief Fund, and Proposed Lead Counsel for the Class*

13