# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| KIN-YIP CHUN, Individually and on Behalf of All Others Similarly Situated, | § § § | Civil Action No. 3:18-cv-01338-S |
| | § | <u>CLASS ACTION</u> |
| Plaintiff, | § § | |
| | § | |
| vs. | § § | |
| | § | |
| FLUOR CORPORATION, et al., | § § | |
| | § | |
| Defendants. | § § | |
| | § | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF WAYNE COUNTY'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**

1465833_1

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ..................................................................................................................1

II.    ARGUMENT........................................................................................................................3

       A.     Wayne County's Loss Significantly Trumps the Fairfield Funds' Loss and
              Accurately Represents the Relief Sought by the Class............................................3

       B.     The Fairfield Funds' Attempt to Induce the Court to Conduct a Beauty
              Contest Should Be Rejected....................................................................................7

III.   CONCLUSION....................................................................................................................10

1465833_1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Abouzied v. Applied Optoelectronics, Inc.*,
   2018 WL 539362 (S.D. Tex. Jan. 22, 2018) ...............................................................3

*Constance Sczesny Tr. v. KPMG LLP*,
   223 F.R.D. 319 (S.D.N.Y. 2004) ...............................................................................8

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ........................................................................................ *passim*

*Firefighter's Pension & Relief Fund of City of New Orleans v. Bulmahn*,
   2013 WL 4434365 (E.D. La. Aug. 15, 2013) ............................................................3

*Galmi v. Teva Pharm. Indus. Ltd.*,
   302 F. Supp. 3d 485 (D. Conn. 2017) ........................................................................6

*Hall v. Rent-A-Ctr., Inc.*,
   2017 WL 1017716 (E.D. Tex. Mar. 16, 2017) ..........................................................4

*Hill v. The Tribune Co.*,
   2005 WL 3299144 (N.D. Ill. Oct. 13, 2005) .............................................................4

*In re BP, PLC Sec. Litig.*,
   758 F. Supp. 2d 428 (S.D. Tex. 2010) .......................................................................3

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) .....................................................................................8

*In re Comdisco Sec. Litig.*,
   150 F. Supp. 2d 943 (N.D. Ill. 2001) ........................................................................4

*In re Enron Corp. Sec. Litig.*,
   206 F.R.D. 427 (S.D. Tex. 2002)...............................................................................9

*In re eSpeed, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. 2005) .................................................................................5

*In re K-V Pharm. Co. Sec. Litig.*,
   2012 WL 1570118 (E.D. Mo. May 3, 2012) .............................................................4

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
   2015 WL 8207331 (S.D. Tex. Dec. 7, 2015)......................................................3, 5, 8

1465833_1

**Page**

*In re SemGroup Energy Partners, L.P., Sec. Litig.*,
    2008 WL 4826318 (N.D. Okla. Oct. 27, 2008) ........................................................7

*J.H. Rutter Rex Mfg. Co., Inc. v. C.I.R.*,
    853 F.2d 1275 (5th Cir. 1988) ................................................................3

*Khunt v. Alibaba Grp. Holding Ltd.*,
    102 F. Supp. 3d 523 (S.D.N.Y. 2015)........................................................6

*Makhlouf v. Tailored Brands, Inc.*,
    2017 WL 1092311 (S.D. Tex. Mar. 23, 2017).........................................8, 9

*Marcus v. J.C. Penney Co., Inc.*,
    2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ......................................4

*Miller v. Glob. Geophysical Servs., Inc.*,
    2016 WL 6996031 (S.D. Tex. Jan. 14, 2016)........................................6

*Murphy v. JBS S.A.*,
    2017 WL 4480751 (E.D.N.Y. Oct. 6, 2017)..........................................8

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
    63 F. Supp. 3d 394 (D. Del. 2014)........................................................7

*Pelletier v. Endo Int'l PLC*,
    2018 WL 3035745 (E.D. Pa. June 19, 2018) ........................................6

*Pub. Emps. Ret. Sys. of Miss., Puerto Rico Teachers Ret. Sys. v. Amedisys, Inc.*,
    769 F.3d 313 (5th Cir. 2014) ............................................................6, 7

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005).......................................9

*Stein v. Match Grp., Inc.*,
    2016 WL 3194334 (N.D. Tex. June 9, 2016) .......................................8

*Strong v. AthroCare Corp.*,
    2008 WL 11334942 (W.D. Tex. Dec. 10, 2008) ........................... *passim*

*Thompson v. Shaw Grp., Inc.*,
    2004 WL 2988503 (E.D. La. Dec. 14, 2004)........................................3

