UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAN ANTONIO FIRE AND POLICE PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DENSTPLY SIRONA INC., DONALD M. CASEY, JR., and JORGE GOMEZ,<br><br>Defendants. | Case No. 1:22-cv-06339-JPC-SLC<br><br>CLASS ACTION |

MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION
OF SAN ANTONIO FIRE AND POLICE PENSION FUND FOR APPOINTMENT AS
LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL,
AND IN OPPOSITION TO THE COMPETING MOTIONS

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT........................................................................................................................ 3

    A.    The Purported Groups are improperly formed and cannot aggregate their financial interests to be appointed Lead Plaintiff. ................................................................... 3

    B.    San Antonio FPPF has the largest financial interest. ....................................... 13

    C.    San Antonio FPPF satisfies the relevant requirements of Rule 23(a)............................ 16

CONCLUSION.................................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Africa v. Jianpu Tech. Inc*,
2021 WL 1999467 (S.D.N.Y. May 19, 2021) ........................................................ 13

*Chauan v. Intercept Pharms.*,
2021 WL 235890 (S.D.N.Y. Jan 25, 2021) ................................................... 9, 12, 13

*City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Group, Inc.*,
269 F.R.D. 291 (S.D.N.Y. 2010) ........................................................................... 11

*Denny v. Canaan, Inc.*,
2021 WL 5847647 (S.D.N.Y. Dec. 9, 2021) ........................................................... 2

*Elstein v. Net1 UEPS Techs, Inc.*,
2014 WL 3687277 (S.D.N.Y. July 23, 2014) ......................................................... 5

*Galmi v. Teva Pharms. Indust. Ltd.*,
302 F. Supp. 3d 485 (D. Conn. 2017) ...................................................... 6, 7, 10, 13

*Hevesi v. Citigroup Inc.*,
366 F. 3d 70 (2d Cir. 2004) .................................................................................... 1

*Husson v. Garrett Motion Inc.*,
2021 WL 211541 (S.D.N.Y. Jan. 21, 2021) ........................................................... 3

*In re CMED Sec. Litig.*,
2012 WL 1118302 (S.D.N.Y. Apr. 2, 2012) ........................................................... 6

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) .................................................................. 6, 8, 12

*In re Glauser v. EVCI Center Colleges Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) .................................................................... 13, 16

*In re Initial Pub. Offering Sec. Litig.*,
214 F.R.D. 117 (S.D.N.Y. 2002) ........................................................................... 1

*In re Petrobras Sec. Litig,*
104 F. Supp. 3d. 618 (S.D.N.Y. 2015) ...................................................... 5, 6, 7, 11

*In re Pfizer Inc., Sec. Litig.*,
233 F.R.D. 334 (S.D.N.Y. 2005) ........................................................................... 7

*In re Razorfish, Inc. Sec. Litig.*,
143 F. Supp. 2d 304 (S.D.N.Y. 2001) .................................................................... 3

*Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM*,
2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015) ...................................................... 4, 5, 7, 10

*Khunt v. Alibaba Grp. Holding Ltd.,*
102 F. Supp. 3d 523 (S.D.N.Y. 2015) ............................................................ 6, 7, 9, 12

*Kniffin v. Micron Tech., Inc.,*
379 F. Supp. 3d 259 (S.D.N.Y. Apr. 30, 2019) ......................................................... 12

*Phuong Ho v. NQ Mobile, Inc.,*
2014 WL 1389636 (S.D.N.Y. Apr. 9, 2014) ............................................................. 10

*Pipefitters Local No. 636 Defined Ben. Plan v. Bank of America Corp.,*
275 F.R.D. 187 (S.D.N.Y. 2011) ........................................................................... 10

*Stitt v. On Deck Cap., Inc.,*
2016 WL 889535 (S.D.N.Y. Feb. 17, 2016) ............................................................. 17

*Varghese v. China Shenghuo Pharm. Holdings, Inc.,*
589 F. Supp. 2d 388 (S.D.N.Y. 2008) ............................................................. 4, 7, 16

*Williams v. Block.One*,
2020 WL 4505569 (S.D.N.Y. Aug. 4, 2020) ............................................................ 11

