# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| CITY OF MIAMI GENERAL EMPLOYEES' & SANITATION EMPLOYEES' RETIREMENT TRUST, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DONALD M. CASEY, JR., DENTSPLY SIRONA INC., and JORGE GOMEZ, <br><br> Defendants. | Case No. <br><br> <u>CLASS ACTION</u> <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiff City of Miami General Employees' & Sanitation Employees' Retirement Trust ("Miami" or "Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, *inter alia*, counsel's investigation, which includes review and analysis of: (i) regulatory filings made by Dentsply Sirona Inc. ("Dentsply" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (ii) press releases and media reports issued by and disseminated by the Company; (iii) analyst reports concerning Dentsply; and (iv) other public information regarding the Company.

## I. INTRODUCTION

1. This securities class action is brought on behalf of all persons or entities that purchased Dentsply's common stock between June 9, 2021 and May 9, 2022, inclusive (the "Class Period"). The claims asserted herein are alleged against Dentsply and certain of the Company's former senior executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of

the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

2. Dentsply produces a wide array of dental supplies, ranging from anesthetics, plaque and gum disease prevention, tooth polishers, and artificial teeth. The Company sells approximately two-thirds of its dental consumable and technology and equipment products through third-party distributors.

3. As (former) executives of Dentsply, Defendants Donald M. Casey, Jr. ("Casey") and Jorge Gomez ("Gomez") were eligible for significant cash- and stock-based incentive compensation. Indeed, up to 89% of their annual compensation was awarded based on the Company's ability to meet certain milestones linked to Dentsply's financial performance.

4. Given the challenges posed by the ongoing COVID-19 pandemic, Dentsply bifurcated its Annual Incentive plans for executives into two six-month periods. The 2021 First Half Annual Incentive Plan and the 2021 Second Half Annual Incentive Plan each provided for potential incentive payments based on achievement of performance criteria during the first two and the last two quarters of 2021, respectively. The funding levels for each plan were wholly dependent on the Company's financial performance for the applicable half of 2021.

5. For the first half of the year, Dentsply met the applicable financial performance targets, entitling top executives, including Casey and Gomez, to the maximum compensation under the 2021 First Half Annual Incentive Plan. As a result of what the Company acknowledged was a "faster recovery" to start the year, Defendant Gomez told investors that "second half ramp is going to be a little bit less than what we thought initially when we modeled 2021."

6. In order to ensure that they received at least some of their awards under the 2021 Second Half Annual Incentive Plan, Defendants appear to have orchestrated a scheme to inflate

the Company's revenue and earnings by manipulating the way in which Dentsply recognized revenue tied to certain distributor rebate and incentive programs.

7. As a result of this scheme, many of the statements Defendants made to investors were materially false or misleading. Indeed, during the Class Period, Dentsply touted its "go-to-market strategy" and "more sophisticated and strategic incentive plans" as drivers of the Company's success. Dentsply also assured investors that it complied with Generally Accepted Accounting Principles ("GAAP") and maintained adequate internal controls over financial reporting, yet the Company announced revenues and earnings that were inflated by the improper recognition of revenue. As a result of these misrepresentations, Dentsply stock traded at artificially inflated prices throughout the Class Period.

8. On April 11, 2022, Dentsply announced that Defendant Gomez had "resigned" as Chief Financial Officer, but assured investors that his departure was "not the result of any dispute or disagreement with the Company, the Company's management or the Board of Directors of the Company on any matter relating to the Company's operations, policies or practices."

9. The truth began to emerge on April 19, 2022, when Dentsply suddenly announced that its Board of Directors had terminated Defendant Casey, the Company's Chief Executive Officer, effective immediately and with no succession plan in place. As a result of this disclosure, Dentsply shares declined by $6.52 per share, or 13%, from $48.72 per share to $42.20 per share.

10. Then, on May 10, 2022, Dentsply announced that, following reports from several internal whistleblowers, the Audit and Finance Committee of its Board of Directors (the "Audit Committee") had commenced an investigation regarding certain financial reporting matters. Specifically, Dentsply disclosed that the Audit Committee was investigating "the Company's use of incentives to sell products to distributors in the third and fourth quarters of 2021" and "whether

those incentives were appropriately accounted for" in the Company's periodic reports with the SEC. The Company also disclosed that the Audit Committee is investigating allegations that "certain former and current members of senior management directed the Company's use of these incentives and other actions to achieve executive compensation targets in 2021." As a result of these disclosures, Dentsply shares declined by \$2.87 per share, or 7%, from \$39.25 per share to \$36.38 per share.

