# EXHIBIT A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| _____ | ) | |
| CITY OF MIAMI GENERAL EMPLOYEES' & | ) | Case No. 2:22-cv-02371-SDM-CMV |
| SANITATION EMPLOYEES' RETIREMENT | ) | |
| TRUST, on behalf of itself and all others similarly | ) | CLASS ACTION |
| situated, | ) | |
|  | ) | Judge Morrison |
| Plaintiff, | ) | |
| v. | ) | Magistrate Judge Vascura |
|  | ) | |
| DONALD M. CASEY, JR., DENTSPLY | ) | |
| SIRONA INC., and JORGE GOMEZ, | ) | |
|  | ) | |
| Defendants. | ) | |
| _____ | ) | |

**SAN ANTONIO FIRE AND POLICE PENSION FUND'S
(1) MOTION TO INTERVENE AND DISMISS OR TRANSFER VENUE, AND
(2) MEMORANDUM OF LAW IN SUPPORT THEREOF AND IN OPPOSITION
TO CITY OF MIAMI GENERAL EMPLOYEES' & SANITATION EMPLOYEES'
RETIREMENT TRUST AND THE LOUISIANA SHERIFFS' PENSION &
RELIEF FUND'S MOTION FOR TRANSFER OF VENUE**

PLEASE TAKE NOTICE that San Antonio Fire and Police Pension Fund ("San Antonio FPPF"), by and through its undersigned counsel, hereby respectfully moves this Court for entry of an order: (1) allowing San Antonio FPPF to intervene in this action pursuant to Federal Rule of Civil Procedure 24(a) and/or (b); and (2) dismissing this action pursuant to 28 U.S.C. § 1406(a), or transferring it to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a). A proposed order granting this relief is submitted herewith. This Motion is supported by the accompanying Memorandum of Law, the pleadings and other filings herein, and such other written or oral argument as may be permitted by the Court.

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................. 2

    A.   San Antonio FPPF Should Be Allowed to Intervene Permissively and as of Right ........ 2

    B.   Transfer to WDNC Should Be Denied, and This Action Should Be Dismissed
        or Transferred to SDNY ......................................................................................................... 3

       (1) Miami and Louisiana Sheriffs Cannot Seek to Transfer Their Own Action ............. 3

       (2) The Court May Dismiss This Action Based on Admittedly Improper Venue .......... 6

       (3) Alternatively, This Action Should Be Transferred to SDNY .................................... 6

          i.  This Action Could Have Been Brought in SDNY ................................................ 7

         ii.  The "Interests of Justice" Strongly Support Transfer to SDNY to Avoid
             Duplicative Litigation and Ensure Judicial Economy ......................................... 7

        iii. The "Convenience of the Parties and Witnesses" Favors Transfer to SDNY .... 10

           1.  The Locus of Operative Facts Is Neutral at Best ....................................... 12

           2.  The Public Interest Favors Transfer to SDNY .......................................... 13

    CONCLUSION .......................................................................................................................... 13

# TABLE OF AUTHORITIES

## Cases

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*,
474 F. Supp. 2d 474 (S.D.N.Y. 2007) ..................................................... 12

*Bui v. Armes*, No. 3:14CV428,
2014 WL 4983670 (N.D. Ohio Oct. 6, 2014) ........................................... 11

*Cavalo Growers of Cal. v. Generali Belgium*,
632 F.2d 963 (2d Cir. 1980) .................................................................... 10

*City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*,
2015 WL 12659925 (S.D.N.Y. Apr. 30, 2015) ........................................ 12

*Commerzbank AG v. U.S. Bank Nat'l Ass'n*,
No. 1:15-CV-818, 2016 WL 3255071 (S.D. Ohio June 14, 2016) ............... 7, 8, 13

*Ferens v. John Deere Co.*,
494 U.S. 516 (1990) ................................................................................. 8

*Ferrostaal, Inc. v. Union Pac. R. Co.*,
109 F. Supp. 2d 146 (S.D.N.Y. 2000) ....................................................... 4

