UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— x

SAN ANTONIO FIRE AND POLICE
PENSION FUND, Individually and on Behalf
of All Others Similarly Situated,

                   Plaintiff,

     vs.

DENTSPLY SIRONA INC., DONALD M.
CASEY, JR., and JORGE GOMEZ,

                Defendants.

————————————————————— x

:   Civil Action No. 1:22-cv-06339-JPC

:   <u>CLASS ACTION</u>

:   REPLY IN FURTHER SUPPORT OF THE
     PUBLIC PENSION FUNDS' MOTION FOR
     APPOINTMENT AS LEAD PLAINTIFF

4874-4563-9215

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...............................................................................................1

II.   ARGUMENT.....................................................................................................2

    A.    Miami and Louisiana Sheriffs Did Not Suffer the Greatest Loss ...........................2

        1.    LIFO Is the Preferred Methodology in This Court ....................................3

        2.    Courts Reject Attempts to Move the Goalposts After Seeing Competing Movants' Losses........................................................................4

        3.    Courts in This District Reject Loss Calculation Methods That Ignore the Purchase Price of Shares Bought During the Class Period .........................................................................................................5

        4.    Courts Reject the "Recoverable Loss" Methodology When the Underlying Case Involves Multiple Disclosures as in This Case ...............6

    B.    San Antonio's Opposition to the Public Pension Funds' Motion Contradicts Its Own Current Service as Lead Plaintiff as Part of a Group of Investors.........................................................................................................7

III.   CONCLUSION.................................................................................................10

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Ash v. PowerSecure Int'l, Inc.*,
2014 WL 5100607 (E.D.N.C. Oct. 10, 2014) ...............................................................................4

*Bo Young Cha v. Kinross Gold Corp.*,
2012 WL 2025850 (S.D.N.Y. May 31, 2012) ...............................................................................3

*Bodri v. Gopro, Inc.*,
2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ...............................................................................4

*China Agritech, Inc. v. Resh*,
__ U.S. __, 138 S. Ct. 1800 (2018) ...............................................................................................8

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
2021 WL 396343 (S.D.N.Y. Feb. 4, 2021) ...................................................................................4

*Cook v. Allergan PLC*,
2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ...........................................................................1, 4

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020) ...........................................................................1, 7

*Doherty v. Pivotal Software, Inc.*,
2019 WL 5864581 (N.D. Cal. Nov. 8, 2019) ..............................................................................10

*Eichenholtz v. Verifone Holdings, Inc.*,
2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ..............................................................................5

*Gross v. AT&T Inc.*,
2019 WL 7759222 (S.D.N.Y. June 24, 2019) .............................................................................10

*Gutman v. Sillerman*,
2015 WL 13791788 (S.D.N.Y. Dec. 8, 2015) ...............................................................................6

*Hevesi v. Citigroup Inc.*,
366 F.3d 70 (2d Cir. 2004) ............................................................................................................8

*Hirtenstein v. Cempra, Inc.*,
2017 WL 2874588 (M.D.N.C. July 5, 2017) .................................................................................5

*Hurst v. Enphase Energy, Inc.*,
2020 WL 7025085 (N.D. Cal. Nov. 30, 2020) ..............................................................................3

**Page**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
2013 WL 1558686 (S.D.N.Y. Apr. 11, 2013)........................................................................9

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009) ........................................................................................8

*In re Cardinal Health Inc. Sec. Litig.*,
226 F.R.D. 298 (S.D. Ohio 2005)........................................................................................8

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)................................................................................................9

*In re CMED Sec. Litig.*,
2012 WL 1118302 (S.D.N.Y. Apr. 2, 2012)......................................................................7

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
2004 WL 3314943 (N.D. Ohio May 12, 2004)...................................................................3

*In re Initial Pub. Offering Sec. Litig.*,
214 F.R.D. 117 (S.D.N.Y. 2002) ........................................................................................8

*In re Merck & Co., Sec., Derivative & "ERISA" Litig.*,
2016 WL 11575090 (D.N.J. June 28, 2016).......................................................................9

*In re Network Assocs. Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ................................................................................7

*In re Paysafe Ltd.*,
2022 WL 1471122 (S.D.N.Y. May 10, 2022) ................................................................1, 3

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H, Dec. 19, 2007) .....................................................................9

