**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAN ANTONIO FIRE AND POLICE PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>DENTSPLY SIRONA INC., DONALD M. CASEY, JR., and JORGE GOMEZ,<br><br>    Defendants. | Case No. 1:22-cv-06339-JPC-SLC<br><br>CLASS ACTION |

**REPLY IN FURTHER SUPPORT OF THE MOTION**
**OF SAN ANTONIO FIRE AND POLICE PENSION FUND FOR APPOINTMENT AS**
**LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL,**
**AND IN OPPOSITION TO THE COMPETING MOTIONS**

## TABLE OF CONTENTS

A.    The Purported Groups are improperly formed and cannot aggregate their financial interests to be appointed Lead Plaintiff. ........................................................................................... 1

B.    Miami and Louisiana Sheriffs' tactics exemplify the inefficiencies that stem from group leadership. .......................................................................................................................... 6

C.    San Antonio FPPF has the largest financial interest. ............................................................ 9

## TABLE OF AUTHORITIES

**Cases**

*Chauhan v. Intercept Pharm.*,
2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) ........................................................ 2, 5

*City of Brockton Ret. Sys. v. The Shaw Grp., Inc.*,
2007 WL 2845125 (S.D.N.Y. Sept. 26, 2007)........................................................ 4

*Elstein v. Net1 UEPS Techs, Inc.*,
2014 WL 3687277 (S.D.N.Y. July 23, 2014) ........................................................ 2

*Galmi v. Teva Pharms. Indust. Ltd.*,
302 F. Supp. 3d 485 (D. Conn. 2017)............................................................... 3, 8

*Hedick v. Kraft Heinz Co.*,
2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) ........................................................ 5

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009) ......................................................................... 4

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ................................................................................ 4

*In re Cloudera, Inc. Sec. Litig.*,
2019 WL 6842021 (N.D. Cal. Dec. 16, 2019)........................................................ 2

*In re CMED Sec. Litig.*,
2012 WL 1118302 (S.D.N.Y. Apr. 2, 2012) ........................................................ 6

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012)....................................................................... 3, 4

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
2004 WL 3314943 (N.D. Ohio May 12, 2004) ........................................................ 5

*In re Petrobras Sec. Litig,*
104 F. Supp. 3d. 618 (S.D.N.Y. 2015) ............................................................. 2, 3

*In re Wells Fargo & Co. Sec. Litig.*,
No. 20-cv-4494, ECF No. 59 (S.D.N.Y. Aug. 29, 2020) .......................................... 5

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015) ............................................................... 3, 5

*Kniffin v. Micron Tech., Inc.,*
379 F. Supp. 3d 259 (S.D.N.Y. 2019) ................................................................ 2

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008) ............................................................... 1, 2, 3, 5

*Williams v. Block.One*,
   2020 WL 4505569 (S.D.N.Y. Aug. 4, 2020) ................................................................. 2

**Statutes**

15 U.S.C. § 78u ................................................................................................................... 8

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ 2

There is no dispute that San Antonio FPPF asserts the ***single*** largest financial interest and is a typical and adequate class representative.  The record also establishes that the two movant "groups" (the Public Pension Funds and Miami and Louisiana Sheriffs) were cobbled together by lawyers for purposes of assembling the largest financial interest.  Each group is a random assemblage of investors loosely sewn together from different states across the country with no real connection other than sharing the same law firm.  As such, the overwhelming weight of authority in this District renders them ineligible to be appointed under the PSLRA.  This Court has never appointed such a group, and there is no reason to do so here.

Recent events underscore why neither "group" should be appointed.  The proposed "group" of Miami and Louisiana Sheriffs has already demonstrated the inefficiency, waste, and problems of coordination that such lawyer-driven "groups" present.  As reflected in the letters filed last week, their counsel now seek to extend litigation into a third forum by attempting to transfer the case Miami itself chose to file in the Southern District of Ohio to the Western District of North Carolina, where no related case is pending.  They also sought to burden this Court with a duplicative motion to transfer the instant action despite being non-parties—and on a three-day briefing schedule—even before Judge Morrison rules in the Ohio action.  The Court denied the request today.  *See* ECF No. 31.  Congress enacted the PSLRA for the precise purpose of ending this type of lawyer-driven litigation.  San Antonio FPPF will be an excellent Lead Plaintiff, and appointing it will secure a single institution's coordinated, efficient leadership for the Class.

