**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAN ANTONIO FIRE AND POLICE PENSION FUND, CITY OF BIRMINGHAM RETIREMENT AND RELIEF SYSTEM, EL PASO FIREMEN & POLICEMEN'S PENSION FUND, and WAYNE COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>  v.<br><br><br>DENTSPLY SIRONA INC., DONALD M. CASEY, JR., JORGE GOMEZ, and RANJIT S. CHADHA<br><br>     Defendants. | Case No. 22-cv-06339-AS<br><br>CLASS ACTION<br><br>Oral Argument Requested |

**DEFENDANTS' OMNIBUS REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.     Plaintiffs Fail to Raise a Strong Inference of Scienter............................................ 2

         A.     Plaintiffs Fail to Advance Motive and Opportunity
                 Allegations .............................................................................................. 2

         B.     Plaintiffs Fail to Allege Strong Circumstantial Evidence of
                 Scienter. .................................................................................................. 3

II.    Many of the AC's Alleged Misstatements Are Not Adequately
     Pleaded...................................................................................................................... 10

III.   The AC Fails to Adequately Plead Loss Causation. ................................................ 13

IV.   The AC Fails to Plead Scheme Liability.................................................................. 15

V.    The AC Fails to Plead Control Person Liability ...................................................... 15

CONCLUSION................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Abramson v. Newlink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020)............................................................................. 13

*Africa v. Jianpu Tech. Inc.*,
2023 WL 5432282 (S.D.N.Y. Aug. 23, 2023)................................................... 7

*Bishins v. CleanSpark, Inc.*,
2023 WL 112558 (S.D.N.Y. Jan. 5, 2023) ....................................................... 11

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
556 F. Supp. 3d 100 (D. Conn. 2021)............................................................... 14

*Cohen v. Stevanovich*,
722 F. Supp. 2d 416 (S.D.N.Y. 2010)............................................................... 15

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*,
323 F. Supp. 3d 393 (S.D.N.Y. 2018)............................................................... 14

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)............................................................................... 2

*In re Bemis Co. Sec. Litig.*,
512 F. Supp. 3d 518 (S.D.N.Y. 2021)............................................................... 9

*In re Citigroup, Inc. Sec. Litig.*,
330 F. Supp. 2d 367 (S.D.N.Y. 2004)............................................................... 9

*In re Dentsply Sirona, Inc. Sec. Litig.*,
2023 WL 2682905 (E.D.N.Y. Mar. 29, 2023)................................................... 5, 13

*In re DraftKings Inc. Sec. Litig.*,
650 F. Supp. 3d 120 (S.D.N.Y. 2023)............................................................... 11

*In re the Hain Celestial Grp. Inc. Sec. Litig.*,
2019 WL 1429560 (E.D.N.Y. 2019).................................................................. 8

**Page(s)**

*In re PXRE Grp., Ltd., Sec. Litig.*,
  600 F. Supp. 2d 510 (S.D.N.Y. 2009)............................................................... 3

*In re Vivendi Universal, S.A. Sec. Litig.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003)............................................................ 3, 14

*In re Wachovia Equity Sec. Litig.*,
  753 F. Supp. 2d 326 (S.D.N.Y. 2011).............................................................. 1, 5

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)............................................................................... 4

*Kramer v. Time Warner Inc.*,
  937 F.2d 767 (2d Cir. 1991)............................................................................... 9

*Malin v. XL Cap. Ltd.*,
  499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) ........... 11

*Meyer v. Jinkosolar Holdings Co. Ltd.*,
  761 F.3d 245 (2d Cir. 2014)............................................................................. 12

*Nguyen v. New Link Genetics Corp.*,
  297 F. Supp. 3d 472 (S.D.N.Y. 2018)................................................................ 3

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)............................................................. 3, 5, 10, 11

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
  367 F. Supp. 3d 16 (S.D.N.Y. 2019).................................................................. 5

*Ontario Tchrs' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
  432 F. Supp. 3d 131 (D. Conn. 2019)............................................................... 14

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
  11 F.4th 90 (2d Cir. 2021) ............................................................................... 15

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
  2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020)..................................................... 12

*Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.*,
  645 F. Supp. 2d 210 (S.D.N.Y. 2009)............................................................... 14

*Ret. Ass'n v. comScore, Inc.*,
  268 F. Supp. 3d 526 (S.D.N.Y. 2017)............................................................... 13

