UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

SAN ANTONIO FIRE AND POLICE :    Civil Action No. 1:22-cv-06339-AS
PENSION FUND, CITY OF BIRMINGHAM :    (Consolidated)
RETIREMENT AND RELIEF SYSTEM, EL :
PASO FIREMEN & POLICEMEN'S PENSION :
FUND, and WAYNE COUNTY EMPLOYEES' :    <u>CLASS ACTION</u>
RETIREMENT SYSTEM, Individually and on :
Behalf of All Others Similarly Situated, :    MEMORANDUM OF LAW IN SUPPORT OF
:    PLAINTIFFS' MOTION FOR CLASS
:    CERTIFICATION
                      Plaintiffs, :
:    [**REDACTED**]
:
     vs. :
:
:
DENTSPLY SIRONA INC., DONALD M. :
CASEY, JR., and JORGE GOMEZ, :
:
                      Defendants. :
:
———————————————————————— x

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ....................................................................................................1

II.  FACTUAL BACKGROUND ...................................................................................2

    A.  Summary of the Allegations ........................................................................2

    B.  The Proposed Class Representatives.............................................................7

III.  THE PROPOSED CLASS SATISFIES RULE 23 .................................................7

    A.  The Proposed Class Satisfies Rule 23(a)......................................................8

        1.  The Proposed Class Is Sufficiently Numerous ................................8

        2.  Questions of Law and Fact Are Common to the Class ....................9

        3.  The Proposed Class Representatives' Claims Are Typical .............9

        4.  The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Class ....................................................10

    B.  The Proposed Class Satisfies Rule 23(b)(3) ..............................................11

        1.  Common Questions of Law and Fact Predominate .......................12

            a.  Plaintiffs Are Entitled to the Fraud-on-the-Market Presumption of Reliance ................................................13

                (1)  The *Cammer* Factors............................................14

                (2)  The *Krogman* Factors..........................................17

            b.  Plaintiffs' Damages Model Is Consistent with the Proposed Class's Theory of Liability ................................18

        2.  Class Treatment Is Superior to Other Methods of Adjudication ...................19

    C.  The Proposed Class Is Ascertainable .........................................................20

    D.  Robbins Geller Should Be Appointed Class Counsel................................20

IV.  CONCLUSION ......................................................................................................20

4895-5772-2613.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..............................................................................................................12

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)....................................................................................................7, 12, 13

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)..............................................................................................................2, 13

*Billhofer v. Flamel Techs., S.A.*,
  281 F.R.D. 150 (S.D.N.Y. 2012) ........................................................................................11, 14

*Cammer v. Bloom*,
  711 F. Supp. 1264 (D.N.J. 1989) ........................................................................................14, 16

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
  310 F.R.D. 69 (S.D.N.Y. 2015) ........................................................................................ *passim*

*Erickson v. Jernigan Cap., Inc.*,
  692 F. Supp. 3d 114 (S.D.N.Y. 2023)...............................................................................9, 11

*Gruber v. Gilbertson*,
  2019 WL 4439415 (S.D.N.Y. Sep. 17, 2019)..........................................................................9

*Guadagna v. Zucker*,
  332 F.R.D. 86 (E.D.N.Y. 2019) ...........................................................................................10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)..............................................................................................................13

*In re Allergan PLC Sec. Litig.*,
  2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021)............................................................................1

*In re Alstom SA Sec. Litig.*,
  253 F.R.D. 266 (S.D.N.Y. 2008) .........................................................................................7, 12

*In re Am. Realty Cap. Props., Inc. Litig.*,
  2017 WL 3835881 (S.D.N.Y. Aug. 31, 2017)........................................................................18

*In re Aphria, Inc. Sec. Litig.*,
  342 F.R.D. 199 (S.D.N.Y. 2022) ........................................................................................10, 15

**Page**

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
  281 F.R.D. 134 (S.D.N.Y. 2012) .................................................................................8, 10

*In re Barrick Gold Sec. Litig.*,
  314 F.R.D. 91 (S.D.N.Y. 2016) ................................................................................14, 18

*In re Initial Pub. Offering Sec. Litig.*,
  544 F. Supp. 2d 277 (S.D.N.Y. 2008).............................................................................14

*In re JPMorgan Chase & Co. Sec. Litig.*,
  2015 WL 10433433 (S.D.N.Y. Sept. 29, 2015)..............................................................14

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015) ...............................................................................9, 19

*In re NIO, Inc. Sec. Litig.*,
  2023 WL 5048615 (E.D.N.Y. Aug. 8, 2023)................................................... *passim*

*In re NYSE Specialists Sec. Litig.*,
  260 F.R.D. 55 (S.D.N.Y. 2009) ..........................................................................1, 9, 19

*In re Petrobras Sec.*,
  862 F.3d 250 (2d Cir. 2017)............................................................................................20

*In re Pfizer Inc. Sec. Litig.*,
  282 F.R.D. 38 (S.D.N.Y. 2012) ...............................................................................12, 13

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2019 WL 3001084 (S.D.N.Y. July 10, 2019) .......................................................7, 9, 10, 20

*In re Vale S.A. Sec. Litig.*,
  2022 WL 122593 (E.D.N.Y. Jan. 11, 2022) ...................................................................18

*In re Veeco Instruments, Inc. Sec. Litig.*,
  235 F.R.D. 220 (S.D.N.Y. 2006) .....................................................................................8

*In re Winstar Commc'ns Sec. Litig.*,
  290 F.R.D. 437 (S.D.N.Y. 2013) .....................................................................................9

*Krogman v. Sterritt*,
  202 F.R.D. 467 (N.D. Tex. 2001) .............................................................................14, 17

*Martinek v. AmTrust Fin. Servs., Inc.*,
  2022 WL 326320 (S.D.N.Y. Feb. 3, 2022)...............................................................15, 16, 17

