UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

SAN ANTONIO FIRE AND POLICE            :    Civil Action No. 1:22-cv-06339-AS
PENSION FUND, CITY OF BIRMINGHAM       :    (Consolidated)
RETIREMENT AND RELIEF SYSTEM, EL       :
PASO FIREMEN & POLICEMEN'S             :    CLASS ACTION
PENSION FUND, and WAYNE COUNTY         :    _____
EMPLOYEES' RETIREMENT SYSTEM,          :
Individually and on Behalf of All Others    :    REPLY MEMORANDUM OF LAW IN
Similarly Situated,                    :    SUPPORT OF PLAINTIFFS' MOTION FOR
                                       :    CLASS CERTIFICATION
                      Plaintiffs,      :
                                       :    [**REDACTED**]
                                       :
        vs.                            :
                                       :
DENTSPLY SIRONA INC., DONALD M.        :
CASEY, JR., and JORGE GOMEZ,           :
                                       :
                      Defendants.      :
                                       :
———————————————————————— x

4898-5871-4143.v2

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................................1

II.  PLAINTIFFS PROPOSE A *COMCAST*-COMPLIANT CLASSWIDE
     DAMAGES METHODOLOGY.......................................................................................4

     A.   Plaintiffs' Proposed Out-of-Pocket Damages Methodology Matches
          Plaintiffs' Theory of Liability.................................................................................6

     B.   Dr. Cain's Proposed Methodology Will Reliably Measure Inflation in This
          Action.......................................................................................................................8

          1.   Defendants' Meritless "Mismatch" Theory Relies on
               Mischaracterization of Plaintiffs' Allegations and Misstatement of
               the Law...........................................................................................................8

          2.   Dr. Cain's Proposed Methodology Is Sufficiently Detailed for This
               Stage of the Case.........................................................................................10

          3.   Plaintiffs' Proposed Methodology Is Not Required to Account for
               Potential Time-Varying Inflation at Class Certification.............................12

          4.   Future Use of a Multi-Day Event Window to Analyze Causation
               and Damages for the November 1, 2022 Disclosure Is Irrelevant to
               the Sufficiency of Plaintiffs' Proposed Damages Methodology at
               Class Certification, and in Any Event, Is Justified Here ...........................14

III. CONCLUSION.........................................................................................................15

4898-5871-4143.v2

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Abramson v. NewLink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020)..................................................................................................9

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)............................................................................................................10

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
2023 WL 2932485 (S.D.N.Y. Apr. 13, 2023)...............................................................5, 7, 12

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
556 F. Supp. 3d 100 (D. Conn. 2021)....................................................................................7

*Bratya SPRL v. Bed Bath & Beyond Corp.*,
2024 WL 4332616 (D.D.C. Sept. 27, 2024) ........................................................................13

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
750 F.3d 227 (2d Cir. 2014)..................................................................................................6

*City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*,
2024 WL 1060079 (S.D. Cal. Mar. 11, 2024) ..................................................................6, 12

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)...................................................................................................... *passim*

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)..........................................................................................................8, 10

*Fernandez v. UBS AG*,
2018 WL 4440498 (S.D.N.Y. Sept. 17, 2018).......................................................................6

*Fogarazzo v. Lehman Bros., Inc.*,
263 F.R.D. 90 (S.D.N.Y. 2009) ..........................................................................................14

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
301 F.R.D. 116 (S.D.N.Y. 2014) ..........................................................................................6

*Freudenberg v. E*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010)....................................................................................9

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
594 U.S. 113 (2021)............................................................................................................10

4898-5871-4143.v2

**Page**

*Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*,
  422 F. Supp. 3d 821 (S.D.N.Y. 2019) ...................................................................9

*In re Aluminum Warehousing Antitrust Litig.*,
  336 F.R.D. 6 (S.D.N.Y. 2020) .............................................................................6

*In re Barrick Gold Sec. Litig.*,
  314 F.R.D. 91 (S.D.N.Y. 2016) .....................................................................4, 5, 7

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2019 WL 3001084 (S.D.N.Y. July 10, 2019) ............................................4, 5, 11, 12

*In re Teva Sec. Litig.*,
  2021 WL 872156 (D. Conn. Mar. 9, 2021) ...........................................................5

*In re Vale S.A. Sec. Litig.*,
  2022 WL 122593 (E.D.N.Y. Jan. 11, 2022) ........................................................
  *report and recommendation adopted*,
  2022 WL 969724 (E.D.N.Y. Mar. 31, 2022) .....................................................4, 6

*In re Vaxart, Inc. Sec. Litig.*,
  2024 WL 5135206 (N.D. Cal. Dec. 17, 2024) ......................................................13

*In re Vaxart, Inc. Sec. Litig.*,
  738 F. Supp. 3d 1259 (N.D. Cal. 2024) ..............................................................13

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016) ..........................................................................7, 9

