UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAN ANTONIO FIRE AND POLICE PENSION FUND et al.,<br><br>         Plaintiffs,<br><br>-against-<br><br>DENTSPLY SIRONA INC. et al.,<br><br>         Defendants. | 22-cv-6339 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

 This is a securities-fraud action. Defendant Dentsply Sirona manufactures professional dental products and technologies. Plaintiffs accuse defendants of making misleading statements to cover up falling demand, supply-chain constraints, and defective products, in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.

 The Court denied defendants' motion to dismiss the case, Dkt. 106, and plaintiffs now move to certify the putative class, Dkt. 122. For the reasons given below, plaintiffs' motion is GRANTED.

## LEGAL STANDARDS

 A district court may only certify a class after it is satisfied the proposed class meets Federal Rule of Civil Procedure 23(a)'s prerequisites. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). "Those prerequisites require showing that: (1) 'the class is so numerous that joinder of all members is impracticable'; (2) 'there are questions of law and fact common to the class'; (3) 'the claims or defenses of the representative parties are typical' of those of the class; and (4) 'the representative parties will fairly and adequately protect the interests of the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)).

 The district court must also ensure that the proposed class is appropriate under one of the three bases Rule 23(b) outlines. *Id.* Relevant here is the last of that trio, which "allows for certification if both (1) 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). "Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Id.* (quotation omitted).

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).

## DISCUSSION

### I. The class action satisfies Rule 23(a).

Defendants raise no objection to class certification under Rule 23(a). *See* Dkt. 137. And the Court finds that plaintiffs have handily demonstrated that they satisfy each of Rule 23(a)'s requirements. Briefly:

#### A. Numerosity

"Numerosity is presumed when the putative class has forty or more members." *Onate v. AHRC Health Care, Inc.*, 2023 WL 8648167, at *3 (S.D.N.Y. Dec. 14, 2023). "In securities fraud class actions relating to publicly owned and nationally listed corporations, 'the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.'" *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 138 (S.D.N.Y. 2012) (citation omitted).

Here, more than a thousand institutions held Dentsply stock, an average of 9.6 million shares of Dentsply common stock traded weekly, and Dentsply had about 215 million shares outstanding. *See* Dkt. 126 at 8.

#### B. Commonality

Commonality is a low bar, especially in securities-fraud actions. *See In re Sumitomo Copper Litig.*, 194 F.R.D. 480, 482 (S.D.N.Y. 2000); *In re NIO, Inc. Sec. Litig.*, 2023 WL 5048615, at *5 (E.D.N.Y. Aug. 8, 2023).

Questions of law and fact common to the class include: 1) whether defendants made misleading misstatements or misleadingly omitted information; 2) whether the alleged fraud was material; and 3) whether defendants acted with scienter. *See Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) ("In general, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied.").

#### C. Typicality

"The Typicality Requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 424 (S.D.N.Y. 2014).

The proposed class has both. Class members' claims are based on defendants' allegedly deceptive conduct, and each class member alleges that defendants' scheme and misrepresentation propped up Dentsply stock prices, in violation of the securities laws. *See In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 103 (S.D.N.Y. 2016) (commonality met where "plaintiffs allege that class

members have been injured by similar misrepresentations and omissions"); *see also In re Bank of Am.*, 281 F.R.D. at 139.

### D. Adequacy

To determine whether a named plaintiff will "fairly and adequately protect the class," a court looks to "whether (1) plaintiff's interests are antagonistic to the interest of other members of the class; and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Aphria, Inc. Sec. Litig.*, 342 F.R.D. 199, 205 (S.D.N.Y. 2022) (citation omitted).

Plaintiffs' claims are identical to those of all class members, and plaintiffs have ably prosecuted this action so far. Similarly, plaintiffs' counsel are highly experienced and successful securities-fraud litigators.

## II.    The class action satisfies Rule 23(b)(3).

Defendants are less sanguine about plaintiffs' prospects under Rule 23(b)(3). Defendants say the class can't be certified for a single reason: because plaintiffs' damages model fails under the Supreme Court's decision in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). *See* Dkt. 137 at 1.

