**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SAN ANTONIO FIRE AND POLICE PENSION FUND, CITY OF BIRMINGHAM RETIREMENT AND RELIEF SYSTEM, EL PASO FIREMEN & POLICEMEN'S PENSION FUND, and WAYNE COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>DENTSPLY SIRONA INC., DONALD M. CASEY, JR., and JORGE GOMEZ<br><br><br>             Defendants. | Case No. No. 22-cv-06339-AS<br><br>CLASS ACTION<br><br>Hon. Arun Subramanian |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

**PRELIMINARY STATEMENT** ................................................................................................. 1

**BACKGROUND** .......................................................................................................................... 2

    I.     Dentsply's Business .......................................................................................................... 2

    II.    FY21 Projections and 1H21 Results ................................................................................. 2

    III.   Resolving Product Quality and Supply Chain Issues ...................................................... 3

    IV.   Retail Forecasts ............................................................................................................... 4

    V.    Wholesale Incentive Agreements .................................................................................... 4

    VI.   2021 Disclosures ............................................................................................................. 5

    VII.  Internal Investigation & Accounting Review .................................................................. 5

    VIII. Restatement .................................................................................................................... 6

**LEGAL STANDARD** ................................................................................................................. 7

**ARGUMENT** .............................................................................................................................. 8

    I.     SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PLAINTIFFS' ACCOUNTING FRAUD CLAIMS ...................................................................................... 8

    II.    MANY ALLEGED MISSTATEMENTS CANNOT SUPPORT A CLAIM ........................ 14

    III.   PLAINTIFFS' SCHEME LIABILITY CLAIM FAILS ..................................................... 25

    IV.   PLAINTIFFS CANNOT ESTABLISH LOSS CAUSATION ........................................... 27

    V.    PLAINTIFFS' CONTROL-PERSON CLAIM FAILS ...................................................... 30

**CONCLUSION** .......................................................................................................................... 30

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Alpha Capital Anstalt v. Schwell Wimpfheimer & Associates LLP*,
2018 WL 1627266 (S.D.N.Y. 2018) ............................................................... 26

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..................................................................................... 7

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
556 F. Supp. 3d 100 (D. Conn. 2021) ........................................................... 17

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
750 F.3d 227 (2d Cir. 2014) ......................................................................... 7

*Chill v. Gen. Elec. Co.*,
101 F.3d 263 (2d Cir. 1996) ..................................................................... 9, 15

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d. Cir. 2009) ........................................................................ 16

*Eden Alpha CI LLP v. Polished.com Inc.*,
763 F. Supp. 3d 270 (E.D.N.Y. 2025) ........................................................... 22

*Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*,
873 F.3d 85 (2d Cir. 2017) ........................................................................... 15

*FindWhat Inv. Grp. v. FindWhat.Com*,
658 F.3d 1282 (11th. Cir. 2011) ................................................................... 17

*Goenaga v. March of Dimes Birth Defects Found.*,
51 F.3d 14 (2d Cir. 1995) ............................................................................. 7

*Hensley v. IEC Electronics Corp*,
2014 WL 4473373, at *5 (S.D.N.Y. Sept. 11, 2014) ................................. 10, 13

*In re Allergan PLC Sec. Litig.*
2022 WL 17584155, at *10 (S.D.N.Y. 2022) ................................................. 20

*In re Braskem S.A. Sec. Litig.*,
246 F. Supp. 3d 731 (S.D.N.Y. 2017) ........................................................... 25

*In re Cannavest Corp. Sec. Litig.*,
    307 F. Supp. 3d 222 (S.D.N.Y. 2018) ........................................................... 27

*In re Express Scripts Holdings Company Sec. Litig.*,
    773 Fed. App'x. 9 (2d Cir. 2019) ................................................................. 15

*In re Moody's Corp. Sec. Litig.*,
    2013 WL 4516788 (S.D.N.Y. Aug. 23, 2013) ............................................... 28

*In re Mylan N.V. Sec. Litig.*,
    666 F.Supp.3d 266 (S.D.N.Y. 2023) ........................................... 10, 27, 28, 29, 30

*In re N. Telecom Ltd. Sec. Litig.*,
    116 F.Supp.2d 446 (S.D.N.Y. 2000) ........................................................ 8, 12, 19

*In re Omnicom Grp., Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010) ....................................................................... 30

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
    625 F.Supp.3d 164 (S.D.N.Y. 2022) ............................................................ 18

*In re Veon Ltd. Sec. Litig.*,
    2025 WL 66444 (S.D.N.Y. Jan. 10, 2025) ................................................... 30

*In re Vivendi, S.A., Sec. Litig.*
    838 F.3d 223 (2d Cir. 2016) ....................................................................... 16

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) .................................................................. 25, 27

*Macquarie Infrastructure Corporation v. Moab Partners, L.P.*,
    601 U.S. 257 (2024) .................................................................................. 15

*Menaldi v. Och-Ziff Capital Management Group LLC*,
    277 F. Supp. 3d 500 (S.D.N.Y. 2017) ........................................................ 27

*Retail Wholesale & Dept. Store Union Local 338 Retirement Fund v. Hewlett-Packard Co.*,
    845 F.3d 1268 (9th Cir. 2017) ................................................................... 25

*Robeco Cap. Growth Funds SICAV v. Peloton*,
    665 F. Supp. 3d. 522 (S.D.N.Y. 2023) ........................................................ 19

*S.E.C. v. Kelly*,
   817 F. Supp. 2d 340 (S.D.N.Y. 2011) ............................................................ 26

*S.E.C. v. Rio Tinto plc.*,
   41 F.4th 47 (2d. Cir. 2022) ..................................................................... 25, 26

*S.E.C. v. Treadway*,
   430 F. Supp. 2d 293 (S.D.N.Y. 2006) ............................................................ 13

*SEC v. Yorkville*,
   305 F. Supp. 3d 486 (S.D.N.Y. 2018) .......................................................... 9, 10

*Singh v. Cigna Corp.*,
   918 F.3d 57 (2d Cir. 2019) ........................................................................ 15

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010) ....................................................................... 16

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
   552 U.S. 148 (2008) ............................................................................... 7, 26

*Taleo Corp. Sec. Litig.*,
   2010 WL 597987 (N.D. Cal. Feb. 17, 2010) .................................................... 11

*Toft v. Harbor Diversified, Inc.*,
   No. 24-C-556, 2025 WL 357776 (E.D. Wis. Jan. 31, 2025) ................................. 11

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016) ....................................................................... 15

## Rules and Statutes

15 U.S.C. § 78u-5 ........................................................................................ 19, 20

15 U.S.C. § 78j ................................................................................................. 30

15 U.S.C. § 78t ................................................................................................. 30

Fed. R. Civ. P. 56 ............................................................................................... 7