1465833_1

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(3)(B)(iii)(I)(bb) ............................................................................1, 3, 6
   §78u-4(a)(3)(B)(iii)(II) .......................................................................................7

**LEGISLATIVE HISTORY**

S. Rep. No. 104-98 (1995), \
   *reprinted in* 1995 U.S.C.C.A.N. 679 ................................................................9

- v -

## I.      INTRODUCTION

After two rounds of briefing, it is not disputed that Wayne County Employees' Retirement System is the presumptive lead plaintiff by virtue of the fact that it suffered the greatest loss calculated pursuant to the first in, first out (or FIFO) accounting method, its status as an institutional investor with prior experience serving as lead plaintiff, and its selection of highly qualified and experienced counsel in this Court.  In their effort to rebut that presumption, the Town of Fairfield Employees' Retirement Plan and Town of Fairfield Police and Firemen's Retirement Plan (collectively, the "Fairfield Funds") contend that FIFO is disfavored and LIFO (or last in, first out) should be used instead, which conveniently allows the Fairfield Funds to claim they possess the largest financial interest in the relief sought by the class, albeit by a mere $1,302 – ***a 1% difference***. *See* ECF No. 21 at 2.[1]  Building on that flawed premise, the Fairfield Funds further contend a "red flag" warns of a "shifting loyalty" concern because Wayne County – a sophisticated, institutional investor – has, in other unrelated cases, retained law firms other than Robbins Geller to prosecute securities claims in those cases, and Robbins Geller has been retained by clients other than Wayne County in those same unrelated cases.  *See* ECF No. 21 at 3.  Neither contention has any merit.

Even assuming a *de minimis* loss difference under one of two accepted accounting methods is outcome determinative (particularly when another method yields a 75% loss differential), the Fairfield Funds' preference for the LIFO calculation is flawed as it misrepresents their true financial interest and is inconsistent with the statutory directive that courts are to consider the "largest financial interest in the relief sought by the class."  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb). Specifically, the Fairfield Funds' LIFO calculation overstates their financial interest by 90% because the Fairfield Funds sold most of their Fluor shares 18 months before defendants' wrongdoing began

---

[1]     By contrast, Wayne County's FIFO loss ($214,183) is 75% greater than the Fairfield Funds' FIFO loss ($122,643).  *See* ECF No. 20 at 1.

1465833_1

to be revealed to the market, and thus incurred losses that were not caused by defendants' alleged wrongdoing. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("[If] the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). As such, the LIFO calculation the Fairfield Funds ask the Court to use ignores the very case law they rely upon that directs courts to consider movants' recoverable losses, *i.e.*, those proximately caused by the fraud. By contrast, Wayne County's FIFO calculation perfectly mirrors its financial interest in the relief sought by the class because it ignores in-and-out transactions before the alleged disclosure of the wrongdoing, and thus complies with *Dura*. *See infra* §II.A. Thus, in this particular case, FIFO more accurately represents the movants' financial interest in the relief sought by the putative class.

The Fairfield Funds' "shifting loyalties" argument fares no better. Not only is it poorly articulated, leaving the Court and counsel to guess as to what the purported conflict is, the contention is devoid of any legal support and defies basic logic. To counsel's knowledge, the Fairfield Funds' argument has never been made, let alone succeeded, in any lead plaintiff or class certification proceedings since the Private Securities Litigation Reform Act of 1995 ("PSLRA") was enacted more than 20 years ago, if ever. Moreover, an institutional investor that remains independent of counsel and selects counsel on a case-by-case basis, as Wayne County does, is perfectly adequate because this arm's-length relationship with multiple counsel furthers the PSLRA's goal of client-driven litigation. Consequently, the Fairfield Funds' "red flag" is a red herring that does not even begin to rise to the level of "exacting proof" required to rebut the statutory presumption in Wayne County's favor.

Ultimately, Wayne County remains the movant that is most capable of adequately representing the interests of the putative class members. Its motion should be granted.