**Statutes**

15 U.S.C. § 78u.................................................................................................. 1, 13, 16

**Other Authorities**

1995 U.S.C.C.A.N. 679 (1995).................................................................................... 1

1995 U.S.C.C.A.N. 730 (1995)................................................................................... 17

H.R. Conf. Rep. No. 104-369 (1995)........................................................................ 17

S. Rep. No. 104-98 (1995) ........................................................................................... 1

**Rules**

Fed. R. Civ. P. 23 ............................................................................................ 1, 16, 17

## PRELIMINARY STATEMENT

San Antonio FPPF should be appointed Lead Plaintiff because it is the only movant to satisfy each of the PSLRA's requirements.[1]  It filed a timely motion, is the single investor with the largest claimed financial interest, and made a preliminary showing of adequacy and typicality under Rule 23(a) of the Federal Rules of Civil Procedure.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

In addition to San Antonio FPPF, two purported "groups" of investors filed motions seeking Lead Plaintiff appointment: (1) the "Public Pension Funds," comprised of City of Birmingham Retirement and Relief System ("Birmingham"), El Paso Firemen & Policemen's Pension Fund ("El Paso"), and Wayne County Employees' Retirement System ("Wayne County"); and (2) City of Miami General Employees' & Sanitation Employees' Retirement Trust ("Miami") and Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs").

None of the investors within these purported "groups" has a financial interest that approaches San Antonio FPPF's.  And the case law from courts in this District makes clear that it is improper to combine a group of investors with no real connection to one another to amass the largest financial interest for purposes of a Lead Plaintiff motion.  Instead, courts have "rejected repeatedly" attempts to "cobble together a lead plaintiff group" because doing so "undermines the purpose of the PSLRA."  *Hevesi v. Citigroup Inc.*, 366 F. 3d 70, 82 n.13 (2d Cir. 2004) (quoting *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002)). This is because Congress intended the PSLRA "to empower investors so that they—not their lawyers—exercise primary control over private securities litigation."  *Hevesi*, 366 F.3d at 82 n.13 quoting S. Rep. No. 104-98, at *4 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 683 (1995).

---

[1] Capitalized terms are defined in San Antonio FPPF's initial brief (*see* ECF No. 5), and all internal quotations are omitted unless otherwise indicated.

The circumstances of the groups' formation make it obvious that their counsel used aggregation to obtain appointment.  The Public Pension Funds claim no real connection except the law firm that put them together and apparently never spoke to each other regarding this case until immediately before the Lead Plaintiff deadline.  *See* ECF No. 15-5.  The Public Pension Funds do not sufficiently explain how they would prosecute this case together in a cohesive manner.  *Id.* Nor do they provide a coherent reason why they are seeking joint appointment as opposed to individually, nor sufficiently explain how the group is appropriate under the PSLRA or would best serve the class.  *Id.*  Courts have rejected such "groups" because they simply result in increased costs and inefficiencies.  The Public Pension Funds have not made a sufficient showing to the contrary and are not an eligible Lead Plaintiff candidate.

The grouping of Miami and Louisiana Sheriffs is equally improper.  Miami filed a substantively identical securities class action against Dentsply in the Southern District of Ohio on June 2, 2022 (Bleichmar Decl. Ex. A), with no mention of Louisiana Sheriffs or any other potential group candidate.  Miami and Louisiana Sheriffs do not adequately articulate why they were grafted together.  This is particularly concerning given that Miami had already filed a case in its own name, adequately and without any assistance from Louisiana Sheriffs.  Reaching back into history, Miami and Louisiana Sheriffs claim that their combination in this case flows from their participation in a coordinated securities class action ***twenty years ago***, despite claiming no other meaningful connection since that time, besides sharing the same law firm.  *See* ECF No. 11-3 ¶6.

This Court has never been presented with this scenario.  While the Court has appointed groups of investors as Lead Plaintiff, it has ***only*** done so when the groups consisted of members that share close pre-litigation economic or familial ties and were not put together by law firms. *See Denny v. Canaan, Inc.*, 2021 WL 5847647, at *5 (S.D.N.Y. Dec. 9, 2021) (Cronan, J.)