## II.    JURISDICTION AND VENUE

11.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12.    Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Many of the acts and conduct that constitute the violations of law complained of herein occurred in this District. Defendant Casey resides in this District and the Company maintains offices and operations in the State of Ohio. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.    PARTIES

### A.    Plaintiff

13.    Plaintiff Miami is a government entity that was founded in 1985 to provide benefits—including retirement, death, and disability benefits—to eligible employees of the government of the City of Miami, Florida. As indicated on the certification submitted herewith,

Miami purchased Dentsply common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

### B. Defendants

14. Defendant Dentsply is incorporated in Delaware and maintains its corporate headquarters at 13320 Ballantyne Corporate Place, Charlotte, North Carolina. The Company's common stock trades on NASDAQ under the ticker symbol "XRAY." As of February 21, 2022, Dentsply had over 217 million shares of common stock outstanding, owned by hundreds or thousands of investors.

15. Defendant Donald M. Casey, Jr. served as Dentsply's Chief Executive Officer and Director from February 2018 until April 19, 2022. Defendant Casey currently resides in Dublin, Ohio, which is located in this District.

16. Defendant Jorge Gomez served as Dentsply's Chief Financial Officer and Executive Vice President from August 2019 until April 11, 2022.

17. Defendants Casey and Gomez are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their position with Dentsply, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been

disclosed to, and were being concealed from, the public, and that the positive representations which were being made were materially false and/or misleading.

## IV.    BACKGROUND

18.    Dentsply is a dental supply company that produces a wide range of products including artificial teeth, anesthetics, and plaque and gum disease prevention products. The majority of Dentsply's products are sold through third-party distributors.

19.    A large portion of the annual compensation for senior executives at Dentsply, including Defendants Casey and Gomez, was linked to the Company's ability to meet certain milestones with respect to Dentsply's financial performance.

20.    In 2021, Dentsply bifurcated its Annual Incentive plans into two six-month periods. As a result, senior executives had two opportunities to receive incentive payments in 2021, based solely on the Company's financial performance for the applicable part of the year.

21.    Dentsply met the applicable financial performance targets for the first half of 2021. As a result, top executives, including the Individual Defendants, were entitled to maximum compensation under the 2021 First Half Annual Incentive Plan. However, the Company expected that the second half of the year would be "less than what we thought initially when we modeled 2021."

22.    In light of this expected slowdown, it appears that Defendants orchestrated a scheme to use distributor rebates and incentives in order to inflate the Company's financial performance, thereby ensuring that the senior executives would receive at least a portion of the compensation under the 2021 Second Half Annual Incentive Plan.

## V. DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS

23. The Class Period begins on June 9, 2021, the day that Defendant Gomez presented on behalf of Dentsply at the Goldman Sachs Global Healthcare Conference. During that conference, Defendant Gomez attributed the Company's success, in part, to its improved "go-to-market strategy" which included "more sophisticated and strategic incentive plans." Defendant Gomez further touted that Dentsply was "bringing together all of [its] capabilities into one cohesive offering with the right commercial approach from an incentives perspective." Significantly, Defendant Gomez expressly attributed these improvements to Defendant Casey.

24. On August 5, 2021, Dentsply filed with the SEC its Form 10-Q for the second quarter of 2021. The Form 10-Q was signed by Defendants Casey and Gomez and contained certifications from Defendants Casey and Gomez attesting to the accuracy of the Company's financial statements and the effectiveness of Dentsply's financial and disclosure controls. In addition, the Form 10-Q stated that the "Company's management, with the participation of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the Company's disclosure controls and procedures" and determined that those controls and procedures "were effective."

25. On November 4, 2021, Dentsply issued a press release announcing its financial results for the third quarter of 2021. In the press release, which was also filed with the SEC on Form 8-K, the Company reported net revenue of $1.069 billion and adjusted earnings per share of $0.47. In the press release, Defendant Casey is quoted as attributing the Company's financial results to the "continued recovery in the dental market and robust demand from our recent product launches," as well as Dentsply's "commendable job navigating supply chain bottlenecks to deliver products to our customers."