*Grutter v. Bollinger*,
188 F.3d 394 (6th Cir. 1999) ................................................................. 2, 3

*In re ChannelAdvisor Corp. Sec. Litig.*,
2015 WL 4064625 (S.D.N.Y. July 2, 2015) .............................................. 10

*In re Geopharma, Inc.*,
No. 04 CIV. 9463 (SAS), 2005 WL 1123883 (S.D.N.Y. May 11, 2005) ............... 12

*Jones v. Ohio Nat'l Life Ins. Co.*,
2020 WL 4816233 (N.D. Ohio Aug. 19, 2020) ......................................... 12

*Nationwide Affordable Hous. Fund 4, LLC v. Urb. 8 Danville Corp.*,
No. 2:19-CV-1848, 2019 WL 5629930 (S.D. Ohio Oct. 30, 2019) ................... 8, 9

*Pullins v. Palmero*,
No. 3:08-cv-00118, 2009 WL 1067315 (S.D. Ohio April 21, 2009) ................... 8

*Reese v. CNH Am. LLC*,
574 F.3d 315 (6th Cir. 2009) .................................................................... 7

*Sky Tech. Partners LLC v. Midwest Research Inst.*,
125 F. Supp. 2d 286 (S.D. Ohio 2000) ...................................................... 7

*Smith v. General Info. Sol.*,
  2018 WL 4019463 (S.D. Ohio Aug. 23, 2018) ............................................................. 5

*Truk Int'l Fund, LP v. Wehlmann*,
  2009 WL 1456650 (S.D.N.Y. May 20, 2009) .......................................................... 12

*Williams v. City of New York*,
  2006 WL 399456 (S.D.N.Y. Feb. 21, 2006) ................................................... 8, 9, 12

**Statutes**

15 U.S.C. § 78 ......................................................................................................... 7

28 U.S.C. § 1331 .................................................................................................... 7

28 U.S.C. § 1337 .................................................................................................... 7

28 U.S.C. § 1404 ................................................................................................ 2, 6

28 U.S.C. § 1406 .................................................................................................... 6

**Rules**

Fed. R. Civ. P. 24 ................................................................................................ 2, 3

Fed. R. Civ. P. 45 .............................................................................................. 11

San Antonio Fire and Police Pension Fund ("San Antonio FPPF") respectfully submits this memorandum (1) in support of San Antonio FPPF's motion to intervene and either dismiss this action or transfer venue to the United States District Court for the Southern District of New York ("SDNY"); and (2) in opposition to the motion of City of Miami General Employees' & Sanitation Employees' Retirement Trust ("Miami") and Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs") for transfer of venue to the United States District Court for the Western District of North Carolina ("WDNC").

## PRELIMINARY STATEMENT

Defendants Dentsply, Casey, and Gomez (together, "Defendants") currently face two substantively identical securities class actions: (1) this action filed in this District (the "Action"), and (2) the action San Antonio FPPF filed in SDNY (the "SDNY Action").[1] Weeks ago, counsel for Miami and Louisiana Sheriffs learned that they improperly filed the Action in this District and that Miami's complaint contains a misstatement about Defendant Casey's residence. At that point, they should have advised the Court and promptly dismissed the Action.

Instead, they now seek to bypass SDNY and transfer *their own case* to a third, entirely new jurisdiction—WDNC—where *no* securities action against Defendants is pending. This is classic lawyer-driven litigation that is plainly not in the best interests of the Class that Miami and Louisiana Sheriffs seek to represent. Unsurprisingly, no other party or lead plaintiff movant has joined their motion, and the motion cites no authority where such transfer was granted. For good reason: Such an unnecessary and unprecedented transfer to a new, unrelated jurisdiction would be

---

[1] *San Antonio Fire and Police Pension Fund v. Dentsply Sirona Inc.*, No. 1:22-cv-06339 (S.D.N.Y.).

wasteful, inefficient, and squarely contrary to "the interest of justice" and "the convenience of parties and witnesses." 28 U.S.C. § 1404(a).