*In re Watchguard Sec. Litig.*,
2005 U.S. Dist. LEXIS 40923 (W.D. Wash. July 13, 2005) ..............................................7

*Louisiana Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*,
2020 WL 3396660 (S.D. Ohio June 19, 2020) ...................................................................5

*Marquez v. Bright Health Group, Inc.*,
2022 WL 1314812 (E.D.N.Y. Apr. 26, 2022) ....................................................................4

*Mehedi v. View, Inc.*,
2022 WL 377406 (N.D. Cal. Feb. 8, 2022) .....................................................................3, 4

**Page**

*Perrin v. Sw. Water Co.*,
 2009 WL 10654690 (C.D. Cal. Feb. 13, 2009)...........................................................................8

*Plaut v. Goldman Sachs Grp., Inc.*,
 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019)...........................................................................7

*Reimer v. Ambac Fin. Grp., Inc.*,
 2008 WL 2073931 (S.D.N.Y. May 9, 2008) ..............................................................................8

*Ret. Sys. v. Energy Transfer LP*,
 2020 WL 815136 (E.D. Pa. Feb. 19, 2020) .............................................................................10

*Sallustro v. CannaVest Corp.*,
 93 F. Supp. 3d 265 (S.D.N.Y. 2015)..........................................................................................6

*Simco v. Aegean Marine Petroleum Network Inc.*,
 2018 WL 11226076 (S.D.N.Y. Oct. 30, 2018)......................................................................1, 6

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
 §78u-4(a)(3)(B)(iii)(I)................................................................................................................1

## I.     INTRODUCTION

The competing movants have needlessly drawn out the lead plaintiff appointment process by failing to acknowledge or adhere to this District's well-settled jurisprudence, which provides that:

- LIFO is the preferred method to assess financial interest in cases like this;[1]

- Lead plaintiff movants cannot move the goalposts mid-briefing (like Miami and Louisiana Sheriffs attempt to do here) by switching financial interest metrics after realizing they do not prevail on their initially-asserted LIFO method;[2]

- It is improper to use a loss calculation method that entirely disregards purchase price (as Miami and Louisiana Sheriffs invite this Court to do);[3]

- It is improper to use a so-called "Recoverable Loss" methodology in cases like this involving multiple disclosures of defendants' alleged wrongdoing;[4] and

- As San Antonio itself is well aware, the PSLRA directs courts to appoint as lead plaintiff the "person *or group of persons*" with the largest financial interest.[5]

Moreover, even if the Court was inclined to ignore the shares sold by the Public Pension Funds before the first alleged partial disclosure as Miami and Louisiana Sheriffs contend for the first

---

[1]     *See, e.g.*, *In re Paysafe Ltd.*, 2022 WL 1471122, at *5 (S.D.N.Y. May 10, 2022) ("Courts in the Second Circuit have primarily looked to movants' asserted losses, as calculated under the Last-In, First-Out ('LIFO') methodology, when assessing financial interest under the PSLRA.").  Internal citations are omitted and emphasis is added unless otherwise noted.

[2]     *See, e.g.*, *Cook v. Allergan PLC*, 2019 WL 1510894, at *2-*3 (S.D.N.Y. Mar. 21, 2019) ("The fact that DeKalb used the same methodology as BRS in its original moving papers – only to alter its calculation when it learned that someone else had a larger loss – lends validity to the conclusion that the impact of *Dura* on the proposed lead plaintiffs' loss calculations is at best uncertain, and so should be discounted.").

[3]     *See, e.g.*, *Simco v. Aegean Marine Petroleum Network Inc.*, 2018 WL 11226076, at *3 (S.D.N.Y. Oct. 30, 2018) (methodology that "effectively precludes any consideration of purchase price" "will not be utilized by the Court").

[4]     *See, e.g.*, *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321, at *3 (S.D.N.Y. Dec. 28, 2020) ("we reject at this phase the application of *Dura* to loss calculation when the complaint alleges multiple partial disclosures").