**A.**     **The Purported Groups are improperly formed and cannot aggregate their financial interests to be appointed Lead Plaintiff.**

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)—the leading authority in this District on "groups" under the PSLRA—requires that a proposed "group" pass a five-factor evidentiary test and demonstrate that it was not "assembled as

a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action." There is broad consensus on this standard to determine whether unrelated group members will be able to function cohesively and effectively and manage the litigation apart from their lawyers consistent with Rule 23. *See, e.g.*, *Chauhan v. Intercept Pharm.*, 2021 WL 235890, at *3-4 (S.D.N.Y. Jan. 25, 2021) (applying *Varghese* consistent with "[t]he majority of courts, including those in this District"); *Kniffin v. Micron Tech.*, *Inc.,* 379 F. Supp. 3d 259, 262-63 (S.D.N.Y. 2019) (same); *Williams v. Block.One*, 2020 WL 4505569, at *3 (S.D.N.Y. Aug. 4, 2020) (applying *Varghese* factors); *In re Petrobras Sec. Litig.,* 104 F. Supp. 3d. 618, 622-23 (S.D.N.Y. 2015) (same).

Here, neither "group" has even attempted to show how it satisfies the five-factor evidentiary test, and the record clearly demonstrates that both "groups" were assembled by attorneys and should not be appointed.

**Factor 1: No Pre-Litigation Relationship.** There is no evidence of a meaningful "pre-litigation relationship between group members." *Varghese*, 589 F. Supp. 2d at 392. It is undisputed that the members of both "groups" lack the close-knit economic and familial ties that can demonstrate such a relationship, which further heightens the groups' burden to establish they are eligible for appointment. *Elstein v. Net1 UEPS Techs, Inc.*, 2014 WL 3687277, at *4 (S.D.N.Y. July 23, 2014); *see also* ECF No. 21 at 4-5. That Miami and Louisiana Sheriffs litigated a case together twenty years ago does not advance the ball. *See In re Cloudera, Inc. Sec. Litig.*, 2019 WL 6842021, at *7 (N.D. Cal. Dec. 16, 2019) (refusing to appoint group of two unrelated institutional investors despite that they "jointly served as plaintiffs in a class action arising from investments in [a] pharmaceutical company").

**Factor 2: Counsel Aggregated the Groups.** San Antonio FPPF presented a detailed timeline showing how law firms aggregated the groups together over the course of roughly two months to attempt to manufacture the largest financial interest. *See* ECF No. 21 at 5-9. There is no connection—other than sharing the same law firm—between Miami (in Florida) and Louisiana Sheriffs (in Louisiana), or between Wayne County (Michigan), El Paso (Texas), and Birmingham (Alabama). The members of each "group" apparently spoke to each other for the first time about this case immediately before the deadline to seek appointment as Lead Plaintiff. ECF No. 21 at 9.

This is anathema under the PSLRA. *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015) ("[m]any courts—including this one—have turned away pastiche plaintiffs whose grouping appears to be solely a product of the litigation"); *Petrobras*, 104 F. Supp. 3d at 621-22 ("Allowing unrelated plaintiffs to band together in order to manufacture a larger financial interest [is inconsistent with the PSLRA because it] . . . ensures that the lawyers . . . are the true drivers of the litigation"); *Varghese*, 589 F. Supp. 2d at 392 ("courts in this District do not hesitate to deny a proposed group's motion for lead plaintiff status . . . if the court otherwise is persuaded that the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors").

The Court should not "permit the [] Group[s] to aggregate [their] individual stakes and, in effect, steal the presumption as lead plaintiff" from San Antonio FPPF. *Galmi v. Teva Pharms. Indust. Ltd.*, 302 F. Supp. 3d 485, 496 n.4 (D. Conn. 2017); *see also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 120 (E.D.N.Y. 2012) ("the Court seeks to avoid the impression that a group of

unrelated investors has been cobbled together . . . to displace a single competing institutional investor").[1]

**Factor 3: No Concrete Plans for Cooperation.** The groups have not put forward any concrete plans for supervising the litigation. The groups have also failed to put forward any specific mechanism for resolving disputes, despite Miami and Louisiana Sheriffs acknowledging the possibility (ECF No. 11-3 ¶14) which risks leaving the class rudderless in the event of a disagreement. *See* ECF No. 21 at 9-11.

**Factor 4: Minimal Involvement in Litigation.** Based on the evidence in the record, the only joint involvement either group has had in this litigation, with all its members, is a single conference call immediately prior to the Lead Plaintiff deadline. Before or after that call, there is no evidence that the group members have met, spoken, or communicated in any way to ensure this case is prosecuted in the best interests of the Class. That Miami filed a complaint against Dentsply individually and without Louisiana Sheriffs only underscores that appointing a "group" will not advance the interests of the Class. *See Gentiva*, 281 F.R.D. at 119 (refusing to appoint group of two institutional investors "especially in light of the fact that [one of the investors] previously brought one of the consolidated actions in its own name"); *see also* ECF No. 21 at 12.