**Page(s)**

*S.E.C. v. Shapiro*,
   2018 WL 2561020 (S.D.N.Y. June 4, 2018) ..................................................... 3

*SEC v. Kelly*,
   817 F. Supp. 2d 340 (S.D.N.Y. 2011)............................................................. 15

*Thomas v. Shiloh Indus., Inc.*,
   2018 WL 4500867 (S.D.N.Y. 2018)............................................................... 8

*Tyler v. Liz Claiborne, Inc.*,
   814 F. Supp. 2d 323 (S.D.NY. 2011)............................................................. 7

## PRELIMINARY STATEMENT[1]

The AC attempts to convert a limited financial Restatement adjusting Dentsply's net sales by 0.5% for one year to account for certain sales incentives into a sweeping securities fraud claim alleging a myriad of purported misstatements entirely unrelated to the Restatement. But the AC suffers from several fatal defects, the principal of which is "the absence of any serious effort to specify the contradictory information available to Defendants at the time of the alleged misstatements" that would show any Defendant acted with scienter. *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 351 (S.D.N.Y. 2011). Plaintiffs' Opposition fails to rescue the AC from the deficiencies identified in Defendants' Motion. As an initial matter, the Opposition concedes that the AC does not adequately plead that Defendants had a fraudulent motive. The AC also does not meet the high standard for pleading circumstantial evidence of scienter in the absence of a properly pleaded motive. The Opposition's repeated refrain that Defendants *must have* known of all the alleged issues betrays the weakness of Plaintiffs' claims. Notably, Plaintiffs do not point to a *single* allegation of a specific report or direct communication by any of the individuals who approved sales incentives (that form the basis of the Restatement) to any of the Individual Defendants regarding this practice. The Opposition attempts to deflect this fatal flaw by focusing instead on unrelated allegations of product defects and supply chain constraints, but those allegations fail too. Plaintiffs do not properly plead that Defendants were aware of these purported issues at the time of any alleged misstatements, or show that the purported product and supply chain issues are connected in any way to the alleged "channel stuffing" misstatements.

---

[1] Unless otherwise indicated, all capitalized terms herein have the meanings given in Defendants' Omnibus Memorandum of Law in Support of Their Joint Motion to Dismiss the Amended Complaint, dated October 10, 2023, ECF No. 96 (the "Motion"). "Opposition" refers to Plaintiffs' Opposition to Defendants' Omnibus Joint Motion to Dismiss the Amended Complaint, dated December 8, 2023, ECF No. 97.

Finally, although the failure to establish scienter is sufficient to warrant dismissal of the AC in its entirety, the AC suffers from additional flaws:  the failure to establish that many of the alleged misstatements were materially false or misleading at the time they were made; the failure to adequately plead loss causation for all but one of the alleged corrective disclosures; and the failure to establish scheme or control person liability.  The AC should accordingly be dismissed.

## ARGUMENT

### I.      Plaintiffs Fail to Raise a Strong Inference of Scienter

Defendants demonstrated in their Motion that the AC fails to establish scienter, which requires pleading with particularity specific facts that either (1) show a "motive and opportunity" to defraud or (2) constitute "strong circumstantial evidence of conscious misbehavior or recklessness."  *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009); *see* Mot. Section I.

### A.  Plaintiffs Fail to Advance Motive and Opportunity Allegations

Plaintiffs concede that the AC does not adequately plead motive and opportunity to commit fraud, advancing only their theory of circumstantial evidence in the Opposition, *see* Opp. at 23, and acknowledging that a desire to hit financial targets to increase compensation—a motive common to all corporate executives—does not suffice to plead fraudulent motive, *see id.* at 31; Mot. at 14.  Thus the Court need not address motive and opportunity.