4895-5772-2613.v1

**Page**

*McIntire v. China MediaExpress Holdings, Inc.*,
    38 F. Supp. 3d 415 (S.D.N.Y. 2014)................................................................8, 9, 15

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
    328 F.R.D. 86 (S.D.N.Y. 2018) ...........................................................................15

*Pearlstein v. BlackBerry Ltd.*,
    2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) ...........................................14, 17, 18, 20

*Pirnik v. Fiat Chrysler Autos., N.V.*,
    327 F.R.D. 38 (S.D.N.Y. 2018) ...........................................................................15

*Puddu v. 6D Glob. Techs., Inc.*,
    2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021) .........................................................12

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015).................................................................................18

*Strougo v. Barclays PLC*,
    312 F.R.D. 307 (S.D.N.Y. 2016),
    *aff'd sub nom. Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017)..................................................................................15

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015)..................................................................................18

*Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*,
    546 F.3d 196 (2d Cir. 2008)................................................................................16

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017)........................................................................12, 14, 17

*Wilson v. LSB Indus., Inc.*,
    2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018)........................................8, 12, 16, 18

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78j(b)....................................................................................................12, 13, 18
    §78t(a)............................................................................................................12

4895-5772-2613.v1

**Page**

Federal Rules of Civil Procedure
Rule 23 ...................................................................................................................1, 7, 10
Rule 23(a)...............................................................................................................1, 7, 8
Rule 23(a)(1) ...............................................................................................................8
Rule 23(a)(2) ...............................................................................................................9
Rule 23(a)(3) ...............................................................................................................9
Rule 23(a)(4) .............................................................................................................10
Rule 23(b) ...................................................................................................................7
Rule 23(b)(3) ...........................................................................1, 2, 11, 18, 19
Rule 23(b)(3)(A) .......................................................................................................19
Rule 23(b)(3)(B) .......................................................................................................19
Rule 23(b)(3)(C) .......................................................................................................19
Rule 23(b)(3)(D) .......................................................................................................19
Rule 23(g)(1).............................................................................................................20
Rule 23(g)(1)(A) .......................................................................................................20

17 C.F.R.
§240.10b-5 ...............................................................................................................13
§240.10b-5(a)............................................................................................................12
§240.10b-5(b)............................................................................................................12
§240.10b-5(c)............................................................................................................12

4895-5772-2613.v1

Lead Plaintiffs City of Birmingham Retirement and Relief System, El Paso Firemen & Policemen's Pension Fund, and Wayne County Employees' Retirement System (together, "Plaintiffs") respectfully submit this memorandum of law in support of their motion for an order: (1) certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23; (2) appointing Plaintiffs as Class Representatives; and (3) appointing Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.

## I.    INTRODUCTION

Pursuant to Rule 23(a) and (b)(3), Plaintiffs move for certification of a class consisting of:

> All persons and entities who purchased the publicly traded common stock of Dentsply Sirona Inc. ("Dentsply" or the "Company") between June 9, 2021 and November 13, 2022, inclusive (the "Class Period"), and were damaged thereby (the "Proposed Class").[1]

"Courts have long recognized that class actions are a desirable means for resolving claims based on securities laws . . . ." *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at *17 (S.D.N.Y. Sept. 8, 2021); *see also In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 75 (S.D.N.Y. 2009). This securities case is no exception.

First, this action satisfies each requirement of Rule 23(a):

- *Numerosity*: During the Class Period, there were more than 1,000 institutional investors in Dentsply common stock, and an average of 9.6 million shares of Dentsply common stock traded on a weekly basis, meaning there are likely thousands of Proposed Class members who were harmed by Defendants' misconduct.

- *Commonality and Typicality*: Defendants made the same false and misleading public statements and engaged in the same scheme to defraud all Proposed Class members. Plaintiffs, like all Proposed Class members, were injured by Defendants' misconduct.

---

[1]    Excluded from the Proposed Class are: (i) defendants Dentsply, Donald M. Casey, Jr. ("Casey"), and Jorge Gomez ("Gomez" and, together with Casey and Dentsply, "Defendants"); (ii) the officers and directors of Dentsply, at all relevant times; (iii) members of the immediate families and legal representatives, heirs, successors or assigns of the individuals identified in (i) or (ii); and (iv) any entity in which any of the Defendants has or had a controlling interest.

- • **_Adequacy_**: Plaintiffs are institutional investors that have engaged qualified counsel, actively litigated this case, participated in discovery, and are committed to prosecuting this action to maximize the recovery for the Proposed Class.

This action also satisfies Rule 23(b)(3)'s predominance and superiority requirements. Predominance is met because key questions – including whether Defendants made false or misleading statements and engaged in a scheme to defraud – will be answered on a classwide basis. Plaintiffs are also entitled to a presumption of classwide reliance under the fraud-on-the-market theory set forth in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). Further, common issues regarding damages predominate because damages can be measured on a classwide basis. A class action is also the superior method for adjudicating the Proposed Class's claims and promoting judicial economy, as the alleged misconduct damaged thousands of geographically dispersed investors, many of whom have claims too small to economically pursue individual litigation. Plaintiffs respectfully submit that their motion should be granted.

## II.    FACTUAL BACKGROUND

### A.    Summary of the Allegations

This is a federal securities action against Dentsply, former Dentsply CEO Casey, and former Dentsply CFO Gomez. Plaintiffs allege that during the Class Period, Defendants issued a series of materially false and misleading statements and engaged in a scheme to defraud that created the illusion that Dentsply's business was robust and sustainably growing, when, in reality, it was experiencing severe operational challenges. The alleged misconduct led to: (1) Dentsply eventually admitting that its financial reporting for the three and nine months ending September 30, 2021 and its fiscal year ("FY") 2022 financial reporting had been materially misstated and required restatement, and that Casey and Gomez had violated Dentsply's code of conduct; (2) a spate of executive departures; and (3) a still-ongoing investigation by the U.S. Securities and Exchange Commission ("SEC").