*In re Vivendi Universal, S.A. Sec. Litig.*,
  634 F. Supp. 2d 352 (S.D.N.Y. 2009) .................................................................14

*Martinek v. AmTrust Fin. Servs., Inc.*,
  2022 WL 326320 (S.D.N.Y. Feb. 3, 2022) ...........................................................11

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
  332 F.R.D. 370 (N.D. Ga. 2019) ...............................................................10, 11, 14

*Pirnik v. Fiat Chrysler Autos., N.V.*,
  327 F.R.D. 38 (S.D.N.Y. 2018) .........................................................................12

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) ..............................................................................5

4898-5871-4143.v2

**Page**

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017)..................................................................................12

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78j(b).............................................................................................................1, 5, 6
    §78t(a).....................................................................................................................1

Federal Rule of Civil Procedure
    Rule 23 ................................................................................................................12
    Rule 23(a)...............................................................................................................1
    Rule 23(b)(3).....................................................................................................1, 5, 6

4898-5871-4143.v2

## I.    INTRODUCTION

Defendants[1] concede that Plaintiffs have established the four prerequisites for class certification under Federal Rule of Civil Procedure 23(a), the implicit requirement of ascertainability, and Rule 23(b)(3)'s requirement that a class action would be a superior method for litigating this action. Defendants' sole argument against certifying this prototypical securities fraud case is that Plaintiffs and their expert, Dr. Matthew Cain, have purportedly failed to show that damages can be calculated on a classwide basis. Defendants are wrong on both the law and the facts.

First, Plaintiffs **have** provided a classwide damages methodology that is consistent with their theory of liability. Plaintiffs' theory of liability is that Defendants: (i) made material misrepresentations and engaged in a fraudulent scheme that artificially inflated Dentsply's stock price; and (ii) when the relevant truth was disclosed, the inflation exited Dentsply's stock price, causing it to decline and damaging Plaintiffs and the Proposed Class. The out-of-pocket methodology described in the Expert Report of Matthew D. Cain, Ph.D. (ECF 124-15) ("Cain Rpt.") is widely accepted by courts across the country in cases alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 under this same theory of liability.

Second, Defendants' insistence that Plaintiffs' proposed damages methodology fails to satisfy *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), because this Court characterized the loss-causing events as materializations of concealed risk in its May 1, 2024 Order (ECF 106 at 15) misses the mark. Materialization-of-the-risk and corrective disclosures are theories of ***loss causation***, not liability, and are not nearly as distinct as Defendants claim – they are simply two ways of

---

[1]    Unless otherwise noted, capitalized terms herein have the same meaning ascribed to them in the Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (ECF 123), emphasis is added, and citations are omitted.

4898-5871-4143.v2

characterizing how the market learned the relevant truth concealed by Defendants' fraud.  Further,

Defendants' argument wrongly assumes that all cases pleading a materialization-of-the-risk loss

causation theory necessarily involve defendants concealing or under-disclosing the risk that some

future event might occur.  But Plaintiffs do not allege that Defendants misrepresented the degree of

risk that some *future* event might occur; rather, Defendants misrepresented the state of Dentsply's

business that existed *at the time* Defendants spoke.  These statements include:

- denials of supply chain constraints when there were months-long backlogs for popular digital products and required parts (¶¶103-104, 106-107, 109(c)-(g));[2]

- claims that consumers were happy with and sales were strong of Dentsply's CAD/CAM products when, in fact, Dentsply had already experienced and was continuing to experience significant quality defects, increased returns, and decreased end-user demand for CAD/CAM (¶¶110, 112-117);

- assurances that dealer inventory levels were stable when they were actually substantially elevated due to Defendants' channel-stuffing (¶¶118, 120-125);

- lies about the drivers of Dentsply's third and fourth quarters of 2021 and fiscal year 2021 success after those financial periods were completed (¶¶126-135);

- misrepresentations of Dentsply's current positioning for growth, when in reality CAD/CAM channel-stuffing was the cause of its touted successes in the second half of 2021 (¶¶136-142, 145);

- misstatements about the Company's ongoing adherence to strong governance policies, while Casey and Gomez had already and were continuing to set an improper tone at the top (¶¶146, 149-151); and

- false financial reporting and statements regarding internal controls over financial reporting and compliance with Generally Accepted Accounting Principles during the past financial periods (¶¶152-179, 183-210).

Courts regularly find the out-of-pocket damages methodology sufficient where, as here, the

allegations involve false representations relating to current or past events.

---

[2]    All "¶__" or "¶¶__" references are to the Amended Complaint for Violations of the Federal Securities Laws (ECF 72), unless otherwise noted.

Third, Defendants' argument that Plaintiffs' proposed damages methodology fails to account for a "mismatch" between the alleged fraud and corrective disclosures fails for several reasons. Not only does this argument rely on mischaracterization of Plaintiffs' allegations, but it misapprehends the law. "Mismatch" is a ***price impact*** concept with no bearing on whether damages can be calculated using a classwide methodology – the only aspect of class certification Defendants dispute. Whether there is a "mismatch" between the alleged misstatements and corrective events is a loss causation question for the merits stage – and even then, it would be a question common to all Proposed Class members.