### A. Predominance

The Second Circuit has "interpreted *Comcast* as precluding class certification 'only . . . because the sole theory of liability that the district court determined was common in that antitrust action, overbuilder competition, was a theory of liability that the plaintiffs' model indisputably failed to measure when determining the damages for that injury.'" *Waggoner v. Barclays PLC*, 875 F.3d 79, 105–06 (2d Cir. 2017) (omission in original) (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 88 (2d Cir. 2015)). In other words, "*Comcast* held that a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury." *Roach*, 778 F.3d at 407. "All that is required at class certification is that 'the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.'" *Sykes*, 780 F.3d at 88 (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)).

Plaintiffs rely on an "out-of-pocket" damages model. As explained by plaintiffs' damages expert, Dr. Matthew Cain, the out-of-pocket "approach calculates investor damages formulaically as the artificial inflation in the stock price at the time of an investor purchase minus the artificial inflation in the stock price at the time of an investor sale." Dkt. 127-15 at 33. "In other words, damages 'consist[ ] of the difference between the price paid and the 'value' of the stock when bought." *In re Barrick Gold Sec. Litig.*, 314 F.R.D. at 103.

Plaintiffs' damages model suffices under *Comcast*. *See* 7 WILLIAM B. RUBENSTEIN, NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 22:81 (6th ed. 2022) ("[I]t is a rare—perhaps even nonexistent—securities case that raises damages issues that are so individualized as to defeat the predominance of the critical common issues in the case."). As a threshold matter, there are tell-tale signs that defendants' arguments are not really for the class-certification stage, but rather are *Daubert* or summary-judgment arguments in disguise (and defendants have filed neither motion

3

yet). For instance, they don't argue that plaintiffs' approach to damages leads to different outcomes for different purchasers or reveals that purchasers suffering no injury are intermingled with those properly in the class. Instead, their attacks are common to the class. Defendants' bottom-line argument is just that plaintiffs' damages model won't be up to snuff for anyone. In all but the rare case, that's an argument for summary judgment, not class certification.

This isn't one of those few exceptions. Unlike the *Comcast* plaintiffs, plaintiffs here have only one substantive theory of liability: that defendants made misleading statements that artificially inflated Dentsply's stock price. And, again unlike the *Comcast* plaintiffs, plaintiffs' damages model "measure[s] only those damages attributable to that theory"—not any other. *See Comcast*, 569 U.S. at 35; *see also Waggoner*, 875 F.3d at 105–06 (*Comcast* bars class certification where plaintiffs' damages model "indisputably fail[s] to measure" plaintiffs' "sole theory of liability" (quoting *Sykes*, 780 F.3d at 88)).

Perhaps because plaintiffs rely on just one theory of liability, defendants try to shore up their *Comcast* challenge by casting plaintiffs' theory as uniquely complex. *See* Dkt. 137 at 9. It's not. Plaintiffs' particular theory of injury is the same that underlies the mine-run of securities-fraud cases in this and other districts. Misstatements inflated the stock's price. And so plaintiffs' reliance on the traditional out-of-pocket damages method suffices under Rule 23(b)(3). *See In re Waste Mgmt. Sec. Litig.*, 2025 WL 958467, at *13 (S.D.N.Y. Mar. 31, 2025) ("[The out-of-pocket] approach conforms to Plaintiffs' theory of injury that . . . investors would have paid less had there been no misleading statements."); *In re Barrick Gold Sec. Litig.*, 314 F.R.D. at 105–06 (holding that "oft-used remedy" of out-of-pocket damages "does not create individualized damages issues that defeat predominance").

Defendants say plaintiffs' damages model doesn't account for "mismatches" between the alleged misstatements and loss-causing disclosures. *See* Dkt. 137 at 9–11. According to defendants, plaintiffs' model will only reliably measure risks that were certain at the time defendants allegedly covered them up. But if the risks weren't a sure thing, plaintiffs' model will overestimate stock-price inflation. *See id.* at 10–11.