17 C.F.R. § 240.10b-5 ........................................................................................ 25

Dentsply Sirona Inc. ("Dentsply" or the "Company"), Donald M. Casey, Jr. ("Casey"), and Jorge Gomez ("Gomez") (collectively, "Defendants"), respectfully submit this memorandum of law in support of their motion for partial summary judgment.[1]

## PRELIMINARY STATEMENT

Plaintiffs' complaint accused Defendants of a sprawling, 18-month fraud involving channel stuffing, accounting cover-ups, and undisclosed supply-chain challenges, followed by five separate "corrective" disclosures. Sixteen months of discovery have disproven these claims. The allegations of accounting fraud are unsubstantiated and should be dismissed. Moreover, more than half of Plaintiffs' challenged disclosures, including about dealer incentives and supply chain, should be dismissed because they were accurate or are otherwise inactionable. And Plaintiffs have outright *abandoned* certain damages claims, including those arising from the so-called "damning findings" of the Internal Investigation. While the remainder of the case similarly lacks merit, Defendants have moved to dismiss only those disclosures where there can be no genuine dispute. Accordingly, for the reasons that follow, Defendants respectfully submit that Plaintiffs should be permitted to proceed to trial only on the narrow issues that survive this motion.

*First*, Plaintiffs lack viable accounting fraud claims. The unrefuted record shows that Dentsply's restatement was driven by unintentional errors applying accounting guidance which predated the Class Period, were unrelated to purported channel stuffing, and were unknown to senior management. All claims based on Dentsply's accounting and restatement should be dismissed.

---

[1] References to "SOF" are to Defendants' Rule 56.1 Statement of Undisputed Material Facts in Support of Their Motion for Partial Summary Judgment, submitted herewith. References to "Ex." are to exhibits to the Declaration of Victoriya Levina in Support of Defendants' Motion for Partial Summary Judgment, submitted herewith. Capitalized terms not defined in this memorandum of law shall have the meanings as in the SOF.

1

*Second*, summary judgment should be granted as to 26 of the alleged misstatements that survived the Court's May 1, 2024 *Opinion and Order*. ECF 106 (the "MTD Order"). The undisputed evidence establishes that some of these statements—which were the product of a substantial disclosure vetting process—were either accurate when made, were indisputably made without scienter, or are inactionable puffery, forward-looking, or opinion statements.[2]  Plaintiffs' scheme liability claim must be dismissed as duplicative of their disclosure claims.

*Third*, certain corrective disclosure dates must be dismissed for failure of proof on loss causation. Plaintiffs have abandoned some dates and their own expert's analysis confirms that others did not disclose any new material information.

## BACKGROUND

### I.    Dentsply's Business

Dentsply is the world's largest diversified manufacturer of professional dental products and technologies, with sales in the U.S. and over 150 other countries. SOF¶1. During the Class Period, Dentsply had two business segments: T&E (comprising roughly 60% of Dentsply's global net revenues); and consumables (comprising the rest). SOF¶¶4-6. Plaintiffs' allegations focus on CAD/CAM products, AC¶¶55-71, one of five product categories in T&E.

Dentsply uses third-party distributors, the largest of which in North America are Patterson and Schein. SOF¶7. Sales to these two distributors accounted for roughly 13% and 17% of Dentsply's total net-sales in FY21 and FY22, respectively. SOF¶¶8-9.

### II.    FY21 Projections and 1H21 Results

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[2] Ex. A1 is a chart of the alleged misstatements as to which Defendants now move for summary judgment.

███████████████████████████████████████████████████

███ SOF¶16. ███████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████ SOF¶27.

1H21 financial results largely met or exceeded these projections. 1Q21 net-sales increased 8.5%; and 2Q21 increased 5.7% versus the same periods in 2019. SOF¶¶28, 33. ████████████

███████████████████████████████████████████████████

SOF¶¶32, 37. As Casey stated, Dentsply's "second-quarter performance [closed] out a strong first half of the fiscal year." SOF¶39.

## III.    Resolving Product Quality and Supply Chain Issues

In 2021, Dentsply experienced supply-chain constraints due to COVID-19, which affected T&E. SOF¶43 ██████████████████ and disclosed these issues and their impact as they became known. SOF¶¶43, 94. ████████████████████████████████

SOF¶¶40-44.

████████████████████████████████████████████████████

SOF¶40. ██████████████████████████████████████████████

████████████████████████████████████████████████████

███████ SOF¶¶41-42.

██████████████████████████████████████████████ SOF¶¶44, 60-61. ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████ SOF¶¶44, 63. And Defendants explained to investors the supply-chain challenges and

3

expressed optimism. *Infra* pp.18-23.

## IV.    Retail Forecasts



██████████    SOF¶¶60-67.  Net-sales for  3Q21 increased 8% and T&E increased 14.5% versus 3Q19—consistent with  senior  management expectations for  increased  retail  sales  growth. SOF¶¶68-69.  ████████████████████████████████████████████

████████████████████████████████████    SOF¶70.  ██████████

████████████████████████████████████████

████████████████████    SOF¶80.  ████████████████████████

████████████████████████    SOF¶78.

## V.    Wholesale Incentive Agreements

████████████████████████████████████████

████████████████████    SOF¶¶53, 59.  ██████████████████

████████████    SOF¶53.  ████████████████████████████

████████████████████████████████████████

████████████████████████████    SOF¶¶48, 73.  ████████████

████████████████████████████████████████

SOF¶73.

████████████████████████████████████████

████████    SOF¶59(i),  ████████████████████    SOF¶59(ii).  ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████    SOF¶67.

4

████████████████████████████████████████████████████████

████████████████████████████████████  SOF¶¶74, 75.

## VI.    2021 Disclosures

On November 4, 2021, Dentsply's 3Q21 10-Q disclosed "an increase in supply chain related costs…during the first nine months of 2021." SOF¶94. The same day, Gomez told investors that "the global supply chain environment continue[d] to be a challenge in terms of cost, availability of components, and labor across industries," Ex.D6 at 5, and it was "hard to predict how long the supply chain issues are going to last." *Id*. at 14. Casey told investors on November 11, 2021 that, while he was optimistic, supply chain challenges continued for T&E given Dentsply is "a heavily chip-oriented business." SOF¶132.

When retail sales did not achieve expected levels, Dentsply disclosed in its FY21 10-K that "certain dealers' inventory of…CAD/CAM products was higher than at the end of the prior year, by approximately $50 million…due to lower-than-expected retail sales in the fourth quarter and may pose headwinds to the Company's net-sales for these products in 2022." SOF¶96. ████

████████████████████████████████████  SOF¶100.