1465833_1

## II.    ARGUMENT

### A.    Wayne County's Loss Significantly Trumps the Fairfield Funds' Loss and Accurately Represents the Relief Sought by the Class

While the PSLRA does not define the "largest financial interest in the relief sought by the class" (15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb)), Wayne County and the Fairfield Funds agree that "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *Abouzied v. Applied Optoelectronics, Inc.*, 2018 WL 539362, at *3 (S.D. Tex. Jan. 22, 2018).[2]  In this regard, it is important to recognize that district courts within the Fifth Circuit concur that "'FIFO, or "first in, first out," **and** LIFO, or "last in, first out," are **both** frequently employed methodologies for the purposes of loss calculation' in this context." *In re BP, PLC Sec. Litig*., 758 F. Supp. 2d 428, 433 (S.D. Tex. 2010).[3]  And, contrary to the Fairfield Funds' contention, FIFO and LIFO have been equally adopted in contested motions before district courts in this Circuit.  *See Thompson*, 2004 WL 2988503, at *4-*5 (adopting FIFO as the "status quo" method at the lead plaintiff stage); *Strong*, 2008 WL 11334942, at *6 (adopting LIFO based on the rationale that "'FIFO may overstate actual losses suffered by stockholders, whereas LIFO takes into account these gains'").[4]

---

[2]    Unless otherwise noted, all emphasis is added and citations are omitted.

[3]    *See also In re Plains All Am. Pipeline, L.P. Sec. Litig*., 2015 WL 8207331, at *2 (S.D. Tex. Dec. 7, 2015) (recognizing FIFO and LIFO as competing loss methods); *Firefighter's Pension & Relief Fund of City of New Orleans v. Bulmahn*, 2013 WL 4434365, at *3 (E.D. La. Aug. 15, 2013) (same); *Strong v. AthroCare Corp*., 2008 WL 11334942, at *5 (W.D. Tex. Dec. 10, 2008) (same); *Thompson v. Shaw Grp., Inc*., 2004 WL 2988503, at *4 (E.D. La. Dec. 14, 2004) (same).

[4]    The Fairfield Funds' assertion that "Fifth Circuit courts . . . have endorsed LIFO methodology" (ECF No. 21 at 5) is not entirely accurate as the Fifth Circuit has neither addressed nor endorsed the LIFO methodology in this context.  *But see J.H. Rutter Rex Mfg. Co., Inc. v. C.I.R*., 853 F.2d 1275, 1288 n.18 (5th Cir. 1988) ("It should be noted that Rutter Rex accounted for its inventories on a LIFO basis for purposes of its tax returns and on its financial statements. Both parties, however, agreed that Rutter Rex's LIFO inventory should be converted to FIFO inventory for purposes of calculating the inventory cycle because the FIFO method of inventory valuation provides a more accurate inventory valuation for purposes of determining corporate liquidity than the LIFO method.").  Nor do the cases the Fairfield Funds rely on actually "reject FIFO." ECF No. 21 at 2 (citing *Marcus v. J.C. Penney Co., Inc*., 2014 WL 11394911, at *4-*5 (E.D. Tex. Feb. 28, 2014) (considering *Dura* and LIFO losses before ultimately finding that "regardless of which method is

- 3 -

1465833_1

While the parties agree Wayne County's FIFO loss is 75% larger than the Fairfield Funds'

FIFO loss, the Fairfield Funds' opposition to Wayne County's motion hinges on the fact that the

Fairfield Funds' LIFO loss is barely 1% larger than Wayne County's LIFO loss:

| Movant | FIFO loss | LIFO loss |
|---|---|---|
| Wayne County | $214,183 | $121,341 |
| Fairfield Funds | $122,643 | $122,643 |
| Difference: | $91,540 or 75% larger | +$1,302 or 1% larger |

Such a *de minimus* difference under one of two acceptable methodologies is hardly outcome

determinative.[5]  This is particularly so where, as here, the Fairfield Funds' preferred LIFO estimate

artificially **inflates** the Fairfield Funds' compensable loss estimate by 90% because their calculation

improperly includes sales of Fluor shares **18 months before** defendants' alleged wrongdoing was

ever disclosed to the market – precisely the opposite rationale given by courts that have adopted

LIFO over FIFO, including those cited by the Fairfield Funds.  *See* ECF No. 21 at 2 (quoting *Strong*,

2008 WL 11334942, at *6 (adopting LIFO method as "'FIFO may overstate actual losses suffered by

stockholders, whereas LIFO takes into account these gains'" resulting from class period sales at

inflated prices)); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945 (N.D. Ill. 2001) (finding

movant's "true losses from the alleged securities fraud" were inflated under a modified FIFO

---

used, the evidence establishes that [the same movant] has the largest financial interest"); *Hall v. Rent-A-Ctr., Inc.*, 2017 WL 1017716, at *2 (E.D. Tex. Mar. 16, 2017) (unopposed motion where loss calculation was uncontested); *In re K-V Pharm. Co. Sec. Litig.*, 2012 WL 1570118, at *4 (E.D. Mo. May 3, 2012) (finding "the *Dura* analysis in calculating financial interest to be persuasive")).