2

(appointing husband and wife as lead plaintiff) (Bleichmar Decl. Ex. B ¶1); *Husson v. Garrett Motion Inc.*, 2021 WL 211541, at *1 (S.D.N.Y. Jan. 21, 2021) (Cronan, J.) ("grant[ing] The Gabelli Asset Fund and related entities' motion to be appointed lead plaintiff").

Law firms produced these groups in an apparent attempt to unseat any single movant with the largest financial interest. "[T]here is nothing to suggest that they will collectively ride herd on counsel anywhere as well as could a single sophisticated entity" such as San Antonio FPPF. *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001). More importantly, the Court is essentially left to choose between appointing as lead plaintiff the single investor with the largest eligible financial interest or a law firm. San Antonio FPPF is the movant with the largest eligible financial interest and respectfully requests that the groups' motions be denied and that its motion be granted.

## ARGUMENT

**A.    The Purported Groups are improperly formed and cannot aggregate their financial interests to be appointed Lead Plaintiff.**

San Antonio FPPF has the largest financial interest of any single movant. The Public Pension Funds and Miami and Louisiana Sheriffs are only able to claim a financial interest larger than San Antonio FPPF if the losses of multiple different investors are aggregated.

| Movant | Claimed Loss |
|---|---|
| **San Antonio FPPF** | $2,405,615 (ECF No. 7-4 at 2-3) |
| **Birmingham** (Public Pension Funds member) | $1,873,452 (ECF No. 15-4 at 1) |
| **Miami** | $1,786,296 (ECF No. 11-2 at 2) |
| **Louisiana Sheriffs** | $1,779,123 (ECF No. 11-2 at 4) |
| **El Paso** (Public Pension Funds member) | $1,155,416 (ECF No. 15-4 at 1) |
| **Wayne County** (Public Pension Funds member) | $781,865 (ECF No. 15-4 at 1-2) |

While the PSLRA allows for the appointment of groups, such groups must "proffer an evidentiary showing" that the "grouping would best serve the class" "before its members will be designated as presumptive lead plaintiffs." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*,

3

589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008).  Courts frequently require evidence showing that the "group will be able to function cohesively" and "effectively manage the litigation apart from their lawyers."  *Id.*  Factors courts consider in this assessment include: (1) "the existence of a pre-litigation relationship between group members;" (2) "whether the members chose outside counsel and not vice versa;" (3) "plans for cooperation;" (4) the "involvement of the group members in the litigation thus far;" and (5) "the sophistication of its members."  *Id.*  "[C]ourts in this District do not hesitate to deny a proposed group's motion for lead-plaintiff status if the movants have not provided a sufficient evidentiary basis for aggregation or if the court otherwise is persuaded that the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action."  *Id.*

**Factor 1: No Pre-Litigation Relationship.**  The groups here consist of unrelated entities that have no meaningful pre-litigation relationship.  In this District, courts have generally limited the definition of a "pre-litigation relationship" to situations where the members of a group have close knit economic or familial ties.  *See Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM*, 2015 WL 7018024, at *3-4 (S.D.N.Y. Nov. 12, 2015) (no pre-litigation relationship when two institutional investors "lack economic and familial ties").

Here, neither of the groups claim to have close economic or familial ties.  The Public Pension Funds do not claim to have any pre-existing relationship at all, aside from unexplained "pre-existing contacts."  *See* ECF No. 15-5 ¶5.  This conclusory assertion is clearly insufficient. *See FXCM*, 2015 WL 7018024, at *3 (two institutional investors failed to "proffer sufficient evidence to establish that they have a pre-existing relationship" given "conclusory statements that [they] are familiar with each other").

As for Miami and Louisiana Sheriffs, the best they can do is reach 20 years into the past to cite a pair of cases they litigated together, without recounting a single intervening contact since that time that would be sufficient to constitute a pre-litigation relationship under the law of this District. *See* ECF No. 11-3 ¶6. Not surprisingly, there is no evidence submitted that the signatory for Miami's PSLRA certification, who would ostensibly be overseeing this matter, participated in that 20-year-old case or joined the institution anywhere near in time to this dated contact, which is far from close "economic and familial ties." *FXCM*, 2015 WL 7018024, at *3 ("'common membership in certain professional organizations' is simply insufficient to establish a meaningful pre-existing relationship for the purposes of loss aggregation").