7

26.     That same day, Dentsply filed with the SEC its Form 10-Q for the third quarter of 2021, reiterating the financial results announced in its press release.  The Form 10-Q was signed by Defendants Casey and Gomez and contained certifications from Defendants Casey and Gomez attesting to the accuracy of the Company's financial statements and the effectiveness of Dentsply's financial and disclosure controls.  The Form 10-Q further stated that the Company's financial statements were "prepared in accordance with [GAAP] and the rules of the [SEC]."  The Form 10-Q also stated that the "Company's management, with the participation of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the Company's disclosure controls and procedures" and determined that those controls and procedures "were effective."

27.     On February 28, 2022, Dentsply issued a press release announcing its financial results for the fourth quarter and full year of 2021.  In the press release, which was also filed with the SEC on Form 8-K, the Company reported full year 2021 net revenue of $4.25 billion and adjusted EBITDA of $992 million.  For the fourth quarter of 2021, the Company reported net revenue of $1.088 billion and adjusted earnings per diluted share of $0.76 per share.  In the press release, Defendant Casey is quoted as attributing the Company's financial results to "the resilience of the dental market, the strength of our global portfolio, and our team's ability to execute well in an environment still impacted by the pandemic."

28.     On March 1, 2022, Dentsply filed with the SEC its annual report on Form 10-K for the year ended December 31, 2021, which, in part, affirmed the previously reported financial results.  The Form 10-K was signed by Defendants Casey and Gomez and contained certifications from Defendants Casey and Gomez attesting to the accuracy of the Company's financial statements and the effectiveness of Dentsply's financial and disclosure controls.  The Form 10-K

8

also stated that the Company's financial statements had been "prepared in accordance with [GAAP] and the rules of the [SEC]" and that revenues are "recognized when performance obligations under the terms of a contract with the customer are satisfied."

29.     With respect to accounting for dealer rebates, the Form 10-K stated:

The Company exercises judgment in estimating variable consideration, which primarily includes volume discounts, sales rebates, and product returns. The Company adjusts the estimate of revenue at the earlier of when the most likely amount of consideration can be estimated, the amount expected to be received changes, or when the consideration becomes fixed. The Company estimates volume discounts by evaluating specific inputs and assumptions, including the individual customer's historical and estimated future product purchases. Discounts are deducted from revenue at the time of sale or when the discount is offered, whichever is later. In estimating sales rebates, the Company evaluates inputs such as customer-specific trends, terms of the customers' contracted rebate program, historical experience, and the forecasted performance of a customer and their expected level of achievement within the rebate programs. The accruals for these rebate programs are updated as actual results and updated forecasts impact the estimated achievement for customers within the rebate programs. When the Company gives customers the right to return eligible products and receive credit, returns are estimated based on an analysis of historical experience. However, returns of products, excluding warranty-related returns, are not material.

30.     In addition, the Form 10-K stated that the "Company's management, with the participation of the Company's Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the Company's disclosure controls and procedures" and determined that those controls and procedures "were effective."

31.     The statements set forth above in ¶¶ 23-30 were materially false and misleading. In truth, Defendants had improperly recognized revenue tied to certain dealer incentive or rebate programs to allow Defendants Casey and Gomez to meet certain incentive-based compensation targets.  As a result, Dentsply's financial statements were not prepared in accordance with GAAP and SEC rules, and the Company's internal controls over financial reporting were deficient throughout the Class Period.

## VI.   THE TRUTH EMERGES

32.   The truth began to emerge on April 19, 2022, after the market closed, when Dentsply announced the sudden termination of Defendant Casey as CEO and as a member of the Board of Directors.  This disclosure caused Dentsply's stock price to decline by $6.52 per share, or 13%, from $48.72 per share to $42.20 per share.

33.   Then, on May 10, 2022, Dentsply filed with the SEC a Form 12b-25 Notification of Late Filing in which it announced that the Audit Committee of its Board of Directors had commenced an internal investigation regarding certain financial reporting matters.  Specifically, Dentsply disclosed that the Audit Committee was investigating "the Company's use of incentives to sell products to distributors in the third and fourth quarter of 2021" and "whether those incentives were appropriately accounted for" in the Company's SEC filings.  In addition, the Audit Committee disclosed that it was investigating allegations that "certain former and current members of senior management directed the Company's use of these incentives and other actions to achieve executive compensation targets in 2021."  As a result, Dentsply was unable to file its quarterly report with the SEC on Form 10-Q for the first quarter ended March 31, 2022.  These disclosures caused Dentsply's stock price to decline by $2.87 per share, or 7%, from $39.25 per share to $36.38 per share.