Thus, San Antonio FPPF seeks to intervene and respectfully submits that the Court should either (1) dismiss the Action, or (2) transfer it to SDNY for consolidation with the pending, parallel SDNY Action. Either approach will serve the interests of the Class by ensuring that all related securities litigation against Defendants is consolidated in a single proceeding, in one forum, under common leadership.

## ARGUMENT

### A. San Antonio FPPF Should Be Allowed to Intervene Permissively and as of Right

Because the pleading in this Action was filed only by Miami, permissive and mandatory intervention are warranted to ensure that San Antonio FPPF—as a member of the putative Class and a lead plaintiff movant—can oppose Miami and Louisiana Sheriffs' motion and seek dismissal or transfer to SDNY.

Federal Rule of Civil Procedure 24(a) provides for mandatory intervention by "anyone" who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Proposed intervenors must show four elements: "(1) that the motion to intervene was timely; (2) that they have a substantial legal interest in the subject matter of the case; (3) that their ability to protect that interest may be impaired in the absence of intervention; and (4) that the parties already before the court may not adequately represent their interest." *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999). San Antonio FPPF readily meets these standards.

First, this motion is timely, as the Action is at its earliest stages. Second, as a member of the putative Class seeking appointment as lead plaintiff, San Antonio FPPF has a substantial legal

interest in this case. The Sixth Circuit has adopted a "rather expansive notion of the interest sufficient to invoke intervention of right," and no "specific legal or equitable interest is required." *Grutter*, 188 F.3d at 398 (citations omitted). <u>Third</u>, San Antonio FPPF meets the "minimal" burden, *id.* at 399, of showing that the denial of intervention may impair its legal interest: Miami and Louisiana Sheriffs seek a wasteful and unnecessary transfer to WDNC that is contrary to the interests of San Antonio FPPF and other members of the Class. <u>Fourth</u>, San Antonio FPPF meets the "minimal" burden of showing that the existing parties' representation "may not" be adequate on the transfer issue, *id.* at 400, as the current named plaintiff (Miami) seeks transfer to WDNC, while Defendants have not yet responded to the motion, and have interests that are distinct from those of the Class and may "not make all of the [same] arguments," *id.*, as San Antonio FPPF.

Thus, mandatory intervention is warranted under Rule 24(a). The same grounds also support permissive intervention under Rule 24(b), which allows intervention by "anyone" who "has a claim or defense that shares with the main action a common question of law or fact" where "intervention will [not] unduly delay or prejudice the adjudication of the original parties' rights."

## B. Transfer to WDNC Should Be Denied, and This Action Should Be Dismissed or Transferred to SDNY

There is no basis to transfer this Action to a third, unrelated jurisdiction instead of SDNY. The most efficient and reasonable solution to the procedural morass that Miami and Louisiana Sheriffs have created is to dismiss this Action or transfer it to SDNY for prompt consolidation with the SDNY Action. Either result fully comports with the interests of justice and the convenience of the parties and witnesses.

### (1) Miami and Louisiana Sheriffs Cannot Seek to Transfer Miami's Own Action

To begin, Miami's choice to file the Action in this District forecloses Miami (and now Louisiana Sheriffs) from seeking transfer to WDNC. "A motion to transfer venue is not ordinarily

granted at the request of the party who chose the forum in the first place." *Ferrostaal, Inc. v. Union Pac. R. Co.*, 109 F. Supp. 2d 146, 151 (S.D.N.Y. 2000) (denying plaintiff's transfer motion). That is because a "plaintiff moving to transfer venue has already had an opportunity to choose the venue when filing the action.  Therefore, a plaintiff moving to transfer must demonstrate, *inter alia*, that after the action was filed there was a change of circumstances that warrants transferring the action to the transferee forum." *Id.*

Miami and Louisiana Sheriffs fail to show any "change of circumstances" after the Action was filed that warrants transfer to WDNC.  Their counsel states that it incorrectly filed the Action in this District because it purportedly thought Defendant Casey (Dentsply's former CEO) lives in Dublin, Ohio, while Casey in fact resides in Florida.