[5]     *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  San Antonio is currently serving as lead plaintiff in two cases together with other institutional investors. *See Vaitkuviene v. Syneos Health, Inc.*, No. 18-cv-00029 (E.D.N.C. – serving with El Paso Firemen & Policemen's Pension Fund); *El Paso Firemen & Policemen's Pension Fund v. InnovAge Holding Corp.*, No. 21-cv-02770 (D. Colo. – serving with El Paso and Indiana Public Retirement System).

time in their opposition brief, the Public Pension Funds' $3.8 million *Dura* LIFO loss is ***still*** larger than Miami and Louisiana Sheriffs' *Dura* LIFO loss ($3.5 million) and San Antonio's *Dura* LIFO loss ($2.4 million). *See* ECF 18 at 4. As such, it is plain that Miami and Louisiana Sheriffs' newly-introduced method is not actually focused on whether the Public Pension Funds' loss is recoverable but rather was reverse-engineered in an attempt to elevate Miami and Louisiana Sheriffs' financial interest above that of the Public Pension Funds. The Public Pension Funds are the presumptive lead plaintiff. Their motion should be granted.

## II.   ARGUMENT

The only opposition to the Public Pension Funds' motion is predicated on: (a) Miami and Louisiana Sheriffs' argument that all movants' financial interests should be reduced by more than 50% based on a new method Miami and Louisiana Sheriffs concocted after realizing their LIFO loss was smaller than the Public Pension Funds; and (b) San Antonio's flawed assertion that groups of investors cannot serve as lead plaintiff. Neither contention has merit.

### A.   Miami and Louisiana Sheriffs Did Not Suffer the Greatest Loss

Miami and Louisiana Sheriffs belatedly attempt to introduce a loss methodology that entirely disregards purchase price. This has been repeatedly rejected by multiple members of this Court. When the LIFO loss method is used – that is, the very same method Miami and Louisiana Sheriffs and all other movants used in their motions before they knew other movants' losses – Miami and Louisiana Sheriffs lack the largest financial interest, even if this Court eliminates the shares sold by the Public Pension Funds before the April 19, 2022 or May 10, 2022 alleged disclosures:

| MOVANT | LIFO LOSS | *DURA* LIFO LOSS |
|---|---|---|
| **Public Pension Funds** | **$3.8 million** | **$3.8 million** |
| Miami and Louisiana Sheriffs | $3.5 million | $3.5 million |
| San Antonio | $2.4 million | $2.4 million |

*See* ECF 18 at 4.  Thus, because the Public Pension Funds still possess the greatest financial interest in the relief sought by the class when pre-disclosure sales are excluded, the Public Pension Funds remain the presumptive lead plaintiff and there has been no proof offered to rebut that presumption.

### 1.    LIFO Is the Preferred Methodology in This Court

Courts in this "Circuit have primarily looked to movants' asserted losses, as calculated under the Last-In, First-Out ('LIFO') methodology, when assessing financial interest under the PSLRA." *Paysafe*, 2022 WL 1471122, at *5; *Bo Young Cha v. Kinross Gold Corp.*, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) (observing that "the overwhelming trend both in this district and nationwide has been to use LIFO to calculate such losses") (collecting cases).  This is not controversial, as Louisiana Sheriffs itself has vigorously advocated that "courts in this Circuit . . . almost universally apply the LIFO accounting method."  *See UA Local 13 Pension Fund v. Bumble Inc.*, No. 1:22-cv-00624, ECF 30 at 3-4 (S.D.N.Y.).  Out of decades of case law concerning PSLRA lead plaintiff appointments and calculating financial interest, Miami and Louisiana Sheriffs were unable to cite ***any law*** from this District supporting the use of the so-called "Recoverable Loss" method instead of LIFO, let alone a decision upholding a movant's post-motion switch from initially advocating for LIFO to the "Recoverable Loss" method in an opposition brief.  ECF 19 at 2, 6.

Moreover, none of the four cases cited by Miami and Louisiana Sheriffs stand for the proposition they say they do.  They cite *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 2004 WL 3314943, at *3 (N.D. Ohio May 12, 2004), and *Mehedi v. View, Inc.*, 2022 WL 377406, at *5 (N.D. Cal. Feb. 8, 2022), for the proposition that "loss estimates can produce an inaccurate or 'illusory' picture of a movant's true financial interest in certain cases."  ECF 19 at 2.  But *Goodyear* criticized a movant's use of ***FIFO***, not LIFO, and doesn't discuss recoverable losses or *Dura* at all.  2004 WL 3314943, at *4.  And, unlike this case, *Mehedi* involved a single, end-of-class-period disclosure, not multiple disclosures.  2022 WL 377406, at *5; *see also Hurst v. Enphase Energy, Inc.*, 2020 WL