---

[1] The cases cited by the Public Pension Funds are inapposite. For instance, *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) recognized that "[i]f [] a court were to determine that the movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner," as here. *City of Brockton Ret. Sys. v. The Shaw Grp., Inc.*, 2007 WL 2845125, at *5 (S.D.N.Y. Sept. 26, 2007) appointed a group that had "a significant pre-existing relationship." And *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) involved a group that affirmatively "established their ability to act independent of counsel" and submitted particular "plans for joint oversight over the litigation and joint supervision of counsel, including implementing protocols for regular communication among members and with counsel."

4

Further, as discussed below, Miami and Louisiana Sheriffs' tactics in attempting to transfer this case to North Carolina (ECF No. 17) only exemplify the type of inefficiency and waste the Court can expect if a "group" is appointed. Such lawyer-driven tactics "bel[y] the notion that [group members] would take an active role in the litigation supervising counsel and if necessary, restricting the role of counsel, in the best interests of efficiently prosecuting the case on behalf of the class." *Intercept Pharm.*, 2021 WL 235890, at *5.

**Factor 5: Sophistication.** That the groups are comprised of institutional investors is irrelevant given that they were assembled by law firms. *See Alibaba*, 102 F. Supp. 3d at 534 (rejecting aggregation when "[o]n the whole, no matter how experienced or sophisticated these plaintiffs may be, the [] Group appears to be nothing more than a lawyer-created group of unrelated investors who were cobbled together in the hope of thereby becoming the biggest loser").

Because both "groups" have failed to satisfy their evidentiary burden under *Varghese*, 589 F. Supp. 2d at 392, and they were demonstrably "assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action," *id.*, they are ineligible for appointment.[2]

---

[2] The cases cited by Miami and Louisiana Sheriffs are similarly distinguishable or support San Antonio FPPF. *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 2004 WL 3314943, at *3 (N.D. Ohio May 12, 2004) refused to appoint a group of two institutional investors that "ha[d] no relationship pre-dating this litigation and were joined solely for the purpose of prosecuting this case." *In re Wells Fargo & Co. Sec. Litig.*, No. 20-cv-4494, ECF No. 59 (S.D.N.Y. Aug. 29, 2020), is a boilerplate order appointing a group of investors that is unavailable on Westlaw and has not been submitted as required under Rule 2.C. of this Court's Practices. We attach it as Ex. A to the Bleichmar Decl., for the Court's convenience. Finally, in *Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at *7 (N.D. Ill. Oct. 8, 2019) there was "no indication that these sophisticated institutional investors will be unable to operate effectively as a unit," as there is here.

**B.    Miami and Louisiana Sheriffs' tactics exemplify the inefficiencies that stem from group leadership.**

The proposed "group" of Miami and Louisiana Sheriffs has already created burden, inefficiency, and problems of coordination, and demonstrates why the Court should not appoint a "group" and thereby vest control of this case with the lawyers.

Miami filed a substantially related securities class action against Dentsply in the Southern District of Ohio on June 2, 2022. *See* ECF No. 22-1. Its counsel stated in a press release issued on the same day that "[t]he complaint is based on an extensive investigation and a careful evaluation." ECF No. 7-2.

Weeks after Miami filed the complaint, sometime in July 2022 (the precise timing is not clear, *see* ECF Nos. 11-1, 11-3), Louisiana Sheriffs became involved in the group, apparently at the instigation of counsel. *See* ECF No. 11-3 ¶9; *see also In re CMED Sec. Litig.*, 2012 WL 1118302, at *5 (S.D.N.Y. Apr. 2, 2012) (statement in declaration that group of three members decided to proceed together "*[i]n consultation with our counsel*" was evidence that group was "[ineligible] for appointment as a lead plaintiff group") (emphasis in original).