To the extent Plaintiffs attempt to resurrect the AC's insufficient motive allegations by arguing that the compensation allegations generally "support[] scienter," Opp. at 31, that attempt fails.  Plaintiffs obfuscate the motive standard precisely because they cannot meet it.  The allegations that an "outsized portion" of the Individual Defendants' 2021 compensation depended on Dentsply meeting certain "financial targets impacted by" the alleged fraud, Opp. at 31, do not suffice to plead motive as a matter of law.  *See* Mot. at 14.  And the cases on which Plaintiffs rely,

*see* Opp. at 31–32, are readily distinguishable.  In those cases, the allegations went far beyond a general desire to increase helpful financial metrics.  *See In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 185 (S.D.N.Y. 2003) (motive "to inflate company stock prices as a means to effectuate a specific acquisition"); *Nguyen v. New Link Genetics Corp.*, 297 F. Supp. 3d 472, 498– 99 (S.D.N.Y. 2018) (motive to lie about patient enrollment to obtain bonus tied to enrollment); *S.E.C. v. Shapiro*, 2018 WL 2561020, at *6–7 (S.D.N.Y. June 4, 2018) (motive to lie to customers to obtain bonus tied to revenue).  In contrast, here, Plaintiffs fail to tie any concrete, personal benefit unique to any Individual Defendant to any specific alleged misstatement or omission.

### B.  Plaintiffs Fail to Allege Strong Circumstantial Evidence of Scienter

The AC also fails to adequately plead either conscious misbehavior or recklessness, as required to establish circumstantial evidence of scienter.  *See* Mot. Section I.B.  Plaintiffs do not argue conscious misbehavior, *see* Opp. Section IV.C, and fail to satisfy the stringent requirements for establishing recklessness.  Notably, the AC fails to support its contentions that Defendants had access to contrary facts by "specifically identify[ing] the reports or statements containing this information," *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000), or alleging facts showing "that specific contradictory information was available to" Defendants when they made their statements, *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 536 (S.D.N.Y. 2009) (citation omitted).

Instead, as the Opposition confirms, the scienter arguments boil down to the rhetorical point of "how could Defendants not have known."  *See* Opp. at 23–24 ("Defendants would have the Court believe that the Company's CEO, CFO, and CAO were unaware . . . ."); *id.* at 27 (arguing it is "implausible" that Defendants "had no idea what was going on").  But that argument is never enough to meet the high bar for pleading a securities fraud claim.  *See, e.g.*, Mot. at 19–20; *PXRE*, 600 F. Supp. 2d at 535 ("[A]n allegation that a defendant merely 'ought to have known' is not sufficient to allege recklessness.") (citation omitted).

3

***Executive Compensation.*** Plaintiffs conflate the motive and recklessness inquiries by arguing that their executive compensation allegations generally "support[] scienter." Opp. at 31. But the Second Circuit has squarely rejected this approach, explaining that Plaintiffs cannot "combine inadequate allegations of motive with inadequate allegations of recklessness" to plead scienter. *Kalnit v. Eichler*, 264 F.3d 131, 141 (2d Cir. 2001). In any event, as demonstrated *supra*, the cases on which Plaintiffs rely all contained additional allegations beyond a general desire to maximize bonuses, and Plaintiffs' allegations of a general desire to maximize bonuses is insufficient to establish scienter here. *See* Opp. at 31–32; Mot. at 13–24.

***Alleged Product Defects and Supply Chain Issues.*** Plaintiffs' attempt to rescue their pleadings by pointing to alleged reports and meetings concerning product defects and supply chain disruptions fails. Plaintiffs point to allegations that Casey attended unspecified meetings concerning product defects and had access to unspecified inventory and return request data, and that the impact of purported supply chain disruptions on Dentsply's revenue were "clear to Dentsply management" in 2021. *See* Opp. at 24–25. As an initial matter, Plaintiffs do not demonstrate how Defendants' alleged awareness of the purported product defects and supply chain issues would support an inference of scienter with respect to Plaintiffs' channel-stuffing allegations. Moreover, the AC fails to identify any *specific* meetings or *specific* reports that actually conveyed this information to Defendants. *See* Mot. at 16–17, 23–24. By contrast, the complaint in *Lexmark*, relied upon by Plaintiffs, *see* Opp. at 24, "pointed to specific numbers in [specific] slide decks throughout the Class Period and alleged that [the defendants] reviewed them," which the court distinguished from complaints (such as the AC here) containing "bare assertions [that the defendants, due to their high-level positions in the Company, had access to adverse undisclosed financial information through internal corporate documents, meetings, and

4

reports], without any further facts or details," *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 37 (S.D.N.Y. 2019) (quoting *PXRE*, 600 F. Supp. 2d at 538) (alteration in original). *In re Dentsply Sirona, Inc. Sec. Litig.*, 2023 WL 2682905 (E.D.N.Y. Mar. 29, 2023) ("*Dentsply I*"), is also distinguishable because the complaint contained well-pleaded allegations about *specific* reports that put the officer defendants on notice that their statements were false or misleading at the time they were made. *See id.* at *21. To the extent Plaintiffs rely on the case for a purported *modus operandi* argument, *see* Opp. at 24, *Dentsply I* concerned different individual defendants, a different time period, and different allegations.