4895-5772-2613.v1

Dentsply is a multi-billion-dollar corporation that manufactures and sells professional dental products ranging from small, single-use tools to expensive digital equipment such as imaging machines and CAD/CAM (computer aided design/manufacturing) devices.  ¶¶37-38.[2]  Throughout the Class Period, Dentsply's Technology and Equipment ("T&E") business was responsible for the majority of the Company's revenue, and its digital equipment featured prominently in Dentsply's growth story.  ¶239.  Dentsply sold all of its digital equipment through distributors (*e.g.*, Henry Schein and Patterson Dental), which then sold the equipment to end-users such as dental offices.  ¶39.  Because distributors purchased only as much as they could quickly sell to end-users, Dentsply's sales to distributors depended on end-user demand.  ¶56.

Leading up to the Class Period, Defendants were eager to assure investors that Dentsply's digital business was healthy and growing sustainably.  ¶¶43, 45.  But by the first half of 2021, widespread defects were infecting Dentsply's digital products, including its highly touted Primemill.  ¶¶47-52; Ex. 1 at -5862 ████████████████████████████████████████████████████████ ████████████████████████████████████████████.[3]  The product defects not only decreased Dentsply's revenue by causing increased returns, but also damaged customer confidence and demand.  ¶52; Ex. 2 at -3866 ██████████████████████████████████████████ ████████████████████████; Ex. 3 at -6407 ████████████████████████ ████████████████████████████████████████████████.  Meanwhile, worsening supply constraints were inhibiting Dentsply's ability to deliver (and so recognize revenue from sales of) its popular and high-margin imaging equipment.  ¶¶53-54; Ex. 4 ███████████████

---

[2]    Unless otherwise noted, all "¶_" or "¶¶_" references are to the Amended Complaint for Violations of the Federal Securities Laws (ECF 72), emphasis is added, and citations and internal footnotes are omitted.

[3]    All exhibits referenced herein are attached to the Declaration of Luke O. Brooks in Support of Plaintiffs' Motion for Class Certification, filed concurrently herewith.

4895-5772-2613.v1

███████████████████████████████████████████████

████████████████ .

Defendants knew that these challenges were threatening Dentsply's ability to achieve its internal sales targets and investors' financial expectations in the second half of 2021. ¶55. Accordingly, Casey and Gomez placed extreme pressure on Dentsply executives to manipulate financial forecasts and engage in "channel-stuffing" in order to meet those forecasts. ¶¶55-62; Ex. 5 at -5853-54 ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████ . Through the channel-stuffing scheme, Dentsply executives offered distributors outsized incentives, including rebates and extended payment terms, to purchase additional CAD/CAM equipment that exceeded end-user demand. ¶¶55, 60; Exs. 6-7. The scheme worked, and in the third quarter of 2021 ("3Q21") alone, it allowed Dentsply to sell tens of millions of dollars of additional CAD/CAM equipment. ¶63.

The channel-stuffing helped Dentsply meet 3Q21 sales and financial targets, but it worsened Dentsply's outlook for the fourth quarter of 2021 ("4Q21"). Because distributors had purchased equipment in excess of end-user demand, their inventory levels had ballooned – by the end of 3Q21, distributor inventory levels were *$80 million* higher than they were at the beginning of 2021. ¶66. Since distributors would sell their current inventory before buying more, Defendants had effectively shifted the Company's 4Q21 sales into 3Q21. Still plagued by supply constraints, product defects, and limited demand – and now excess distributor inventory – Dentsply had one way to achieve its 4Q21 financial targets: more channel-stuffing. ¶¶66-71; Exs. 8-9. Again, the scheme allowed Dentsply to sell tens of millions of dollars of additional CAD/CAM equipment in 4Q21. ¶71.

4895-5772-2613.v1

Properly accounting for the incentives would have reduced the revenue Dentsply could recognize from the additional sales made through the channel-stuffing scheme. ¶63. Accordingly, Dentsply largely ignored the incentives when preparing its financial reports, resulting in falsely overstated revenue and understated liabilities. *Id.* The improper accounting, which violated Generally Accepted Accounting Principles ("GAAP"): (1) enabled Dentsply to meet investor expectations in 3Q21; (2) allowed Casey and Gomez to achieve millions in bonus compensation that was tied to hitting financial targets; and (3) concealed Dentsply's ongoing channel-stuffing and operational challenges. *See* ¶¶90, 211-226; Ex. 10.

Defendants further concealed their scheme by making materially false and misleading statements during earnings calls. For example, despite an astounding $80 million inventory build in 3Q21, when a financial analyst asked whether distributor inventory levels had changed, Gomez replied that "we are not seeing that at this point." ¶246. Casey also told investors in January 2022 that "we've been really happy with CAD/CAM . . . introducing things like [Prime]mill, we've been very happy with that," even though he knew of the ongoing product defects and their impact on demand. *See* Ex. 1 at -5863 ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮. Further, ▮▮▮▮▮▮

▮▮▮▮▮▮ (Ex. 11), Gomez signed a certification pursuant to the Sarbanes-Oxley Act of 2002 in August 2021 attesting to the effectiveness of the Company's internal controls over financial reporting. ¶¶153, 209.

The fraud began to unravel on February 28, 2022, when Dentsply disclosed disappointing 4Q21 results and announced 2022 projections below market expectations. ¶265. As Defendants knew, Dentsply's sales would likely decrease in 2022 as distributors worked to sell the excess inventory that had built up in the second half of 2021. ¶266. Then, on April 19, 2022 – just one week after it had

announced Gomez's departure – Dentsply announced that Casey had been terminated. ¶270. The Company also announced preliminary results for the first quarter of 2022, including disappointing revenue and sales growth.

The relevant truth continued to emerge on May 10, 2022, when Dentsply disclosed that it would be unable to timely file its Form 10-Q for the second quarter of 2022 ("2Q22") due to an ongoing internal investigation into complaints from Dentsply employees regarding "the Company's use of incentives to sell products to distributors in the third and fourth quarter of 2021" and "whether those incentives were appropriately accounted for" in the Company's SEC filings. ¶272. On the same day, the Company hosted a conference call with investors and attributed the majority of the sales decline to "burning of inventory . . . at the dealers." ¶273.