Fourth, Defendants' bickering over the supposed lack of specificity in Plaintiffs' proposed damages methodology is unpersuasive. At this stage, Dr. Cain is not required to select the particular inputs and assumptions he will use when ultimately calculating damages, because such decisions will require evaluation of the complete factual record and merits determinations not yet made. *See, e.g.*, Ex. 1 (Expert Reply Report of Matthew D. Cain Ph.D., dated February 28, 2025 ("Cain Rbt.")), ¶¶22-23.[3] For the same reason, Dr. Cain is also not required to commit at this early stage to how he might account for potential confounding information or hypothetical time-varying inflation (if any). *Id.*, ¶¶29, 31-32, 34-36.

Finally, the Court should reject out of hand Defendants' arguments as to the propriety of analyzing a multi-day event window to study Dentsply's November 1, 2022 disclosure in a future loss causation and damages analysis that has yet to (and could not yet) be conducted. Defendants' Omnibus Memorandum of Law in Response to Plaintiffs' Motion for Class Certification (ECF 137) ("Opp.") at 13-15. Dr. Cain has not yet analyzed the stock price reaction following the November 1

---

[3] All exhibits referenced herein are attached to the Declaration of Luke O. Brooks in Support of Reply Memorandum of Law in Support of Plaintiffs' Motion for Class Certification, filed concurrently herewith.

corrective disclosure – or any other disclosure – for purposes of assessing causation and damages. When he does, Defendants will have the opportunity to challenge Dr. Cain's loss causation and damages analysis at summary judgment and trial, but their speculative arguments concerning event window duration are plainly inapposite at this stage. *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 106 (S.D.N.Y. 2016) (proof of loss causation and out-of-pocket damages not required until merits stage). In any event, as Dr. Cain explains, the use of a three-day event window to analyze the November 1 disclosure in this case is supported by academic literature and the factual circumstances, and Defendants and their expert do not demonstrate otherwise. *See* Cain Rbt., ¶¶58-64.

In sum, Defendants' attacks on Plaintiffs' classwide damages methodology are meritless; Plaintiffs have provided a *Comcast*-compliant classwide damages methodology. Even without one, however, class certification would ***still*** be appropriate in this case because all other questions of fact and law are susceptible to classwide proof and Defendants make no attempt to demonstrate that these common questions would be overwhelmed by the need for individualized damages assessments. Plaintiffs' Motion for Class Certification (ECF 122) ("Motion") should be granted.

## II.    PLAINTIFFS PROPOSE A *COMCAST*-COMPLIANT CLASSWIDE DAMAGES METHODOLOGY

Defendants' shopworn *Comcast* challenge fails on the merits. "In general, courts have found *Comcast* to pose a low bar." *In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at *18 (E.D.N.Y. Jan. 11, 2022), *report and recommendation adopted*, 2022 WL 969724 (E.D.N.Y. Mar. 31, 2022). "The Second Circuit has interpreted *Comcast* to require plaintiffs to 'be able to show that their damages stemmed from the defendant's actions that created the legal liability.'" *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *19 (S.D.N.Y. July 10, 2019). Plaintiffs' out-of-pocket damages methodology easily clears this low bar. At the appropriate stage and relying on a fully-developed factual record, Dr. Cain proposes to use financial valuation tools such as an event study to isolate the

amount of inflation in Dentsply's stock price attributable to Defendants' fraud during the Class Period. Cain Rpt., ¶¶99-111; Cain Rbt., ¶¶19 n.9, 31-32. He will then create an "inflation ribbon" that calculates how much fraud-related inflation resided in Dentsply's stock price on each day of the Class Period. Cain Rpt., ¶¶99-111. Individual class member damages will then be calculated using this inflation ribbon and trading data submitted by class members in a claims process, consistent with the Private Securities Litigation Reform Act of 1995. Cain Rpt., ¶¶97-98. This is a well-accepted, standard means of calculating damages in §10(b) securities actions like this one. *See Signet*, 2019 WL 3001084, at *19-*20; *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 2023 WL 2932485, at *14 (S.D.N.Y. Apr. 13, 2023) ("[T]he 'out-of-pocket' methodology[] is a recognized measurement of damages in Section 10(b) securities cases.") (collecting cases); *Barrick*, 314 F.R.D. at 106 (noting that out-of-pocket damages is an "oft-used remedy" in §10(b) cases and "does not create individualized damages issues that defeat predominance").