Defendants' argument is one about plaintiffs' theory of loss causation. *See Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232–33 (2d Cir. 2014) (loss causation alleged where "the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement" (citation omitted)). "[L]oss causation . . . [is a] common question[] that need not be adjudicated before a class is certified." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 475 (2013); *see also In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at *19 (E.D.N.Y. Jan. 11, 2022) (damages model doesn't have to distinguish between "the perceived probability of risk and true probability" at class certification). Courts in this district have repeatedly held that *Comcast* does not require plaintiffs' damages model to capture precisely plaintiffs' theory of loss causation at the class-certification stage. *See Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 99 (S.D.N.Y. 2015) ("[W]hether plaintiffs will be able to prove loss causation . . . [is a] question[] that go[es] to the merits and not whether common issues predominate."); *see also In re Barrick Gold Sec. Litig.*, 314 F.R.D. at 105 ("Although plaintiffs may face substantial hurdles

4

in actually proving loss causation and out-of-pocket damages, they are not required to make these showings until the merits stage.").

The same goes here. Returning to *Comcast*'s driving concern, nothing in defendants' criticism of plaintiffs' model shows that the model measures something other than the strain of injury related to defendants' alleged misstatements. *See Sykes*, 780 F.3d at 88; *see also In re Waste Mgmt. Sec. Litig.*, 2025 WL 958467, at *13. While at this point the model might be noisy, "[c]alculations need not be exact." *Comcast*, 569 U.S. at 35. Any "mismatch" between the alleged misstatements and loss-causing disclosures isn't an issue for class certification. *See Weston v. DocuSign, Inc.*, 348 F.R.D. 354, 370 (N.D. Cal. 2024) (rejecting that failure of damages model "to account for mismatch between alleged misstatements and corrective disclosures" defeats class certification per *Comcast*).

Defendants also attack the hypothetical mechanics of plaintiffs' model. Dentsply's stock price increased on the day of one of the alleged loss-causing disclosures. *See* Dkt. 136-1 ¶ 76. Plaintiffs suggest in their operative complaint that, for this event, inflation should be estimated across a three-day period. Dkt. 72 ¶ 96. Defendants claim this extended window is arbitrary because plaintiffs don't propose using the same window length for the other loss-causing disclosures. Defendants go on to say that use of a three-day window undercuts plaintiffs' assumption of market efficiency and indicates that plaintiffs' damages model cannot reliably measure price inflation where stock price increases on the day of a loss-causing disclosure. *See* Dkt. 137 at 13–15.

Defendants hold plaintiffs' damages model to a standard too high for class certification. *See Comcast*, 569 U.S. at 35; *see also Carpenters Pension*, 310 F.R.D. at 99 (rejecting *Comcast* challenge to damages model where plaintiffs' model allegedly did not explain, among other things, why plaintiffs' chosen timeframe was "an appropriate starting point for calculating damages"). Though the operative complaint does rely on a three-day window for one of the five loss-causing disclosures, nothing in Dr. Cain's report suggests that plaintiffs' final damages model will adopt that window. To the contrary, Dr. Cain unequivocally states that it would be too early to make this decision, because "such analysis often incorporates information produced during discovery." Dkt. 127-15 ¶ 99.

Plaintiffs also point out that, even if the model were to use a three-day event window, it wouldn't be as irrational as defendants make out. Instead, courts have repeatedly found models relying on event studies with multi-day windows appropriate. *See Carpenters Pension*, 310 F.R.D. at 96 ("A two-to three-day window is common in event studies."). Nor would it mean that the market for Dentsply stock was inefficient or that plaintiffs' damages model is unreliable. The basic idea behind an event window is that a disclosure's circumstances will determine how long a market takes to process information. *See United States v. Hatfield*, 2014 WL 7271616, at *12 (E.D.N.Y. Dec. 18, 2014) ("The selection of an appropriate event window is an inexact science."). In other words, the very concept is an acknowledgement that there is no standard amount of time for an efficient market to reflect a disclosure.

The remainder of defendants' criticisms also fail in short order. Defendants claim plaintiffs' damages model doesn't separate out the effects of disclosed risks from those allegedly covered-up. But the "contention that Plaintiff's methodology did not adequately isolate the impact of the materialization of known risks from the impact of allegedly concealed risks is simply a loss causation argument in disguise." *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *20 (S.D.N.Y. July 10, 2019). Defendants rely on essentially the same reason to fault plaintiffs' model for not yet choosing a single method of calculating inflation. *See* Dkt. 137 at 11–12 (specifying method for calculating inflation important to ensure that plaintiffs' model can separate "the materialization of disclosed risks from the materialization of undisclosed risks"). So that argument, too, falls flat.