## VII.    Internal Investigation & Accounting Review

In March 2022, Dentsply's AFC retained ████████████ to conduct an internal investigation. SOF¶¶153, 158. On May 10, 2022, Dentsply disclosed an Internal Investigation to examine whether Dentsply had used incentives to sell products to distributors in 3Q21 and 4Q21, whether they were accurately disclosed and properly accounted for, and whether senior management had directed their use to achieve executive compensation targets. SOF¶¶155-156. Because the examination included "allegations regarding certain financial reporting matters," Dentsply could not timely file its 1Q22 10-Q. SOF¶¶154-156.

On November 1, 2022, Dentsply disclosed the results of the Internal Investigation. SOF¶164. The AFC "concluded that there was no evidence of intentional wrongdoing or fraud" by senior management and "did not find evidence that [Casey] or [Gomez] specifically directed the Company's use of incentives to achieve executive compensation targets in 2021." SOF¶169.

The AFC also conducted "a separate but concurrent review…of the accounting for various customer incentives arrangements *unrelated to the transactions subject to the internal investigation*." SOF¶171 (emphasis added). ████████████████████████████ ████████████████████████████████████████████████████ SOF¶176-179. ████ ████████████████████████████████████████████████████ ████████████████████████████ SOF¶179. Dentsply concluded the errors resulted in overstating net-sales in 3Q21 by approximately $35M and in FY21 by approximately $20M. SOF¶¶219, 221. ████████████████████ ████████████████████████████████████████████████████ ████████████████████████████ SOF¶203.

The AFC also examined higher-than-usual returns from Chinese distributors during 4Q21. SOF¶¶208-214. It concluded that the local China commercial team had improperly processed returns and exchanges, such that about $4M of 3Q21 net-sales should have been recorded in 4Q21. SOF¶¶209, 214. ████████████████████ SOF¶213.

## VIII.   Restatement

Dentsply corrected the accounting errors by making a Restatement on November 7, 2022. SOF¶225. ████████████████████████████████████████████ ████████████████████████████████████████████████████

SOF¶236.  Similarly, Dentsply enhanced its MD&A disclosures because it was already reissuing its 3Q21 and FY21 financial statements in amended filings, SOF¶233, and disclosed "timing-related purchases by dealers due primarily to incremental pricing incentives in the second half of the year" that contributed to higher dealer inventory levels in 4Q21 alongside lower than expected retail sales.  SOF¶¶234-235.

Plaintiffs filed this lawsuit on July 26, 2022.

**LEGAL STANDARD**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute only exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

To prevail on their securities fraud claims, Plaintiffs must prove: (1) a material misrepresentation or omission by Defendants; (2) scienter; (3) a connection between the misrepresentation/omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.  *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).  On their control person claim, Plaintiffs must establish: (1) a primary violation, (2) control of the primary violator, and (3) culpable participation in the controlled person's fraud.  *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014).  Failure to prove any of these elements "renders all other facts immaterial" and entitles Defendants to

7

judgment as a matter of law. *In re N. Telecom Ltd. Sec. Litig.*, 116 F.Supp.2d 446, 455 (S.D.N.Y. 2000).

**ARGUMENT**

### I.    SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PLAINTIFFS' ACCOUNTING FRAUD CLAIMS

While Plaintiffs have attempted to manufacture a case of accounting fraud based on Dentsply's Restatement, discovery has established that the Restatement was motivated by accounting mistakes—the incorrect implementation of ASC 606—that began *years before* the alleged misconduct.   These errors were promptly investigated, disclosed and corrected upon discovery.   Plaintiffs' allegations—that "Dentsply misstated its accounting for the massive incentives it offered to manufacture sales," AC¶91, and engaged in "accounting fraud to cover up…ongoing supply chain issues and product problems," *id.* ¶55—find no support in the record. All claims based on alleged accounting errors and the Restatement, AC¶¶153, 155-157, 171, 175-176, should be dismissed.

### A.    Historical Accounting Errors Cannot Support A Claim Because they Lack Scienter

The AC conflates historical ASC 606 accounting errors—made with lack of scienter and corrected in the Restatement—with intentional accounting fraud designed to conceal the use of dealer incentives in 2021.   Discovery conclusively disproves that narrative.

The Restatement was issued to correct revenue recognition errors unrelated to incentive transactions or alleged channel stuffing.   SOF¶¶217-218.   ████████████████████

████████████████████████████████████████████████████████

████████████████████████████   SOF¶¶195-199.   Indeed, those two errors totaled just

████████████████████████████████████████████████████████

████████████████████████   SOF¶¶202-203.   In contrast, the historical revenue recognition

8

errors, which originated years before the Class Period, totaled approximately █████████

████████████████████    SOF¶183.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████    SOF¶179.  Under ASC 606, a company

selling products or services must follow a five-step process to determine the amount and timing of

revenue recognition.  SOF¶174.  ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████    SOF¶182.

There is no evidence that these errors were made with scienter.[3]  ██████████████

███████████████████████████████████████████████████

SOF¶¶175, 180-181, 185.  "Allegations of a violation of GAAP provisions or SEC regulations,

without corresponding fraudulent intent, are not sufficient to state a securities fraud claim."  *Chill*

*v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996).  There is no evidence suggesting these errors

were made with an intent to "deceive, manipulate, or defraud."  *Yorkville*, 305 F.Supp.3d at 511.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

SOF¶¶187, 215.

While Plaintiffs allege that these errors "inflated revenues," AC¶91, the record does not

support this.  ██████████████████████████████████████

---

[3] Scienter is a mental state "embracing intent to deceive, manipulate, or defraud." *SEC v. Yorkville*, 305 F.Supp.3d 486, 511 (S.D.N.Y. 2018).  Plaintiffs must raise a genuine issue of material fact, pointing to "evidence (1) showing that the defendants had motive and opportunity to commit fraud, or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Id.*

████████████████ SOF¶184. Critically, in 4Q21, when Plaintiffs allege Dentsply was stuffing the channel and committing fraud with "inflated" revenue, AC¶135, ████████████ ████████████████████████████████████████████████ SOF¶184. The fact that

████████████████████████████████████████████████████

██████████████████████ precluding any finding of motive or opportunity to commit fraud through faulty accounting. *Yorkville*, 305 F.Supp.3d at 512 (quoting *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000) (motive requires evidence of "concrete benefits that could be realized" from the alleged misconduct; opportunity requires "the means and likely prospect of achieving concrete benefits by the means alleged")).

There is also no evidence that senior management, including Casey and Gomez, knew of these accounting errors before the Accounting Review. No witness testified that *anyone* at Dentsply knew before the Internal Investigation that ASC 606 had been misapplied. ████████

████████████████████████████████████████████████████

██████████████████████████ SOF¶186. ████████████████████████

████████ SOF¶12. In *Hensley v. IEC Electronics Corp.*, the Court held that the timing of a company's accounting errors "cut[] against a finding of scienter" where, as here, it "restated financial results dating back to even before" its CFO assumed the role. 2014 WL 4473373, at *5 (S.D.N.Y. Sept. 11, 2014).

Nor can Plaintiffs show that the errors were the product of recklessness. ████████████ ████████████████████████████████████████ SOF¶176. ████████████████

██████████████████████████████ SOF¶177. Although a mistake, there is no basis for a jury to find that Defendants were reckless in committing securities fraud. *In re Mylan N.V. Sec. Litig.*, 666 F.Supp.3d 266, 288 (S.D.N.Y. 2023) (finding evidence "tending to show only a

heightened form of negligence fails to establish scienter in a manner sufficient to survive a Rule 56 motion"); *Taleo Corp. Sec. Litig.,* 2010 WL 597987, at *10 (N.D. Cal. Feb. 17, 2010) (finding, at pleading stage, "a plausible inference that [d]efendants [historical accounting] error was innocent"). Courts have recognized that ASC 606 is not "straightforward" or "unequivocal," and that its application "requires significant judgment, estimation and disclosures." *Toft v. Harbor Diversified, Inc.*, 2025 WL 357776, at *7 (E.D. Wis. Jan. 31, 2025). The Company's struggles to get it right cannot show recklessness.

Finally, there is no circumstantial evidence of scienter.

SOF¶¶189-193.

SOF¶190.

SOF¶191,

SOF¶¶192-193. "[O]rdering an investigation and implementing remedial efforts following the discovery of a problem is a 'prudent course of action that weakens rather than strengthens an inference of scienter.'" *Lululemon Sec. Litig.*, 14 F.Supp.3d 553, 583 (S.D.N.Y. 2014) (citation omitted).

**B. No Intentional Accounting Errors For Wholesale Incentive Agreements**

Plaintiffs allege Defendants "engage[d] in accounting fraud" in 3Q21 and 4Q21 to "hide" wholesale incentives as part of a purported channel stuffing scheme and that "the incentives were largely or entirely not accounted for on the [Company's] financial statements *at all*." AC¶63 (emphasis in original). This has been proven untrue.

SOF¶¶196-197.

███████████████████████████ SOF¶198. ███████████████████████

███████████████████████████████████████████████████████████████

████ SOF¶195. *That ends the inquiry*. The allegations of accounting fraud tied to channel stuffing should be dismissed. *In re N. Telecom*, 116 F.Supp.2d at 465 (granting summary judgment on accounting fraud claim, finding no scienter where there was "no evidence" that the accounting was "inherently fraudulent or deceptive").

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████ *See* Ex.H2 ¶155. That is unavailing. ███████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████ *See id.* §IX. ████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████ SOF¶200.

There is no evidence that anyone at Dentsply (including Casey and Gomez) knew of these two errors, much less made them intentionally. ████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████ SOF¶201. █████████████████████

██████████████████████████████████████ SOF¶202. This de minimis accounting error associated with the alleged channel stuffing cannot support a finding of scienter or fraud.

## C. No Scienter As To Accounting Errors For End-User Incentives In 4Q21

███████████████████████████████████████████████████████████████

██████████████████████████████████████████ *See* Ex.H2 ¶123. ██



SOF¶¶205-206.

SOF¶207.

These errors do not support motive to commit fraud. There is no evidence that they were known to anyone at Dentsply (including Casey and Gomez) or related to the alleged channel stuffing scheme;

[4]

SOF¶207. These small, single-quarter errors are not enough to show a "concrete and personal benefit to the individual defendants resulting from the fraud beyond desire for the corporation to appear profitable or desire to keep stock prices high to increase officer compensation." *S.E.C. v. Treadway*, 430 F.Supp.2d 293, 331 (S.D.N.Y. 2006); *Hensley*, 2014 WL 4473373 at *5 (accounting error of $2.2M "not large or fundamental enough, without more, to provide strong circumstantial evidence of conscious misbehavior or recklessness").

In sum, during one quarter the Company attempted to calculate rebates in good faith and incorrectly estimated them. That is not fraud.

**D. No Scienter As To Accounting Errors For Returns In China In 3Q21**

Plaintiffs allege that Dentsply's China entity "prematurely recognize[d] revenue for approximately $4M in net-sales that should have been booked the following quarter," AC¶92, but the evidence does not support a fraud finding. Critically, the record shows that this issue has

---

[4] Ex.H2¶123 (emphasis added). No evidence supports this. *Id.*

nothing to do with alleged channel stuffing and is unrelated to the other two small sets of U.S. accounting errors in 2021. ███████████████████████████████████

████████████████████████████████████████ SOF¶214. Dentsply learned of the issue after conducting an investigation, finding that members of the local commercial team did not consistently follow return policies and accounting processes. SOF¶210. The individuals involved "committed intentional wrongdoing by failing to provide requested information to the Company's local accounting organization, by obstructing the work of the accounting team, and by lacking truthfulness in providing information" to Dentsply and the AFC. SOF¶211. ███████████████████████████████████

████████████████████████████████████████

████████████████████████████ SOF¶¶212-213. And there is no evidence that any individual Defendant or anyone else with control over financial accounting or SEC reporting in the U.S. directed or even knew about the conduct. This conduct, therefore, cannot establish scienter by Defendants.[5]

## II.   MANY ALLEGED MISSTATEMENTS CANNOT SUPPORT A CLAIM

The Court should also grant summary judgment on the majority of Plaintiffs' alleged misrepresentations. As discovery has now established, Dentsply maintained a robust disclosures process which Defendants appropriately relied on in seeking to make accurate representations to the market. Plaintiffs allege that Defendants made dozens of misleading disclosures regarding myriad topics to further a supposed "channel stuffing scheme." AC §V. The Court dismissed many of them. MTD Order at 18. Summary judgment should now be granted as to 26 of the remaining statements, as the undisputed facts cannot support a finding that any amounted to

---

[5] As discussed below, loss causation also cannot be shown for these issues.

securities fraud.

### a. Bases For Summary Judgment

First, many of the alleged misstatements (AC¶¶105-107, 111-112, 116, 119, 121-122, 132-133, 139-140, 142-143, 149-150, 155-157) are inactionable because Plaintiffs lack evidence that they "false at the time [they were] made." *In re Express Scripts Holdings Co. Sec. Litig.*, 773 Fed. App'x. 9, 12 (2d Cir. 2019). Indeed, the "context and manner of presentation" of the statements, *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019), shows they were indisputably truthful.

Second, the statements were not rendered misleading by the alleged omission of material information. Whether a statement is "misleading" involves an objective inquiry from "the perspective of the reasonable investor." *Fed. Hous. Fin. v. Nomura Holding Am., Inc.*, 873 F.3d 85, 140 (2d Cir. 2017). Although disclosure is required when necessary to make an affirmative statement "clear and complete," *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 264 (2024), there is no "affirmative duty to disclose any and all material information…simply because an investor might find the information relevant or of interest." *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152-153 (2d Cir. 2013). And there is no liability for pure omissions. *Macquarie*, 601 U.S. at 259.

Third, many of Defendants' statements (AC¶¶137-139, 153, 155-157, 171, 175-176) are inactionable for lack of evidence of scienter. Plaintiffs target recitations of the Company's financial results, its policies and procedures, or optimistic descriptions of future outlook, but Plaintiffs lack evidence that the speaker did not believe these statements when made. *Tongue v. Sanofi*, 816 F.3d 199, 208-10 (2d Cir. 2016); *Chill*, 101 F.3d at 270.

Fourth, many of Casey's and Gomez's general statements about Dentsply's performance (AC¶¶105, 111, 137-138) were inactionable puffery and "too general to cause a reasonable

15

investor to rely upon them." *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d. Cir. 2009). The AC mischaracterized many of these loosely optimistic statements, but discovery has uncovered no evidence allowing Plaintiffs to convert those statements into actionable securities fraud. The statements in AC¶¶111-112, 121-122, 132, 137-139, 143 also contain inactionable opinions—"inherently subjective…assessment[s]" that Casey and Gomez believed were true. *In Re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 418 (2d Cir. 2023).

<u>Fifth</u>, other statements (AC¶¶ 107, 122, 137-140, 142-143) are forward-looking and fall within the Private Securities Litigation Reform Act ("<u>PSLRA</u>") safe harbor for one or more of the following reasons, *In re Vivendi, S.A.*, *Sec. Lit.* 838 F.3d 223, 245 (2d Cir. 2016): (i) the statement was accompanied by meaningful cautionary language identifying factors that could cause results to differ materially; (ii) it was not made with actual knowledge that it was false or misleading; or (iii) it was immaterial. The safe harbor is disjunctive, *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010), meaning proof of any one these suffices. State of mind may not be taken into account when assessing the adequacy of a cautionary statement or materiality. *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F.Supp.3d 366, 394 (S.D.N.Y. 2020).

### b. Statements warranting dismissal

Each of these grounds for summary judgment is more fully discussed below.

### i. Accounting-related statements (AC¶¶153, 155-157, 171, 175-176)

Plaintiffs allege Defendants made materially false and misleading statements in the Company's 2Q21, 3Q21, 4Q21, and FY21 securities filings by certifying compliance with GAAP, AC¶153, and in the Company's 2021 10-K by citing provisions of the revenue recognition policy. AC¶¶171, 175-176. Plaintiffs also allege that the financial results reported for those periods were

16

misleading insofar as the alleged accounting fraud tainted the results. AC¶¶155-157. Because the accounting-based claims fail for the reasons stated above, *supra* Section I, Plaintiffs' challenge to these accounting-related disclosures must also be dismissed.

Further, Plaintiffs are wrong to argue that Dentsply's financial results for those periods were misleading because Dentsply did not disclose wholesale incentive agreements as drivers because those statements did not put at issue the drivers of Dentsply's performance and were "nothing more than a narrative restatement of accurate financial reporting," which "is not, without more, actionable." *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 556 F.Supp.3d 100, 121 (D. Conn. 2021); *FindWhat Inv. Grp. v. FindWhat.Com*, 658 F.3d 1282, 1306 (11th. Cir. 2011).

### ii. June 9, 2021 statements (AC¶¶111, 119)

Statements about growing CAD/CAM sales, AC¶111, were true when made. Plaintiffs allege that, contrary to the statements, CAD/CAM demand had decreased, *id.* ¶117, but that is factually wrong. As the country was emerging from COVID-19 lockdowns, Dentsply experienced significant growth in T&E sales and CAD/CAM specifically. SOF¶¶30-37. ▮▮▮▮▮▮ ▮▮▮▮▮▮ SOF¶106. His statements that CAD/CAM sales "are tracking with a fast market growth rate," that there is "good recovery, good progress," and "good rebound," AC¶111, were true, and Dentsply's undisputed reported results prove this. Plaintiffs cannot prove that these sales or financial results were "the product of [Defendants'] channel stuffing," AC¶117, because Plaintiffs do not argue that channel stuffing began before 3Q21.

Statements that Dentsply was "trying to match end-user demand to dealer sales" and that it was "important" to do so, AC¶119, were also true when made. ▮▮▮▮▮▮ ▮▮▮▮▮▮ SOF¶¶24-27. ▮▮▮▮▮▮ ▮▮▮▮▮▮

SOF¶103. ███████████████████████████████████████████████████

███████████████████████████████████████████████████ SOF¶51, 59.

### iii.    August 5, 2021 statements (AC¶¶137-138)

Plaintiffs challenge Casey's August 5 statements that "we are confident that the underlying fundamentals of our business are strong and that we are well positioned," AC¶137, and that "[w]e believe that Dentsply Sirona is well positioned to deliver sustainable growth in the future," AC¶138.    They claim these statements were misleading because "Dentsply was not 'well positioned' to 'deliver sustainable growth,'" due to "worsening supply chain constraints and ongoing Primemill and Axeos product quality issues" and because Dentsply was allegedly engaged in channel stuffing that "was not sustainable." AC¶145(a).    The record now shows that any claims related to these statements are both legally and factually infirm.

First,    statements about being "well positioned" and having "strong" fundamentals are quintessential puffery that no reasonable investor would rely on.    *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F.Supp.3d 164, 221 (S.D.N.Y. 2022) ("[v]ague positive statements regarding a corporate entity's risk management strategy, asset quality and business practices" are non-actionable puffery).    The MTD Order instructed that these statements and others may be misleading "if (as alleged) the company was having trouble getting the materials to make the products, many of the products it did make didn't work, and much of its sales were due to channel stuffing." MTD Order at 7.    There is no evidence of this.

Casey's challenged statements were about Dentsply's *global* business, which includes hundreds of products, not just those alleged to have quality problems or supply chain issues. SOF¶¶5-6. ████████████████████████

███████████████████████████████████████████████████████

███   SOF¶¶51, 59.

The statements are also inactionable under the PSLRA safe harbor.  First, they were accompanied by meaningfully cautionary language, which Plaintiffs ignore.  15 U.S.C. § 78u-5. Both the press release and slide deck accompanying Casey's presentation included language identifying the statements as forward-looking, cited the COVID-19 pandemic as amplifying uncertainty related to the statements, and directed investors to risk disclosures in Dentsply's 2020 10-K.  SOF¶111.  This cautionary language satisfies the first prong of the PSLRA safe harbor. *Robeco Cap. Growth Funds SICAV v. Peloton*, 665 F.Supp.3d. 522, 538-39 (S.D.N.Y. 2023).

Second, Plaintiffs cannot demonstrate that Casey knew the statements were false when made.  Casey's general expressions of optimism were prepared with Dentsply's Investor Relations team, and track the presentation slide deck, which Investor Relations also assisted with.  SOF¶112. That is, "the public statements accurately reflected [the company's] internal forecasts at the time." *In re N. Telecom*, 116 F.Supp.2d at 464.  There is no evidence Investors Relations was part of the alleged fraud.  Moreover, both statements concern the global business, SOF¶¶107-109.  Casey has attested under oath that he believed his public statements were "materially true and did not contain material misstatements or omissions."  Casey Decl. ¶4; *In re N. Telecom*, 116 F.Supp.2d at 464 (granting summary judgment for lack of scienter when alleged misstatements relied on company internal projections).

### iv.  September 15, 2021 statements (AC¶¶112, 139)

Plaintiffs cannot establish falsity for Gomez's statements at a September 15, 2021 healthcare conference (AC¶112).  SOF¶¶114-117.  Plaintiffs selectively quote them and elide that Gomez was speaking about "momentum" of products in 2021 relative to 2020 and their rebound

19

from the pandemic.  SOF¶115.  When properly read in light of "the context and manner of presentation," *In re Allergan PLC Sec. Litig.*, 2022 WL 17584155, at \*10 (S.D.N.Y. 2022), the statements were accurate.  Gomez was speaking about 2Q21 performance, and T&E sales were demonstrably higher than 2020.  SOF¶¶35-36.  ██████████████████████████████

████████████████████████████████  SOF¶¶51, 59.

Gomez's statements responding to whether he was "feel[ing] good" about the Company as a whole "getting to…*sustainable* 4 to 5% organic growth" in the next one to two years, AC¶139, were also not materially misleading.  SOF¶¶115-116.  He explained just before:  "I think the market is healthy in many areas where we have exposure," which, at that point, was showing a substantial rebound from the pandemic.  SOF¶19.  His remaining statements were all qualified forward-looking and Plaintiffs have no evidence that Gomez did not believe them when he made them.  ████████████████████████████████████████████████

SOF¶118.  And Gomez has declared that he believed his public statements were "materially true and did not contain material misstatements or omissions."  Gomez Decl. ¶4, and that assertion is not contradicted by the record.

### v.  November 4, 2021 statements (AC¶¶122, 140, 142)

Statements about Dentsply raising its "earnings outlook," "tightening [its] revenue outlook," and adjusting its non-GAAP EPS outlook to "$2.87 to $2.92" for FY21, AC¶¶140, 142, were factually accurate.  Dentsply *did* raise its outlook for FY21.  SOF¶¶121-123.  Moreover, these statements are protected under the PSLRA safe harbor because they are "statement[s] of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer."  15 U.S.C. § 78u-5(i)(1)(B); *Gray*, 454 F.Supp.3d at 387 ("[S]tatements which merely endorse or state the speaker's belief in a

20

certain future outlook satisfy the PSLRA forward-looking requirement."). Both Casey and Gomez have declared their statements public statements were "materially true and did not contain material misstatements or omissions., and nothing in the record suggests otherwise. Casey Decl. ¶4; Gomez Decl. ¶4.

Gomez's response to an analyst question as to whether he expected inventory levels to increase in the coming quarters, AC¶122, was also accurate and not misleading. Although Plaintiffs frame this Q&A as being about "*distributor* inventory levels," AC¶125(a), it was about the *Company's own* manufacturing process and inventory. SOF¶¶124-125. ████████████

████████████████████████████████████████████████████

████ SOF¶128. Moreover, this statement is forward-looking, as the presentation's accompanying slide deck provided extensive cautionary language and referred to the risk factors in the 2020 10-K. SOF¶129.

### vi.    November 11, 2021 statements (AC¶¶105, 143)

Casey's November 11 statements about supply chain, Dentsply's performance, and future growth prospects (AC¶¶105, 143) were not false or misleading either. First, Plaintiffs frame Casey's statement that "we've been able to make everything we need to make," AC¶105, as being about Dentsply's entire supply chain, but his actual comments were about "constraints around [being] a heavily chip-oriented business," and he only spoke in that context. SOF¶¶131-132. ██

████████████████████████████████████████████████████

████████████████████████████████████████████ SOF¶133. Casey also made clear the chip situation was uncertain, explaining "as we jump out 6, 8, 12 months, we expect to see pressure on that." AC¶105; SOF¶132. Casey's description of the supply chain as "terrific" was puffery, which no reasonable investor would credit, particularly in the context of

the accompanying discussion about supply constraints.  *Eden Alpha CI LLP v. Polished.com Inc.*, 763 F.Supp.3d 270, 308-10 (E.D.N.Y. 2025) (statement that "technologies in our supply chain" will be a "backbone of [the company's] success" was "non-actionable puffery" that "[a] reasonable investor would not rely on…").

Casey's other statements about 3Q21 performance and future growth prospects, AC¶143, were not misleading and many are forward-looking.  For example, when Casey stated "*we said* we think we can raise that long-term target to 4% to 5%," he was affirming Gomez's September 15 statement on the same point.  *Id*.  Gomez was asked if Dentsply could "get[] to that kind of sustainable 4% to 5% organic growth" and said "[y]es," "we think we have the levers." SOF¶¶116-117.  Casey simply affirmed his view that what Gomez previously said was true. SOF¶130.  There are no contrary facts in the record.

Second, Casey's optimistic statements that "growth prospects" were "good" and that "4% to 5% is definitely attainable" were forward-looking and nonactionable for the same reasons as the November 4, 2021 statements—sufficiently specific cautionary language was included to warn any reasonable investor, *supra* p. 21.  Casey has attested he believed his statements were "materially true and did not contain material misstatements or omissions, Casey Decl. ¶4, and no record evidence indicates otherwise.

Third, in his statement about a "strong third quarter," Casey made clear he was speaking "in the aggregate," AC¶143, and echoed his November 4, 2021 earnings call comments describing growth across business lines.  *Supra* p. 20.  Plaintiffs cannot show Dentsply did not have a "very strong third quarter" overall; it did.  SOF¶¶68-69, 120-123.

Fourth, Casey's comment that "business going forward is sustainable as we bring these new products in" was forward-looking and, thus, protected.  SOF¶¶134-135.  Again, there is no

evidence that Casey or the Company did not believe the overall business would be "sustainable" as they "bring these new products in."

### vii.    December 1, 2021 statements (AC¶106)

Plaintiffs also target Casey's statements about Dentsply's supply chain at the December 1, 2021 Evercore ISI HealthCONX Conference (AC¶106), which were not materially misleading in context and, thus, should be dismissed for lack of falsity.  Plaintiffs depict these statements as overly optimistic, but they were accompanied by and balanced with meaningful cautionary language describing challenges.  Casey cautioned that supply chain issues were "obviously a headwind as we go forward," and that Dentsply could face "long lead time stuff like chips, screens and other stuff," with "shortage[s]" and "potential delay[s]" in Dentsply's delivery of products. SOF¶137.  The record shows that these statements accurately describe the supply chain issues Dentsply was facing at the time.  SOF¶¶43, 94, 138.

### viii.    February 28, 2022 statements (AC¶¶107, 116, 132-133)

Gomez spoke truthfully when he said on February 28, 2022 that supply chain and COVID constraints had "suppressed our total company organic growth by approximately 2 to 3 points," AC¶107, which aligned to internal preparation materials.  SOF¶145   Gomez explained the constraints were a "temporary headwind" that "will remain challenging for at least 1 or 2 quarters in 2022."  Plaintiffs characterize this as "downplay[ing] the[] ongoing supply chain issues," AC¶107, but predicting that they would persist for *at least* one or two quarters is the opposite. Gomez also explicitly warned that supply issues were "fluid" and cautioned "we should be able to recover in the next couple of quarters, but that situation could change."  SOF¶147.  Also, much of Gomez's statement is forward-looking and protected under the PSLRA safe harbor.  During the presentation, Dentsply informed investors that certain information would be forward looking

SOF¶142, and directed them to "the most important risk factors that could cause actual results to differ from our predictions." SOF¶142.

Gomez's statement that "retail demand for Primemill is solid" and that "dealer partners in the US have sufficient inventory to meet that demand," which "in short term…would reduce our wholesale volume of Primemills" (AC¶116) also accurately described the circumstances. ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████  SOF¶145.

Separately, Casey's statement that Dentsply's "2021 performance" reflected "the strength of our global portfolio," and that the portfolio was "well-positioned," AC¶132, accurately described Dentsply's global business. Sales growth in 2021 relative to 2020 was significant, even after accounting for the Restatement. SOF¶¶228-230. Likewise, Casey's descriptions of Dentsply's "organic sales growth of nearly 25%, double-digit EPS growth, and solid cash flow generation" (AC¶132) were true, also after the Restatement. SOF¶140.

Plaintiffs also allege that during the February 28, 2022 earnings call Gomez misrepresented the "two main constraints the Company was facing from a demand and volume perspective." AC¶133; SOF¶147. But that was not what Gomez described. The full transcript shows that Gomez was responding to a question about the effect of the Omicron variant on Dentsply's business from December 2021 to February 2022, SOF¶¶146-147, and his response was truthful. Dental offices faced staffing shortages in December 2021 due to Omicron, dragging down retail demand, and COVID-19 lockdowns were a drag on business in China, exactly as Gomez explained. SOF¶¶148-150.

24

### ix. March 1, 2022 10-K Statements (AC¶¶ 149-150)

Plaintiffs assert that excerpts from Dentsply's Code of Business Conduct and Ethics and the FY21 10-K's reference to it were misleading because certain employees did not adhere to that policy. AC¶¶149, 150; SOF¶152. Neither state a claim for securities fraud. The statement that Dentsply "has a Code" that applies broadly to the C-suite and management, AC¶149, was true, as were statements about the contents of the Code. AC¶150. Courts have repeatedly rejected claims that violations of a company's code of ethics render the code itself, or its publication or description, misleading. *Retail Wholesale & Dept. Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1277-78 (9th Cir. 2017) (dismissing claims about company's compliance with its ethics guidelines); *In re Braskem S.A. Sec. Litig.*, 246 F. Supp.3d 731, 754-757 (S.D.N.Y. 2017) (statements about company's code of conduct and compliance with laws not actionable misrepresentations).

## III. PLAINTIFFS' SCHEME LIABILITY CLAIM FAILS

Summary judgment should also be granted to Defendants on Plaintiffs' scheme liability claim under Rule 10b-5(a) and (c) (AC¶¶296-302), which is nothing more than an improper re-packaging of their Rule 10b-5(b) disclosure claims.

"[A]n actionable scheme liability claim…requires something beyond misstatements and omissions." *S.E.C. v. Rio Tinto plc.*, 41 F.4th 47, 49 (2d Cir. 2022). Where, as here, the "sole basis" for a scheme liability claim is "alleged misrepresentations or omissions," there is no actionable claim under Rule 10b-5(a) or (c). *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005).

Plaintiffs allege that Defendants "engaged in a fraudulent scheme…to inflate the Company's revenues through channel stuffing…" *See, e.g.*, AC¶¶110, 145, 210. But Plaintiffs'

25

channel-stuffing allegations are an essential ingredient of Plaintiffs' disclosure claims that Defendants misled investors about the dealer inventory levels, sales, product quality, and supply chain. "[C]ourts have routinely rejected…attempt[s] to bypass the elements necessary to impose 'misstatement' liability under subsection (b) by labeling the alleged misconduct a 'scheme' rather than a 'misstatement.'" *S.E.C. v. Kelly*, 817 F.Supp.2d 340, 343 (S.D.N.Y. 2011). For example, Plaintiffs allege that statements about the T&E business were "false and misleading," AC¶¶111, 116, due to Defendants' "channel stuffing and accounting scheme…" *Id.* ¶110. Plaintiffs also claim that Dentsply's comments on 4Q21 and FY21 results, AC¶¶132-134, were likewise misleading because of "Defendants' scheme to: (1) incentivize dealers to purchase excess CAD/CAM inventory; and (2) improperly account for the incentives." *Id.* ¶131. Plaintiffs simply attempt to "repackage their misstatement claims as scheme liability claims to 'evade the pleading requirements imposed in misrepresentation cases.'" *Rio Tinto*, 41 F.4th at 55.

Plaintiffs also cannot demonstrate that investors relied on the alleged channel-stuffing scheme apart from their reliance on the alleged misstatements. "Reliance by the plaintiff upon the defendant's *deceptive acts* is an essential element of the [Section 10(b)] private cause of action." *Stoneridge*, 552 U.S. at 159. "[T]he Supreme Court requires more than pleading [and proving] a scheme; it requires that a plaintiff also plead [and prove] reliance on the deceptive acts in the plaintiff's decision to purchase or sell securities." *Alpha Cap. Anstalt v. Schwell Wimpfheimer & Ass'n LLP*, 2018 WL 1627266, at *12 (S.D.N.Y. 2018) (plaintiffs failed to plead they relied on deceptive acts like "scrubbing of the board meeting minutes" when they purchased shares). Here, Plaintiffs never contend—nor is there proof—that they or other investors relied on *acts* comprising the alleged channel stuffing scheme, as opposed to the challenged disclosures.

Similarly, Plaintiffs' claim that "accounting schemes" were used to "[mask] Dentsply's

26

failure to meet internal financial targets and external financial analyst expectations" also fails. AC¶¶130, 109, 135. The purported accounting fraud is what allegedly caused Dentsply to misstate its financials for 3Q21 and FY21. *Supra* Section I. Those allegations are no different than claims that Defendants misrepresented their financial statements and, thus, no basis for scheme liability. *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 277 F.Supp.3d 500, 519 (S.D.N.Y. 2017); *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222 (S.D.N.Y. 2018).

## IV.    PLAINTIFFS CANNOT ESTABLISH LOSS CAUSATION

Plaintiffs allege five corrective disclosures between February and November 2022. AC¶¶263, 265-267, 269-270, 272-273, 277-280. The record is now clear for several of them that Plaintiffs cannot show a "sufficiently direct" "relationship between [their] investment loss and the information misstated or concealed," *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005), warranting dismissal.

### a.    Plaintiffs Have Abandoned November 1, 2022

The AC alleges Dentsply's November 1, 2022 announcement of the Internal Investigation's findings was a corrective disclosure. AC¶¶277-278; MTD Order at 16. ██

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████ *See generally* Ex.H1; *see also* Ex.G2 at 27:6-14, 28:6-11; Ex.H3 ¶85; SOF¶¶223-224. Plaintiffs have no other evidence of loss causation for this date. Summary judgment should be granted for Defendants. *Mylan*, 666 F.Supp.3d at 327 (no loss causation where plaintiffs "d[id] not have an expert opinion or other evidence" that disclosure event "moved the market").

27

### b. Plaintiffs Lack Evidence of a Connection Between the November 14, 2022 Stock Drop and the Alleged Fraud

Plaintiffs allege that Dentsply's November 14, 2022, announcements of its 3Q22 financial results and updated FY22 guidance were corrective disclosures.  AC¶¶279-282.  Neither was.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████  *See* Ex.H1 ¶120; Ex.G2 at 286:9-21; 288:2-289:12.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████  *See* Ex.H1 ¶¶113, 120.  ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████  SOF¶¶164, 235.[6]  ████████████████████████

████████████████  *Mylan*, 666 F.Supp.3d at 325 ("[T]o qualify as a corrective disclosure, Plaintiffs must show that such a disclosure contains 'new fraud-related information.'"); MTD Order at 16 (noting that November 14 "presents an added wrinkle" because of the extensive prior disclosures). Plaintiffs have no evidence that changes to FY22 guidance "disclosed any new information" pertaining to the alleged fraud.  *In re Moody's Corp. Sec. Litig.*, 2013 WL 4516788, at *10 (S.D.N.Y. Aug. 23, 2013).  Summary judgment must be granted as to allegations that the 3Q22 results were corrective.

---

[6] *See* Ex.H3 ¶91 ████████████████████████████████████████

████████████████████████████████████████████████████████████████

### c.  Plaintiffs Lack Evidence That the Company's Announcement of Preliminary 1Q22 Results on April 19, 2022 Was Corrective

Plaintiffs allege that the April 19, 2022 announcements of preliminary 1Q22 results (as well as Casey's termination) were corrective, AC¶¶270-271, but there is no evidence to support this claim. ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████ Ex.H1 ¶93. ███████████████████████████████████████

███████████████████████████ *Id.* ¶93 & n.170.[7] ██████████████████

██████████████████████████████████ *Mylan*, 666 F.Supp.3d at 327 ("To meet their burden, Plaintiffs must show that new information about Mylan moved the market in excess of previously known information.").

Specifically, on February 28, 2022, Gomez said that Dentsply's "supply chain will … remain challenging for at least 1 or 2 quarters in 2022." SOF¶143. ██████████████████

██████████████████████████████ *See* Ex.H3 ¶¶57-58.  Similarly, in its FY21 10-K, filed on March 1, 2022, Dentsply disclosed a $50M increase in CAD/CAM dealer inventory relative to year-end 2020, and explained that this "may pose headwinds to the Company's net-sales for these products in 2022." SOF¶96; Ex.H3 ¶¶54-56. ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ *In re Veon Ltd.*

*Sec. Litig.*, 2025 WL 66444, at *6 (S.D.N.Y. Jan. 10, 2025) ("Even if [a] disclosure exposes

---

[7] ████████████████████████████████████████████████████████████████
███████████████████████████████████████████ *See* Ex. F20.

additional details about the extent of the financial risk…it does not expose new concealed information."); *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512-13 (2d Cir. 2010) (no loss causation where disclosure "added nothing to the public's knowledge" about company's securities beyond quantification of disclosed risks).

### d. Plaintiffs Concede That the Company's 1Q22 Results on May 10, 2022 Were Not Corrective

The AC alleges loss causation on May 10, 2022 based on both the announcement of the Internal Investigation and 1Q22 earnings, AC¶¶272-76, ███████████████████████

████████████████████████████████████████████████

*See* Ex.H1 ¶¶107-108.  There thus can be no dispute that the 1Q22 earnings announcement was not corrective and cannot support a finding of loss causation.  *Mylan*, 666 F.Supp.3d at 327.

## V.    PLAINTIFFS' CONTROL-PERSON CLAIM FAILS

Because a control-person claim requires a primary violation of Section 10(b), Plaintiffs' Section 20(a) claim fails for the same reasons, and to the same extent, as their claim under Section 10(b).  *In re Omnicom Grp.*, 597 F.3d at 514 n.6.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion for summary judgment.

Dated: November 3, 2025
    New York, New York

                            Respectfully submitted,

                            */s/ Roger A. Cooper*

                            Roger A. Cooper
                            racooper@cgsh.com

30

Andrew Weaver
aweaver@cgsh.com
CLEARY GOTTLIEB
STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York  10006
T: 212-225-2283

Angela L. Dunning
adunning@cgsh.com
CLEARY GOTTLIEB
STEEN & HAMILTON LLP
1841 Page Mill Rd
Palo Alto, CA 94304
T: 650-815-4131

Thomas A. Bednar
tbednar@cgsh.com
CLEARY GOTTLIEB STEEN
& HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, D.C. 20037
T: 202-974-1836

*Counsel for Defendant Dentsply Sirona Inc.*
*/s/ Meredith D. Karp*

Bryce L. Friedman
Craig S. Waldman
Meredith D. Karp
Isabel R. Mattson
SIMPSON THACHER
& BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
bfriedman@stblaw.com
cwaldman@stblaw.com
meredith.karp@stblaw.com
isabel.mattson@stblaw.com

*Counsel for Defendant Donald M. Casey, Jr.*

*/s/ Chad P. Albert*

31

Seth L. Levine
Chad P. Albert
Adam M. King
slevine@levinelee.com
calbert@levinelee.com
aking@levinelee.com
LEVINE LEE LLP
1500 Broadway, Suite 2501
New York, NY 10036
T: 212-223-4400

*Counsel for Defendant Jorge M. Gomez*

32

**Certificate of Compliance**

I hereby certify that the foregoing memorandum of law complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York because, excluding the parts of the document exempted by Rule 7.1(c), it contains 8,670 words as calculated by Microsoft Word.

*/s/ Roger A. Cooper*
Roger A. Cooper