[5]    Given these facts, it is curious that Mr. French, who filed a non-opposition to the competing motions, expressly stated that it appeared the Fairfield Funds "has the largest financial interest." ECF No. 19 at 1.  A similar turn of events involving both Mr. French's counsel and the Fairfield Funds' counsel prompted another court to order "disclos[ure of] whether there are any agreements or understandings between or among the plaintiffs who withdrew or announced non-opposition" to the movant with the largest claimed loss.  *See DeSmet v. Intercept Pharm. Grp., Inc.*, No. 1:17-cv-07371-LAK (S.D.N.Y.), ECF Nos. 25 (Order), 31 (disclosing three law firm fee arrangement between competing lead counsel firms), 32 (requesting leave to respond to disclosure), 35 (Order granting leave to respond), and 38 (opposition to three law firm arrangement).

calculation adopted by movant); *Hill v. The Tribune Co.*, 2005 WL 3299144, at *2 (N.D. Ill. Oct. 13, 2005) (finding movant's claimed losses were inflated by FIFO in light of transactions and corrective disclosures alleged); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005) (same).

In adopting the LIFO method of accounting to determine largest financial interest, the *Strong* court was persuaded by the rationale given by other courts: "'[u]nlike FIFO, **LIFO offsets gains** accrued to the plaintiffs due to the inflation of stock prices during the class period. In addition, **LIFO excludes "in-and-out" transactions** during the class period.'" 2008 WL 11334942, at *6. Yet, these goals – offsetting gains and excluding in-and-out transactions – would be wholly undermined if LIFO is used here because **all** of the Fairfield Funds' in-and-out transactions (*i.e.*, sales before an alleged disclosure of wrongdoing) are actually **included** in its loss estimate in contravention of *Dura*. *See* ECF No. 11-3 (improperly including losses on 10,580 shares sold between December 22, 2015 and January 29, 2016, **years** before the first alleged disclosure on August 3, 2017).[6] This failure of LIFO to exclude the in-and-out transactions resulted in the Fairfield Funds including $109,619 in "losses" that were incurred before any corrective disclosure:

| Dates | Event |
|---|---|
| 4/22/2015 - 8/12/2015 | Fairfield Funds purchase 10,580 Fluor shares. *See* ECF No. 11-2 at 3-4. |
| 12/22/2015 - 1/29/2016 | Fairfield Funds sell all 10,580 Fluor shares at a $109,619 net loss, **before** any alleged corrective disclosure. *See id.* at 4-5. |

| | |
|---|---|
| *8/3/2017* | *First corrective disclosure.  ECF No. 1 at ¶34.  Fairfield Funds are unaffected by this corrective disclosure, as they held no Fluor shares on 8/3/2017.* |

| | |
|---|---|
| 11/16/2017- 1/8/2018 | Fairfield Funds purchase 10,714 Fluor shares. *See* ECF 11-2 at 3-4. |

| | |
|---|---|
| *5/3/2018* | *Final corrective disclosure.  See ECF No. 1 at ¶41.  Fairfield Funds suffer $12,851 loss as a result of this corrective disclosure.* |

---

[6]   The Fairfield Funds acknowledge there are two alleged disclosures of defendants' alleged wrongdoing in this case on August 3, 2017, and May 4, 2018. *See* ECF No. 10 at 1.

Consequently, over 90% of the Fairfield Funds' claimed LIFO losses are simply not *Dura*-compliant, and do not accurately represent the Fairfield Funds' financial interest in the relief sought by the class as the PSLRA requires.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb); *Pub. Emps. Ret. Sys. of Miss., Puerto Rico Teachers Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 320 (5th Cir. 2014) ("To establish proximate causation, the plaintiff must allege that when the 'relevant truth' about the fraud began to leak out or otherwise make its way into the marketplace, it caused the price of the stock to depreciate and, thereby, proximately caused the plaintiff's economic harm."); *Miller v. Glob. Geophysical Servs., Inc.,* 2016 WL 6996031, at *1 (S.D. Tex. Jan. 14, 2016) ("[p]ersons who have no compensable damages [are] those who sold prior to a corrective disclosure").[7]  Thus, while it is true that in some cases "'LIFO *excludes* "in-and-out" transactions'" and "'can disregard losses that are not causally related to the misstatement claims,'" that is not so in ***this*** case where the Fairfield Funds' LIFO calculation ***includes*** the Fairfield Funds' "in-and-out" transactions before any corrective disclosure ***and includes*** $109,619 in losses that are not causally related to the claims. *Strong*, 2008 WL 11334942, at *6.  Excluding the Fairfield Funds' in-and-out transactions before an alleged disclosure yields a $12,851 recoverable loss – dramatically less than Wayne County's recoverable loss (which is notably identical to its claimed FIFO loss):

| Movant | Claimed Loss | FIFO Loss | LIFO Loss | Recoverable Loss |
|---|---|---|---|---|
| Wayne County | $214,183 | $214,183 | $121,348 | $214,183 |
| Fairfield Funds | $122,643 | $122,643 | $122,643 | $12,852 |

---

[7]     *See also Pelletier v. Endo Int'l PLC*, 2018 WL 3035745, at *2 (E.D. Pa. June 19, 2018) ("What the plaintiffs lost is what they may recover. Including losses that were incurred before any disclosure could not have been caused by any disclosures and are not recoverable. Thus, those shares are not included in the 'largest financial interest' calculus."); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) ("If a loss is not *Dura* eligible then it is not redressable through the putative class action the [movants] seek to lead. If a lead plaintiff movant cannot recover a given loss in the action he seeks to lead, the loss cannot logically contribute to his financial stake in that action."); *Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 500 (D. Conn. 2017) (reducing claimed losses to exclude losses not plausibly tied to any partial disclosure).

1465833_1

Unlike the Fairfield Funds, Wayne County's FIFO loss estimate does not include **any** in-and-out transactions before the alleged disclosures. *See* ECF No. 17-3 (identifying two sales on February 5, 2018 and May 23, 2018, after either or both disclosures). As such, Wayne County's FIFO estimate is perfectly aligned with the *Strong* rationale, complies with both *Dura* and the PSLRA, and accurately represents Wayne County's financial interest in the relief sought by the putative class. *See Strong*, 2008 WL 11334942, at *6. The Fairfield Funds' LIFO estimate does not.

In sum, the method the Court should employ to assess the movants' losses in this case should not simply be a choice between which acronym is more popular (FIFO vs. LIFO), but substantively reflect the stated rationale – "'tak[ing] into account gains and . . . disregard[ing] losses that are not causally related to the misstatement claims'" – that best represents the "'financial interest in the relief sought by the class'" as the PSLRA requires. *Strong* 2008 WL 11334942, at *4,*6; *Dura*, 544 U.S. at 342; *Amedisys*, 769 F.3d at 320. Here, that method is FIFO, as the Fairfield Funds' loss chart plainly evidences. *See* ECF No. 11-3.

Consequently, Wayne County has the largest financial interest in this case.

### B.    The Fairfield Funds' Attempt to Induce the Court to Conduct a Beauty Contest Should Be Rejected

Pursuant to the PSLRA, Wayne County's status as the presumptive lead plaintiff can be rebutted "only upon **proof** by a member of the purported plaintiff class that the presumptively most adequate plaintiff" either "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). "Mere innuendo and inferences will not suffice to support allegations of atypicality, conflict of interest or unique defenses." *In re SemGroup Energy Partners, L.P., Sec. Litig.*, 2008 WL 4826318, at *2 (N.D. Okla. Oct. 27, 2008).[8] Rather, "'**exacting proof**' is

---

[8]    *See also OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 403 (D. Del. 2014) ("The [competing movant] must produce more than speculation to rebut the presumption. . . .

needed to rebut the presumption." *Murphy v. JBS S.A.*, 2017 WL 4480751, at \*5 (E.D.N.Y. Oct. 6, 2017); *Stein v. Match Grp., Inc.*, 2016 WL 3194334, at \*4 (N.D. Tex. June 9, 2016) ("""There is, of course, a marked difference between affirmatively demonstrating that [the presumptive lead plaintiff] is not an adequate representative or is subject to unique defenses and simply claiming that [the presumptive lead plaintiff] might be subject to such arguments in the future.""").

Rather than offer proof of any kind, the Fairfield Funds primarily contend they (and their counsel) are "*more* typical and adequate" than Wayne County and its counsel, despite the fact that the Fairfield Funds have never served as lead plaintiff in a securities case before.  ECF No. 21 at 4, 6.  Yet, the PSLRA does not permit a beauty contest: "'[t]hat the district court believes another plaintiff may be "more typical" or "more adequate" is of no consequence.'" *Plains All Am. Pipeline*, 2015 WL 8207331, at \*5 (quoting *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002)).  "'So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.'" *Id.* (rejecting movant's contention that it was "the 'most' adequate and typical lead plaintiff").

Even if the PSLRA permitted a round-robin analysis (and it does not), the Fairfield Funds' innuendo that an unspecified conflict of interest may exist between Wayne County and Robbins Geller hardly rises to the level of proof the statute requires to rebut the presumption.  *See Makhlouf v. Tailored Brands, Inc.*, 2017 WL 1092311, at \*7 (S.D. Tex. Mar. 23, 2017) (recognizing that courts decline to disqualify the presumptive lead plaintiff with "baseless speculations as proof of inadequacy").  While not entirely clear, it appears that the Fairfield Funds fault Wayne County for

---

Mere speculation about a unique defense does not meet this standard."); *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are . . . insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the presumptively most adequate plaintiff] would be uniquely subject.").

1465833_1

retaining more than one law firm for securities litigation, and likewise fault Robbins Geller for representing other clients in cases where – unbeknownst to Robbins Geller – Wayne County files a competing lead plaintiff motion while represented by another law firm. ECF No. 21 at 8.[9] Yet, in reciting these innocuous facts, the Fairfield Funds fail to articulate what the conflict of interest is, and fail to cite even a single case where any court has found a so-called "lack of fidelity" between a party and a law firm in different litigation – where the law firm was not even retained by that party in that different litigation – to be concerning, much less disqualifying. *Id*.

Far from amounting to a conflict of interest, Wayne County's clear independence from Robbins Geller (*i.e.*, its "lack of fidelity") actually evidences its adequacy and ability to oversee the litigation as Congress intended. *See* S. Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (explaining that the PSLRA "is intended to permit the plaintiff to choose counsel rather than have counsel choose the plaintiff"). The notion that a client must select and retain the same law firm in every case it ever brings, lest it be branded "disloyal," finds no support in the law, and the Fairfield Funds tellingly cited none. *See Makhlouf*, 2017 WL 1092311, at *7 n.4 ("The failure to cite case law in support of one's argument 'is insufficient to rebut the presumption' to which a Lead Plaintiff is entitled under the PSLRA.").

Wayne County is the exact type of lead plaintiff envisioned by the PSLRA: "a single, organized coordinated organization represented by a competent and resourceful law firm." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 458 (S.D. Tex. 2002). Lead counsel and local counsel have been recognized by Judges of this Court as "two of the nations' preeminent plaintiffs' class action

---

[9]    To be clear, Robbins Geller has never filed a competing lead plaintiff motion against Wayne County or opposed Wayne County's lead plaintiff candidacy while also retained by Wayne County in the same litigation, nor do the Fairfield Funds suggest anything of the sort has ever transpired. *Id.* at 6-7. Similarly, while the Fairfield Funds oddly reference "the PSLRA's anti-professional plaintiff provisions," the Fairfield Funds do not contend – nor can they – that Wayne County has triggered that provision. *See* ECF No. 21 at 3.

- 9 -

law firms." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *14 (N.D. Tex. Nov. 8, 2005) (noting that the "lawyers from those firms responsible for the prosecution of this case have taken leading roles in numerous important actions on behalf of investors asserting claims of fraud").  In approving the "largest cash settlement in a securities class action ever in this District," Judge Kinkeade also found that the lawyers with Robbins Geller and Kendall Law Group "amply demonstrated their competence through their representation of Lead Plaintiffs." *Id*.  As such, Wayne County's decision to retain Robbins Geller in this case was entirely rational and well-reasoned.

Wayne County and its counsel are entirely adequate, and there is no proof to the contrary.

## III.   CONCLUSION

Wayne County is entitled to presumptive lead plaintiff status because it has the largest financial interest in this litigation.  The Fairfield Funds have not rebutted that presumption with exacting proof.  As such, Wayne County's motion (ECF No. 15) should be granted.

DATED:  August 28, 2018

Respectfully submitted,

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
JAMIE J. McKEY (Texas Bar No. 24045262)

*s/ Joe Kendall*
JOE KENDALL

3811 Turtle Creek Blvd., Suite 1450
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com
jmckey@kendalllawgroup.com

Local Counsel

- 10 -

1465833_1

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
malbert@rgrdlaw.com

[Proposed] Lead Counsel for Plaintiff

VANOVERBEKE, MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel for Plaintiff

- 11 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF system on this 27th day of August, 2018, to all counsel of record.

*s/ Joe Kendall*
Joe Kendall

1465833_1