Courts have held that the failure to demonstrate a significant pre-litigation relationship further heightens the burden on the purported group movant with respect to the other factors. *See Elstein v. Net1 UEPS Techs, Inc.*, 2014 WL 3687277, at *4 (S.D.N.Y. July 23, 2014) ("courts have typically required that plaintiffs lacking such a relationship present a more compelling showing as to their fitness for the position").

**Factor 2: Counsel Aggregated the Groups.** The groups' own papers and conduct in the litigation to-date demonstrate that their lawyers created the groups. The members of the groups have no real connection besides the law firms that represent them, are based in different states across the country, apparently did not speak to each other regarding this case until immediately before the deadline to seek Lead Plaintiff appointment, and provide no coherent reason as to why they seek joint appointment as opposed to individually. *See In re Petrobras Sec. Litig,* 104 F. Supp. 3d. 618, 622-23 (S.D.N.Y. 2015) (rejecting group of three state pension funds when "there is no obvious affinity between the states of Ohio, Idaho, and Hawaii . . . [and was] clearly assembled for the sole purpose of participating in this litigation"). Indeed, the Court has reason to

be "particularly skeptical of the proposed amalgamation[s], because this is not the situation where there is a pre-existing relationship or where the incurred losses of the separate institutional investors [in the groups] individually exceed the losses of any other." *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 119 (E.D.N.Y. 2012).

Tellingly, the Public Pension Funds' Joint Declaration is silent as to how the group was formed. *See* ECF No. 15-5. The "lack of an explanation for how the members were introduced to each other indicates that the group has been arranged by counsel" and counsels against appointment. *Galmi v. Teva Pharms. Indust. Ltd.*, 302 F. Supp. 3d 485, 494 (D. Conn. 2017); *see also Khunt v. Alibaba Grp. Holding Ltd.,* 102 F. Supp. 3d 523, 533 (S.D.N.Y. 2015) (rejecting application of movant group when "there is no evidence that the members chose counsel, rather than vice versa"). Rather than explain what (if any) ties the Public Pension Funds have to each other, their Joint Declaration repeatedly points to their "prior experience . . . with Robbins Geller as [their] counsel." ECF No. 15-5 ¶¶2-4. But rather than bolster their motion, that "the only common thread between the three companies is their longtime connection to a law firm" seriously undermines their bid for appointment. *Petrobras*, 104 F. Supp. 3d at 622 (rejecting application of three institutional investors).

Likewise, Miami and Louisiana Sheriffs' Joint Declaration suggests that their grouping was a product of counsel. Paragraph 9 of the Declaration states that it was only "[a]fter . . . consulting with their counsel Bernstein Litowitz, [that] Miami and Louisiana Sheriffs approved the filing of a motion for Lead Plaintiff appointment." ECF No. 11-3 ¶9. Courts have found nearly identical language to be disqualifying. *See In re CMED Sec. Litig.*, 2012 WL 1118302, at *5 (S.D.N.Y. Apr. 2, 2012) (statement in declaration that group of three members decided to proceed together "*[i]n consultation with our counsel*" was evidence that group was "[ineligible] for

6

appointment as a lead plaintiff group") (emphasis in original); *see also FXCM*, 2015 WL 7018024, at *4 (group of two institutional investors ineligible for appointment when "their Joint Declaration . . . acknowledge[d] that only after conferring with one another and with counsel did the two funds decide to jointly file a motion for appointment as lead plaintiff").

And the most reasonable inference from the available information is that the law firms cobbled the groups together to achieve a higher aggregated loss figure than San Antonio FPPF. This is precisely what the PSLRA and courts in this District strictly forbid. *See Alibaba,* 102 F. Supp. 3d at 532 ("[m]any courts—including this one—have turned away pastiche plaintiffs whose grouping appears to be solely a product of the litigation, because, to allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff"); *Petrobras,* 104 F. Supp. 3d at 621-22 ("Allowing unrelated plaintiffs to band together in order to manufacture a larger financial interest [is inconsistent with the PSLRA because it] . . . ensures that the lawyers, who are invariably the matchmakers behind such marriages of convenience, are the true drivers of the litigation"); *In re Pfizer Inc., Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) ("Nothing before the Court indicates that this aggregation is anything other than an attempt to create the highest possible 'financial interest' figure under the PSLRA [] and I reject it"); *Varghese*, 589 F. Supp. 2d at 392 (denying aggregation because "courts in this District do not hesitate to deny a proposed group's motion for lead plaintiff status if the movants have not provided a sufficient evidentiary basis for aggregation or if the court otherwise is persuaded that the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action").[2]

---

[2] *See also Teva*, 302 F. Supp. 3d at 496 n.4 ("I decline to permit the [] Group to aggregate its individual stakes and, in effect, steal the presumption as lead plaintiff from either a single entity or one that was formed for reasons unrelated to its desire to serve as lead plaintiff"); *Gentiva*, 281

Specifically, on June 2, 2022, Miami filed a substantively identical securities class action against Dentsply in the Southern District of Ohio.  *See* Bleichmar Decl. Ex. A.   Miami filed the case on its own behalf, without mention of Louisiana Sheriffs or any other potential Lead Plaintiff candidate, let alone name them as a plaintiff at the time.  *Id.*  Also on June 2, 2022, Miami's counsel, Bernstein Litowitz, published a notice on *Business Wire* announcing that it "filed this action on behalf of its client, City of Miami General Employees' & Sanitation Employees' Retirement Trust," and that "If you wish to discuss this action . . . please contact" Bernstein Litowitz.  ECF No. 7-2.  Miami claims a loss of nearly $1.8 million (ECF No. 11-2 at 2), which is approximately 26% less than San Antonio FPPF's approximate $2.4 million loss.

After Miami filed the first complaint, on June 9, 2022, Birmingham (from the Public Pension Funds) signed its PSLRA certification that "authorized the filing of a motion for appointment as lead plaintiff."  ECF No. 15-3 at 2.  There is no information to suggest that Birmingham contemplated serving as part of a group, knew anything about the "Public Pension Funds," or the members of that group participating in this case at the time Birmingham authorized its motion.  Birmingham claims a loss of roughly $1.9 million (ECF No. 15-4 at 2), which is about 22% less than San Antonio FPPF's claimed loss.

 On June 28, 2022, San Antonio FPPF selected BFA to represent it in this matter.[3]  San Antonio FPPF claims a financial interest significantly larger than Miami, Birmingham, or any other individual movant.

---

F.R.D. at 120 ("the Court seeks to avoid the impression that a group of unrelated investors has been cobbled together . . . to displace a single competing institutional investor").

[3] San Antonio FPPF currently has five securities litigation firms:  BFA, Berman Tabacco, Bernstein Litowitz Berger & Grossman LLP, Cohen Millstein Sellers & Toll PLLC, and Robbins Geller Rudman & Dowd LLP.

Then, sometime in July 2022 (the exact date is not provided), Louisiana Sheriffs signed its PSLRA certification "[b]ased on [its] legal counsel's knowledge and advice. . . Bernstein Litowitz Berger & Grossmann LLP." ECF No. 11-1 at 5-6. The only apparent connection between Miami and Louisiana Sheriffs in this case is their law firm. Miami and Louisiana Sheriffs, aggregated together, claim a loss of approximately $3.5 million (ECF No 11-2), which exceeds that of San Antonio FPPF's.

And on July 12 and July 19, Wayne County and El Paso, respectively, executed their PSRLA certifications and "authorized the filing of a motion for appointment as lead plaintiff." ECF No. 15-3 at 5-8. Wayne County and El Paso each assert a loss that is less than half that of San Antonio FPPF's, but together with Birmingham now attempt to claim a loss of roughly $3.8 million. *See* ECF No. 15-4.

It was not until immediately prior to the deadline to seek Lead Plaintiff appointment that the members of the groups signed their respective Joint Declarations and apparently spoke to each other for the first time regarding this case during a "conference call." ECF Nos. 11-3 ¶12, 15-5 ¶6; *see also Chauan v. Intercept Pharms.*, 2021 WL 235890, at *4 (S.D.N.Y. Jan 25, 2021) (rejecting group of two investors when "it appears from their declaration that they did not speak with one another and with counsel and decide to act as a group until [] the very date lead plaintiff applications were due"); *Alibaba*, 102 F. Supp. 3d at 533 (refusing to appoint group of investors when "[t]heir only involvement in the litigation thus far appears to have been a single conference call"). The strong hand of counsel in assembling the groups undermines any claims of cohesion and strongly counsels against the groups' appointment.

**Factor 3: No Concrete Plans for Cooperation.** The groups' purported plans to oversee the litigation and communicate with one another and with counsel further demonstrate their

9

inadequacy.  The only information the Public Pension Funds submit regarding their plans for cooperation is that its members "discussed our strategy for jointly prosecuting this case . . . including communicating regarding significant litigation developments."   ECF No. 15-5 ¶7. Miami and Louisiana Sheriffs fare no better.  They simply state that they "discussed with each other the importance of joint decision making and maintaining communication [and] shared direct contact information."  ECF No. 11-3 ¶13.

Vague assurances regarding a "strategy" and to keep in touch are not the same as concrete plans to supervise litigation.  *See FXCM*, 2015 WL 7018024, at *4 (rejecting aggregation when group of two institutional investors stated that they will "confer via phone and/or email as necessary to ensure that we are able to independently communicate and make timely decisions"); *Phuong Ho v. NQ Mobile*, *Inc.*, 2014 WL 1389636, at *5 (S.D.N.Y. Apr. 9, 2014) (rejecting group of three unrelated investors and finding that "[a] declaration that an unrelated group has implemented communication protocols to enable [them] to confer via phone and/or email is insufficient to show that the Group would be able to effectively manage litigation"); *Pipefitters Local No. 636 Defined Ben. Plan v. Bank of America Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011) (refusing to appoint group that stated in joint declaration that they discussed "protocols for managing the litigation" and "have implemented communication procedures").

What's more, that each of the groups' "plan for cooperation was devised at a single conference call does not give the court confidence of its ability to manage conflicts that may arise in the litigation."  *Teva*, 302 F. Supp. 3d at 495.

Critically, neither of the groups explain how they will effectively oversee this case, nor how they will cohesively advance the interests of the class.  This is particularly important here, when San Antonio FPPF is available to serve and asserts the largest individual financial interest

10

of all the movants. *See Williams v. Block.One*, 2020 WL 4505569, at *3 (S.D.N.Y. Aug. 4, 2020) (rejecting aggregation of five investors when group "failed [] to explain why the putative class would benefit from having five lead plaintiffs authorized to make decisions on its behalf. . . . the application [] creates an unnecessary risk of having too many cooks in the kitchen—or, perhaps worse, a risk of having disinterested cooks"); *Petrobras*, 104 F. Supp. 3d at 621-22 (rejecting appointment of "wholly artificial groupings" which would generate "problems of coordination, risks duplication of effort, and reduces the incentive of any individual group member to carry out its lead plaintiff duties to the fullest extent").

What's more, Miami and Louisiana Sheriffs specifically recognize that disagreements may arise, but neither group offers any mechanism to resolve disputes. ECF No. 11-3 ¶ 14. This places the class at risk given that the case could be left at a standstill and the class rudderless in the event the members of either group disagree. How will a dispute be resolved if group members have different views? The groups do not offer an answer, let alone any plan, and the generic assurances regarding "discussion and collaboration" (*id.*) are insufficient. *See City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Group, Inc.*, 269 F.R.D. 291, 294 n. 5 (S.D.N.Y. 2010) ("While [group of two institutional investors] argues that appointing two investors to serve as the lead plaintiff would allow the two investors to act as a check on one another, we find this outcome no more plausible than a situation where disagreements within the lead plaintiff appointees end up disadvantaging the class"); *Petrobras,* 104 F. Supp. 3d at 623 (rejecting aggregation when group of three institutional investors had "no agreement in place regarding the resolution of disputes amongst themselves"). The class should not be saddled with group leadership that failed to take the initiative to persuasively articulate how it can lead complex litigation by committee.

11

**Factor 4: Minimal Involvement in Litigation.** The groups have had no meaningful involvement in the litigation. "The rote recitation" of a conference call and the general matters that were discussed on that call "does not provide evidence that any member of the group—much less the group as a whole—has had significant involvement in the litigation thus far." *Intercept*, 2021 WL 235890, at *5; *see also Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. Apr. 30, 2019) ("Vague discussions of general communication protocols and status reports hashed out over preliminary conference calls do little to show the groups' involvement in the litigation").

While Miami filed a complaint against Dentsply, it did so individually, and not part of the group, which further demonstrates the fluid and fragmented nature of its group and factors against appointment. *See Gentiva*, 281 F.R.D. at 119 (refusing to appoint group of two institutional investors "especially in light of the fact that [one of the investors] previously brought one of the consolidated actions in its own name").

**Factor 5: Sophistication.** Even though the groups are comprised of institutional investors, they are still inappropriate Lead Plaintiff candidates under the PSLRA given the deficiencies discussed above. *See Alibaba*, 102 F. Supp. 3d at 534 (rejecting aggregation when "[o]n the whole, no matter how experienced or sophisticated these plaintiffs may be, the [] Group appears to be nothing more than a lawyer-created group of unrelated investors who were cobbled together in the hope of thereby becoming the biggest loser").

The groups have failed to satisfy the evidentiary burden articulated in *Varghese*. None of the cases cited by the Public Pension Funds or Miami and Louisiana Sheriffs support the notion that the PSLRA endorses groups that are aggregated for purposes of assembling the largest financial interest. In fact, at least one of the cases cited by Miami and Louisiana Sheriffs (ECF No. 10 at 10) explicitly rejects that proposition. *See In re Glauser v. EVCI Center Colleges*

12

*Holding Corp.*, 236 F.R.D. 184, 190 (S.D.N.Y. 2006) ("The [] Group appears to be nothing more than a lawyer-created group of unrelated investors who were cobbled together in the hope of thereby becoming the biggest loser for PSLRA purposes a tactic disapproved of by this Court").

It would punish the class to appoint either of these groups as its figurehead. "Permitting unrelated investors to form a group of lead plaintiffs also creates problems of coordination, risks duplication of effort, and reduces the incentive of any individual group member to carry out its lead plaintiff duties to the fullest extent." *Teva*, 302 F. Supp. 3d at 495. "Such a concern is particularly apparent when aggregating the financial interests of unrelated investors would displace the institutional investor preferred by the PSLRA," which here, is San Antonio FPPF. *Id.* With courts in the Southern District frequently holding that group leadership comprised of unrelated investors is inappropriate under the PSLRA, the groups have not provided the strong justifications that would be needed to consider deviating from that rule.

## B.    San Antonio FPPF has the largest financial interest.

With the groups inadequate to lead this litigation, San Antonio FPPF stands alone and "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Any belated request for the members of the groups to be considered for appointment individually should be rejected. *See Intercept*, 2021 WL 235890, at *6 (declining to consider individual members when the members failed to submit separate motions for appointment). But even if the Court were to consider the individual members of the groups for appointment, none has a financial interest that approaches that of San Antonio FPPF.

When determining the largest financial interest, "courts have generally relied on four factors . . . commonly known as the *Lax* factors." *Africa v. Jianpu Tech. Inc*, 2021 WL 1999467, at *1 (S.D.N.Y. May 19, 2021). The four factors in order of importance are:

13

1. "the approximate losses suffered by the plaintiffs;"

2. "the total net funds expended by the plaintiffs during the class period;"

3. "the number of net shares purchased;" and

4. "the number of shares purchased" during the class period.

*Id.* ("[c]ourts tend to treat the factors in ascending order of importance, with the size of the loss being the most important").

Here, San Antonio FPPF claims the largest financial interest under **all** the *Lax* factors.  It claims a loss that is more than 28% greater than Birmingham, the single investor that claims the second-largest loss.[4]



With respect to the remaining *Lax* factors, in order of importance:

---

[4] San Antonio FPPF relies on the losses the movants claim in their loss charts, for the Court's convenience.  San Antonio FPPF reserves its rights to challenge the applicable loss calculation methodology, should an opposing movant claim a different loss than presented in its initial papers. San Antonio FPPF also derived the remaining Lax factors from the movants' loss charts.  *See* ECF Nos. 7-4; 11-2; 15-4.

14

**Net Funds Expended.** San Antonio FPPF expended more net funds during the Class Period than any other single investor, and expended roughly 24% more net funds than Louisiana Sheriffs, the investor that expended the second-most net funds;



**Net Shares Purchased.** San Antonio FPPF also purchased more net shares during the Class Period than any other single investor. Specifically, San Antonio FPPF purchased 14,462 more net shares than Louisiana Sheriffs (approximately 16% more).



**Total Shares Purchased.**  Finally, San Antonio FPPF purchased the most total shares of Dentsply stock, as set forth in the table below.



As such, under any accepted financial interest methodology applied by courts in this District, there can be no credible dispute that San Antonio FPPF has the single largest financial interest.

**C.      San Antonio FPPF satisfies the relevant requirements of Rule 23(a).**

In addition to possessing the largest financial interest in the outcome of the litigation, San Antonio FPPF satisfies the requirements of Rule 23(a)(3), (a)(4).  *See* 15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(I)(cc).  To overcome the presumption entitling San Antonio FPPF to appointment, the PSLRA requires proof of inadequacy.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  No such proof exists in this case.  *See Glauser*, 236 F.R.D. at 189 (rejecting "speculative and hypothetical argument that [movant] *might* be subject to a later attack by Defendants") (emphasis in original).[5]

---

[5] The rebuttable presumption provided by the PSLRA requiring proof of inadequacy is distinct from the affirmative evidentiary showing that courts in this District impose on groups to show that the "grouping would best serve the class." *Varghese*, 589 F. Supp. 2d at 392.

San Antonio FPPF's claims are typical because like all other class members, it: (1) purchased Dentsply stock during the Class Period, (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) was damaged as a result. *See Stitt v. On Deck Cap., Inc.*, 2016 WL 889535, at \*2-3 (S.D.N.Y. Feb. 17, 2016) (typicality satisfied when movant "claims that [defendant] issued false and misleading statements that caused the company's shares to trade at an inflated price [and] claims arise from the same course of conduct affecting each member of the proposed class").

San Antonio FPPF likewise satisfies the adequacy requirement of Rule 23(a)(4) because it is capable of "fairly and adequately protect[ing] the interests of the class." San Antonio FPPF has a substantial financial stake in the litigation and, as a sophisticated institutional investor, is precisely the type of movant that Congress encouraged to act as Lead Plaintiff in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at \*34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 (1995) ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"). San Antonio FPPF's interests are aligned with those of other class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between San Antonio FPPF and other class members.

Finally, San Antonio FPPF has further demonstrated his adequacy by selecting BFA—a single, experienced, and highly qualified law firm in the areas of securities and financial fraud litigation—to represent the class in this case. *See* ECF No. 6 at 9-10; 7-5. In sum, San Antonio FPPF will be an excellent steward for the class.

## CONCLUSION

For the reasons discussed above, San Antonio FPPF respectfully requests that the Court: (1) appoint it to serve as Lead Plaintiff; (2) approve its selection of BFA as Lead Counsel for the class; and (3) grant any such further relief as the Court may deem just and proper.


Dated:  August 15, 2021                          Respectfully Submitted,

                                                 **BLEICHMAR FONTI & AULD LLP**

                                                 */s/ Javier Bleichmar*
                                                 Javier Bleichmar
                                                 Nancy A. Kulesa
                                                 Ross Shikowitz
                                                 7 Times Square, 27th Floor
                                                 New York, NY 10036
                                                 Telephone: (212) 789-1340
                                                 Facsimile: (212) 205-3960
                                                 jbleichmar@bfalaw.com
                                                 nkulesa@bfalaw.com
                                                 rshikowitz@bfalaw.com

                                                 *Counsel for Proposed Lead Plaintiff*
                                                 *San Antonio Fire and Police Pension Fund*
                                                 *and Proposed Lead Counsel for the Class*

18