## VII.   LOSS CAUSATION

34.   During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This artificially inflated the price of Dentsply common stock and operated as a fraud or deceit on the Class.  Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of Dentsply common stock fell precipitously, as the prior artificial inflation

came out of the price over time. As a result of their purchases of Dentsply common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws

## VIII. CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities who purchased or otherwise acquired Dentsply common stock during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, directors, and officers of Dentsply and their families and affiliates.

36. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. As of February 21, 2022, there were approximately 217 million shares of Dentsply common stock outstanding, owned by hundreds or thousands of investors.

37. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

A. Whether Defendants violated the Exchange Act;

B. Whether Defendants omitted and/or misrepresented material facts;

C. Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

D. Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

E. Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

F. Whether the price of Dentsply's common stock was artificially inflated;

11

G.    Whether Defendants' conduct caused the members of the Class to sustain damages; and

H.    The extent of damage sustained by Class members and the appropriate measure of damages.

38.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

39.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

40.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## IX.    INAPPLICABILITY OF STATUTORY SAFE HARBOR

41.    Dentsply's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

42.    Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Dentsply who knew that the statement was false.  None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## X.    PRESUMPTION OF RELIANCE

43.    At all relevant times, the market for Dentsply's common stock was an efficient market for the following reasons, among others:

A.    Dentsply common stock met the requirements for listing, and was listed and actively traded on NASDAQ, a highly efficient and automated market;

B.    As a regulated issuer, Dentsply filed periodic public reports with the SEC and NASDAQ;

C.    Dentsply regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

D.    Dentsply was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

44.    As a result of the foregoing, the market for Dentsply common stock promptly digested current information regarding Dentsply from all publicly available sources and reflected such information in the price of Dentsply common stock.   Under these circumstances, all purchasers of Dentsply common stock during the Class Period suffered similar injury through their purchase of Dentsply common stock at artificially inflated prices and the presumption of reliance applies.

45.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding Dentsply's business and operations—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be

13

material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Company's financial results, and Defendants' multi-million-dollar compensation awards that were driven by the Company's revenue and earnings results, as set forth above, that requirement is satisfied here.

## XI.     __CLAIMS FOR RELIEF UNDER THE EXCHANGE ACT__

### COUNT I

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     During the Class Period, the Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Dentsply common stock at artificially inflated prices.

48.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Dentsply common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

49.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce, and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

50.     During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

51.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Dentsply's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

52.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Dentsply common stock.  Plaintiff and the Class would not have purchased Dentsply common stock at the prices they paid, or at all, had they been aware that the market prices for Dentsply common stock had been artificially inflated by Defendants' fraudulent course of conduct.

53.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

54.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

55.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

15

56. The Individual Defendants acted as controlling persons of Dentsply within the meaning of Section 20(a) of the Exchange Act. By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Dentsply, the Individual Defendants had the power and ability to control the actions of Dentsply and its employees. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## XII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.  Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.  Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.  Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## XIII.  JURY DEMAND

Plaintiff demands a trial by jury.

DATED: June 2, 2022

/s/ John C. Camillus
**LAW OFFICES OF JOHN C. CAMILLUS LLC**
John C. Camillus, Trial Attorney (0077435)
P.O. Box 141410
Columbus, OH 43214
Phone: (614) 992-1000
Fax: (614) 559-6731
jcamillus@camilluslaw.com

*Liaison Counsel for Plaintiff City of Miami General Employees' & Sanitation Employees' Retirement Trust*

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

Hannah Ross (*pro hac vice* forthcoming)
Avi Josefson (*pro hac vice* forthcoming)
Scott R. Foglietta (*pro hac vice* forthcoming)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
scott@blbglaw.com

*Counsel for Plaintiff City of Miami General Employees' & Sanitation Employees' Retirement Trust*

**KLAUSNER KAUFMAN JENSEN
  & LEVINSON**

Robert D. Klausner
7080 Northwest 4th Street
Plantation, FL 33315
Telephone: (954) 916-1202
bob@robertdklausner.com

*Additional Counsel for Plaintiff City of Miami General Employees' & Sanitation Employees' Retirement Trust*

17