But Casey's residence was readily discoverable with basic diligence.  Publicly available information shows that Casey sold his Dublin, Ohio residence in April 2018,[2] purchased a property in North Carolina in September 2018 and sold it in June 2022,[3] purchased his property in Florida in 2014,[4] and has been registered to vote in Florida since at least 2018.[5]  As a result, Casey's residence "should have been known to [counsel] *prior* to filing," and is "not a post-filing change of circumstances warranting transfer" to WDNC.  *Ferrostaal*, 109 F. Supp. 2d at 151 (emphasis in original).

Moreover, the timing of counsel's purported "discovery" of Casey's Florida residence suggests that Miami and Louisiana Sheriffs' transfer motion was filed for purely tactical purposes:

---

[2] https://www.zillow.com/homedetails/7708-Tillinghast-Dr-Dublin-OH-43017/33754375_zpid/

[3] https://www.zillow.com/homedetails/254-Tranquil-Ave-Charlotte-NC-28209/6264425_zpid/

[4]  https://www.zillow.com/homedetails/3311-Ocean-Dr-Jacksonville-Beach-FL-32250/44630618_zpid/

[5] *See* https://www.floridaresidentsdirectory.com/person/126464662/casey-donald?amp

- On June 2, 2022, Miami filed a complaint alleging that "Defendant Casey resides in this District" (ECF 1 ¶12), which admittedly was the "sole basis for filing the Action in the Southern District of Ohio." (ECF 13-1 ¶3.) This allegation was incorrect.

- On July 29, 2022, Defendants told counsel that Casey "does not currently reside" in Ohio (*see id.* ¶4). At that point, Miami and Louisiana Sheriffs could have promptly advised this Court and admittedly could have dismissed the Action (ECF 13 at 12 of 17).[6]

- Instead, however, on August 1, 2022, Miami and Louisiana Sheriffs proceeded to file a motion seeking appointment as lead plaintiff in the Action, with Bernstein Litowitz Berger & Grossmann LLP ("BLBG") as lead counsel, making no mention of the fact that Miami had improperly filed the Action in this District. (*See* ECF 9.)

- Miami and Louisiana Sheriffs then waited another two weeks before moving for transfer at 10:02 PM on August 15, 2022—the same day that oppositions to lead plaintiff motions were due in the SDNY Action. On August 15, Miami and Louisiana Sheriffs also filed a lead plaintiff opposition in the SDNY Action and a pre-motion letter seeking transfer of the SDNY Action to WDNC. Tellingly, their August 15 lead plaintiff opposition brief in SDNY cites a lone case from the Eastern District of North Carolina in an effort to bolster its claimed financial interest.

Thus, it appears that Miami and Louisiana Sheriffs made a tactical choice to file the Action in this District and—despite the readily available fact that Defendant Casey does not reside in Ohio—waited over two weeks before suddenly seeking transfer in the midst of lead plaintiff briefing. Further, Miami and Louisiana Sheriffs contemplated transfer by at least August 9 (*see* ECF 13-1 ¶5), but chose to delay filing the motion by nearly a week.

In these circumstances, Miami and Louisiana Sheriffs cannot now complain that WDNC is a more appropriate venue. None of Miami and Louisiana Sheriffs' cited cases allowed the filing party to transfer its own case over opposition.[7] To endorse their tactical maneuver would fly in

---

[6] Miami and Louisiana Sheriffs are also wrong to claim that voluntary dismissal of this Action could somehow have "negative impacts on the Class." (ECF 13 at 12 of 17.) The substantively identical SDNY Action will proceed in all events, and the same lead plaintiff movants, defendants, and counsel are present in both cases. Miami and Louisiana Sheriffs' refusal to dismiss this Action appears to be simple forum-shopping or a misguided effort to create leverage for BLBG's benefit.

[7] In *Smith v. General Info. Sol.*, 2018 WL 4019463, at *3 (S.D. Ohio Aug. 23, 2018), the plaintiff filed a class action in this District, and the court merely granted an unopposed motion to transfer

the face of "the interest of justice" and "the convenience of parties and witnesses," 28 U.S.C.
§ 1404(a).  As a result, the Court should deny Miami and Louisiana Sheriffs' motion and either
dismiss this Action or transfer it to SDNY.

### (2)  The Court May Dismiss This Action Based on Admittedly Improper Venue

The first resolution is simple and straightforward:  the Court can simply dismiss this Action
under 28 U.S.C. § 1406(a), which provides that when a case is filed "laying venue in the wrong
division or district," the court "shall dismiss, or if it be in the interest of justice, transfer such case
to any district or division in which it could have been brought."  Miami and Louisiana Sheriffs
admit that their "basis for venue in the Southern District of Ohio was incorrect" and that "Ohio
has no connection to the events underlying the Action" (ECF 13 at 8, 14 of 17).  Given these facts,
they should have voluntarily dismissed this Action weeks ago, sparing the Court and parties
significant burden and expense, but chose not to do so.

### (3)  Alternatively, This Action Should Be Transferred to SDNY

The other option is to transfer the Action to SDNY.  28 U.S.C. § 1404(a) provides:  "For
the convenience of the parties and witnesses, in the interests of justice, a district court may transfer
any civil action to any other district or division where it might have been brought or to any district
or division to which all parties have consented."

"In resolving motions to transfer under 1404(a), courts in this Circuit consider six factors:
(1) the convenience of the parties and witnesses; (2) the accessibility of evidence; (3) the
availability of process to make reluctant witnesses testify; (4) the costs of obtaining willing
witnesses; (5) the practical problems of trying the case most expeditiously and inexpensively; and

---

to the District of South Carolina to cure a personal jurisdiction issue raised by the defendants.
*Smith* in no way supports Miami and Louisiana Sheriffs' tactical attempt to seek a new venue.

(6) the interests of justice." *Commerzbank AG v. U.S. Bank Nat'l Ass'n*, No. 1:15-CV-818, 2016 WL 3255071, at *5 (S.D. Ohio June 14, 2016) (granting transfer to SDNY) (citing *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009)). Here, these factors strongly favor transfer to SDNY.

### i. This Action Could Have Been Brought in SDNY

The threshold issue under Section 1404(a) is whether the action could have been brought in the transferee court. *See Sky Tech. Partners LLC v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 291 (S.D. Ohio 2000). This is satisfied where: (1) the transferee court has jurisdiction over the subject matter of the action; (2) venue is proper in the transferee court; and (3) the defendants are amenable to process issuing out of the transferee court. *See id.*

Each element is satisfied here, as: (1) SDNY has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. § 78aa; (2) venue is proper, as all Defendants are subject to jurisdiction there, their alleged misstatements were disseminated into SDNY, Dentsply common stock traded on NASDAQ (based in New York), and numerous Class members reside in SDNY; and (3) Defendants "do not dispute personal jurisdiction in New York." *Commerzbank*, 2016 WL 3255071 at *2. Miami and Louisiana Sheriffs cannot seriously dispute that venue lies in SDNY. Their counsel BLBG filed a complaint in 2018 against Dentsply and various individuals (including Casey) in the Eastern District of New York—just a few miles from SDNY—alleging that venue was proper in that District. *See Boynton Beach Gen. Emps.' Pension Plan v. Dentsply Sirona, Inc.*, No. 18-cv-7253, ECF 1 (E.D.N.Y., filed Dec. 19, 2018).

### ii. The "Interests of Justice" Strongly Support Transfer to SDNY to Avoid Duplicative Litigation and Ensure Judicial Economy

The Action should be transferred to SDNY to avoid duplicative litigation in two districts and to ensure efficiency and judicial economy.

As this Court has recognized, the presence of "identical" or "similar" cases in another district "weighs heavily in favor of transfer." *Nationwide Affordable Hous. Fund 4, LLC v. Urb. 8 Danville Corp.*, No. 2:19-CV-1848, 2019 WL 5629930, at *4 (S.D. Ohio Oct. 30, 2019). The "fact that consolidating [both] actions in a single venue would help to avoid a multiplicity of litigation is an important factor weighing in favor of the requested transfer" to SDNY. *Pullins v. Palmero*, No. 3:08-cv-00118, 2009 WL 1067315, at *4 (S.D. Ohio April 21, 2009) (internal quotations omitted). "[C]ourts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative." *Williams v. City of New York*, 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006).

Miami and Louisiana Sheriffs acknowledge that the "Supreme Court has held: 'to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different district courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.' *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990)." (ECF 13 at 9 of 17.)

This black-letter law requires transferring the Action to SDNY, not WDNC. Only transfer to SDNY will allow consolidation with the SDNY Action, which Miami and Louisiana Sheriffs admit is "substantially similar." (ECF 13 at 6 n.3 of 17.) Courts in this District and Circuit have recognized the efficiency of such transfer for consolidation or coordination with related actions. *See Commerzbank*, 2016 WL 3255071 at *5 (finding that "transferring this action to the Southern District of New York will promote efficiencies through the potential for coordinated schedules and discovery among the parties, witnesses, and the judges in that District").

By contrast, transfer to WDNC—where there is no related action, and no court has engaged with the allegations or pending lead plaintiff motions—will waste judicial resources and cause unnecessary burden and delay. This reality strongly supports transfer to SDNY and "may be

determinative." *Williams*, 2006 WL 399456 at *3. Miami and Louisiana Sheriffs cite **no case** where any court transferred an action to a third jurisdiction, bypassing the jurisdiction where a related action was pending.

Moreover, while Miami and Louisiana Sheriffs argue that if the SDNY Action is transferred to WDNC, the two actions could be consolidated there (ECF 13 at 15 of 17), that is purely hypothetical and may never occur. At present, Miami and Louisiana Sheriffs have only filed a pre-motion letter with Judge Cronan indicating that they intend to file a "forthcoming motion to transfer" the SDNY Action.[8] San Antonio FPPF is opposing this request today, and the only other lead plaintiff movants (City of Birmingham Retirement and Relief System, El Paso Firemen & Policemen's Pension Fund, and Wayne County Employees' Retirement System) have already done so. Judge Cronan will make an independent decision on any transfer motion, and there is no guarantee of any transfer to WDNC, much less its timing.[9]

By seeking to transfer this Action to WDNC at this juncture, Miami and Louisiana Sheriffs' procedural maneuvering raises a real possibility of factually identical cases proceeding concurrently in SDNY and WDNC. Beyond the inherent wastefulness of that result, as this Court has observed, "deciding the same issues in multiple fora runs the risk of different judges deciding the same issues differently," especially "when the cases at issue are in different circuits, meaning that it is not even possible for a circuit court to reconcile any differences." *Nationwide Affordable Hous. Fund*, 2019 WL 5629930 at *4.

---

[8] *San Antonio Fire and Police Pension Fund v. Dentsply Sirona Inc.*, No. 1:22-cv-06339 (S.D.N.Y.), ECF 23 at 1 of 3.

[9] In an apparent effort to front-run this Court's resolution of the transfer issue, Miami and Louisiana Sheriffs' have also proposed an unreasonably short briefing schedule if a transfer motion is permitted in the SDNY Action: just two days for opposition briefs and one day for replies. *San Antonio Fire and Police Pension Fund v. Dentsply Sirona Inc.*, No. 1:22-cv-06339 (S.D.N.Y.), ECF 23 at 3.

At bottom, with a substantively identical securities class action pending in SDNY and no related action in WDNC, transferring this Action to SDNY makes far more sense. There is no reason to subject the Class to delay and the risk of inconsistent results simply to indulge Miami and Louisiana Sheriffs' newfound, lawyer-driven tactical desire to litigate in WDNC.

### iii. The "Convenience of the Parties and Witnesses" Favors Transfer to SDNY

The "convenience of the parties and witnesses" factor supports transfer to SDNY, not WDNC, or is neutral at best.[10]

<u>First</u>, Defendants have not sought transfer to WDNC, and in evaluating this factor, the Court should consider the views of Defendants and their counsel. They may well prefer SDNY to WDNC given the fact that trial counsel for Defendants (and for all lead plaintiff movants) have offices in New York, as well as the availability of air travel and videoconferencing technology. *See, e.g.*, *Cavalo Growers of Cal. v. Generali Belgium*, 632 F.2d 963, 969 (2d Cir. 1980) (Newman, J., concurring) ("It will often be quicker and less expensive to transfer a witness or a document than to transfer a lawsuit. Jet travel and satellite communications have significantly altered the meanings of 'non conveniens.'"), *cert. denied*, 449 U.S. 1084 (1981).

<u>Second</u>, the physical location of party and non-party witnesses is largely irrelevant in the current era of remote depositions. As a result, Miami and Louisiana Sheriffs' pre-COVID-19 cases on the "convenience" of witnesses, such as *In re ChannelAdvisor Corp. Sec. Litig.*, 2015 WL 4064625, at *2 (S.D.N.Y. July 2, 2015), are beside the point.[11] In practice, few (if any) depositions will require travel by witnesses or counsel. Further, Rule 45 provides for nationwide service of

---

[10] Miami and Louisiana Sheriffs correctly concede that "no Defendant, party, witness, or relevant documents are located in this District." (ECF 13 at 14 of 17.)

[11] *ChannelAdvisor* also involved a transfer motion by the defendants, not by a plaintiff that was tactically seeking to escape its own chosen forum. *See id.* at *1.

subpoenas, and any non-party fact witnesses can readily be compelled to attend depositions within 100 miles of where they reside, are employed, or regularly transact business in person. *See* Fed. R. Civ. P. 45(b)(2) & (c)(1)(A).

Third, while Miami and Louisiana Sheriffs speculate that "the vast majority of material fact witnesses are likely located in the Western District of North Carolina, where Dentsply is headquartered," and that it has "identified over sixty-five non-party witnesses located in or near Charlotte, North Carolina" (ECF 13 at 13 of 17), they provide few, if any, details about these purported witnesses or their locations. Nor do they demonstrate that their speculated convenience warrants transfer to WDNC. Key fact witnesses will also be located outside WDNC. For example, Defendant Casey—Dentsply's former CEO—is located in Florida, not North Carolina. Likewise, San Antonio FPPF, Miami, Louisiana Sheriffs, and all other lead plaintiff movants are located outside North Carolina (in Texas, Florida, Louisiana, Alabama, and Michigan).

Fourth, as explained above, transfer to SDNY will permit consolidation, while transfer to WDNC may not. Proceeding in SDNY is far more convenient for witnesses and counsel than potentially facing two duplicative lawsuits in WDNC and SDNY. *See Bui v. Armes*, No. 3:14CV428, 2014 WL 4983670, at *5 (N.D. Ohio Oct. 6, 2014) ("[H]aving one district court preside over several actions all related to the same set of events is clearly preferable to the witnesses. The parties and witnesses can more easily coordinate their schedules to minimize duplicative meetings, interviews, depositions, etc. . . . Thus, I find this factor strongly weighs in favor of transfer.").

Fifth, while Miami and Louisiana Sheriffs claim without explanation that transfer to WDNC "would provide relative ease of access to sources of proof" (ECF 13 at 14 of 17), with electronic discovery, this factor is neutral. *See Jones v. Ohio Nat'l Life Ins. Co.*, 2020 WL

4816233, at *3 (N.D. Ohio Aug. 19, 2020) (the "ease of access to sources of proof does not tilt towards either side, thanks to the ubiquity and ease of electronic document review and transfer"); *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) (location of documents is "largely a neutral factor in today's world of faxing, scanning, and emailing documents").

### 1. The Locus of Operative Facts Is Neutral at Best

Miami and Louisiana Sheriffs claim that the "main geographical focal point of the Action" is WDNC (ECF 13 at 13-14 of 17). However, Miami filed the Action in this District, not WDNC, and Defendants have not sought transfer to WDNC.[12] In these circumstances, the fact that Dentsply is headquartered in North Carolina (though incorporated in Delaware) cannot override the clear practical benefit of transfer to SDNY and consolidation with the SDNY Action. Indeed, the "existence of a related action in the transferee district is a strong factor" and "may be determinative." *Williams*, 2006 WL 399456 at *3. The "locus of operative facts" also has reduced importance in nationwide class actions like this one, where the principal considerations are efficiency and judicial economy. *Cf. In re Geopharma, Inc.*, No. 04 CIV. 9463 (SAS), 2005 WL 1123883, at *2 (S.D.N.Y. May 11, 2005) (nationwide scope of "operative facts" of securities fraud action rendered this factor "neutral"). From this viewpoint, there is no practical reason to extend Dentsply securities litigation into a third, entirely new jurisdiction. At best, this factor is neutral.

---

[12] As a result, Miami and Louisiana Sheriffs' citations to cases like *Truk Int'l Fund, LP v. Wehlmann*, 2009 WL 1456650, at *6 (S.D.N.Y. May 20, 2009), and *City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, 2015 WL 12659925, at *6 (S.D.N.Y. Apr. 30, 2015), are irrelevant. In both cases, the defendants—not the plaintiffs who filed the actions—sought transfer.

## 2. The Public Interest Favors Transfer to SDNY

Finally, the public interest supports transfer to SDNY, where the SDNY Action is pending. "No public interest is served by having [another] Court duplicate the efforts of the judges in the Southern District of New York."  *Commerzbank*, 2016 WL 3255071 at *5.  Moreover, while Miami and Louisiana Sheriffs correctly recognize that consolidation "before the same court" is necessary (ECF 13 at 15 of 17), it is far more efficient to transfer this Action to SDNY—the only jurisdiction with a related case—than to a third, unrelated forum.  Finally, SDNY is the nation's preeminent jurisdiction for complex securities litigation, with an active docket and ample capacity to ensure that these actions are efficiently consolidated and prosecuted.

## CONCLUSION

For the reasons discussed above, San Antonio FPPF respectfully requests that the Court: (1) grant this motion, permit San Antonio FPPF to intervene, and either dismiss the Action or transfer it to SDNY; (2) deny Miami and Louisiana Sheriffs' motion; and (3) grant any such further relief as the Court may deem just and proper.

DATED: August 18, 2022

Respectfully Submitted,

**CHANEY & DREXEL, LLC**

*/s/ John L. Chaney*
John L. Chaney (#0072447)
1 East Livingston Avenue
Columbus, OH 43215
Telephone: (614) 324-5900
chaney@chaneydrexel.com

*Local Counsel for Proposed Lead Plaintiff San Antonio Fire and Police Pension Fund*

**BLEICHMAR FONTI & AULD LLP**

Javier Bleichmar (*pro hac vice* forthcoming)

Nancy A. Kulesa (*pro hac vice* forthcoming)
Ross Shikowitz (*pro hac vice* forthcoming)
7 Times Square, 27th Floor
New York, NY 10036
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com
nkulesa@bfalaw.com
rshikowitz@bfalaw.com

*Counsel for Proposed Lead Plaintiff*
*San Antonio Fire and Police Pension Fund and*
*Proposed Lead Counsel for the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 18, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.


*/s/ John L. Chaney*
John L. Chaney