- 3 -

7025085, at *4 (N.D. Cal. Nov. 30, 2020) (same judge using same method when a single, end-of-class-period disclosure was alleged); *Ash v. PowerSecure Int'l, Inc.*, 2014 WL 5100607, at *3 (E.D.N.C. Oct. 10, 2014) (assessing recoverable loss in a case alleging a single, end-of-class-period disclosure).[6] Not only are all of the authorities outside of the Second Circuit, ***none*** support Miami and Louisiana Sheriffs' position here.  As such, the Court should deny Miami and Louisiana Sheriffs' mid-briefing pivot from LIFO loss to the Recoverable Shares Method.

## 2.    Courts Reject Attempts to Move the Goalposts After Seeing Competing Movants' Losses

"[C]ourts are especially skeptical of a movant who initially presents one position in their opening brief and switch[es] to another in their opposition after a new movant comes in alleging a greater loss." *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 2021 WL 396343, at *4 (S.D.N.Y. Feb. 4, 2021) (collecting cases). "Presenting new methodologies, loss calculations, or substantive allegations only in opposition, after the PSLRA deadline for moving to be appointed lead Plaintiff has closed, is the type of opportunism that is generally unfavored in appointing lead plaintiffs." *Id.*; *Marquez v. Bright Health Group, Inc.*, 2022 WL 1314812, at *6 (E.D.N.Y. Apr. 26, 2022) (finding movant's "argument to be opportunistic (and unpersuasive), given that he apparently initially used a loss calculation methodology similar to Van's, and only advanced the new calculation method . . . after the relevant deadline had passed, upon learning that Van had sustained the larger loss"). "This fact alone counsels in favor of adopting the LIFO methodology" all movants advocated for their motions.  *Id.*[7]

---

[6]    Miami and Louisiana Sheriffs' statement that ***counsel*** for the Public Pension Funds – when representing a different client in a different case – "advocated for using a recoverable loss methodology" is likewise irrelevant. ECF No. 19 at 3.  That case was initially filed before the same California judge that decided *Mehedi* and also involved a single, end-of-class-period disclosure.

[7]    *Cook*, 2019 WL 1510894, at *3; *Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) ("Only after the parties filed their opening briefs, and the parties were made aware of how

This is not the first time Louisiana Sheriffs has attempted to switch gears mid-briefing.  In *Louisiana Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*, 2020 WL 3396660 (S.D. Ohio June 19, 2020), Louisiana Sheriffs was part of a group that, upon realizing it lacked the largest financial interest under a method advocated in its motion, subsequently "abandoned" that method, "condemning it as misleading and exaggerative." *Id.* at *6.  In declining to permit Louisiana Sheriffs to reverse itself, the court noted that courts have "expressed disproval for vacillating advocacy such as this, especially as it pertains to calculating losses for appointment as lead plaintiff." *Id*.

Miami and Louisiana Sheriffs attempt to redeploy the same tactic here upon facing a clear (but undesired) outcome under the LIFO method they initially urged in their motion.  They now ask the Court to exclusively focus on a so-called "Recoverable Loss" method which, ironically, ***reduces their own losses by nearly $2 million***.  *Compare* ECF 10 at 7 (asserting a $3.5 million loss "when calculated on a LIFO basis") *with* ECF 19 at 3 (asserting a $1.6 million "Recoverable Loss").  As such, the Court should be skeptical of Miami and Louisiana Sheriffs' new methodology.  *See Eichenholtz v. Verifone Holdings, Inc*., 2008 WL 3925289, at *2, *4 (N.D. Cal. Aug. 22, 2008) (using method that "maximizes" potential losses and expressing concern as to "why a plaintiff would argue for" a position that "would have the effect of ***reducing*** the class size and limiting the potential amount of damages, ***unless it was in the best interest of that particular plaintiff only***").

### 3.     Courts in This District Reject Loss Calculation Methods That Ignore the Purchase Price of Shares Bought During the Class Period

Miami and Louisiana Sheriffs argue that net shares purchased should be determinative of

---

their respective motions would fare under this methodology, did the Majesty Palms Group argue that the more appropriate measure of greatest financial stake was the 'retained shares' methodology," and "[t]his fact alone counsels in favor of adopting the LIFO methodology, as opposed to the retained shares methodology."); *Hirtenstein v. Cempra, Inc*., 2017 WL 2874588, at *3 n.4 (M.D.N.C. July 5, 2017) ("The court rejects the Gluck Group's request to 'change[] [its] method of valuation upon realizing [its] defeat' under normal valuation methods.").

financial interest here according to a so-called *Dura* loss calculation which multiplies the movants' net shares held on a disclosure date by the amount the stock dropped after the corrective disclosure. ECF 19 at 3. In so urging, Miami and Louisiana Sheriffs ignore the persuasive decisions by judges in this District rejecting that very method. *See Simco*, 2018 WL 11226076, at *2-*3 ("Silverback's methodology" which "effectively precludes any consideration of purchase price" "will not be utilized by the Court, and financial interest is determined by the traditional LIFO method that URS and all the other movants relied on in their motions.").[8]

In *Sallustro*, Judge Gardephe held that this so-called *Dura* loss calculation "which renders purchase price irrelevant – is inconsistent with the statutory scheme and with *Dura* itself." 93 F. Supp. 3d at 276, 277 (rejecting contention that *Dura* stands for the proposition "that purchase price plays no role in loss analysis"). In the end, the court found that "[t]he adoption of a standard in which purchase price never plays a part in determining loss would work a radical change in the law," and held that the movant with the largest loss was "the presumptive lead plaintiff." *Id*. Accordingly, this Court should utilize the loss method all movants advocated in their moving papers – LIFO.

### 4.    Courts Reject the "Recoverable Loss" Methodology When the Underlying Case Involves Multiple Disclosures as in This Case

Miami and Louisiana Sheriffs' "Recoverable Loss" methodology (also known as the "retained shares method") urges the Court to only consider the shares held immediately before an alleged disclosure and multiply those shares held by the amount of the alleged stock decline. *See* ECF 19 at 3. Whatever possible (and questionable) merit there might be in using such a method in a case involving a single, end-of-class-period disclosure, ***this*** is not such a case. Both complaints and

---

[8]    *See also Sallustro v. CannaVest Corp*., 93 F. Supp. 3d 265, 276 (S.D.N.Y. 2015) ("Chesner's new loss model – which renders purchase price irrelevant – is inconsistent with the statutory scheme and with *Dura* itself."); *Gutman v. Sillerman*, 2015 WL 13791788, at *4-*6 (S.D.N.Y. Dec. 8, 2015) (following *Sallustro* and instead accepting movants' LIFO losses).

all movants agree that this case involves leakage of defendants' wrongdoing over a period of time, including on April 19, 2022 and May 10, 2022. *See* ECF 1 at ¶¶12, 14, 51, 52, 59; ECF 6 at 4-5; ECF 10 at 5; ECF 14 at 2-3. And, in cases like this involving multiple alleged disclosures where the "fraud premium fluctuates, neither the gross nor the net number of shares purchased is a good indicator of financial loss, since the loss depends on how large the fraud premium was at the time of the purchase." *In re Watchguard Sec. Litig.*, 2005 U.S. Dist. LEXIS 40923, at *11 (W.D. Wash. July 13, 2005); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (acknowledging that the retained shares method "gets into trouble . . . if the amount of the 'fraud premium' varied" during the class period).

Stated simply: a varying fraud premium – which all movants and all plaintiffs acknowledge exists in this case with multiple disclosures – further militates against shifting to the use of a retained share method. *See Di Scala*, 2020 WL 7698321, at *3 ("we reject at this phase the application of *Dura* to loss calculation when the complaint alleges multiple partial disclosures"); *Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *4 (S.D.N.Y. Sept. 19, 2019) (where, as here, the "complaint alleges multiple partial disclosures over the course of the Class Period," this Court has been "reluctant" to apply such an approach at the lead plaintiff stage); *In re CMED Sec. Litig.*, 2012 WL 1118302, at *4 n.8 (S.D.N.Y. Apr. 2, 2012) ("The Court is not aware of any case in this Circuit – and the Bachmann Group has not cited any – that has calculated losses" pursuant to "the 'Dura LIFO loss[]'" approach "for purposes of appointing a lead plaintiff where the pleadings allege partial corrective disclosures.").

**B.      San Antonio's Opposition to the Public Pension Funds' Motion Contradicts Its Own Current Service as Lead Plaintiff as Part of a Group of Investors**

San Antonio is currently serving as lead plaintiff in two cases together with other institutional investors just like the Public Pension Funds (and actually with one of the Public Pension Funds'

constituent members, El Paso, in both cases).  *See* ECF 18 at 8 n.6.  Thus, it strains credulity for San Antonio to argue that the Public Pension Funds "are not an eligible Lead Plaintiff candidate" because they are more than one entity.  ECF 21 at 2.[9]

While it is true that courts in this District do not blindly appoint large groups of unrelated individual investors, recognizing that the PSLRA, the SEC, and the Supreme Court expressly permit or have endorsed the appointment of cohesive groups of institutional investors as lead plaintiff, courts in this District routinely hold that a small group of sophisticated institutions capable of joint decision-making may be appointed lead plaintiff.[10]  *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) ("the group is comprised of large public pension funds" and "are thus the type of sophisticated institutional investors envisioned by Congress in the enactment of the PSLRA"); *Reimer v. Ambac Fin. Grp., Inc.*, 2008 WL 2073931, at \*3 (S.D.N.Y. May 9, 2008) (same); *see also In re Cardinal Health Inc. Sec. Litig.*, 226 F.R.D. 298, 307 (S.D. Ohio 2005) (appointing "a small group of investors, each of whom is a sophisticated investor" that demonstrated "common goals in pursuing [the] litigation" and a "harmonious relationship").[11]  This is so even where a competing movant claims to have suffered a larger individual loss.  *See Perrin v. Sw. Water Co.*, 2009 WL 10654690, at \*3-\*4 (C.D. Cal. Feb. 13, 2009) (appointing group of four

---

[9]    *See Vaitkuviene v. Syneos Health, Inc.*, No. 18-cv-00029 (E.D.N.C. – served along with El Paso); *El Paso Firemen & Policemen's Pension Fund et. al. v. InnovAge Holding Corp.*, No. 21-cv-02770 (D. Colo. – serving along with El Paso and Indiana Public Retirement System).

[10]   As the Supreme Court recently recognized, "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups, so even a small shareholder could apply for lead-plaintiff status, hoping to join with other shareholders to create a unit with the largest financial interest." *China Agritech, Inc. v. Resh*, __ U.S. __, 138 S. Ct. 1800, 1807 n.3 (2018).

[11]   San Antonio's citation to *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 n.13 (2d Cir. 2004), for the proposition that "courts have 'rejected repeatedly' attempts to 'cobble together a lead plaintiff group'" is misleading.  ECF 21 at 1.  That language is actually a parenthetical quote from *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002), which follows a statement that the "purpose of having a lead plaintiff" was "to empower one ***or several investors*** with a major stake in the litigation to exercise control over the litigation." *Hevesi*, 366 F.3d at 82 n.13.  In short, *Hevesi* reiterates the statute's express provision: more than one entity can serve as lead plaintiff.

investors over single movant with larger loss than any group member).  In fact, many of the largest securities class action recoveries in this District and around the country were achieved in cases led by groups of investors just like the Public Pension Funds.[12]

The Public Pension Funds have unquestionably demonstrated that its members are prepared, qualified, and eager to represent the investor class.  Like the other groups appointed lead plaintiff in this District, the Public Pension Funds have established their qualifications to serve as lead plaintiff in this case.  *See* ECF 15-5. Among other things, their declaration confirms that the Public Pension Funds "decided to seek appointment as lead plaintiff several weeks" before their declaration was signed on July 29, 2022 and August 1, 2022 and the decision to move collectively "was informed by a variety of factors, including the pre-existing contacts between ourselves and our organizations' representatives" and their "shared advisors (including our investment manager that purchased Dentsply Sirona stock on our behalves)."[13]  ECF 15-5 at ¶5. Indeed, such evidence is similar to what San Antonio itself has provided when seeking to serve as a member of a group *and* what has been repeatedly accepted by courts in this District as a strong demonstration of adequacy.  *See* Exhibits A & B attached hereto.

Moreover, following recent Supreme Court authority regarding the expiration of the statute of limitations and statue of repose in securities cases, district courts across the country have routinely

---

[12]  *See, e.g., In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 2013 WL 1558686, at *1-*2 (S.D.N.Y. Apr. 11, 2013) ($2.425 billion recovery achieved by five institutions as lead plaintiff); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 252 n.1, 261 (D.N.H, Dec. 19, 2007) ($3.2 billion recovery achieved by five institutions as lead plaintiff); *In re Cendant Corp. Litig.*, 264 F.3d 201, 217 (3d Cir. 2001) ($3.2 billion recovery achieved by three institutions as lead plaintiff); *In re Merck & Co., Sec., Derivative & "ERISA" Litig.*, 2016 WL 11575090, at *1, *6 (D.N.J. June 28, 2016) ($1.062 billion recovery achieved by institution and individuals as lead plaintiff).

[13]  This evidence plainly contradicts San Antonio's contentions that the Public Pension Funds "claim no real connection" and were "produced" by counsel "in an apparent attempt to unseat" San Antonio. ECF 21 at 2-3. As San Antonio itself acknowledges, its complaint was not filed until July *26*, 2022 (ECF 1), yet all three Public Pension Funds' Certifications were dated *weeks before then* on June 9, 2022, July 12, 2022, and July 19, 2022.  *See* ECF 15-3.

recognized the desirability for putative classes to be led by small groups of institutional investors similar to the Public Pension Funds. *See, e.g., Gross v. AT&T Inc.*, 2019 WL 7759222, at *2 (S.D.N.Y. June 24, 2019); *Allegheny Cty. Emps.' Ret. Sys. v. Energy Transfer LP*, 2020 WL 815136, at *8 (E.D. Pa. Feb. 19, 2020); *Doherty v. Pivotal Software, Inc.*, 2019 WL 5864581, at *12 (N.D. Cal. Nov. 8, 2019). The court's decision in *Allegheny County* is particularly notable because it addressed the same hypocritical situation as here:

> I find merit in the Group's contention that the aggregation of highly sophisticated institutional investors is materially different from an alliance of large numbers of small investors connected by lawyers. Indeed, [the competing movant] has recognized just such a distinction in arguments before other federal courts where it sought approval for smaller groups of investors with which it had joined to serve as lead plaintiff.

*Allegheny Cty.*, 2020 WL 815136, at *8. The situation is no different here. The Public Pension Funds have a long history of service as fiduciaries in securities cases like this. San Antonio itself is currently serving alongside one Public Pension Fund member (El Paso) in two cases and is well-aware of the benefits of serving jointly as lead plaintiff. As such, there is no basis to accept San Antonio's argument against the Public Pension Fund's motion in this case.

## III.   CONCLUSION

The Public Pension Funds suffered the greatest LIFO loss ($3.8 million) and *Dura* LIFO loss ($3.8 million). They are entirely typical and adequate of the putative class. Accordingly, the Public Pension Funds respectfully request that the Court grant their motion.

DATED:  August 22, 2022                  Respectfully submitted,

*s/ David A. Rosenfeld*
DAVID A. ROSENFELD

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
JENNIFER N. CARINGAL
MICHAEL ALBERT
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
jcaringal@rgrdlaw.com
malbert@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

VANOVERBEKE, MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel for Proposed Lead Plaintiff

- 11 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on August 22, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ David A. Rosenfeld
DAVID A. ROSENFELD

ROBBINS GELLER RUDMAN
& DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

Email:  drosenfeld@rgrdlaw.com

# Mailing Information for a Case 1:22-cv-06339-JPC San Antonio Fire and Police Pension Fund v. Dentsply Sirona Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Javier Bleichmar**
  jbleichmar@bfalaw.com

- **James Ormerod Heyworth , V**
  jheyworth@sidley.com,nyefiling@sidley.com,james-heyworth-0340@ecf.pacerpro.com

- **Peter J. Mardian**
  pmardian@sidley.com,peter-mardian-6204@ecf.pacerpro.com,nyefiling@sidley.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Hannah Elizabeth Ross**
  hannah@blbglaw.com,catherine@blbglaw.com

- **Andrew W. Stern**
  astern@sidley.com,andrew-stern-8481@ecf.pacerpro.com,nyefiling@sidley.com,ygarcia@sidley.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)