Next—after the Lead Plaintiff motions were filed and the financial interests of the competing movants materialized—counsel for Miami and Louisiana Sheriffs attempted to salvage their bid by seeking to escape both jurisdictions where related securities actions are pending. On August 15, 2022, at 10:02 PM, they moved to transfer the case Miami itself filed in Ohio to the Western District of North Carolina, despite no related case pending there. On the same day, they sought a premotion conference with this Court to transfer this case to the same District. *See* ECF No. 17. Miami and Louisiana Sheriffs' claimed basis for transfer is primarily that Dentsply is headquartered in North Carolina. *Id.* at 2. The "extensive investigation and [] careful evaluation" that served as the basis for Miami filing its complaint in Ohio (ECF No. 7-2) turned out to be an

individual defendant's LinkedIn profile (Donald M. Casey, Jr.) that simply stated "Dublin, Ohio," *see* Bleichmar Decl. Ex. B, while basic diligence would have shown that Casey lived in Florida. *See* ECF No. 28-1 at 4.

Defendants informed counsel for Miami and Louisiana Sheriffs roughly three weeks ago on July 29, 2022 (ECF No. 13-1 ¶4) that Casey "no longer resides in Ohio," admittedly "severing the only tie between the securities fraud claims and that district." ECF No. 17 at 1. But rather than act promptly on that information, Miami and Louisiana Sheriffs let it linger for weeks before suddenly seeking to transfer both actions to North Carolina during Lead Plaintiff briefing.

Because Miami and Louisiana Sheriffs have long known that Dentsply is headquartered in North Carolina, it appears that the claimed basis for their newfound desire to transfer both cases there is simply a pretext. Miami and Louisiana Sheriffs are now seeking transfer in an apparent effort to find a new venue and bootstrap into a larger loss. Two facts reveal this apparent purpose:

First, citing the "pending Lead Plaintiff motions" in Ohio (ECF No. 23 at 1 n.2), they refuse to dismiss Miami's Ohio complaint and did not seek to transfer it to this District, despite the related action pending in this Court and the substantively identical Lead Plaintiff motions pending here on behalf of all the same movants. By seeking to avoid this Court and shunt the Ohio complaint to North Carolina—a third jurisdiction that has had no involvement in this matter—Miami and Louisiana Sheriffs appear to be fishing for a different venue to decide the Lead Plaintiff issue.

Second, Miami and Louisiana Sheriffs' August 15 Lead Plaintiff opposition brief filed in this Court (ECF No. 19) proposes for the first time a new "Recoverable Loss" financial interest methodology. Using that methodology, Miami and Louisiana Sheriffs claim a combined loss larger than the Public Pension Funds (although even this new methodology leaves Miami and Louisiana Sheriffs (and each member of the second purported "group") with smaller individual

losses than San Antonio FPPF).  *See* ECF No. 19 at 6-9; Bleichmar Decl. C.  Tellingly, Miami and

Louisiana Sheriffs cite no case within this Circuit or the Sixth Circuit (where Miami filed its case)

using that specific method, but cite a single case from North Carolina that appears to have done

so.  *See* ECF No. 19 at 6, 9.

None of this advances the interests of the Class, and this Court should not condone Miami

and Louisiana Sheriffs' tactical effort to transfer two cases to a third District to secure a perceived

advantage in the Lead Plaintiff contest.  Their actions confirm that full control of the case is vested

with the lawyers—the precise risk that has led other courts to reject such groups.  *See, e.g., Teva*,

302 F. Supp. 3d at 495 ("Permitting unrelated investors to form a group of lead plaintiffs also

creates problems of coordination, risks duplication of effort, and reduces the incentive of any

individual group member to carry out its lead plaintiff duties to the fullest extent").

In contrast to these lawyer-driven tactics, San Antonio FPPF is actively engaged and

working efficiently to resolve the procedural morass Miami and Louisiana Sheriffs have created,

as reflected in its premotion conference letter.  *See* ECF Nos. 28, 28-1.  At this point, there is a

simple solution.  First, Judge Morrison in the Southern District of Ohio should determine whether

the related Ohio action should be transferred to this Court.  Second, if the Ohio action is transferred,

this Court should consolidate the actions and appoint a Lead Plaintiff, consistent with the PSLRA.

*See* 15 U.S.C. § 78u-4(a)(3)(B)(ii).  This will ensure that the Class speaks with a single, unified

voice in a single action, while conserving the resources of the Court and parties.  *See* ECF No. 30.[3]

---

[3] There is no valid reason to hold the pending Lead Plaintiff motions in "abeyance," as Miami and Louisiana Sheriffs suggest, until after this Court decides their "forthcoming transfer motion" to transfer this action to Ohio. ECF No. 19 at 12.  The Court did not authorize that motion (ECF No. 31) and competing motions to transfer the Ohio action are already pending before Judge Morrison.

Finally, to distract from their own failure to satisfy the *Varghese* factors, the Public Pension Funds state in a footnote that San Antonio FPPF has agreed to serve in Lead Plaintiff groups in the past. *See* ECF No. 18 at 8 n.6. Those cases lend no support to the improperly formed groups in this case, particularly given the evident inefficiencies and problems of coordination that "group" activity has already caused here. Suffice it to say that San Antonio FPPF engaged in a thoughtful and deliberate process before committing to serve as Lead Plaintiff in this case and decided to seek appointment as Lead Plaintiff alone. Appointing San Antonio FPPF—a single institutional investor—rather than a disparate lawyer-created "group" will best serve the interests of the Class.

**C.    San Antonio FPPF has the largest financial interest.**

There is no dispute that San Antonio FPPF has the single largest financial interest under all the *Lax* Factors.[4] The Public Pension Funds and Miami and Louisiana Sheriffs quibble over whether net shares or net funds expended should be afforded more weight. *See* ECF Nos. 18 at 3; 19 at 2. They also disagree as to the most accurate method to calculate loss. *See* ECF Nos. 18 at; 4; 19 at 5-9. However, the Court need not wade into these complex accounting disputes because San Antonio FPPF has the single largest financial interest under all the *Lax* Factors, including all the loss methodologies proposed by all movants. *See* Bleichmar Decl. Ex. C; *see also* ECF No. 21 at 13-16. This includes the new "recoverable loss" method proposed by Miami and Louisiana Sheriffs, as set forth in the table below.[5]

---

[4] The financial interest metrics that the Public Pension Funds and Miami and Louisiana Sheriffs put forward are for their improperly aggregated groups and thus should not be considered. *See* ECF Nos. 18 at 4; 19 at 5-9. We respectfully refer the Court to the charts submitted by San Antonio FPPF for the breakdown of each individual investor. *See* ECF No. 21 at 13-16.

[5] To conserve the resources of the parties and the Court, San Antonio FPPF takes no position on the validity of this methodology or the other proposed methodologies at this time, other than to reserve its rights should an opposing movant claim there is a single investor (or related group of investors) that asserts a financial interest larger than San Antonio FPPF. As shown herein, that is not the case.

| Movant | Retained Shares[6] | 4/19/22 Stock Decline | 4/19/22 Recoverable Loss | 5/9/22 Stock Decline | 5/9/22 Recoverable Loss | Total Recoverable Loss |
|---|---|---|---|---|---|---|
| San Antonio FPPF | 105,450 | $6.52 | $687,534 | $2.87 | $302,642 | **$990,176** |
| Louisiana Sheriffs | 90,988 | $6.52 | $593,242 | $2.87 | $261,136 | **$854,377** |
| Miami | 79,950 | $6.52 | $521,274 | $2.87 | $229,457 | **$750,731** |
| Birmingham | 76,800 | $6.52 | $500,736 | $2.87 | $213,241 | **$713,977** |
| El Paso | 50,740 | $6.52 | $330,825 | $2.87 | $145,624 | **$476,449** |
| Wayne County | 39,900 | $6.52 | $260,148 | $2.87 | $114,513 | **$374,661** |

In sum, San Antonio FPPF has the single largest financial interest, triggering the presumption that it is the most adequate plaintiff under the PSLRA, and no competing movant has sought to rebut that presumption.

By contrast, both "groups" have failed to satisfy the evidentiary burden that *Varghese* requires to aggregate their losses, and each member's individual financial interest is less than San Antonio FPPF's. As a result, neither "group" should be appointed. The proposed group leadership in this case has already led to increased costs and inefficiencies, will invariably cause more in the future, and has confirmed that appointing a "group" would improperly vest control of this case with the lawyers. This is precisely what Congress enacted the PSLRA to prevent.

Dated:  August 22, 2022

Respectfully Submitted,

**BLEICHMAR FONTI & AULD LLP**

*/s/ Javier Bleichmar*
Javier Bleichmar
Nancy A. Kulesa
Ross Shikowitz
7 Times Square, 27th Floor
New York, NY 10036
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com

---

[6] The number of retained shares are the same for all investors for both disclosure dates, except Birmingham, which sold 2,500 shares of Dentsply stock between the April 19, 2022 disclosure and the May 9, 2022 disclosure. Birmingham retained 76,800 shares as of 4/19/22, as reflected in the table above, and 74,300 shares as of May 9, 2022.

nkulesa@bfalaw.com
rshikowitz@bfalaw.com

*Counsel for Proposed Lead Plaintiff*
*San Antonio Fire and Police Pension Fund*
*and Proposed Lead Counsel for the Class*

11