The most specific allegation to which Plaintiffs point is Defendant Casey's attendance at a dinner sometime in 2021 in which he allegedly discussed one distributor's complaints about Primemill product defects. *See* Opp. at 25 (citing AC ¶ 50). This allegation fails to support the AC's claims for numerous reasons. *First*, taken at face value, it shows that Casey did *not* believe there were systematic product defects. *See* AC ¶ 50 (alleging Casey asserted distributor's complaints were unusual). *Second*, the AC fails to allege the source of this recounting of the meeting; at a minimum, the AC must "provid[e] documentary evidence and/or a sufficient general description of the personal sources of the plaintiffs' beliefs," but that is missing. *Novak*, 216 F.3d at 314; *see also infra* at 11. *Third*, the allegations are irrelevant to Plaintiffs' core theory of fraud. That is, even if the AC properly pleaded that Casey was aware of certain product defects sometime in 2021, the AC does not provide the requisite connective tissue between this allegation and any alleged knowing misstatements by Casey. *See* Mot. at 17–18. That is the case in particular on timing. Like the other product defect and supply chain allegations, this allegation impermissibly "requires the Court to reconstruct the chronology of Class Period allegations in order to decipher what Defendants knew or should have known on the date of a particular statement." *Wachovia*

5

*Equity*, 753 F. Supp. 2d at 352.  It is also the case on substance.  Plaintiffs assert that the dinner took place "before Defendants' channel-stuffing scheme was enacted," Opp. at 25, but never explain how it has anything to do with the core claim that Defendants made material misstatements while aware of accounting errors resulting from a purported "channel stuffing" scheme.

Plaintiffs also argue that Defendants Gomez and Chadha knew of or were deliberately reckless as to "the steep increases in warranty costs" from product defects in 2021 in light of their positions as CFO and CAO, respectively.  Opp. at 25.  But the operative question is whether Gomez and Chadha knew of or were deliberately reckless as to the ***incorrect accounting for warranty reserves***.  Plaintiffs plead no facts linking any purported access to information about warranty cost increases to warranty reserves accounting.

***Alleged Channel Stuffing.***  Plaintiffs also argue that because the individuals involved in the alleged channel-stuffing scheme reported to the Individual Defendants and the sales incentives were so "extraordinary in size and type," the Individual Defendants were necessarily involved. Opp. at 26–27.  But Plaintiffs do not identify any well-pleaded allegations connecting the Individual Defendants to the allegedly fraudulent conduct, such as a specific meeting about sales incentives that the Individual Defendants attended, and their boilerplate allegations that Defendants "should have known" are insufficient.  *See supra* at 4; Mot. at 19–20.  Notably, the AC fails to allege a *single* specific report or direct communication by any of the individuals who approved sales incentives to any of the Individual Defendants regarding this practice.  *See* Opp. at 28 (arguing only that it is "highly implausible" that the Individual Defendants did not know). Indeed, given that the Restatement ultimately impacted only 0.5% of Dentsply's net sales for one year, Plaintiffs' analogies to cases such as *Christine Asia*—where the complaint plausibly alleged that it was "virtually inconceivable" that Alibaba management was not aware of secret, high-level

meeting with Chinese regulators that posed an existential threat to the company, *see* Opp. at 26, 28 (citing *Christine Asia Co. Ltd. v. Ma*, 718 F. App'x 20, 23 (2d. Cir. 2017))—must be rejected. Moreover, there are no allegations that Chadha was involved in or had knowledge of the alleged channel stuffing.  *See* Mot. at 28–29.

Plaintiffs' reliance on alleged sales targets set by Casey, *see* Opp. at 26, is also insufficient. The use of sales targets is a widely employed and acceptable business strategy that cannot in itself support a fraud claim.  *See* Mot. at 20.

*Core Operations.*   Plaintiffs cannot and do not dispute that core operations allegations alone are never sufficient to plead scienter.  *See* Mot. at 27–28.  In any event, Plaintiffs' attempt to use creative math to place outsize weight on the CAD/CAM business, *see* Opp. at 34, fails as a matter of law, *see* Mot. at 28; *Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 343 (S.D.NY. 2011) (to be core, an operation must "constitute nearly all of a company's business").

*Executive Departures.*   As made clear in the Motion, executive departures "do not raise a strong inference of scienter absent additional factual allegations linking the executives' resignation to the alleged fraud."  *Africa v. Jianpu Tech. Inc.*, 2023 WL 5432282, at *8 (S.D.N.Y. Aug. 23, 2023) (citation and internal quotation marks omitted).  And the Investigation that Plaintiffs allege precipitated the Individual Defendants' departures, *see* AC ¶ 238, found that the Defendants investigated had *not* engaged in fraud or intentional wrongdoing, *see* Mot. at 25–26.

Attempting to salvage an inference of scienter, Plaintiffs argue a "direct[]" tie between the departures and alleged fraud based on statements in the Company's 2021 10-K/A identifying the appointments of a new CEO, CFO and CAO as "remedial steps taken to address material weaknesses in" internal controls over financial reporting.  Opp. at 33; *see also* AC ¶¶ 205, 238. As a threshold matter, the 2021 10-K/A does not suggest that the departures, all of which preceded

the conclusion of the Investigation, *see* AC ¶¶ 232–35, had anything to do with the identified weaknesses. *See, e.g.*, AC ¶ 32 (Gomez resigned "to become the CFO of Moderna"); AC ¶ 235 (Chadha's departure was "mutually agreed"). But more fundamentally, departures in connection with "remedial measures to correct material weaknesses" do not alone support a strong inference of scienter, because "it is just as plausible that [such] individuals resigned, were demoted, or were fired because of negligence and mismanagement." *In re the Hain Celestial Grp. Inc. Sec. Litig.*, 2019 WL 1429560, at *17–18 (E.D.N.Y. 2019); *see also Thomas v. Shiloh Indus., Inc.*, 2018 WL 4500867, at *6 (S.D.N.Y. 2018) (allegation that defendant left due to an investigation "does not give rise to the inference that [he] was aware of the fraud").

   ***Restatement and Internal Investigation.*** As Defendants demonstrated, Plaintiffs' allegations that Dentsply's financial statements were later determined to be incorrect is insufficient to show Defendants' awareness of the errors at the time the original statements were issued. *See* Mot. at 22–23. Plaintiffs continue to overstate the materiality of the Restatement, *see* Opp. at 34, but this is merely an attempt to distract from the fundamental defect in the AC—their failure to plead any specific allegations regarding Defendants' awareness of the accounting errors.

   Moreover, as shown in the Motion, Plaintiffs cannot cherry-pick findings from the Investigation that they believe support their claims, while ignoring others that are inconsistent with scienter—including the key finding of "no evidence of intentional wrongdoing or fraud." Mot. at 18–19. Citing authorities having nothing to do with the pleading requirements of the PSLRA, Plaintiffs maintain that they can indeed "rely on some findings from the Internal Investigation, but not others." Opp. at 37. Not so. To decide whether Plaintiffs have raised the required "strong inference" of scienter, the Court must consider the documents on which Plaintiffs chose to rely "in [their] entirety" and assess "whether *all* of the facts alleged, taken collectively, give rise to a strong

inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *In re Bemis Co. Sec. Litig.*, 512 F. Supp. 3d 518, 534 (S.D.N.Y. 2021) (citations omitted); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (securities plaintiffs cannot avoid dismissal by quoting "only selected and misleading portions" of documents). Plaintiffs thus cannot selectively point to certain Investigation findings to avoid the most compelling inference created by its full context—that there were issues with respect to the company's processes and controls, but that such issues were not the product of fraudulent intent.

Additionally, to the extent Plaintiffs point to the Investigation's findings that the company's processes or controls did not function as intended, *see* Opp. at 30, 35, such findings suggest corporate mismanagement, which cannot "support a securities fraud claim," *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 375 (S.D.N.Y. 2004); *see also* Mot. at 21.

***Item 303.*** Plaintiffs also argue that Defendants conceded that they made material omissions in violation of Item 303 by failing the inform investors of the trend of increasing channel inventory in the second half of 2021. Opp. at 12. Not so. Defendants demonstrated that Plaintiffs had failed to allege scienter with respect to the Item 303 claim, pointing to the lack of allegations supporting an inference that Defendants had any knowledge of this purported trend at the time that any relevant public statements were made. Mot. at 24–25.

***Assertions Not Supported by Complaint.*** In an effort to obfuscate their insufficient pleadings, Plaintiffs refer to "Defendants" collectively, improperly attributing conduct and knowledge to all Defendants where the AC contains no corresponding allegations as to particular Defendants. *See* Mot. at 11–12. For instance, the Opposition refers to "Defendants' channel-stuffing" collectively, Opp. at 1, 6, 14, 18, 25, 38, 39, and while the AC does not sufficiently allege that any Defendant knew or should have known of the alleged channel stuffing, it does not allege

9

any involvement in or knowledge of the channel stuffing on the part of Chadha, Mot. at 28–29.

*Defendant Chadha.*  The Motion highlighted the lack of particularized facts supporting Chadha's scienter, and Plaintiffs' Opposition fails to point to any.  Plaintiffs instead double down on their vague allegations regarding Chadha's departure, compensation, and role as CAO—all of which do not support any scienter inference, let alone raise a strong inference of it.  *See* Mot. 13–15, 26.  In particular, Plaintiffs do not allege the particulars of Chadha's compensation, its link to his performance, or how it relates to their scienter arguments.  *See* Opp. at 31–32.

## II.    Many of the AC's Alleged Misstatements Are Not Adequately Pleaded

Even if the failure to establish scienter did not independently warrant dismissal of the complaint, the bulk of the alleged misstatements in the AC are not actionable, either because they are not supported by specific facts or they are simply puffery or opinion.  *See* Mot. Section II.

*Unsupported Allegations.*  As shown in the Motion, the AC fails to plead sufficient facts demonstrating that Defendants' statements regarding Dentsply's supply chain, dealer inventory levels, digital product sales, and growth positioning were false or misleading when made.  *See* Mot. at 29–31.  In their Opposition, Plaintiffs point to the AC's allegations of shortages and product defects affecting Dentsply's imaging and digital equipment in 2H21.  *See* Opp. at 12–15, 19.  But these allegations are not supported by well-pleaded facts showing "the circumstances constituting fraud . . . with particularity."  *Novak*, 216 F.3d at 306.  The Restatement itself did not admit to any shortages or product defects, and the AC does not point to any other sources (confidential witnesses or documents) showing such alleged shortages or product defects.

Plaintiffs do not identify any sources for their conclusory allegations that Dentsply was "experiencing significant and worsening electronic component shortages that affected its imaging equipment" and that "end-user demand for Dentsply's digital products had been significantly damaged by ongoing product defects."  Opp. at 13, 17; AC ¶¶ 4, 46–55, 60, 66, 73–74, 91, 99–

110, 266. Such "generic and conclusory allegations based upon rumor or conjecture are undisputedly insufficient to satisfy" the PSLRA's heightened pleading standard. *Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 140 (D. Conn. 2007) (citation omitted), *aff'd*, 312 F. App'x 400 (2d Cir. 2009).

Furthermore, the AC's generic assertion that its allegations are based on a number of sources, including on "accounts of former Dentsply employees," AC at 1 n.1, does not provide Defendants fair notice of the factual basis for the AC's allegations, *see Novak*, 216 F.3d at 314, and must be rejected. Although a "confidential source need not be identified for his or her statements to be credited on a motion to dismiss," the complaint must describe such a source "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 154 (S.D.N.Y. 2023) (citation omitted). Here, the AC not only fails to identify which allegations, if any, are based on reports from former employees, but it also fails to allege (as it must) that the former employees were in a position of knowledge with respect to the allegations of supply chain issues and product defects—which were limited to just one part of the company (imaging and digital equipment) during the second half of 2021.

***Non-Actionable Puffery.*** As shown in the Motion, the AC fails to plead sufficient facts showing that statements regarding Dentsply's supply chain, dealer inventory levels, financial results, digital sales success, growth positioning, and governance and risk management practices were material as opposed to non-actionable puffery. *See* Mot. at 31–33; AC ¶¶ 100–05. The Opposition misrepresents many of those statements, *see* Opp. at 14–15, by omitting their context and accompanying qualifying language. Plaintiffs also fail to acknowledge the generality of those statements. *See* Mot. at 29–30. The statements in the cases Plaintiffs cite are far more specific.

*See, e.g.*, *Bishins v. CleanSpark, Inc.*, 2023 WL 112558, at *7–8 (S.D.N.Y. Jan. 5, 2023) ("specific estimates of the completion date of a major asset expansion").

Plaintiffs argue that by speaking, even generally, about Dentsply's supply chain, dealer inventory levels, and governance and risk management practices, Defendants had a duty to disclose any potential issues with these operations. *See* Opp. at 15–20. But that can be true only if such issues actually existed and Defendants were aware of them—neither of which is sufficiently pleaded here. The cases Plaintiffs cite to support their argument involved more detailed statements, allegations that the defendants were aware of certain issues, and/or issues that the company itself claimed to be essential to its business or financial condition. *See, e.g.*, *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, 2020 WL 1877821, at *9 (S.D.N.Y. Apr. 14, 2020) (duty to disclose where management had "actual knowledge"); *Meyer v. Jinkosolar Holdings Co. Ltd.*, 761 F.3d 245, 250 (2d Cir. 2014) (duty to disclose environmental problems where management had actual knowledge and had represented compliance with applicable regulations in SEC filings). Nor did Defendants, as Plaintiffs contend, Opp. at 12, 19, waive their argument that the statements regarding the effectiveness of Dentsply's internal controls and demand for digital products are puffery. Defendants demonstrated that such statements were puffery because they were "pitched at a general and aspirational level," Mot. at 33 (quoting *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 756 (S.D.N.Y. 2017)), and involved expression of "a generally positive assessment of the Company performance and optimism regarding future performance," Mot. at 31, respectively.

***Non-Actionable Opinion.*** Plaintiffs also argue that the challenged statements could not constitute opinion because they were made in response to questions from investors. Opp. at 15, 17, 22. But that context is irrelevant to whether these were opinion statements. The use of opinion phrases such as "we believe," coupled with Plaintiffs' failure to point to particularized facts

12

showing that Defendants did not believe those statements at the time they were made, dooms Plaintiffs' arguments.  *See* Mot. Section II.C.  The cases Plaintiffs cite are distinguishable because they concerned financial statements.  *See* Opp. at 15, 20; *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 546 (S.D.N.Y. 2017) (financial projections); *Dentsply I*, 2023 WL 2682905, at *18 (goodwill estimates).  Here, in contrast, the challenged opinion statements involved Dentsply's growth positioning and supply chain generally.

**III.     The AC Fails to Adequately Plead Loss Causation**

Defendants demonstrated that the AC fails to plead loss causation for all but one of the alleged corrective disclosures.  *See* Mot. Section III.  Plaintiffs argue that the alleged fraud was "constructively disclosed" through a sequence of events between February 28 and November 14, 2022. Opp. at 39.  Contrary to Plaintiffs' assertions, Defendants never articulated a "mirror image" requirement for corrective disclosures.  *Id.*  Rather, Defendants correctly argued that any alleged disclosure must address "the circumstances that bear upon the loss suffered."  Mot. at 25 (quoting *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005)).  Plaintiffs have not met their burden of linking each alleged loss-causing event to the alleged fraud.

*First*, Plaintiffs fail to plead a sufficient link between all but one of the disclosures and the alleged fraud.  *See* Mot. Section III.  The AC's allegations that the February and April 2022 announcements led to market speculation do not demonstrate the market was alerted to and reacted to the alleged channel-stuffing scheme, product defects, or supply chain issues.  *See* Mot. at 35–37.  Plaintiffs point to analyst reports describing the results as, among other things, "surprising" and "a bit of a shock to most in the investor community."  AC ¶¶ 269, 271.  But Plaintiffs do not point to any analyst identifying channel stuffing or product defects in particular.  *See Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 180 (2d Cir. 2020) (analyst report identifying issue related to clinical trial "did not alert the public to the falsity of" company statements regarding clinical

trial enrollment). And although the AC alleges that Dentsply's February 2022 announcement attributed lower-than-expected 4Q21 financial results to supply chain issues, as discussed *supra*, Dentsply repeatedly disclosed to investors the supply chain issues it faced throughout 2H21. *See* AC ¶¶ 100–01, 105, 266, 270. Nor do Plaintiffs show how the May 2022 announcement—which contained no mention of or even allusion to supply chain issues or product defects— "constructively disclosed" those issues. *See* Mot. at 37–38. That announcement disclosed an investigation into Dentsply's "use of" and "accounting for" "incentives to sell products to distributors" in 2H21. This "non-specific language" cannot constitute "notice to an investor that [Defendants] had engaged in the type of specific fraud[]" alleged. *Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 231 (S.D.N.Y. 2009).

*Second*, Plaintiffs' allegations regarding the February and April 2022 announcements are not sufficient to establish the beginning of a series of events constituting constructive disclosure. In cases where courts have accepted loss causation pleadings based on theories of constructive disclosure, the initial event involved far more than just an announcement of disappointing earnings. *See, e.g.*, *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 456 (S.D.N.Y. 2018) (arrest of CEO and reports that prosecutors had proof that senior executives knew about bribes); *Ontario Tchrs' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 432 F. Supp. 3d 131, 149 (D. Conn. 2019) (disclosure of government subpoenas and negative financial results); *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 140 (D. Conn. 2021) (announcement of delayed 10-Q filing and internal investigation); *Vivendi*, 838 F.3d at 262 (large sale of treasury shares).

*Finally*, Plaintiffs' attempt to shoehorn the November 14, 2022 earnings announcement into their loss causation pleadings fails because the part of that announcement upon which Plaintiffs rely, *see* Opp. at 44, was already disclosed in the Company's November 1, 2022

announcement.  *Compare* AC ¶ 280 (attributing 3Q21 "build in distributor inventory," in part, to "incremental incentives offered during that period"), *with* Mot. Ex. 6, Form 8-K at 3 ("incremental incentives . . . contributed to higher levels of distributor inventory" in 2H21).

## IV.    The AC Fails to Plead Scheme Liability

Plaintiffs cannot recast their inadequate 10b-5(b) claim as a "scheme liability" claim in the alternative; thus that claim also fails.  Despite Plaintiffs' assertion that the AC alleges "deceptive conduct" under 10b-5(a) and (c), the core of those allegations is that Defendants "conceal[ed] material facts" and "falsif[ied]" financial results.  Opp. at 10–11.  Because those allegations amount to nothing more than Plaintiffs' inadequate 10b-5(b) claim, they should be rejected.  *See SEC v. Kelly*, 817 F. Supp. 2d 340, 343 (S.D.N.Y. 2011) (Plaintiffs cannot "bypass the elements necessary to impose 'misstatement' liability . . . by labeling the alleged misconduct a 'scheme' rather than a 'misstatement[.]'").  Even if this Court were to consider Plaintiffs' scheme liability claims, those claims fail because Plaintiffs have not adequately pleaded scienter, as demonstrated *supra*.  *See Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021) (scienter is an element of scheme liability claims); *see also* Mot. at 12–29.

## V.    The AC Fails to Plead Control Person Liability

Plaintiffs' claim for Section 20(a) control person liability fails because Plaintiffs have failed to plead a primary violation of Section 10(b).  *See* Mot. at 39–40.  Further, because, as demonstrated *supra*, Plaintiffs fail to sufficiently plead scienter, they necessarily fail to plead "culpable participation."  *See Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 435 (S.D.N.Y. 2010).

## <u>CONCLUSION</u>

For the foregoing reasons and the reasons given in Defendants' Motion, the Court should dismiss the AC in its entirety with prejudice.

Dated:  January 8, 2024
        New York, New York

Respectfully submitted,


*/s/ Roger A. Cooper*
Roger A. Cooper
racooper@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999

*Counsel to Defendant Dentsply Sirona Inc.*


*/s/ Bryce L. Friedman*
Bryce L. Friedman
bfriedman@stblaw.com
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
T: 212-455-2000
F: 212-455-2502

*Counsel to Defendant Donald M. Casey, Jr.*


*/s/ Seth L. Levine*
Seth L. Levine
slevine@levinelee.com
LEVINE LEE LLP
1500 Broadway, Suite 2501
New York, NY 10036
T: 212-223-4400

*Counsel to Defendant Jorge Gomez*


*/s/ H. Christopher Boehning*
H. Christopher Boehning
cboehning@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
T: 212-373-3000

*Counsel to Defendant Ranjit S. Chadha*