On November 1, 2022, Dentsply announced the results of the internal investigation and disclosed that it would restate its financial statements for 3Q21 and FY 2021. ¶277. Dentsply admitted, *inter alia*, that Casey and Gomez had violated the Company's code of conduct and fostered an inappropriate tone at the top where employees did not feel comfortable raising concerns without fear of retaliation. ¶89; Ex. 1

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████. Dentsply also admitted to the channel-stuffing scheme and improper accounting. ¶¶88-91. But it was not yet clear to investors how these issues would impact Dentsply going forward.

Then, on November 14, 2022, Dentsply announced disappointing financial results for the third quarter of 2022 and lowered its guidance for the fourth quarter of 2022. ¶¶279-280. Dentsply and analysts attributed the disappointing results to weaker demand, continued supply challenges, and lower sales of CAD/CAM equipment to distributors.

4895-5772-2613.v1

B.      **The Proposed Class Representatives**

On June 1, 2023, Plaintiffs were appointed as Lead Plaintiffs in this action. ECF 58. They now seek appointment as Class Representatives pursuant to Rule 23. *See* Exs. 12-14. City of Birmingham Retirement and Relief System is a public pension fund for over 7,000 current and former employees of the City of Birmingham, Alabama, with over $1 billion assets under management. ¶27. El Paso Firemen & Policemen's Pension Fund is a public pension fund organized and operated for the benefit of over 3,500 active and retired firefighters and police officers in El Paso, Texas, with over $1.5 billion in assets under management. ¶28. Wayne County Employees' Retirement System is a public pension fund providing retirement and related benefits for over 8,000 current and former public employees of Wayne County, Michigan, with approximately $1 billion in assets under management. ¶29. During the Class Period, each of the Plaintiffs purchased Dentsply common stock at artificially inflated prices and was damaged thereby. Exs. 12-14; ECF 72 at 134-39.

## III.    THE PROPOSED CLASS SATISFIES RULE 23

"To be certified, a putative class must demonstrate that it satisfies all four of the requirements of Rule 23(a) and one of the categories of Rule 23(b) of the Federal Rules of Civil Procedure." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 73 (S.D.N.Y. 2015). The relevant inquiry "is whether Plaintiff[s] meet[] Rule 23's requirements, not whether Plaintiff[s] will prevail on the merits." *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *7 (S.D.N.Y. July 10, 2019); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries"). "The Second Circuit has directed courts to adopt a liberal interpretation of Rule 23 in order to maximize the benefits to private parties and . . . the benefits to the public provided by class actions." *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 274-75 (S.D.N.Y. 2008).

4895-5772-2613.v1

A.    **The Proposed Class Satisfies Rule 23(a)**

Rule 23(a) sets forth four requirements for class certification: (1) the class must be so numerous that joinder of all members is impractical; (2) there must be questions of law or fact that are common to the class; (3) the claims of the class representatives must be typical of the class's claims; and (4) the class representatives must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). This action satisfies each requirement.

1.    **The Proposed Class Is Sufficiently Numerous**

Under Rule 23(a)(1), a proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While no minimum number of plaintiffs is required . . . '[g]enerally, courts will find a class sufficiently numerous when it comprises 40 or more members.'" *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 237 (S.D.N.Y. 2006). In securities actions, "'"the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period."'" *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 138 (S.D.N.Y. 2012).

During the Class Period, over 1,000 institutions held Dentsply common stock, an average of 9.6 million shares of Dentsply common stock traded weekly, and the Company had roughly 215 million shares outstanding. Ex. 15 ("Cain Rpt."), ¶¶37, 50 n.55 & Exhibit 10. These facts easily establish numerosity. *See McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 423 (S.D.N.Y. 2014) (numerosity satisfied with 32.9 million outstanding shares and weekly trading volume of 6 million shares); *Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *4 (S.D.N.Y. Aug. 13, 2018) (numerosity satisfied with 22.7 million shares outstanding).

4895-5772-2613.v1

### 2.      Questions of Law and Fact Are Common to the Class

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ.

P. 23(a)(2). "'Even a single common legal or factual question will suffice.'" *NYSE Specialists*, 260

F.R.D. at 70. Accordingly, "[t]his requirement has been characterized as a '"low hurdle."'" *McIntire*, 38

F. Supp. 3d at 424. "The standard is particularly permissive in the context of securities fraud litigation."

*In re NIO, Inc. Sec. Litig.*, 2023 WL 5048615, at *5 (E.D.N.Y. Aug. 8, 2023).

Plaintiffs easily clear this low threshold:

> This case—as is typical of most securities fraud putative class actions—raises common questions of law and fact, including whether (*i*) statements disseminated to the Class by Defendants during the Class Period misrepresented or omitted material facts; (*ii*) the alleged fraud was material to the putative Class; and (*iii*) Defendants acted knowingly or recklessly.

*Signet Jewelers*, 2019 WL 3001084, at *8; *see also Gruber v. Gilbertson*, 2019 WL 4439415, at *3

(S.D.N.Y. Sep. 17, 2019) ("the class proceeding will generate common answers to several key questions,

including whether defendants engaged in deceptive conduct").

### 3.      The Proposed Class Representatives' Claims Are Typical

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the

claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is met if "'each class member's

claim arises from the same course of events and each class member makes similar legal arguments to

prove the defendant's liability.'" *Erickson v. Jernigan Cap., Inc.*, 692 F. Supp. 3d 114, 126 (S.D.N.Y.

2023). Typicality does not require "'factual identity between the named plaintiffs and the class

members,'" and, accordingly, "is 'not demanding'" to satisfy. *In re MF Glob. Holdings Ltd. Inv. Litig.*,

310 F.R.D. 230, 236 (S.D.N.Y. 2015). "In securities cases alleging dissemination of allegedly false or

misleading statements, the nature of the common injury generally satisf[ies] typicality." *In re Winstar

Commc'ns Sec. Litig.*, 290 F.R.D. 437, 443 (S.D.N.Y. 2013).

4895-5772-2613.v1

Here, Plaintiffs' and the Proposed Class's claims are founded on the same facts and legal theories – *i.e.*, that Defendants' scheme and misrepresentations artificially inflated Dentsply's stock price, which caused injury to investors when the relevant truth was revealed through a series of partial disclosures and Dentsply's stock price dropped. Accordingly, proving Plaintiffs' claims will prove the Proposed Class's claims, and typicality is satisfied. *See Bank of Am.*, 281 F.R.D. at 139 (typicality satisfied where "[a]s with the proposed class members, the class plaintiffs assert that they acquired [company] securities at prices allegedly inflated by defendants' misstatements and/or omissions, and have an interest in maximizing their recovery").

### 4. The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)'s final requirement is that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is met when: (1) the class representatives' interests are not antagonistic to the class's interests; and (2) class counsel is qualified, experienced, and generally able to conduct the litigation. *In re Aphria, Inc. Sec. Litig.*, 342 F.R.D. 199, 204-05 (S.D.N.Y. 2022). "'Only a fundamental conflict will defeat the adequacy of representation requirement.'" *Guadagna v. Zucker*, 332 F.R.D. 86, 96 (E.D.N.Y. 2019).

No fundamental conflicts exist here – rather, Plaintiffs' and the Proposed Class's interests are directly aligned. Like all Proposed Class members, Plaintiffs purchased Dentsply common stock at inflated prices during the Class Period and were injured by Defendants' misconduct. Thus, Plaintiffs are incentivized to establish Defendants' liability and maximize their and the Proposed Class's recovery. *See Signet Jewelers*, 2019 WL 3001084, at *9 (Adequacy is satisfied where "all members of the proposed Class allege claims arising from the same wrongful conduct. Lead Plaintiff's legal theories, if vindicated, would vindicate the interests of the Class.").

4895-5772-2613.v1

Plaintiffs have also demonstrated their willingness and ability to vigorously prosecute this action by: (1) successfully moving for appointment as lead plaintiffs; (2) filing a comprehensive complaint; (3) defeating Defendants' motion to dismiss; (4) obtaining critical discovery from Defendants and third-parties; (5) consulting with Robbins Geller regarding key case events; (6) reviewing court filings and other key documents; and (7) complying with their discovery obligations.  Exs. 12-14.  Each of the Plaintiffs also understands the requirements and responsibilities of serving as a class representative, intends to continue to monitor this litigation, and intends to work with counsel to maximize the Class's recovery.  *Id.*

Plaintiffs have also demonstrated their adequacy by retaining capable attorneys with considerable experience litigating securities class actions.  *See* Ex. 16.  As many courts have recognized, Robbins Geller is "'one of the most successful law firms in securities class actions, if not the preeminent one, in the country.'"  *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 158 (S.D.N.Y. 2012); *see also Jernigan*, 692 F. Supp. 3d at 127 ("[Robbins Geller] has substantial experience in securities class actions, including in this District, and has been found adequate in a multitude of cases."); Fairness Hearing Transcript at 55, *In re Am. Realty Cap. Props., Inc. Litig.*, No. 1:15-mc-00040-AKH (S.D.N.Y. Jan. 21, 2019), ECF 1316 ("[T]he role of lead counsel was fulfilled in an extremely fine fashion by [Robbins Geller].  At every juncture, the representations made to me were reliable, the arguments were cogent, and the representation of their client was zealous.").  In short, Robbins Geller is qualified and able to prosecute this action on the Proposed Class's behalf.

## B.      The Proposed Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires that: (1) common questions of law or fact predominate over individual questions; and (2) a class action is superior to alternative methods of resolving the dispute.  Fed. R. Civ. P. 23(b)(3).

4895-5772-2613.v1

### 1.    Common Questions of Law and Fact Predominate

"Predominance is a test readily met in certain cases alleging consumer or securities fraud . . . ." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 52 (S.D.N.Y. 2012) ("'In securities fraud class actions . . . common issues of law and fact will generally predominate over individual issues.'"). "'Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017).  Importantly, predominance does not require Plaintiffs to prove that "***questions*** common to the class . . . will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459 (emphasis in original).  And it requires only "'that common questions predominate, not that the action include only common questions.'" *Wilson*, 2018 WL 3913115, at *8.

Plaintiffs allege Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 both by making false and misleading statements in violation of Rule 10b-5(b) and by engaging in a scheme to defraud in violation of Rule 10b-5(a) and (c).  Accordingly, Plaintiffs must establish: (1) Defendants made material misrepresentations and/or engaged in a scheme to defraud; (2) a connection with the purchase or sale of a security; (3) scienter; (4) reliance; (5) economic loss; and (6) loss causation.  *See Amgen*, 568 U.S. at 460-61; *Puddu v. 6D Glob. Techs., Inc.*, 2021 WL 1198566, at *9-*11 (S.D.N.Y. Mar. 30, 2021).  Common questions include "whether Defendants engaged in a fraudulent scheme and made the false and misleading statements and omissions, whether those statements and omissions were material, whether Defendants acted with scienter, and whether Defendants' conduct injured" investors.  *Alstom*, 253 F.R.D. at 281; *see also Amgen*, 568 U.S. at 475 ("loss causation and the falsity or misleading nature of the defendant's alleged statements or omissions are common questions");

- 12 -

*Pfizer*, 282 F.R.D. at 52 ("All of these [§10(b)] elements, other than reliance . . ., are subject to class wide proof in securities litigation . . . .").

Finally, individual issues regarding reliance will not predominate because Plaintiffs are entitled to a presumption of classwide reliance under *Basic*'s fraud-on-the-market theory.  485 U.S. at 241.

### a.  Plaintiffs Are Entitled to the Fraud-on-the-Market Presumption of Reliance

The fraud-on-the-market theory premises that, "'in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business. . . .   Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.'"  *Basic*, 485 U.S. at 241-42; *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 270 (2014) ("'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations'").  Accordingly, "'reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action.'"  *Halliburton*, 573 U.S. at 268.

The fraud-on-the-market presumption is available where, as here: (1) the alleged misrepresentations were publicly known; (2) the misrepresentations were material; (3) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed (*i.e.*, during the Class Period); and (4) the stock traded in an efficient market.  *See id.* at 277-78.  These requirements are met here.  First, Plaintiffs allege that Defendants made materially false and misleading statements in public earnings calls and SEC filings.  *See, e.g.*, ¶¶98-210.  Second, although materiality must be proved at trial to invoke the *Basic* presumption, it "is not a prerequisite to class certification."  *Amgen*, 568 U.S. at 459.  Third, Plaintiffs purchased Dentsply common stock between the time the misrepresentations were made and the end of the Class Period.  *See* ECF 72 at 134-39.  The final element is satisfied, as the market for Dentsply common stock was efficient during the Class Period.  Cain Rpt., ¶¶59-81.  And,

because Defendants made misstatements as part of their scheme, the fraud-on-the-market presumption also applies to Plaintiffs' scheme allegations.

In evaluating market efficiency, courts consider the factors outlined in both *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989), and *Krogman v. Sterritt*, 202 F.R.D. 467 (N.D. Tex. 2001). *See Waggoner*, 875 F.3d at 94 ("district courts in this and other Circuits regularly consider five factors first set forth in *Cammer*"); *In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433, at *5-*7 (S.D.N.Y. Sept. 29, 2015) (analyzing the *Cammer* and *Krogman* factors); *Pearlstein v. BlackBerry Ltd.*, 2021 WL 253453, at *15-*16 (S.D.N.Y. Jan. 26, 2021) (same). Moreover, because Dentsply traded on the NASDAQ throughout the Class Period – one of the world's most efficient forums for stock trading – the market for Dentsply common stock "'is presumed to be efficient.'" *See, e.g.*, *Billhofer*, 281 F.R.D. at 159; *In re Initial Pub. Offering Sec. Litig.*, 544 F. Supp. 2d 277, 296 n.133 (S.D.N.Y. 2008) ("[T]he federal courts are unanimous in their agreement that a listing on the NASDAQ or a similar national market is a good indicator of efficiency."); Cain Rpt., ¶25.

### (1)    The *Cammer* Factors

The five *Cammer* factors are: "(1) the [stock's] average weekly trading volume; (2) the number of analysts who follow the stock; (3) the existence of market makers and arbitrageurs; (4) the ability of the company to file [SEC] Form S-3; and (5) evidence of share price response to unexpected news." *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 101 n.55 (S.D.N.Y. 2016). "The Second Circuit has clearly and repeatedly instructed that, in ruling on market efficiency, district courts must conduct 'a holistic analysis based on the totality of the evidence presented' rather than a check-the-box approach to the various factors.'" *NIO*, 2023 WL 5048615, at *13. Accordingly, "market efficiency does not turn on whether any one or combination of factors is satisfied, but rather on whether the evidence as a whole

- 14 -

makes it more likely than not" that Dentsply common stock traded in an efficient market. *Martínek v. AmTrust Fin. Servs., Inc.*, 2022 WL 326320, at *10 (S.D.N.Y. Feb. 3, 2022).

***Dentsply's High Average Trading Volume****.* "'[A]verage weekly trading of 2% or more'" creates a "'strong presumption'" of market efficiency. *Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 44 (S.D.N.Y. 2018). High trading volume indicates efficiency "'because it implies significant investor interest in the company . . . [and], in turn, implies a likelihood that many investors are executing trades on the basis of newly available . . . corporate information.'" *Strougo v. Barclays PLC*, 312 F.R.D. 307, 316 (S.D.N.Y. 2016), *aff'd sub nom. Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017). During the Class Period, Dentsply's average weekly trading volume was 4.4%, which creates a strong presumption of market efficiency. Cain Rpt., ¶36.

***Many Securities Analysts Followed Dentsply****.* Analyst coverage supports market efficiency because analysts facilitate the flow and digestion of information within the marketplace. *See id.*, ¶39; *see also Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 79 (S.D.N.Y. 2015). During the Class Period, 20 analysts followed and collectively published over 191 reports about Dentsply. Cain Rpt., ¶40. This significant coverage supports market efficiency. *See id.*, ¶¶41-44; *NIO*, 2023 WL 5048615, at *11 (five analysts support efficiency); *Aphria*, 342 F.R.D. at 206 (over 100 reports indicated efficiency).

***Dentsply Had Numerous Market Makers****.* Market makers support efficiency because they "'react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level.'" *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 328 F.R.D. 86, 95 (S.D.N.Y. 2018). During the Class Period, Dentsply had at least 124 market makers, which further supports market efficiency. Cain Rpt., ¶47; *cf. McIntire*, 38 F. Supp. 3d at 432 ("The Court is satisfied that [company's]

4895-5772-2613.v1

20-market-maker average supports a presumption of market efficiency."); *Wilson*, 2018 WL 3913115, at *10 (78 market makers indicated market efficiency).

*Dentsply Was Eligible to File Forms S-3*.  A company's ability to file a Form S-3 indicates market efficiency because it is associated with other characteristics that correlate with efficiency, including size and number of shares traded.  *See Carpenters*, 310 F.R.D. at 79.  Accordingly,

> it would be helpful to allege the Company was entitled to file an S-3 Registration Statement in connection with public offerings or, if ineligible, such *ineligibility was only because of timing factors* . . . .   Again, it is the number of shares traded and value of shares outstanding that involve the facts which imply efficiency.

*Cammer*, 711 F. Supp. at 1287.  Here, Dentsply was able to file a Form S-3 throughout the majority of the Class Period.  Cain Rpt., ¶¶54-55.  While it was unable to file a Form S-3 for a small portion of the Class Period, this was due only to timing factors: Dentsply was unable to timely file its 2Q22 Form 10-Q due to the internal investigation underlying this case's allegations.  *Id.*, ¶56.  Because Dentsply "was eligible to file a Form S-3 during the proposed class period, except for a limited portion when it was ineligible due to the timing of certain other financial filings[,] [t]his factor . . . weighs in favor of market efficiency."  *Martinek*, 2022 WL 326320, at *13.

*Dentsply Stock Reacted to New, Company-Specific Information*.  The final *Cammer* factor focuses on whether a company's stock price reacts quickly to new, company-specific information.  *See Cammer*, 711 F. Supp. at 1287.  To test Dentsply's responsiveness to new information, Plaintiffs' expert, Dr. Matthew Cain, who holds a Ph.D. in finance and teaches at the New York University School of Law, conducted an event study analyzing Dentsply's stock price movements on days that Company-specific news was publicly released and comparing those movements to other days in the Class Period.  Cain Rpt., ¶¶5, 59-81.  "An event study that correlates the disclosures of unanticipated, material information about a security with corresponding fluctuations in price has been considered *prima facie* evidence of the existence of" a cause-and-effect relationship.  *Teamsters Loc. 445 Freight Div. Pension Fund v.*

- 16 -

*Bombardier Inc.*, 546 F.3d 196, 207-08 (2d Cir. 2008); *Carpenters*, 310 F.R.D. at 80. As detailed in his report, Dr. Cain's event study identified – at a 99% confidence level – a cause-and-effect relationship between the release of new, Dentsply-specific information and movement in Dentsply's stock price. Cain Rpt., ¶¶59-81.

### (2)    The *Krogman* Factors

The *Krogman* factors are: (1) the company's market capitalization; (2) the stock's bid-ask spread; and (3) the stock's float. *See Krogman*, 202 F.R.D. at 467; *Waggoner*, 875 F.3d at 94-95.

***Dentsply's Large Market Capitalization***. A large market capitalization indicates efficiency because "'there is a greater incentive for stock purchasers to invest in more highly capitalized corporations.'" *Martínek*, 2022 WL 326320, at *13. Dentsply's market capitalization averaged $10.4 billion over the Class Period (Cain Rpt., ¶84), which strongly supports market efficiency. *See NIO*, 2023 WL 5048615, at *12 (market capitalization of $1.33 billion was "well above market capitalizations that other courts have found sufficient"); *Carpenters*, 310 F.R.D. at 92 ($0.5 to $3.2 billion market capitalization supported efficiency).

***Dentsply's Narrow Bid-Ask Spread***. The bid-ask spread is the difference between the prices at which investors are willing to buy and current stockholders are willing to sell shares; a low bid-ask spread indicates a more efficient market. *See Krogman*, 202 F.R.D. at 478. Dentsply's bid-ask spread averaged just 0.07% during the Class Period, which further supports market efficiency. Cain Rpt., ¶¶88-90; *BlackBerry*, 2021 WL 253453, at *16 (bid-ask spread of 0.09% "strongly indicates" efficiency); *NIO*, 2023 WL 5048615, at *12 (bid-ask spread of 0.17% fell "below bid-ask spreads which have shown efficiency in prior cases").

***Dentsply's Large Public Float***. A stock's "float" is the number of shares outstanding, excluding shares held by insiders and affiliated corporate entities. *See Krogman*, 202 F.R.D. at 478. A large public

- 17 -

4895-5772-2613.v1

float supports efficiency because it shows a large percentage of shares were "available to non-insiders who could trade without restrictions and profit by trading on new information." *BlackBerry*, 2021 WL 253453, at *16. Dentsply's public float was 99.6%, which strongly supports market efficiency. Cain Rpt., ¶¶93-94; *see Wilson*, 2018 WL 3913115, at *15 (average public float of 82.41% "exceeds amounts other courts have deemed sufficient to suggest a finding of market efficiency"); *In re Am. Realty Cap. Props., Inc. Litig.*, 2017 WL 3835881, at *1 (S.D.N.Y. Aug. 31, 2017) (efficiency supported when average float was 93.0%).

> **b.      Plaintiffs' Damages Model Is Consistent with the Proposed Class's Theory of Liability**

It is "'well-established' in this Circuit that 'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3)." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015); *see also Carpenters*, 310 F.R.D. at 74 ("Issues and facts surrounding damages have rarely been an obstacle to establishing predominance in section 10(b) cases."). "All that is required at class certification is that 'the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 88 (2d Cir. 2015). Plaintiffs have done just that.

As described in Dr. Cain's report, damages can be calculated using the same methodology – the out-of-pocket measure – for all Proposed Class members. Cain Rpt., ¶¶95-111. Courts routinely find that this methodology is consistent with §10(b) liability and capable of calculating damages on a classwide basis. *See Barrick Gold*, 314 F.R.D. at 105-06 (finding out-of-pocket methodology "entirely consistent with [plaintiffs'] theory of Section 10(b) liability and would be measurable on a class-wide basis" and noting "securities class actions routinely seek out-of-pocket damages for fraudulent misrepresentations"); *In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at *19 (E.D.N.Y. Jan. 11, 2022)

4895-5772-2613.v1

(same).  Because the methodology for calculating per-share damages will be the same for each Proposed Class member, damages constitute a common question, and predominance is satisfied.

### 2. Class Treatment Is Superior to Other Methods of Adjudication

Rule 23(b)(3) also requires that class treatment be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  It is widely recognized that "[s]ecurities suits easily satisfy the Superiority Requirement of Rule 23(b)(3)." *MF Glob.*, 310 F.R.D. at 239; *NIO*, 2023 WL 5048615, at *17 ("this case, like many other securities actions, would be best adjudicated as a class action"); *NYSE Specialists*, 260 F.R.D. at 80 (same).  When assessing superiority, courts consider: (1) class members' interests in individually controlling separate actions; (2) whether other litigation has already commenced; (3) the desirability of concentrating claims in one forum; and (4) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, interest in individually prosecuting separate actions is minimal, as the expense of doing so would be prohibitive when weighed against potential recoveries.  A class action in this District also ensures efficient resource expenditure and consistent rulings.  This District is also a desirable forum, as individual Proposed Class members are geographically dispersed, Dentsply's stock trades on the NASDAQ, which is headquartered in this District, and the alleged misrepresentations were disseminated into this District.  Plaintiffs do not foresee any management difficulties that would preclude proceeding as a class action.  Indeed, Plaintiffs have already efficiently undertaken extensive document discovery and motion briefing in this Court.  In short, a class action is the superior method for litigating the Proposed Class's claims.  *See MF Glob.*, 310 F.R.D. at 239 ("Securities suits easily satisfy the Superiority Requirement of Rule 23(b)(3) because 'the alternatives are either no recourse for thousands of stockholders' or 'a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake.'").

- 19 -

4895-5772-2613.v1

### C.    The Proposed Class Is Ascertainable

The "Second Circuit has [also] recognized an implied requirement that the class be 'ascertainable.'" *BlackBerry*, 2021 WL 253453, at *5 (quoting *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017). The Proposed Class here is ascertainable because it "clearly delineates the class's boundaries by the dates of investors' transactions in [Dentsply] stock. Ascertaining the members of the class will be easily administrable by references to investor records." *Id.* at *13; *see also Signet Jewelers*, 2019 WL 3001084, at *9 (same).

### D.    Robbins Geller Should Be Appointed Class Counsel

A "court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In appointing class counsel, courts consider: (i) counsel's work in "identifying or investigating potential claims"; (ii) "experience in handling class actions"; (iii) "knowledge of the applicable law"; and (iv) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Plaintiffs' chosen counsel, Robbins Geller, satisfies these requirements and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, including in this District. *See* Ex. 16; *see also supra*, §III.A.4. Robbins Geller has also already vigorously prosecuted this action, including extensively investigating the claims and drafting a comprehensive complaint, successfully opposing Defendants' motion to dismiss, engaging in discovery, and pursuing class certification. Plaintiffs respectfully request that the Court appoint Robbins Geller as Class Counsel.

## IV.    CONCLUSION

Plaintiffs respectfully request that the Court: (1) certify this action as a class action; (2) appoint Plaintiffs as Class Representatives; and (3) appoint Robbins Geller as Class Counsel.

4895-5772-2613.v1

DATED: November 15, 2024        Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUKE O. BROOKS (admitted *pro hac vice*)
HILLARY B. STAKEM (admitted *pro hac vice*)
NICOLE Q. GILLILAND (admitted *pro hac vice*)
JESSICA E. ROBERTSON (admitted *pro hac vice*)


            s/ Luke O. Brooks
            LUKE O. BROOKS

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
lukeb@rgrdlaw.com
hstakem@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

VANOVERBEKE, MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel for Lead Plaintiffs

- 21 -

4895-5772-2613.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on November 15, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Luke O. Brooks
LUKE O. BROOKS

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  lukeb@rgrdlaw.com

4895-5772-2613.v1

# Mailing Information for a Case 1:22-cv-06339-AS San Antonio Fire and Police Pension Fund v. Dentsply Sirona Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Chad Albert**
  calbert@levinelee.com

- **Javier Bleichmar**
  jbleichmar@bfalaw.com

- **H. Christopher Boehning**
  cboehning@paulweiss.com,Mao_fednational@paulweiss.com

- **Luke Orion Brooks**
  lukeb@rgrdlaw.com,tholindrake@rgrdlaw.com,kmccormack@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Kristina Anne Bunting**
  kbunting@paulweiss.com,mao_fednational@paulweiss.com

- **Roger Allen Cooper**
  racooper@cgsh.com,maofiling@cgsh.com

- **Bryce Leigh Friedman**
  bfriedman@stblaw.com,managingclerk@stblaw.com,5962535420@filings.docketbird.com

- **Nicole Quaid Gilliland**
  ngilliland@rgrdlaw.com

- **Meredith Dawn Karp**
  meredith.karp@stblaw.com,5128371420@filings.docketbird.com,managingclerk@stblaw.com

- **Nancy A. Kulesa**
  nancy@nkulesa.com

- **Seth L. Levine**
  slevine@levinelee.com,managingclerk@levinelee.com

- **Katherine Rosemary Lynch**
  kalynch@cgsh.com,maofiling@cgsh.com

- **Allison Samantha Markowitz**
  amarkowitz@levinelee.com,AutoDocketECF@milbank.com,allison-markowitz-1810@ecf.pacerpro.com

- **Isabel R. Mattson**
  isabel.mattson@stblaw.com

- **Mark Edward McDonald**
  memcdonald@cgsh.com,maofiling@cgsh.com

- **Joseph F. Murray**
  murray@mmmb.com

- **Jessica E. Robertson**
  jrobertson@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Hannah Elizabeth Ross**
  hannah@blbglaw.com,catherine@blbglaw.com,managingclerk@blbglaw.com

- **Ross Mitchell Shikowitz**
  rshikowitz@bfalaw.com

- **Hillary B. Stakem**
  hstakem@rgrdlaw.com

- **Craig Scott Waldman**
  cwaldman@stblaw.com,2395227420@filings.docketbird.com,managingclerk@stblaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Alycia              N Broz
Vorys Sayer Seymour & Pease LLP
52 East Gay Street
P. O. Box 1008
Columbus, OH 43216-1008

John                C Camillus
MEYER WILSON CO., LPA
305 W. Nationwide Blvd.
Columbus, OH 43215

John                L Chaney
Chaney & Drexel, LLC
One East Livingston Avenue
Columbus, OH 43215
```