In any event, because proof of damages presents just one factor in the predominance analysis, to establish that individual questions predominate, Defendants need to demonstrate not only (1) that Plaintiffs fail to provide a *Comcast*-compliant classwide damages methodology, but also (2) that the need for individualized damage methodologies will overwhelm the questions that can be proven by common evidence – which, as Defendants concede here, comprise ***all*** of the remaining elements of Plaintiffs' claims. Defendants do not even attempt such an analysis, dooming their predominance challenge. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 (2d Cir. 2015) ("the law of this Circuit – left undisturbed by *Comcast* – [is] that individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)"); *accord Alexion*, 2023 WL 2932485, at *14 (rejecting same argument as Defendants advance here); *In re Teva Sec. Litig.*, 2021 WL 872156, at *41 (D. Conn. Mar. 9, 2021) (collecting cases rejecting *Comcast* challenges to class certification and holding "the

- 5 -

potential need for individualized damages calculations in Section 10(b) cases simply does not impose a high hurdle on Rule 23(b)(3)'s predominance requirement"). [4]

### A.      Plaintiffs' Proposed Out-of-Pocket Damages Methodology Matches Plaintiffs' Theory of Liability

Defendants posit that because the Court characterized certain of the alleged loss-causing events as materializations of concealed risk, rather than corrective disclosures, the widely accepted out-of-pocket damages methodology does not satisfy *Comcast* here.  Opp. at 9.  Not so.

"'[M]aterialization of the risk'" is not a theory of liability, it is a theory of **loss causation**, and thus has no bearing on whether Plaintiffs' methodology is *Comcast*-compliant.  *See* ECF 106 at 15 (quoting *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232-33 (2d Cir. 2014)); *Vale*, 2022 WL 122593, at \*19 ("Defendants argue that the [damages] model must address the distinctions between corrective disclosure and materializations of the risk . . . . **Not so**."); *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*, 2024 WL 1060079, at \*15 (S.D. Cal. Mar. 11, 2024) (finding that, to the extent plaintiffs relied on a materialization-of-the-risk theory, out-of-pocket damages methodology satisfied *Comcast*).  "Whether the truth comes out by

---

[4]   The few cases Defendants marshal do not suggest predominance in securities actions can be defeated on damages grounds alone.  In *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 6 (S.D.N.Y. 2020), the Court repeatedly specified that its predominance analysis was oriented to **antitrust** considerations.  *E.g.*, *id.* at 45 ("'Without common proof of injury and causation, [**antitrust**] plaintiffs cannot establish predominance.'"); *id.* at 47-48 (discussing *Comcast* in the antitrust context); *id.* at 45 n.41 ("Whether the FLPs have adduced common proof to reliably establish classwide antitrust injury is a matter of first impression for this Court to resolve.").  In *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116 (S.D.N.Y. 2014) – an unusual securities class action involving highly complex, multi-tranche residential mortgage-backed securities traded in an illiquid market – even when the Court found the plaintiffs' damages methodology insufficient, it still certified a liability class, noting "[t]he Court's inability to certify the class as to damages does not preclude certification altogether." *Id.* at 142.  It then permitted plaintiffs an opportunity to refile their motion as to damages on a fuller record.  *Id.* at 144.  *Fernandez v. UBS AG*, 2018 WL 4440498 (S.D.N.Y. Sept. 17, 2018), involved state law claims for breach of fiduciary duty and breach of contract regarding the suitability of investment for individual clients – requiring, unlike here, "inherently individualized inquiry" to prove the majority of elements of each plaintiff's claim, including causation, affirmative defenses, breach, and damages. *Id.* at \*22.

4898-5871-4143.v2

way of a corrective disclosure describing the precise fraud inherent in the alleged misstatements, or through events constructively disclosing the fraud, does not alter the basic loss-causation calculus." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 262 (2d Cir. 2016).

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100 (D. Conn. 2021), cited by the Court in its May 1, 2024 Order (ECF 106 at 16), is instructive. There, the court found corrective disclosures similar to those alleged here – (i) announcement of a delayed Form 10-Q and internal investigation; (ii) announcement of the CEO's and CFO's resignation; and (iii) revelation of a police raid on the company's offices – merely described "'events constructively disclosing the fraud,'" emphasizing that "corrective disclosures or materializations alleged need not be 'a "mirror image" tantamount to a confession of fraud.'" *Alexion*, 556 F. Supp. 3d at 140-41. On class certification, the *Alexion* court did not distinguish between a corrective disclosure or materialization-of-the-risk theory in its damages analysis, and found that the out-of-pocket methodology matched plaintiffs' theory of the case. *Alexion*, 2023 WL 2932485, at *13 (also rejecting need for methodology to account for time-varying inflation or confounding information); *see also Barrick*, 314 F.R.D. at 106-07 (out-of-pocket damages methodology appropriate in case involving both corrective disclosure and materialization-of-the-risk theories of loss causation).

Here, as in *Alexion*, Plaintiffs' theory of liability remains the same regardless of how the loss-causing events are characterized: Defendants' fraudulent conduct artificially inflated Dentsply's stock price, and when the market learned the relevant truth through the alleged loss-causing events, the stock price declined as the artificial inflation dissipated, causing damages. *See* Cain Rbt., ¶¶24-30 (explaining that the flexible out-of-pocket damages methodology easily accommodates necessary inputs regardless of whether alleged truth-revealing disclosures are characterized as corrective disclosures or materializations of risk). Defendants' arguments about how the disclosures should be

- 7 -

characterized and whether they in fact revealed the fraud are merits-stage loss causation arguments inappropriate for resolution at class certification. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812 (2011) (a securities plaintiff need not establish loss causation to establish predominance because "[l]oss causation addresses a matter different from whether an investor relied on a misrepresentation, presumptively or otherwise, when buying or selling a stock").

**B.      Dr. Cain's Proposed Methodology Will Reliably Measure Inflation in This Action**

Neither Defendants nor their expert, Dr. Paul Zurek, actually dispute that damages are capable of being measured on a classwide basis. Cain Rbt., ¶8. Instead, they quibble with Dr. Cain's purported lack of specificity as to how he would implement the out-of-pocket damages methodology at the merits stage. Further, Defendants speculate that the proposed methodology *might* not reliably measure inflation if certain fact patterns – not alleged here – were present. Opp. at 10-11; Expert Report of Paul Zurek, Ph.D. (ECF 136-1) ("Zurek Rpt."), ¶¶33-35, 39, 42-43, 46, 48-58, 69-70, 72-73. Each of these criticisms is readily dismissed.

**1.      Defendants' Meritless "Mismatch" Theory Relies on Mischaracterization of Plaintiffs' Allegations and Misstatement of the Law**

In arguing that Dr. Cain's proposed methodology does not account for a "mismatch" between the content of the alleged misstatements and disclosures, Defendants rely on the incorrect (and unsupported) assumption that all cases pleading a materialization-of-the-risk loss causation theory necessarily involve defendants concealing or under-disclosing risks of future events occurring.[5] Defendants misapprehend the law. In the Second Circuit, materialization-of-the-risk is simply a

---

[5]    Notably, Defendants cite no authority where the out-of-pocket damages methodology was found insufficient based on a "mismatch" between misrepresentation and loss-causing event. Opp. at 10-11. Nor does Dr. Zurek cite any economic literature to support his contention that a damages methodology would need to account for that mismatch in order to reliably measure inflation. Zurek Rpt., ¶¶45-48.

4898-5871-4143.v2

stand-in for the common law tort concept of proximate cause: if an alleged loss-causing event is one that is a foreseeable consequence of the alleged misconduct (*i.e.*, is in the ***zone of risk*** resulting from the defendant's actions), but is not a mirror-image disclosure of the fraudulent conduct, the event is often classified as constructively corrective under the materialization-of-the-risk rubric. *Vivendi*, 838 F.3d at 262; *Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 422 F. Supp. 3d 821, 854-55 (S.D.N.Y. 2019). Courts in this Circuit have characterized a diverse array of events – including executive terminations, disappointing earnings reports, losses on loan portfolios, failed clinical trials, and announcements of investigations – as "materializations of risks" sufficient for loss causation so long as the event is causally connected to the alleged fraud. *Vivendi*, 838 F.3d at 262; *AMC*, 422 F. Supp. 3d at 854-55; *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 203 (S.D.N.Y. 2010) (announcement of U.S. Securities and Exchange investigation, losses on loan portfolio); *Abramson v. NewLink Genetics Corp.*, 965 F.3d 165, 180 (2d Cir. 2020) (failed clinical trial). As evidenced by these cases, whether a materialization-of-the-risk theory applies on the back-end of the loss causation analysis is not dependent on the subject of the misstatements at the front-end.

Here, Plaintiffs have pled a fraudulent scheme involving channel-stuffing, accounting manipulation, and misstatements issued to conceal: (i) ongoing quality problems with Dentsply's CAD/CAM products; (ii) already-languishing end-user demand for those products; and (iii) existing supply constraints that limited sales of Dentsply's Technology and Equipment products customers did want to purchase. Contrary to Defendants' mischaracterization, the alleged problems were certainties already adversely impacting Dentsply at the time that Defendants lied about them, not merely probabilistic "risks to Dentsply's future financial performance." *Compare, e.g.*, ¶¶47-58, 64-74, *with* Opp. at 10, *and* Zurek Rpt., ¶48. Accordingly, Dr. Zurek's hypothetical scenarios, in which

- 9 -

a company's future valuation is dependent on the probability of a particular event occurring (*e.g.*, a merger closing), are inapposite to Plaintiffs' allegations and theory of liability, and so to Plaintiffs' damages methodology. *Compare* Opp. at 10, *and* Zurek Rpt., ¶¶52-53, *with* Cain Rbt., ¶¶24-30; *see Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 399-400 (N.D. Ga. 2019) (out-of-pocket damages methodology appropriate where theory of liability was "'not that the probability of missing [construction] deadline kept going up, but that the likelihood of meeting the deadline was virtually nil from the start, but that was concealed'").

Defendants' reliance on *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 123 (2021) (Opp. at 11), is inapt, as the quoted dicta – that the inference that "the back-end price drop equals front-end inflation . . . starts to break down when there is a mismatch between the contents of the misrepresentation and the corrective disclosure" – arises in the context of *price impact*, not damages. *Goldman*, 594 U.S. at 123. Unlike here, the defendants in *Goldman* sought to rebut the presumption of reliance in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), by showing that the alleged false statements had no price impact because a given disclosure was unrelated to a more generic misrepresentation. *Goldman*, 594 U.S. at 123; *compare* Cain Rbt., ¶¶38-57. Because Defendants do not dispute that the *Basic* presumption of reliance applies, the question of whether or not there are "mismatches" – a question common to all Proposed Class members, in any event – is irrelevant until the merits stage when Defendants can dispute loss causation. *Halliburton*, 563 U.S. at 812.

### 2. Dr. Cain's Proposed Methodology Is Sufficiently Detailed for This Stage of the Case

Defendants and their expert also wrongly suggest that Plaintiffs' proposed damages methodology is inadequate because Dr. Cain does not specifically identify the final valuation tools and inputs he would employ, if required, to calculate damages at the merits stage. Opp. at 1-2, 12; Zurek Rpt., ¶¶13-14, 41, 68-69, 73, 75, 78. However, as Defendants themselves emphasize,

- 10 -

4898-5871-4143.v2

"'[e]conomic theory provides no "off-the-shelf" tools that can be used to compute inflation without taking into account the particular circumstances of a given litigation.'" Opp. at 2, 12 (quoting Zurek Rpt., ¶39). Here, over five months of fact discovery remain, and merits determinations are even farther away. Thus, it would be inappropriate for Dr. Cain to conclusively state, at this stage of the case and before the record is fully developed, which specific valuation tools and inputs he would use. *See* Cain Rpt., ¶¶99, 101, 104, 106-107, 111; Cain Rbt., ¶¶11, 13, 19 n.9, 22-23. This is why at the class certification stage, courts require only that an expert proffer a common methodology that "can be used to establish damages . . . for all class members, ***even though certain of the inputs to that model are not yet ascertainable***." *S. Co.*, 332 F.R.D. at 399; *Martínek v. AmTrust Fin. Servs., Inc.*, 2022 WL 326320, at \*18-\*19 (S.D.N.Y. Feb. 3, 2022) (damages methodology identical to that proposed by Dr. Cain sufficiently specified where expert stated he could use "'valuation tools,' including event study analysis" to create a model after factual determinations).

Defendants' demand that Dr. Cain specify now how he would account for potential confounding information fails for the same reason. Opp. at 12, 15. As Dr. Cain has explained, if the existence of confounding information is proven on the merits, the impact of "'confounding information' on the price of Dentsply securities can be determined on a common, class-wide basis using various accepted methodologies, such as event study analysis, valuation analysis, analyst reports, principles of finance and valuation analysis and peer-reviewed academic research." Cain Rpt., ¶100; Cain Rbt., ¶¶31-32. The value of the confounding information can then be subtracted from the residual decline on the day(s) following the corrective disclosure, isolating the inflation attributed to Defendants' fraud. Cain Rpt., ¶100; Cain Rbt., ¶¶31-32. This is sufficient at the class certification stage. *See Signet*, 2019 WL 3001084, at \*20 (noting that courts "reject[] the suggestion that an event study is incapable of disaggregating the effects of confounding information" because if

- 11 -

so, "nearly every securities fraud class action would fail"); *Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 47 (S.D.N.Y. 2018) (argument that damages model "does not control for confounding information . . . go[es] to the question of loss causation . . . and the Supreme Court has held 'that loss causation . . . [is a] common question[] that need not be adjudicated before a class is certified'"); *Alexion*, 2023 WL 2932485, at *14 (same).

Finally, Defendants' argument that Dr. Cain must explain how an event study could separate the materialization of "disclosed risks" from "undisclosed risks," presents a loss causation argument that courts routinely reject when considering the sufficiency of a proposed classwide damages methodology. *Compare* Opp. at 12-13, *with Signet*, 2019 WL 3001084, at *20 (rejecting argument that methodology "did not adequately isolate the impact of the materialization of known risks from the impact of allegedly concealed risks" as "simply a loss causation argument in disguise, because it tests the causal relationship between the alleged misstatements and the price decline" and "'beyond the Rule 23 inquiry'"); *see also Acadia*, 2024 WL 1060079, at *16 (methodology sufficient where expert could differentiate between loss caused by disclosed and understated portion of the risk using "'standard tools of valuation,'" even if tools were not yet specified); Cain Rbt., ¶30.

### 3.    Plaintiffs' Proposed Methodology Is Not Required to Account for Potential Time-Varying Inflation at Class Certification

Setting aside Defendants' failure to establish time-varying inflation necessarily arises from Plaintiffs' allegations – it doesn't – "even accepting the Defendants' premises that inflation would have varied during the class period in this case and that such variation could not be accounted for," "*Comcast* does not suggest that damage calculations must be so precise at this juncture." *Waggoner v. Barclays PLC*, 875 F.3d 79, 106 (2d Cir. 2017) (affirming grant of class certification); *see also Alexion*, 2023 WL 2932485, at *13 (rejecting time-varying inflation argument); *Pirnik*, 327 F.R.D. at 47.

4898-5871-4143.v2

Incredibly, Defendants point the Court to *In re Vaxart, Inc. Sec. Litig.*, 738 F. Supp. 3d 1259, 1267 (N.D. Cal. 2024), as support for their time-varying inflation argument, without even mentioning the subsequent opinion in that action – issued prior to Defendants' filing – certifying the class and accepting Dr. Cain's damages methodology as capable of measuring damages on a classwide basis. *In re Vaxart, Inc. Sec. Litig.*, 2024 WL 5135206 (N.D. Cal. Dec. 17, 2024) ("*Vaxart II*"); Cain Rbt., ¶14.  More, in the decision that Defendants rely upon, the court emphasized that the *Vaxart* case presented a highly atypical fact pattern in securities fraud actions: evidence in the case demonstrated that the truth began leaking out almost immediately after the alleged misstatements were made.  *Vaxart*, 738 F. Supp. 3d at 1260-61.[6]  The court found that both parties had failed to address that evidence, and so denied class certification without prejudice.  Here, on the other hand, Defendants have offered no evidence that time-varying inflation will be an issue in this case.

In any event, the need to account for time-varying inflation would not raise individualized issues of damages here.  As in *Vaxart II*, Dr. Cain has explained here that **if** ultimately necessary when assessing loss causation and damages at the merits stage, he can use standard valuation tools to measure such inflation on a classwide basis.  *Compare Vaxart II*, 2024 WL 5135206, at *1, *with* Cain Rbt., ¶¶33-36.  Such "calculations can be performed on a class-wide basis and are not dependent upon individual Class member identities or circumstances."  Cain Rpt., ¶¶104-105; Cain Rbt., ¶35.

---

[6]   Defendants' reference to *Bratya SPRL v. Bed Bath & Beyond Corp.*, 2024 WL 4332616, at *19-*20 (D.D.C. Sept. 27, 2024), is even further afield.  Unlike here, the defendants in *Bratya* challenged the market efficiency of a so-called "meme stock," which involved numerous unique features, including a "short squeeze," and presented challenges not present in this standard securities fraud class action.  *Id.*  And again, Defendants here do not challenge market efficiency or price impact.

4898-5871-4143.v2

4.      **Future Use of a Multi-Day Event Window to Analyze**
        **Causation and Damages for the November 1, 2022 Disclosure**
        **Is Irrelevant to the Sufficiency of Plaintiffs' Proposed Damages**
        **Methodology at Class Certification, and in Any Event, Is**
        **Justified Here**

Defendants' arguments as to the propriety of a multi-day event window in a future loss causation and damages analysis (Opp. at 13-15), are purely speculative – Dr. Cain has not committed to an event window duration to assess any of the alleged corrective disclosures for purposes of loss causation and damages. *Cf.* Zurek Rpt., ¶¶76-78 (arguing only that "to the extent" a three-day window were to be used, Dr. Cain "has not explained why such an approach would be appropriate"). In fact, Dr. Cain has expressly stated that such determinations would be premature at this time. Cain Rpt., ¶¶99, 101, 111; Cain Rbt., ¶59. Defendants will have the opportunity to challenge event window durations once Plaintiffs' expert has actually selected an event window for purposes of assessing causation and damages – *i.e.*, at the merits stage.

On the merits, Defendants' event-window-duration argument fails. Courts in this District and elsewhere routinely find multi-day event windows appropriate to assess stock price reaction to corrective disclosures, recognizing that, depending on the circumstances, even efficient markets can require multiple days to digest high-information content announcements like Dentsply's November 1, 2022 Form 8-K (which announced long-awaited results of Dentsply's Audit Committee's internal investigation, findings of ethics violations by senior management (including Casey and Gomez), intended restatements of multiple periods of financial results, and provided preliminary third quarter 2022 results and a fourth quarter 2022 revenue outlook). *See In re Vivendi Universal, S.A. Sec. Litig.*, 634 F. Supp. 2d 352, 372 (S.D.N.Y. 2009) (accepting three-day event window); *Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 104 (S.D.N.Y. 2009) (same); *see also S. Co.*, 332 F.R.D. at 390, 392 (noting that "'courts recognize the particular circumstances of an event may dictate the window

used by an expert when conducting event studies'" and pointing out the lack of "any rule . . . requiring that one must commit at the outset, before analyzing the data, to investigate only one-day or only two-day event windows").

Economic literature and the factual record support use of a multi-day event window to evaluate the November 1, 2022 disclosure here as well.  Cain Rbt., ¶¶58-63; *see also* Ex. 2

( █████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████ ).  It is thus unsurprising that Defendants' expert – while criticizing Dr. Cain's "failure to explain" his purported choice of a not-yet-selected, future event window – does not actually contend that use of a multi-day window would be unreliable or inconsistent with accepted economic methods, particularly given the complexity of the November 1, 2022 disclosure's contents.  *See* Zurek Rpt., ¶¶74-80.

## III.    CONCLUSION

Plaintiffs have established that damages can be calculated using a classwide methodology that matches their theory of liability – the only aspect of class certification Defendants have challenged.    Plaintiffs' Motion to certify the Proposed Class, appoint Plaintiffs as Class Representatives, and appoint Robbins Geller Rudman & Dowd LLP as Class Counsel should be granted.

4898-5871-4143.v2

DATED:  February 28, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUKE O. BROOKS (admitted *pro hac vice*)
DARRYL J. ALVARADO (admitted *pro hac vice*)
CHRISTOPHER D. STEWART (admitted *pro hac vice*)
HILLARY B. STAKEM (admitted *pro hac vice*)
NICOLE Q. GILLILAND (admitted *pro hac vice*)
JESSICA E. ROBERTSON (admitted *pro hac vice*)
MEGAN M. SONNEY (admitted *pro hac vice*)


s/ Luke O. Brooks
LUKE O. BROOKS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
lukeb@rgrdlaw.com
dalvarado@rgrdlaw.com
cstewart@rgrdlaw.com
hstakem@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com
msonney@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

- 16 -

4898-5871-4143.v2

VANOVERBEKE, MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel for Lead Plaintiffs

- 17 -

4898-5871-4143.v2

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on February 28, 2025, I authorized the

electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will

send notification of such filing to the email addresses on the attached Electronic Mail Notice List,

and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service

to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Luke O. Brooks
LUKE O. BROOKS

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  lukeb@rgrdlaw.com

# Mailing Information for a Case 1:22-cv-06339-AS San Antonio Fire and Police Pension Fund v. Dentsply Sirona Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Chad Albert**
  calbert@levinelee.com

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com

- **Javier Bleichmar**
  jbleichmar@bfalaw.com

- **H. Christopher Boehning**
  cboehning@paulweiss.com,Mao fednational@paulweiss.com

- **Luke Orion Brooks**
  lukeb@rgrdlaw.com,tholindrake@rgrdlaw.com,kmccormack@rgrdlaw.com,e file sd@rgrdlaw.com

- **Kristina Anne Bunting**
  kbunting@paulweiss.com,mao fednational@paulweiss.com

- **Roger Allen Cooper**
  racooper@cgsh.com,maofiling@cgsh.com

- **Bryce Leigh Friedman**
  bfriedman@stblaw.com,managingclerk@stblaw.com,5962535420@filings.docketbird.com

- **Nicole Quaid Gilliland**
  ngilliland@rgrdlaw.com

- **Meredith Dawn Karp**
  meredith.karp@stblaw.com,5128371420@filings.docketbird.com,managingclerk@stblaw.com

- **Adam King**
  aking@levinelee.com

- **Nancy A. Kulesa**
  nancy@nkulesa.com

- **Seth L. Levine**
  slevine@levinelee.com,managingclerk@levinelee.com

- **Sarah Ellerie Libowsky**
  slibowsky@cgsh.com

- **Katherine Rosemary Lynch**
  kalynch@cgsh.com,maofiling@cgsh.com

- **Isabel R. Mattson**
  isabel.mattson@stblaw.com

- **Mark Edward McDonald**
  memcdonald@cgsh.com,maofiling@cgsh.com

- **Joseph F. Murray**
  murray@mmmb.com

- **Jessica E. Robertson**
  jrobertson@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Hannah Elizabeth Ross**
  hannah@blbglaw.com,catherine@blbglaw.com,managingclerk@blbglaw.com

- **Ross Mitchell Shikowitz**
  rshikowitz@bfalaw.com

- **Megan Sonney**
  msonney@rgrdlaw.com

- **Hillary B. Stakem**
  hstakem@rgrdlaw.com

- **Christopher D. Stewart**
  cstewart@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Patrick Clayton Swiber**
  pswiber@cgsh.com

- **Craig Scott Waldman**
  cwaldman@stblaw.com,2395227420@filings.docketbird.com,managingclerk@stblaw.com

- **Andrew W. Weaver**
  aweaver@cgsh.com,maofiling@cgsh.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Alycia           N Broz
Vorys Sayer Seymour & Pease LLP
52 East Gay Street
P. O. Box 1008
Columbus, OH 43216-1008

John             C Camillus
MEYER WILSON CO., LPA
305 W. Nationwide Blvd.
Columbus, OH 43215

John             L Chaney
Chaney & Drexel, LLC
One East Livingston Avenue
Columbus, OH 43215
```