Loss causation comes back yet again in defendants' criticism that plaintiffs' model doesn't address how to measure confounding information. *Id.* at 15. Because this quibble is one about whether plaintiffs' damages were the result of defendants' alleged misstatements or something else, it's yet another version of the "complaint that Plaintiffs have not demonstrated loss causation as to the entire drop in the stock price." *Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, 2024 WL 1497110, at *25 (S.D.N.Y. Apr. 5, 2024); *see also Pirnik v. Fiat Chrysler Automobiles, N.V.*, 327 F.R.D. 38, 47–48 (S.D.N.Y. 2018); *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 328 F.R.D. 86, 99 (S.D.N.Y. 2018).

Defendants also point to two instances where a similar model constructed by Dr. Cain was deemed insufficient to support a motion for class certification. *See* Dkt. 137 at 17–18, 18 n.2. Plaintiffs respond first by noting that in one of the cases defendants cite, the court ultimately accepted Dr. Cain's damages methodology as capable of measuring damages on a class-wide basis. *See* Dkt. 148 at 13 (citing *In re Vaxart, Inc. Sec. Litig.*, 2024 WL 5135206 (N.D. Cal. Dec. 17, 2024)). And as to both cases, plaintiffs underscore that they presented atypical fact patterns, with the first involving evidence that the truth about the alleged misstatements at issue emerged almost immediately after the misstatements were made and the second concerning a "meme stock." *See id.* at 13 & n.6. Neither of those fact patterns is remotely like the circumstances alleged here, and defendants don't argue otherwise.

Finally, even if plaintiffs' approach to damages posed an issue, the proposed class would still be certified. "*Comcast* . . . did not hold that proponents of class certification *must* rely upon a classwide damages model to demonstrate predominance." *Roach*, 778 F.3d at 407 (emphasis added). And plaintiffs don't hang their predominance arguments on their damages model. To the contrary, plaintiffs also argue that "[c]ommon questions include 'whether Defendants engaged in a fraudulent scheme and made the false and misleading statements and omissions, whether those statements and omissions were material, whether Defendants acted with scienter, and whether Defendants' conduct injured' investors." Dkt. 126 at 12 (quoting *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 281 (S.D.N.Y. 2008)). Defendants fail to address any of these other reasons why common issues will predominate in this case.

Of course, defendants will have full opportunity to challenge plaintiffs' proof of loss causation and damages at summary judgment, after discovery is complete. This includes any argument that

Dr. Cain's expert analysis fails to satisfy the requirements of *Daubert* and Federal Rule of Evidence 702, applications that defendants have presently not made.

### B. Superiority

Having found that common questions of fact and law predominate over any questions affecting only individual class members, the Court turns next to whether a class action is the best method of adjudicating this dispute. It is (and defendants don't claim to the contrary). Like most other securities actions, a class action efficiently and effectively provides recourse to Dentsply's many stockholders, while avoiding inconsistent rulings and proliferating litigation. *See In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015).

## CONCLUSION

For the reasons provided above, plaintiffs' motion for class certification is GRANTED. The Court orders as follows:

1. This action is certified as a class action and the Class is defined as:

    All persons and entities who purchased the publicly traded common stock of Dentsply Sirona Inc. ("Dentsply") between June 9, 2021 and November 13, 2022, inclusive (the "Class Period"), and were damaged thereby. Excluded from the Class are: (i) defendants Dentsply, Donald M. Casey, Jr., and Jorge Gomez (together, "Defendants"); (ii) the officers and directors of Dentsply, at all relevant times; (iii) members of the immediate families and legal representatives, heirs, successors, or assigns of the individuals identified in (i) or (ii); and (iv) any entity in which any of the Defendants has or had a controlling interest.

2. City of Birmingham Retirement and Relief System, El Paso Firemen & Policemen's Pension Fund, and Wayne County Employees' Retirement System are hereby appointed as Class Representatives.

3. Robbins Geller Rudman & Dowd LLP is hereby appointed as Class Counsel.

The Clerk of Court is directed to terminate Dkt. 122.

SO ORDERED.

Dated: July 10, 2025
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge