UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

SAN ANTONIO FIRE AND POLICE
PENSION FUND, CITY OF BIRMINGHAM
RETIREMENT AND RELIEF SYSTEM, EL
PASO FIREMEN & POLICEMEN'S
PENSION FUND, and WAYNE COUNTY
EMPLOYEES' RETIREMENT SYSTEM,
Individually and on Behalf of All Others
Similarly Situated,

                    Plaintiffs,

    vs.

DENTSPLY SIRONA INC., DONALD M.
CASEY, JR., and JORGE GOMEZ,

                    Defendants.

———————————————————————— x

:  Civil Action No. 1:22-cv-06339-AS
:  (Consolidated)

CLASS ACTION

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE
TESTIMONY IN WHOLE OR IN PART BY
PLAINTIFFS' EXPERTS

**[REDACTED]**

4906-1909-0048.v1

## INDEX OF DEFINED TERMS

**10-K**: Form 10-K – an annual report required to be filed with the SEC (defined below) pursuant to §13 or §15(d) of the Securities Exchange Act of 1934 (15 U.S.C. §78m or §78o(d))

**10-Q**: Form 10-Q – a quarterly report required to be filed with the SEC pursuant to §13 or §15(d) of the Securities Exchange Act of 1934 (15 U.S.C. §78m or §78o(d)), filed pursuant to Rule 13a-13 (17 C.F.R. §240.13a-13) or Rule 15d-13 (17 C.F.R. §240.15d-13)

**1H21**: First half of fiscal year 2021 (at Dentsply (defined below), January 1, 2021-June 30, 2021)

**3Q21**: Third fiscal quarter of 2021 (at Dentsply, July 1, 2021-September 30, 2021)

**4Q21**: Fourth fiscal quarter of 2021 (at Dentsply, October 1, 2021-December 31, 2021)

**Audit Committee**: Audit and Finance Committee of Dentsply's Board of Directors

**CAD/CAM**: Computer-Aided Design/Computer-Aided Manufacturing, a category of products manufactured and sold by the T&E segment

**Casey**: Donald M. Casey, defendant and former Dentsply CEO (defined below)

**Cavaretta**: Joseph Cavaretta

**Cavaretta Depo.**: Transcript of the deposition of Joseph Cavaretta held on October 30, 2025, attached to the Stakem Declaration (defined below) as Exhibit 3

**Cavaretta Report or Cavaretta Rpt.**: Expert Report of Joseph Cavaretta, dated October 6, 2025, filed as Exhibit D to the Declaration of Andrew Weaver in Support of Defendants' Motion to Exclude Testimony in Whole or in Part by Plaintiffs' Experts (ECF 194)

**Cease-and-Desist Order**: *In the Matter of Dentsply Sirona, Inc.*, Admin. Proc. File No. 3-20170, Exchange Act Release No. 90681, Order Instituting Cease-and-Desist Proceedings (Dec. 16, 2020), attached to the Stakem Declaration as Exhibit 9

**CEO**: Chief Executive Officer

**CFE**: Certified Fraud Examiner

**CFO**: Chief Financial Officer

**Chadha**: Ranjit Chadha, former Dentsply Chief Accounting Officer

**Class Period**: June 9, 2021 through November 13, 2022, inclusive

**Code**: Dentsply's Code of Ethics and Business Conduct

**CPA**: Certified Public Accountant

- i -

**Defendants**: Dentsply, Casey, and Gomez (defined below)

**Dentsply or Company**: Defendant Dentsply Sirona Inc.

**FY21**: Fiscal year 2021 (at Dentsply, January 1, 2021-December 31, 2021)

**GAAP**: Generally Accepted Accounting Principles

**Gomez**: Jorge Gomez, defendant and former Dentsply CFO

**ICFR**: Internal Controls Over Financial Reporting

**Internal Investigation or Investigation**: An internal investigation performed by Hogan Lovells LLP on behalf of the Audit Committee beginning in March 2022, into, *inter alia*: (1) "allegations regarding certain financial reporting matters submitted by current and former employees . . . focused on the Company's use of incentives to sell products to certain distributors in North America in the third and fourth quarters of 2021, whether those incentives were appropriately accounted for, and whether the impact of the sales to which they were applied were adequately disclosed in the Company's periodic reports filed" with the SEC; (2) "allegations that certain former members of senior management may have directed" the "use of these incentives and other actions to achieve executive compensation targets in 2021"; and (3) revenue recognition issues in its China office.  The conclusions of the Internal Investigation were announced in Dentsply's November 1, 2022 Form 8-K filed with the SEC.

**Item 303**: Item 303 of Regulation S-K, 17 C.F.R. §299.303

**KPMG**: KPMG LLP

**Lacey**: John M. Lacey, Ph.D.

**Lacey Depo.**: Transcript of the deposition of John M. Lacey held on October 31, 2025, attached as Exhibit G to the Declaration of Andrew Weaver in Support of Defendants' Motion to Exclude Testimony in Whole or in Part by Plaintiffs' Experts (ECF 194)

**MD&A**: Management's Discussion and Analysis of Financial Condition and Results of Operations section of certain SEC filings, including 10-Ks and 10-Qs

**Moritz**: Scott Moritz, CFE

**Moritz Depo.**: Transcript of the deposition of Scott Moritz, CFE, held on October 27, 2025, attached to the Stakem Declaration as Exhibit 7

**Moritz Report or Moritz Rpt.**: Expert Report of Scott Moritz, CFE, dated October 6, 2025, attached to the Stakem Declaration as Exhibit 1

**MSJ**: Defendants' Memorandum of Law in Support of Their Motion for Partial Summary Judgment (ECF 173)

- ii -

**MSJ Opp.**: Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment, filed concurrently herewith

**MTD Order**: Opinion and Order (ECF 106), filed May 1, 2024, granting in part and denying in part Defendants' motion to dismiss the amended complaint

**MTE**: Defendants' Memorandum of Law in Support of their Motion to Exclude Testimony in Whole or in Part by Plaintiffs' Experts (ECF 197)

**"No Fraud" Conclusion**: The Audit Committee's conclusion, disclosed in Dentsply's 2021 Form 10-K/A, filed with the SEC on November 7, 2022, that "[i]n the North America Investigation, . . . there was no evidence of intentional wrongdoing or fraud."

**P&G**: Proctor & Gamble Co.

**PCAOB AS 2710**: Public Company Accounting Oversight Board's Auditing Standard 2710: Other Information in Documents Containing Audited Financial Statements, *available at* https://pcaobus.org/oversight/standards/auditing-standards/details/AS2710

**Phiroz**: Zal Phiroz, Ph.D.

**Phiroz Depo**: Transcript of the deposition of Dr. Zal Phiroz held on October 28, 2025, attached as Exhibit B to the Declaration of Andrew Weaver in Support of Defendants' Motion to Exclude Testimony in Whole or in Part by Plaintiffs' Experts (ECF 194)

**Phiroz Report or Phiroz Rpt.**: Confidential Expert Report of Zal Phiroz, Ph.D., dated September 5, 2025, attached as Exhibit A to the Declaration of Andrew Weaver in Support of Defendants' Motion to Exclude Testimony in Whole or in Part by Plaintiffs' Experts (ECF 194)

**Plaintiffs**: Lead Plaintiffs and Class Representatives City of Birmingham Retirement and Relief System, El Paso Firemen & Policemen's Pension Fund, and Wayne County Employees' Retirement System and the Class as defined in the Court's Opinion and Order (ECF 153), filed July 10, 2025, granting class certification

**PwC**: PricewaterhouseCoopers LLP

**Reports**: collectively, the Phiroz Report and Van Tassel Report

**Rule**: Federal Rule of Evidence

**SAB-99**: SEC Staff Accounting Bulletin No. 99

**SEC**: United States Securities and Exchange Commission

**SOX Certification**: Certification submitted by a public company's CEO and CFO pursuant to §302 of the Sarbanes-Oxley Act of 2002

4906-1909-0048.v1

**Stakem Declaration**: Declaration of Hillary B. Stakem in Support of Plaintiffs' Opposition to Defendants' Motion to Exclude Testimony in Whole or in Part by Plaintiffs Experts, filed concurrently herewith

**T&E**: Dentsply's Technology & Equipment segment, including, *inter alia*, its CAD/CAM and imaging equipment

**Van Tassel**: Karyl M. Van Tassel, CPA, CFE

**Van Tassel Report or VT Rpt.**: Confidential Expert Report of Karyl M. Van Tassel, CPA, CFE, dated September 5, 2025, attached as Exhibit C to the Declaration of Andrew Weaver in Support of Defendants' Motion to Exclude Testimony in Whole or in Part by Plaintiffs' Experts (ECF 194)

**VT Depo.**: Transcript of the deposition of Karyl M. Van Tassel held on October 30, 2025, attached as Exhibit F to the Declaration of Andrew Weaver in Support of Defendants' Motion to Exclude Testimony in Whole or in Part by Plaintiffs' Experts (ECF 194)

4906-1909-0048.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     LEGAL STANDARD...........................................................................................1

III.    VAN TASSEL'S OPINIONS ARE ADMISSIBLE ...........................................2

        A.    Van Tassel's Opinions Regarding Dentsply's MD&A Disclosures Are Admissible ........................................................................................................3

        B.    Defendants Don't Challenge Van Tassel's GAAP Opinions ..................................7

        C.    Van Tassel's Opinions Regarding Accounting Materiality Are Admissible...........7

        D.    Van Tassel's Opinions Regarding Tone at the Top Are Admissible......................8

        E.    Van Tassel's Contingent Opinions Regarding Dentsply's Investigation Are Admissible .........................................................................................................12

        F.    Van Tassel's Background on Channel-Stuffing Is Admissible .............................14

IV.     PHIROZ'S OPINIONS ARE ADMISSIBLE.......................................................17

        A.    Phiroz Is Qualified to Offer His Opinions .................................................18

        B.    Phiroz's Opinions Are Reliable and Helpful ...........................................................19

              1.    Phiroz's Quality and Supply Opinions Are Reliable ................................19

              2.    Phiroz's Quality and Supply Opinions Are Helpful ................................21

              3.    Phiroz's Channel-Stuffing Opinions Are Reliable ...................................24

              4.    Phiroz Doesn't Opine on State of Mind....................................................26

V.      CONCLUSION...................................................................................................28

4906-1909-0048.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Access Bus. Grp. Int'l, LLC v. Refresco Beverages US Inc.*,
2023 WL 8280139 (S.D.N.Y. Nov. 30, 2023)............................................................1, 2, 19, 23

*Ali v. Connick*,
2016 WL 3002403 (E.D.N.Y. May 23, 2016) ...........................................................................11

*Arista Recs. LLC v. Usenet.com, Inc.*,
608 F. Supp. 2d 409 (S.D.N.Y. 2009).....................................................................................10

*Augenbaum v. Anson Invs. Master Fund LP*,
2025 WL 2780854 (S.D.N.Y. Sep. 30, 2025)..........................................................................16

*Beede v. Stiefel Lab'ys, Inc.*,
2016 WL 916418 (N.D.N.Y. Mar. 7, 2016) ..............................................................................3

*Costantino v. David M. Herzog, M.D., P.C.*,
203 F.3d 164 (2d Cir. 2000)....................................................................................................11

*Ctr. for Indep. of Disabled, N.Y. v. Metro. Transp. Auth.*,
2023 WL 5744408 (S.D.N.Y. Sep. 6, 2023)............................................................................10

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)......................................................................................................1, 2, 22, 24

*Drebing v. Provo Grp., Inc.*,
519 F. Supp. 2d 811 (N.D. Ill. 2007) .................................................................................11, 13

*Emig v. Electrolux Home Prods., Inc.*,
2008 WL 4200988 (S.D.N.Y. Sep. 11, 2008)....................................................................18, 19

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
301 F.R.D. 116 (S.D.N.Y. 2014) ............................................................................................21

*Gimpel v. Hain Celestial Grp., Inc.*,
156 F.4th 121 (2d Cir. 2025) ..................................................................................................26

*Highland Cap. Mgmt., L.P. v. Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005)......................................................................................23

*Highland Cap. Mgmt., L.P. v. Schneider*,
551 F. Supp. 2d 173 (S.D.N.Y. 2008).......................................................................................5

4906-1909-0048.v1

**Page**

*Hinkle v. Ford Motor Co.*,
2012 WL 4049477 (E.D. Ky. Sep. 13, 2012) ...........................................................................11

*In re Mirena IUD Prods. Liab. Litig.*,
169 F. Supp. 3d 396 (S.D.N.Y. 2016).....................................................................................13

*In re MTBE Prods. Liab. Litig.*,
643 F. Supp. 2d 482 (S.D.N.Y. 2009).....................................................................................26

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
2022 WL 15044626 (E.D.N.Y. Oct. 26, 2022)............................................................10, 22, 27

*In re Quintel Ent. Inc. Sec. Litig.*,
72 F. Supp. 2d 283 (S.D.N.Y. 1999)..........................................................................................5

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004)................................................................................23, 25

*In re Term Commodities Cotton Futures Litig.*,
2020 WL 5849142 (S.D.N.Y. Sep. 30, 2020)...........................................................................17

*Kafenbaum v. GTECH Holdings Corp.*,
217 F. Supp. 2d 238 (D.R.I. 2002)............................................................................................5

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999)....................................................................................................................2

*LinkCo, Inc. v. Fujitsu Ltd.*,
2002 WL 1585551 (S.D.N.Y. July 16, 2022) ..........................................................................23

*LoanCare LLC v. Dimont & Assocs., LLC*,
2025 WL 951585 (S.D.N.Y. Mar. 28, 2025) ......................................................................22, 23

*Marvel Characters, Inc. v. Kirby*,
726 F.3d 119 (2d Cir. 2013)..............................................................................................10, 23

*McCullock v. H.B. Fuller Co.*,
61 F.3d 1038 (2d Cir. 1995)....................................................................................................19

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
232 F. Supp. 3d 558 (S.D.N.Y. 2017).....................................................................................16

*Nike, Inc. v. StockX LLC*,
2024 WL 3361411 (S.D.N.Y. July 10, 2024) ..............................................................16, 25, 26

4906-1909-0048.v1

**Page**

*Pearlstein v. Blackberry Ltd.*,
   2021 WL 4131646 (S.D.N.Y. Sep. 10, 2021)........................................................................5, 8

*Pension Comm. of Univ. of Montr. Pension Plan v. Banc of Am. Sec., LLC*,
   691 F. Supp. 2d 448 (S.D.N.Y. 2010)..................................................................................10, 14

*Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*,
   2017 WL 3973951 (S.D.N.Y. Sep. 7, 2017).........................................................................6, 7

*Primavera Familienstifung v. Askin*,
   130 F. Supp. 2d 450 (S.D.N.Y. 2001)..................................................................................23

*Puntillo v. Dave Knecht Homes, LLC*,
   2019 WL 2225987 (N.D. Ill. May 24, 2019)........................................................................14

*Restivo v. Hessemann*,
   846 F.3d 547 (2d Cir. 2017).................................................................................................26

*Rosco, Inc. v. Mirror Lite Co.*,
   506 F. Supp. 2d 137 (E.D.N.Y. 2007) .................................................................................16, 25

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016) ................................................................................. *passim*

*SEC v. Cornerstone Acquisition & Mgmt. Co. LLC*,
   2025 WL 276318 (S.D. Cal. Jan. 23, 2025)........................................................................24

*SEC v. ITT Educ. Servs., Inc.*,
   311 F. Supp. 3d 977 (S.D. Ind. 2018) .................................................................................13

*SEC v. Jacoby*,
   2022 WL 982549 (D. Md. Mar. 31, 2022)..........................................................................7, 8, 13

*SEC v. Leslie*,
   2010 WL 2991038 (N.D. Cal. July 29, 2010)......................................................................8

*SEC v. Stansbury Holdings Corp.*,
   2007 WL 1970531 (D. Colo. June 29, 2007).......................................................................8

*SEC v. Tourre*,
   950 F. Supp. 2d 666 (S.D.N.Y. 2013).................................................................................8

*Sitts v. Dairy Farmers of Am., Inc.*,
   2020 WL 3467993 (D.Vt. June 24, 2020) ...........................................................................23, 24

4906-1909-0048.v1

**Page**

*U.S. Commodity Futures Trading Comm'n v. Wilson*,
  2016 WL 7229056 (S.D.N.Y. Sep. 30, 2016)..........................................................11, 13, 28

*United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc.*
*v. Westchester Cnty., N.Y.*,
  2009 WL 1110577 (S.D.N.Y. Apr. 22, 2009)....................................................................15

*United States v. Diaz*,
  876 F.3d 1194 (9th Cir. 2017) .........................................................................................26

*United States v. Hatfield*,
  2010 WL 1948236 (E.D.N.Y. May 12, 2010) ..............................................................3, 5, 8

*United States v. Mavashev*,
  2010 WL 234773 (E.D.N.Y. Jan. 14, 2010) .......................................................................8

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
  2014 WL 3891351 (S.D.N.Y. Aug. 8, 2014)........................................................................4

*Vellali v. Yale Univ.*,
  2023 WL 3689531 (D. Conn. May 26, 2023).......................................................................9

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
  §78j(b)................................................................................................................ *passim*

Federal Rules of Civil Procedure
  Rule 26(a)(2)(B)(i)...........................................................................................................22
  Rule 26(a)(2)(B)(ii)..........................................................................................................22

Federal Rules of Evidence
  Rule 702............................................................................................................... *passim*
  Rule 703...........................................................................................................................9, 21
  Rule 704...........................................................................................................................5, 6
  Rule 704(a).........................................................................................................................5
  Rule 801..........................................................................................................................21
  Rule 803(6) .....................................................................................................................21

17 C.F.R.
  §211...................................................................................................................................3
  §231...................................................................................................................................3
  §241...................................................................................................................................3

4906-1909-0048.v1

**Page**

**SECONDARY AUTHORITIES**

*In the Matter of Sunbeam Corporation*,
 Admin. Proc. File No. 3-10481,
  Order Instituting Public Administrative Proceedings (May 15, 2021)....................................15

4906-1909-0048.v1

## I.    INTRODUCTION

Defendants fail to articulate a valid challenge under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), to any of Phiroz's or Van Tassel's opinions.  Instead, they mischaracterize the Reports, ignore the record, and assert prejudice without grappling with relevance.  Their arguments directly contradict Rule 702's liberal admissibility standards.  For example, Defendants assert that Van Tassel's opinions regarding Dentsply's material weaknesses in ICFR are "highly prejudicial calumny," but ignore her extensive record citations and application of the record to applicable accounting standards, and disregard relevance.  And they wrongly claim that her opinions regarding accounting materiality, which are widely admitted, are opinions regarding "legal materiality." Defendants also ignore that qualifications "must be read in light of the liberalizing purpose of Rule 702," instead arguing Phiroz – who holds a Ph.D. in supply-chain management and lectures on supply chains, business analytics, and operations management – must have dental-industry experience to testify here.  Defendants also mischaracterize Phiroz's opinions regarding channel-stuffing in the supply-chain context as opinions that Defendants committed fraud, but Phiroz offers no such opinions.  Defendants' arguments should be rejected and Van Tassel's and Phiroz's testimony admitted in full.

## II.    LEGAL STANDARD

"'It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions'" (*Access Bus. Grp. Int'l, LLC v. Refresco Beverages US Inc.*, 2023 WL 8280139, at *1 (S.D.N.Y. Nov. 30, 2023)), and "the rejection of expert testimony is the exception rather than the rule."  Rule 702 advisory committee's note to 2000 amendment.[1]  A qualified expert may testify if:

---

[1]    Unless otherwise noted, all citations are omitted, emphasis is added, and exhibits referenced herein are to the Stakem Declaration.

"(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Rule 702.  An expert should be excluded "only if there are 'serious flaws in reasoning or methodology.'"  *Refresco*, 2023 WL 8280139, at \*2.  If the testimony falls within "the range where experts might reasonably differ" the testimony should go to the jury.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" of challenging expert testimony.  *Daubert*, 509 U.S. at 596.

## III.    VAN TASSEL'S OPINIONS ARE ADMISSIBLE[2]

Van Tassel is a CPA and CFE with over 35-years' experience as an accountant, auditor, and investigator.  ¶8.  She was a partner in PwC's and KPMG's forensic services practices, and she is currently a Senior Managing Director with J.S. Held, where she assists in accounting fraud-related investigations.  ¶¶8-9; VT Rpt., Ex. 1.  Van Tassel has provided expert testimony in dozens of cases, including for the SEC, and was lead investigator in a case involving an $8 billion Ponzi scheme.  ¶¶10-12.  Here, she opines that: (1) Dentsply's financial disclosures violated SEC disclosure rules; (2) Dentsply's financial statements violated GAAP; (3) misstatements in Dentsply's financial statements and disclosures were material under SAB-99; (4) Dentsply's ICFR suffered from material weaknesses; and (5) Dentsply's Investigation process was deficient and ignored evidence contradicting its findings.

---

[2]    Unless otherwise noted, all references to "¶¶" contained within this section are to the Van Tassel Report.

### A.    Van Tassel's Opinions Regarding Dentsply's MD&A Disclosures Are Admissible

In Opinion 1, Van Tassel opines that certain financial disclosures in the MD&A portion of Dentsply's SEC filings violated SEC disclosure rules and guidance, including Item 303 and 17 C.F.R. §§211, 231, and 241.  Van Tassel also opines that the disclosure violations here resemble those detailed in the SEC's 2020 Cease-and-Desist Order against Dentsply.  Defendants argue that Van Tassel's opinions are somehow both "entirely irrelevant" and "conclusions on the ultimate legal issues in this case."  MTE at 18-19, 21.  Their arguments fail.

First, Opinion 1 is relevant to scienter.  Defendants were obligated to comply with Item 303 when preparing Dentsply's SEC filings.  Item 303 is clear: Defendants needed to disclose, *e.g.*, key items necessary to understand Dentsply's results and any known trends or uncertainties reasonably expected to have material impacts on Dentsply's business.  Nonetheless, Defendants omitted (though later restated to disclose) information regarding Dentsply's use of incentives, inflated distributor-inventory levels, and their likely negative impact on future sales.  Defendants' violation of a rule they were clearly required to follow supports scienter.  *See Beede v. Stiefel Lab'ys, Inc.*, 2016 WL 916418, at *22 (N.D.N.Y. Mar. 7, 2016) (expert testimony regarding "compliance with … industry standards is relevant to the scienter element of Plaintiffs' securities fraud claim"); *United States v. Hatfield*, 2010 WL 1948236, at *2 (E.D.N.Y. May 12, 2010) ("compliance with applicable accounting standards" relevant to "'intent to deceive'").

The similarities between the disclosure violations here and those in the Cease-and-Desist Order are also relevant to scienter.  The Cease-and-Desist Order states that Dentsply violated Item 303 by failing to disclose channel-stuffing related information and inflated distributor-inventory levels.  Exs. 9, 14.  Casey's and Gomez's failure to ensure Dentsply adequately disclosed similar information supports scienter.  As this Court explained:

- 3 -

4906-1909-0048.v1

> In December 2020, the SEC sent a cease-and-desist letter alleging a channel-stuffing scheme similar to that alleged here. Although the letter described conduct from before Casey and Gomez were in charge, they were CEO and CFO when Dentsply received the letter.... [T]hese allegations bolster the inference that Casey and Gomez would have been attuned to these issues. And if they failed to monitor them despite all these "red flags," that failure might well have been reckless.

MTD Order at 12-13.[3]

Defendants grossly mischaracterize Van Tassel's discussion of the Cease-and-Desist Order.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Next, they falsely assert the SEC never found any disclosure violations (MTE at 21 n.3), but the Cease-and-Desist Order clearly states Dentsply violated SEC disclosure rules. *See* Ex. 9. Defendants' reference to a different investigation is both inaccurate and improper. *See* Ex. 27; Ex. 29 (SEC letter stating non-enforcement "must in no way be construed as indicating that [Dentsply] has been exonerated" and warning "[t]he attempted use of such a communication as a purported defense … would be clearly inappropriate"); *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, 2014 WL 3891351, at *4 n.5 (S.D.N.Y. Aug. 8, 2014) ("The SEC's decision to not prosecute its claims is irrelevant as to whether Plaintiffs have plausibly alleged claims in *this* case.") (emphasis in original).

Second, Opinion 1 is relevant to falsity. In its MTD Order, the Court found Plaintiffs hadn't alleged an independent Item 303 violation because "pure omissions aren't actionable" under Item 303, and Plaintiffs hadn't specified misleading statements under Item 303. MTD Order at 8. However, the Court upheld Plaintiffs' allegations that certain statements in Dentsply's MD&A were false or misleading under §10(b). *Compare* ECF 72, ¶¶123-124, *with* MTD Order at 18. Van

---

[3]   The Internal Investigation also found ███████████████████████████████ ████████████████████████████████████████████████████████████████. Ex. 24 at -285.

4906-1909-0048.v1

Tassel's opinions are relevant to, though not dispositive of, whether ***those*** statements were false or misleading. *See Hatfield*, 2010 WL 1948236, at *2 ("Compliance with applicable accounting standards . . . 'neither establishes nor shields guilt in a securities fraud case.'… But it is still relevant."); *In re Quintel Ent. Inc. Sec. Litig.*, 72 F. Supp. 2d 283, 293 (S.D.N.Y. 1999) (Item 303 violations "may be relevant to determining when a false or misleading omission has been made …."); *Kafenbaum v. GTECH Holdings Corp.*, 217 F. Supp. 2d 238, 249 (D.R.I. 2002) ("disclosure rules are probative of what defendants are otherwise obliged to disclose but do not, themselves, provide an independent duty of disclosure").

Third, while Item 303 violations are relevant to scienter and falsity, whether Dentsply violated Item 303 isn't an "ultimate legal issue[] in this case." MTE at 20. The Court dismissed Plaintiffs' standalone Item 303 claim (*id.*), and whether Defendants violated Item 303 isn't dispositive of any element of Plaintiffs' claims. The jury won't be asked to determine whether Defendants violated Item 303 when analyzing whether they violated §10(b). *See Hatfield*, 2010 WL 1948236, at *2 (admitting testimony where expert did "not testi[fy] about the ultimate issue – federal securities law disclosure requirements – but only about related accounting principles").[4]

Further, an "opinion is not objectionable just because it embraces an ultimate issue." Rule 704(a). Rule 704 "specifically abolished" the rule against opinions on "'ultimate issue[s]'" because it was "unduly restrictive" and "generally served only to deprive the trier of fact of useful information." Rule 704 advisory committee's note to 1972 Proposed Rules. Accordingly, while

---

[4]    *Pearlstein v. Blackberry Ltd.*, 2021 WL 4131646 (S.D.N.Y. Sep. 10, 2021), and *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173 (S.D.N.Y. 2008), are inapposite. In *Blackberry*, the Court precluded testimony regarding unspecified SEC disclosure rules, reasoning "the Court alone will instruct the jury on the law, and the jury will decide whether the statements complied with the law." 2021 WL 4131646, at *4. Because Opinion 1 doesn't instruct the jury on applicable law – *i.e.*, the falsity standard under §10(b) – *Blackberry* doesn't apply. *Highland* isn't a securities case and doesn't discuss SEC disclosure rules. *See* 551 F. Supp. 2d at 186.

4906-1909-0048.v1

opinions on "inadequately explored legal criteria" like "'[d]id T have capacity to make a will'" may be excluded (*id.*), opinions embracing ultimate issues, like "'[d]id T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution,'" are permitted. *Id.* Because Van Tassel doesn't opine Defendants' statements were false or misleading under §10(b), her opinions are admissible.

Defendants' conclusory assertion that Van Tassel lacks "expertise in interpreting SEC requirements" is meritless. MTE at 22. MD&A disclosures are governed by SEC requirements, including Item 303, and Van Tassel has extensive experience reviewing and editing MD&A disclosures. *See* VT Depo. at 50:22-51:10. Indeed, relevant standards ***require*** auditors to review MD&A disclosures to ensure they're consistent with financial statements. *See* PCAOB AS 2710; VT Depo. at 44:22-45:11, 59:2-8. Van Tassel explained ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Van Tassel is indisputably qualified to opine whether Dentsply's MD&A disclosures complied with SEC disclosure rules.

In a one-sentence footnote, Defendants assert that Van Tassel's opinions regarding Defendants' SOX Certifications should be excluded for the same reasons as Opinion 1, without identifying which reasons or even which paragraphs they seek to exclude. MTE at 22 n.4. Their perfunctory argument fails. *See Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 2017 WL 3973951, at *20 n.36 (S.D.N.Y. Sep. 7, 2017) ("'[m]erely mentioning or simply stating an issue' is 'insufficient' because a litigant 'must advance an argument'"). Regardless, Van Tassel's accounting-based

testimony that Dentsply's material weaknesses and GAAP violations rendered statements in the SOX Certifications inaccurate isn't the same as the question the jury will determine: whether Casey's and Gomez's assertions that "***based on [their] knowledge[,]***" Dentsply's SEC filings were accurate and ICFR was effective were false or misleading under §10(b). Her testimony is proper. *See SEC v. Jacoby*, 2022 WL 982549, at *3 (D. Md. Mar. 31, 2022) (admitting expert testimony on SOX "[c]ertifications by CEOs and CFOs [because they] are part of the complex financial and regulatory landscape that will be important for the jury to understand").

### B. Defendants Don't Challenge Van Tassel's GAAP Opinions

Defendants' entire argument regarding Opinion 2 is relegated to a footnote:

> Defendants do not concede the validity of Ms. Van Tassel's Opinion 2 (whether certain financial statements violated GAAP), but is not opposed to testimony that consists of a traditional application of stated accounting principles to facts and data. Defendants also request exclusion of the paragraphs in Opinion 2 that reference her other improper opinions.

MTE at 19 n.2. By failing to develop any argument related to Opinion 2, Defendants ***have*** conceded. *See Phoenix Light*, 2017 WL 3973951, at *20 n.36.

### C. Van Tassel's Opinions Regarding Accounting Materiality Are Admissible

Defendants mischaracterize Van Tassel's opinions regarding ***accounting*** materiality as opinions that "the alleged misstatements were ***legally*** 'material.'" MTE at 19. But Van Tassel doesn't opine that Dentsply's misstatements were legally material; instead, she discusses materiality from an accounting perspective, describing relevant accounting standards related to materiality, including SAB-99, and applying those standards to the evidence to conclude that certain errors in Dentsply's financial statements and disclosures were material. The evidence Van Tassel analyzed in reaching her opinion included ███████████████████

███████████████████████████████████████████████

███████████████████████████████████████  Exs. 21-22.

The weight of authority permits expert testimony on accounting materiality – indeed, Dentsply's accounting expert, Lacey, has testified on this very topic. *See Jacoby*, 2022 WL 982549, at *2 (rejecting challenge to Lacey's materiality opinions because "there is an accounting standard of materiality that, with careful instructions, can be distinguished for the jury"); *Hatfield*, 2010 WL 1948236, at *2 ("[I]n a federal securities fraud case, jurors are not required to 'accept the accountants' evaluation' about 'whether a given fact was material.' … So [expert's] proposed testimony neither goes to any ultimate issue nor usurps the jury's role."); *SEC v. Stansbury Holdings Corp.*, 2007 WL 1970531, at *3 (D. Colo. June 29, 2007) (admitting accounting expert's opinion where "discussion of materiality is made in relation to GAAP" and he "outlined the general principles . . . relevant to his materiality analysis"); *SEC v. Leslie*, 2010 WL 2991038, at *7 (N.D. Cal. July 29, 2010) (admitting opinion regarding "the concept of accounting materiality with support from accounting authorities").[5]

### D.    Van Tassel's Opinions Regarding Tone at the Top Are Admissible

In Opinion 4, Van Tassel opines that Dentsply's ICFR had multiple material weaknesses, including a deficient tone at the top. As Van Tassel explains, ICFR is a system of internal accounting controls that public companies are required to maintain to ensure accurate financial reporting. ¶179. Company management is responsible for establishing effective ICFR, and they

---

[5]    Unlike in *SEC v. Tourre*, 950 F. Supp. 2d 666, 678 (S.D.N.Y. 2013), where the expert opined, based on "*ipse dixit*," that "all '*economically* material' information ha[d] been disclosed," Van Tassel opines, based on relevant accounting standards, that certain GAAP violations and financial disclosures were material. Likewise, because Van Tassel opines about materiality accounting standards and doesn't opine that Dentsply's disclosures were "material *to investors*," *Blackberry* is inapposite. *Blackberry*, 2021 WL 4131646, at *4. *United States v. Mavashev*, 2010 WL 234773, at *4 (E.D.N.Y. Jan. 14, 2010), concerned *legal* materiality related to banking fraud so doesn't apply.

4906-1909-0048.v1

create the "tone at the top" regarding expected compliance standards. ¶¶179-182. Van Tassel explains that tone at the top is a critical component of ICFR, and details and applies the relevant professional standards regarding ICFR to the evidence. ¶¶179-228.

Defendants wrongly assert that Opinion 4 "simply parrots hearsay statements" and consists of only "personal opinions formed from reading some employee complaints." MTE at 25.[6] But Van Tassel █████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

Defendants again ignore that experts may provide opinions based on hearsay where experts in their field reasonably rely on such evidence. Rule 703. Defendants apparently contend that Dentsply's internal complaints and interview memoranda are hearsay. But "'[c]ompany records and statements by company personnel are types of data reasonably relied upon by accountants, and opinions based on those types of information are typically admissible under Rule 703.'" *Vellali v. Yale Univ.*, 2023 WL 3689531, at *2 (D. Conn. May 26, 2023). ████████████████████████

---

[6]   Defendants address only the portion of Van Tassel's Opinion 4 related to tone at the top, ignoring the other material weaknesses discussed in Opinion 4. ¶¶212-222. Those paragraphs are unrebutted, and Defendants' unsupported request in their "conclusion" to exclude them is improper. MTE at 28.

4906-1909-0048.v1

████████████████████████████████████████ *See* Exs. 18, 24.  Accordingly, even if the internal complaints are hearsay, Van Tassel's reliance on them is proper.[7]

Further, because the evidence Van Tassel cites provides a factual basis for her opinion, she doesn't provide "an impermissible factual narrative."  MTE at 25; *Ctr. for Indep. of Disabled, N.Y. v. Metro. Transp. Auth.*, 2023 WL 5744408, at *5 (S.D.N.Y. Sep. 6, 2023) (rejecting argument that expert "improperly create[d] a factual narrative for the jury" by "recount[ing] various customer complaints" because the evidence "was a necessary foundation for her opinion"); *Pension Comm. of Univ. of Montr. Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 466-67 (S.D.N.Y. 2010) (opinion not "impermissible factual narrative" where expert "intend[ed] to intertwine his factual narrative with his opinion testimony – which he must do to justify his description of Plaintiffs' conduct").

Nor does Van Tassel opine about state of mind – as she repeatedly confirmed in her deposition.  VT Depo. at 38:1-7, 101:5-12, 115:19-116:2.  Van Tassel discusses ████████

████████████████████████████████████████████████████

████████████████████████████████ which is proper.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2022 WL 15044626, at *31 (E.D.N.Y. Oct. 26, 2022) (expert "permissibly offer[ed] an expert opinion as to a topic other than intent, motivation, or state of mind, such as the parties' behavior").

---

[7]    Defendants' cases support Plaintiffs.  *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013), held "[t]he appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events" – as Van Tassel does.  And unlike the expert in *Arista Recs. LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 429 (S.D.N.Y. 2009), who didn't do "any independent investigation or analysis," Van Tassel conducted her own review of the evidence and analyzed it using relevant professional standards.  ¶¶179-185.

- 10 -

Defendants mischaracterize Van Tassel's discussion of the evidence as opinions on state of mind. But by citing evidence where ██████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ██████████████████ MTE at 25. Nowhere in her report – let alone the cited paragraph – does Van Tassel discuss intent. Second, Van Tassel's discussion of ███████████████████████████ ██████ isn't opinion about any party's intent or state of mind; she references such evidence to support her opinion that Dentsply suffered from a deficient tone at the top, which is proper. *See U.S. Commodity Futures Trading Comm'n v. Wilson*, 2016 WL 7229056, at *8 (S.D.N.Y. Sep. 30, 2016); *Drebing v. Provo Grp., Inc.*, 519 F. Supp. 2d 811, 816 n.5 (N.D. Ill. 2007) ("It is appropriate for [experts] to reach certain conclusions which may highlight circumstantial evidence of [defendant's] intent.").

Finally, Defendants say Opinion 4 is a "highly prejudicial calumny." MTE at 25. It's not; it's an analysis of Dentsply's tone at the top, based on extensive citations to record evidence. Nor is it unduly prejudicial. Plaintiffs allege Dentsply suffered from multiple material weaknesses, including a deficient tone at the top, which fostered an environment in which the misstatements and scheme could occur. Opinion 4 explains ICFR and tone at the top, their importance, and why Dentsply's were deficient, making it highly probative. Defendants' concerns that the evidence casts them in a bad light don't substantially outweigh probative value. *See Hinkle v. Ford Motor Co.*, 2012 WL 4049477, at *1 (E.D. Ky. Sep. 13, 2012) ("Evidence that is prejudicial only in the sense that it portrays the defendant in a negative light is not unfairly prejudicial for purposes of Rule 403."); *Ali v. Connick*, 2016 WL 3002403, at *5 (E.D.N.Y. May 23, 2016) (testimony casting defendant in "a negative light" not unduly prejudicial); *Costantino v. David M. Herzog, M.D., P.C.*,

- 11 -

203 F.3d 164, 174-75 (2d Cir. 2000) ("to justify exclusion under Rule 403 the prejudice must be *unfair*") (emphasis in original).

### E.    Van Tassel's Contingent Opinions Regarding Dentsply's Investigation Are Admissible

Defendants have repeatedly relied – publicly and in this litigation – ███████████ ████████████████████████████████████████ *See, e.g.*, Ex. 23; ECF 96, 137. Plaintiffs don't believe Defendants should be permitted to use or rely on this conclusion at trial. But if it comes in, Plaintiffs are entitled to address it through proper expert testimony. Van Tassel is a CFE with decades of experience in internal investigations, and in Opinion 5, she explains ███ ████████████████████████████████████████████████ ███████████████████████████████████. Opinion 5 is contingent; █████████ ████████████████████████████████████████████████ █████████. In any event, Defendants' challenges fail.

Defendants' argument that Van Tassel opines on state of mind again relies on mischaracterization. Van Tassel doesn't "opine[] that ██████████████████████████████ ██████" MTE at 19. Instead, she ██████████████████████████████████████ ████████████████████████████. For example, Van Tassel explains ██████ ████████████████████████████████████ ¶¶230-234. And she notes that ██████ ████████████████████████████████████████████████ ████████████████████████████████ ¶¶238-239. She also explains ██████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████ ¶¶250-251. Further, she highlights evidence ████████████████████████████████████████████

- 12 -

███████████████████████████████████████████████████████████████████████.

¶¶247-248.

While Van Tassel highlights evidence ████████████████████████████████, she stops short of opining that ████████████████████████████████.    Indeed, she doesn't offer any opinions about state of mind.  To the extent Van Tassel cites evidence *relevant* to state of mind, that's proper.  *See Drebing*, 519 F. Supp. 2d at 816 n.5 ("It is appropriate for [experts] to reach certain conclusions which may highlight circumstantial evidence of [defendant's] intent."); *Wilson*, 2016 WL 7229056, at *8 (admitting testimony regarding "what an action may indicate about a party's state of mind"); *Jacoby*, 2022 WL 982549, at *2 ("There is a difference between opining about . . . information available at the time to company executives, for example, and opining that a particular defendant 'knew' about revenue recognition errors ….").[8]

Van Tassel also properly discusses ████████████████████████████████ ████████████████████.  She analyzes evidence ████████████████████████████ ████████████████████████████.  ¶¶243-244; *see SEC v. ITT Educ. Servs., Inc.*, 311 F. Supp. 3d 977, 998 (S.D. Ind. 2018) (accounting expert could "testify regarding the information Defendants provided to [company's] auditor and whether that information was accurate in light of applicable accounting standards" and finding "[t]he information Defendants provided and whether it was accurate is not prejudicial testimony, and is important information for the jury to consider").

---

[8]    Defendants' case supports Plaintiffs.  *See In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 479-80 (S.D.N.Y. 2016) (permitting expert testimony regarding "what [defendant] 'knew'" in the sense of what information was in its possession – or on the [entities'] intent to the extent it is 'clearly indicated in public documents'").

- 13 -

Nor does Van Tassel opine that

. MTE at 24.  Instead, she explains

¶¶244-246.  But again, she doesn't opine about .

Finally, Van Tassel doesn't impermissibly "weigh[] … evidence" or invade the jury's province.  MTE at 26.  Instead, she applies her experience and explains

.  If the Court admits evidence regarding the Investigation's "No Fraud" Conclusion, Opinion 5 will help the jury understand ; it won't tell the jury what legal conclusions to reach or how to apply the law to the facts.  *See Puntillo v. Dave Knecht Homes, LLC*, 2019 WL 2225987, at *6 (N.D. Ill. May 24, 2019) (CFE who "sifted through and analyzed a vast array of documents . . . ha[d] not usurped the role of the finder of fact. While he ha[d] identified factors to guide the jury, he ha[d] steered clear from expressing opinions on the ultimate issues of this case ….").

### F.    Van Tassel's Background on Channel-Stuffing Is Admissible

In the background section of her report, Van Tassel provides a two-paragraph overview of channel-stuffing, which is relevant to whether Dentsply properly accounted for or disclosed information related to channel-stuffing.  ¶¶27-28.  Van Tassel's background "is clearly relevant to [her] opinion testimony . . . and will provide the jury with important background information." *Pension Comm. of Univ. of Montr.*, 691 F. Supp. 2d at 468 n.113; *see also* Rule 702 advisory committee's note to 2000 amendment (noting "the venerable practice of using expert testimony to educate the factfinder on general principles").

Defendants make much of Van Tassel's background paragraphs, claiming she advocates throughout her report that ███████████████████████. MTE at 27-28. In reality, Defendants challenge only one fragment of one sentence: ███████████████████████████

███████████████████████████████████████████████████

¶28.[9] Even this fragment doesn't state that ███████████████████. Rather, Van Tassel notes that ███████████████████████████████████████████████████

███████ ¶28. Van Tassel doesn't assert that ███████████████████████

████████████████[10]

Defendants also argue that Van Tassel applies ███████████████████████

███████████ Actually, Van Tassel discusses ███████████████████

███████████████████████████████████████████████████

████████████████████████████████ ¶¶27-28 & n.17.[11] Van Tassel's discussion of channel-stuffing is also properly informed by her extensive experience as a CPA and CFE. As Van Tassel testified in deposition, ███████████████████████████

███████████████████████████████████████████████ VT Depo. at

---

[9]    In their "Preliminary Statement," Defendants note that Van Tassel uses the same language in ¶65 of her report. MTE at 1. They don't identify anywhere else similar language is used.

[10]    Because Van Tassel doesn't opine that ███████████████████████████

██████████████████████████ *United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cnty., N.Y.*, 2009 WL 1110577, at *2 (S.D.N.Y. Apr. 22, 2009), is inapt. MTE at 19-20.

[11]    The SEC has defined channel-stuffing as the "pulling forward of revenue from future fiscal periods by inducing customers – through price discounts, extended payment terms or other concessions – to submit purchase orders in advance of when they would otherwise do so. Material undisclosed channel stuffing may cause a company's reported results of operations to be misleading." *In the Matter of Sunbeam Corporation*, Admin. Proc. File No. 3-10481, Order Instituting Public Administrative Proceedings (May 15, 2021), https://www.sec.gov/enforcement-litigation/administrative-proceedings/33-7976#P36_4549.

- 15 -

133:11-135:6; *see Augenbaum v. Anson Invs. Master Fund LP*, 2025 WL 2780854, at \*12 (S.D.N.Y. Sep. 30, 2025) ("Defendants say that the Court should exclude [expert's] testimony as unreliable because [he] lacks any clear methodology behind his opinions. But . . . [he] bases his opinions on his extensive personal experience in finance. That experience provides a reliable basis for his testimony …."); *Rosco, Inc. v. Mirror Lite Co.*, 506 F. Supp. 2d 137, 145-46 (E.D.N.Y. 2007) ("[expert's] general knowledge and experience is also a sufficient basis for his definition").



Defendants' assertion that ███████████████████████ is specious. MTE at 27. ███████████████████████ ███████████████████████ Defendants don't suggest ███████████████████ or that Van Tassel's use of them is improper. Further, Van Tassel's understanding of channel-stuffing is informed by her CPA experience. VT Depo. at 133:11-135:6. Defendants also completely ignore Van Tassel's CFE qualifications. At deposition, Defendants' expert Moritz ███████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████ Moritz Depo. at 288:6-289:6; *see* Ex. 26 (███████████████████).

Regardless, any disagreement about the definition of channel-stuffing goes to weight, not admissibility. *See MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 575 (S.D.N.Y. 2017) (argument that phrase wasn't defined under GAAP went to weight and not admissibility); *Nike, Inc. v. StockX LLC*, 2024 WL 3361411, at \*10 (S.D.N.Y. July 10, 2024).

Because Van Tassel provides helpful background and doesn't opine that ████████████ ████ Defendants' conclusory assertions of prejudice fail. And although not appropriate here, even if one stray background phrase is precluded, the remainder of the background is unchallenged and

- 16 -

4906-1909-0048.v1

admissible.  *See In re Term Commodities Cotton Futures Litig.*, 2020 WL 5849142, at \*15 (S.D.N.Y. Sep. 30, 2020) ("since [expert's] testimony is almost entirely admissible, the Court will not 'throw the good out with the bad'").

## IV.    PHIROZ'S OPINIONS ARE ADMISSIBLE[12]

Applying his extensive academic background and professional expertise, Phiroz analyzed hundreds of documents, deposition transcripts, and academic literature to opine:

(1) severe quality problems decreased demand, damaged Dentsply's reputation, and harmed its ability to sell its equipment ("Quality Opinions");

(2) significant supply constraints caused prolonged backorders and further challenged Dentsply's sales and financial results ("Supply Opinions"); and

(3) Dentsply engaged in channel-stuffing to meet financial targets it otherwise would have missed, which negatively impacted sales throughout 2022 ("Channel-Stuffing Opinions").

In the Channel-Stuffing Opinions, Phiroz identified ███████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ ¶70.

Defendants move to exclude Phiroz's opinions in their entirety, erroneously asserting he isn't qualified to opine on the dental industry, quality issues, brand reputation, or sales performance. MTE §I.  Defendants also take issue with Phiroz's reliance on contemporaneous record evidence as unreliable and "unhelpful," and with ████████████████████. *Id.* Defendants' arguments are meritless; Phiroz's opinions are admissible.

---

[12]    Unless otherwise indicated, all "¶¶" or "App'x" references within this section refer to the Phiroz Report.

### A.       Phiroz Is Qualified to Offer His Opinions

In determining whether an expert is qualified, "the court must [examine] the 'totality of the witness' qualifications.'" *Emig v. Electrolux Home Prods., Inc.*, 2008 WL 4200988, at *4 (S.D.N.Y. Sep. 11, 2008).   Phiroz's qualifications are extensive.   He holds a Ph.D. in Supply Chain Management, an MBA with concentration in International Marketing, and professional certifications in supply chain and procurement planning.   ¶9; Ex. 28 (updated CV).   As a faculty member at Harvard University and Michigan State University, and formerly at the University of Southern California, Phiroz has taught undergraduate and graduate courses on supply chain management, business analytics, demand forecasting, and operations management, including classes in which he lectures on the subject of channel-stuffing.   App'x B; Ex. 28; ¶5; Phiroz Depo. at 34:8-35:1.   Phiroz has also researched and written on a variety of supply chain topics.   ¶5.

Prior to entering academia, Phiroz worked at TELUS Communications Inc., where he managed marketing programs and established sales targets, distribution, and promotional objectives. ¶6; Ex. 28; Phiroz Depo. at 24:3-25:1.   He also worked at P&G, where he was responsible for, *e.g.*, market planning, market data analysis, demand forecasting, and working with company distributors on joint forecasting and supply-chain customization.   ¶6; Ex. 28.

Defendants' claim that Phiroz isn't qualified to opine
is meritless.  MTE at 7.  As Phiroz explains,

¶4 n.1.   Certainly, it encompasses the management of quality issues, brand and reputational issues, and commercial sales performance, as Phiroz's prior industry experience demonstrates.

Defendants argue that Phiroz should be excluded because he doesn't have dental-industry experience, but courts regularly reject arguments that experts with expertise in a relevant *subject* may not offer opinions absent experience within a specific *industry*. *See Refresco*, 2023 WL 8280139, at \*2 ("'If the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent.'"); *Emig*, 2008 WL 4200988, at \*5 ("[G]iven the liberality with which courts approach the issue of expert qualifications," expert's general experience evaluating assembly instructions qualified him to testify "even if he does not have significant experience in the particular area of consumer instructions.").

Tellingly, Defendants identify nothing rendering the dental industry so unique that only industry-insiders are qualified to opine on it. MTE at 9. Indeed, Cavaretta – Dentsply's proffered industry expert – relied on ███████████████████████████████ ████████████████ to support his opinions. Cavaretta Rpt., ¶¶32, 36; Cavaretta Depo. at 140:4-18, 142:24-147:9.

Defendants' quibbles with Phiroz's lack of dental-industry experience are appropriately explored through cross-examination and go to weight, not admissibility. *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995).

### B. Phiroz's Opinions Are Reliable and Helpful

#### 1. Phiroz's Quality and Supply Opinions Are Reliable

Where an expert applies his relevant experience to the facts to reach opinions and explains how he did so – as Phiroz does here – his methodology is reliable. *See* Rule 702 advisory committee's note to 2000 amendment (experience-based opinion admissible where the "experience

leads to the conclusion reached" and expert explains "why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts"); *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 50 (S.D.N.Y. 2016).

Phiroz reviewed and analyzed thousands of pages of documentary and testimonial evidence, as well as SEC filings, court filings, and academic literature through the lens of his academic work and practical experience within large supply chains and marketing teams. *See generally* ¶¶26-95; App'x A; Phiroz Depo. at 159:21-160:1. For example, Phiroz considered ███████████ ████████████████████████████████████████████████████████ ██████████████████████████[13] He also analyzed ████████████████ ████████████████████████████████████████████████████████ ████████. *See, e.g.*, Phiroz Depo. at 43:11-23, 57:8-17, 58:7-19, 62:19-63:25, 143:9-144:3. Phiroz then analyzed ████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████████ (¶¶26-27, 43, 47-48, 52) and ████████████ █████████████████████████ (¶¶27, 29-31, 36, 40-41, 50-52). Phiroz explains ████ ████████████████████████████████████████████████████████ ████████████████ Based on his analysis of the record and experience, he then draws conclusions regarding the: ████████████████████████████████████ ████████████████████████████████████████████████. ¶¶16-70; Phiroz Depo. at 159:21-160:1. These opinions are grounded in Phiroz's experience as applied to the evidence and are highly relevant.

---

[13] *See, e.g.*, ¶41 (citing Ex. 13); Phiroz Depo. at 149:13-150:3 (explaining Phiroz ████████ ████████████████████████████████████████████).

4906-1909-0048.v1

Defendants argue that Phiroz's opinions aren't based upon a reliable methodology because █

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████ MTE at 10-12. Defendants don't

support their claim that such analyses would be relevant, let alone required and more meaningful

than contemporaneous record evidence, including ███████████████████████████████.

*Cf. Scott*, 315 F.R.D. at 50 (rejecting argument that expert "did not run a regression analysis" and

finding opinion admissible where expert "applied his expert knowledge and experience in examining

[internal evidence] to reach conclusions regarding variances in the data"); *Fort Worth Emps.' Ret.

Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 129 (S.D.N.Y. 2014) (rejecting challenge to

expert's opinion based on lack of empirical study, noting that "courts recognize that '[e]xperts of all

kinds tie observations to conclusions through the use of what Judge Learned Hand called "general

truths derived from . . . specialized experience"'").

### 2.    Phiroz's Quality and Supply Opinions Are Helpful

Phiroz's Quality and Supply Opinions will help the jury assess critical facts, including

whether certain alleged misstatements about Dentsply's operational health were misleading.

Defendants' arguments regarding the helpfulness of Phiroz's Quality and Supply Opinions fail.

First, Phiroz's opinions don't "function as a conduit for extensive hearsay evidence." MTE

at 14. Setting aside that many of the documents Phiroz cites are admissible party admissions (Rule

801) or authenticated business records (Rule 803(6)), experts may rely on hearsay or other

inadmissible evidence where experts in that field reasonably rely on such evidence in forming their

opinions. Rule 703. Defendants don't dispute that experts in supply-chain management reasonably

rely on (as Phiroz does) ████████████████████████████████

- 21 -

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████.  To the extent Defendants argue Phiroz relies on "selective" evidence or challenge his interpretations of that evidence, they are "free to question" Phiroz about those interpretations "on cross-examination."  *Scott*, 315 F.R.D. at 47; *Daubert*, 509 U.S. at 594-95.

Second, Phiroz's citations to evidence are offered not to construct a factual narrative, but because those are the factual bases underlying his opinions.  *See* MTE at 14.  Under Federal Rule of Civil Procedure 26(a)(2)(B)(i)-(ii), experts must provide "a complete statement of all" the "bas[e]s and reasons" for their opinions and the "facts . . . considered . . . in forming them."  Moreover, given Rule 702's requirement that "'expert testimony . . . [be] sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute'" (*Daubert*, 509 U.S. at 591), Phiroz's citation to evidence isn't only permissible, but required.  Experts may

> present some narrative testimony where that narrative "underl[ies]" or is "intertwined" with the expert's opinion testimony[,] … "where it 'synthesizes' or 'summarizes' data in a manner that 'streamline[s] the presentation of that data to the jury, saving the jury time and avoiding unnecessary confusion,'" or where the expert's commentary on documents . . . "'draw[s] inferences that would not be apparent without the benefit of experience or specialized knowledge.'"

*Payment Card Interchange Fee*, 2022 WL 15044626, at *47; *LoanCare LLC v. Dimont & Assocs., LLC*, 2025 WL 951585, *18 (S.D.N.Y. Mar. 28, 2025) (rejecting argument that expert's quotations of underlying sources, including "'testimony of other witnesses,'" was improper narrative because "these are exactly the kinds of facts that must be stated – without reference to their relative credibility – to provide context").

Finally, Phiroz's citation to evidence isn't without context or analysis.  MTE at 10-12.  Rather, Phiroz applies his expertise to draw conclusions based upon the documents cited.  For

- 22 -

example, Phiroz ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ ¶¶28-29. Many of the

documents Phiroz relies upon contain ████████████████ terms and concepts that a lay juror

might not understand without expert assistance. *See, e.g.*, Ex. 13 (cited in ¶41); Ex. 11 (cited in

¶36); Ex. 10 (cited in ¶54); Ex.17 (cited in ¶58); *Refresco*, 2023 WL 8280139 at *2 ("'Freely

admitted is expert testimony that is likely to substantially assist the average person in understanding

the case – even if it simply explains facts and evidence already in the record.'").

Phiroz's testimony is akin to the testimony in *Scott*, which the Court found would assist the

jury because while the expert laid "a foundation that necessarily require[d] restating facts in

evidence[,] . . . his testimony [went] beyond that. Relying on his expertise, [he] dr[e]w[] conclusions

about Chipotle's historical success and growth and the costs and pressures associated with its

business practices." 315 F.R.D. at 46; *see Sitts v. Dairy Farmers of Am., Inc.*, 2020 WL 3467993, at

*8 (D.Vt. June 24, 2020) (expert permitted to use "evidence 'to describe the setting in which the

parties were operating' and 'appl[y] economic principles to determine whether the situation

described was one that tended to show'" indicators of particular behavior).[14]

---

[14] Because Phiroz's facts underlie and intertwine with his opinions, which are based on his specific
expertise, Defendants' authority is inapposite. *See Highland Cap. Mgmt., L.P. v. Schneider*, 379 F.
Supp. 2d 461, 468-69 (S.D.N.Y. 2005) (expert had separate "facts" section containing his own
speculation and opinion "often without citation to any record evidence"); *In re Rezulin Prods. Liab.
Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (expert's mere recitation of "'history of Rezulin'"
wrongly purported to be expert "opinion"); *LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551, at *2
(S.D.N.Y. July 16, 2022) (expert didn't use proffered expertise in reciting documents from computer
files); *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 530 (S.D.N.Y. 2001) (expert's
factual conclusions unsupported by "any evidentiary basis for his opinion"); *Marvel*, 726 F.3d at 135

- 23 -

In sum, Phiroz's testimony will help the jury understand the

. Experts don't simply read their reports at trial: thus, at most, Defendants' "narrative" argument presents an issue of trial management, not reliability. *See Sitts*, 2020 WL 3467993, at *8-*9 (at *Daubert*, "any concern regarding the manner of presenting [expert's] testimony is premature"); *SEC v. Cornerstone Acquisition & Mgmt. Co. LLC*, 2025 WL 276318, at *8 (S.D. Cal. Jan. 23, 2025) (rejecting "narrative" argument because "the Court cannot distinguish between constructing a factual narrative and 'using relevant facts as context for [one's] expert opinions' in a pre-trial vacuum").

### 3.    Phiroz's Channel-Stuffing Opinions Are Reliable

Phiroz draws on extensive expertise to explain

. ¶¶67-70; Phiroz Depo. at 28:13-17, 29:14-30:12, 170:4-171:5, 188:6-18, 188:23-189:4.

¶70. Phiroz applies                                        , using facts gleaned from his extensive review of the record.  ¶¶71-88.

Defendants wrongly contend Phiroz's Channel-Stuffing Opinions are unreliable because

---

(while expert could "help to identify, gauge the reliability of, and interpret evidence that would otherwise elude, mislead, or remain opaque to a layperson," subject expert only speculated regarding intentions of parties and opined on credibility).

- 24 -

4906-1909-0048.v1

██████████████████████████ MTE at 12. ██████████████████

████████████████████████████████████████████████████

██████████████████████████ Phiroz Depo. at 29:25-30:12, 30:21-31:2; *see also Rosco*, 506 F. Supp. 2d at 145-46 (expert's "general knowledge and experience is also a sufficient basis for his definition" of term within his field of expertise). Defendants cite no cases holding otherwise.[15] If Defendants take issue with Phiroz's definition, they can cross-examine him at trial. *Nike*, 2024 WL 3361411, at *10 (rejecting argument that expert's definition was unreliable; whether other permissible definitions existed was cross-examination fodder).

Defendants' suggestion that Phiroz's ██████████████████████

████████████████████████████████████████████████████

█████████████████████████████████. Unsurprisingly, Defendants cannot identify any mention of "fraud" in Phiroz's deposition or report. MTE at 16-17.[16]

---

[15] Defendants' only support for the claim that █████████████████████
████████████████████████████████████████████████████. Cavaretta Depo. at 125:11-19. (Plaintiffs have moved to exclude Cavaretta's channel-stuffing opinions, partially on this basis (ECF 181).) That Cavaretta is ██████████████████████
████████████████████████████████████████████████████
████████████ *See* Ex. 15; Ex. 2 at 27:9-18; Ex. 4 at 29:20-30:23; Ex. 8 at 81:11-82:5; Ex. 6 at 31:18-20.

[16] Defendants' reliance on *Scott* for this argument is misplaced. 315 F.R.D. at 48. In *Scott*, the expert offered legal opinions and opinions on the ultimate outcome of the case, including that for the finder of fact to make "'a "one-size-fits-all" liability determination would likely result in considerable error.'" *Id.* Phiroz offers no such opinions. *Rezulin* is similarly inapt, as the expert purported to "'know[] for sure'" ***why*** the defendant acted in the way that it did (309 F. Supp. 2d at 546-47), while Phiroz's ██████████████████████
████████████████. *See, e.g.*, ¶¶77-82 (██████████████████████
████). 

- 25 -

Nor does Phiroz draw legal conclusions. *Id.* at 17. "Channel-stuffing" is neither a legal term-of-art nor an element of a §10b claim; the jury verdict form won't ask whether Dentsply engaged in channel-stuffing, but whether Defendants violated the securities laws. Accordingly, while Phiroz's opinions are relevant to Plaintiffs' claims, they don't invade on ultimate issues. *See Gimpel v. Hain Celestial Grp., Inc.*, 156 F.4th 121, 137-38 (2d Cir. 2025) ("Failing to disclose the existence of channel stuffing . . . is misleading because investors would want to know that revenue is not being driven by increased demand but by sales tactics that will likely prove unsustainable ….."); *Restivo v. Hessemann*, 846 F.3d 547, 580 (2d Cir. 2017) (permitting expert testimony about use of terms in particular industries); *United States v. Diaz*, 876 F.3d 1194, 1199 (9th Cir. 2017) ("[I]f the terms used by an expert witness do not have a specialized meaning in law and do not represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case, the testimony is not an impermissible legal conclusion.").[17] Moreover, the Court will instruct the jury on the law and what must be proven to establish fraud. Phiroz's definition thus doesn't risk misleading or confusing the jury or unfairly prejudicing Defendants.

### 4. Phiroz Doesn't Opine on State of Mind

Phiroz repeatedly testified at deposition that he has no opinions concerning Defendants' state of mind. *E.g.*, Phiroz Depo. at 98:16-99:4, 206:7-207:1, 223:24-224:24, 294:3-21, 232:4-25. His opinions draw limited inferences from ███████████████████████████████████ ██████████████████████████████████████ *Id.* at 98:23-24, 99:20:100:1, 100:10-19; *see* MTE at 16. This is within the permissible bounds of expert testimony. *In re MTBE*

---

[17] Defendants read an intent requirement into Phiroz's ██████████████████████ ████████████ MTE at 17. Phiroz has testified █████████ (Phiroz Depo. at 168:12-19). Nonetheless, concerns about this phrase are appropriately addressed through careful instruction at trial.

- 26 -

*Prods. Liab. Litig.*, 643 F. Supp. 2d 482, 505 (S.D.N.Y. 2009) (experts "may opine that a defendant had access to information").  In other instances, Phiroz references sources "stating as a fact that the party or nonparty had that state of mind," and "'referenc[es] this fact … as the ***basis*** for his ultimate opinion.'"  *Payment Card Interchange Fee*, 2022 WL 15044626, at *31 (E.D.N.Y. Oct. 26, 2022) (emphasis in original) (admitting portions of expert report "because, although these excerpts do refer to intentions, motivations, or states of mind, they are supported by citations to sources purporting to state those intentions, motivations, or states of mind as facts").  For example, Phiroz cites

Phiroz references each of the above-cited statements as facts supporting his opinions, not as opinions themselves.

Nor does Phiroz opine on Dentsply's or its distributors' states of mind.  MTE at 16.

*Id.* (citing ¶¶69, 95)); Ex. 23 at 3 (admitting in SEC filing that "incremental incentives ... to purchase products" were used "in order for the Company to attempt to meet certain internal sales targets in the third and fourth quarters of 2021").  "[E]xpert[s] can ... 'reference' an actor's state of

4906-1909-0048.v1

mind when that state of mind is in 'the record' and is 'the basis for [the expert's] ultimate opinion.'"

*Wilson*, 2016 WL 7229056, at *8.

Phiroz properly relies on

. Defendants can argue that the speakers in these documents didn't mean what they said, but it isn't Phiroz's role to make such determinations.

## V.      CONCLUSION

Defendants' motion should be denied.

DATED:  December 19, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SCOTT H. SAHAM (admitted *pro hac vice*)
LUKE O. BROOKS (admitted *pro hac vice*)
DARRYL J. ALVARADO (admitted *pro hac vice*)
CHRISTOPHER D. STEWART (admitted *pro hac vice*)
HILLARY B. STAKEM (admitted *pro hac vice*)
NICOLE Q. GILLILAND (admitted *pro hac vice*)
JESSICA E. ROBERTSON (admitted *pro hac vice*)
MEGAN M. SONNEY (admitted *pro hac vice*)


s/ Hillary B. Stakem
HILLARY B. STAKEM

- 28 -

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
scotts@rgrdlaw.com
lukeb@rgrdlaw.com
dalvarado@rgrdlaw.com
cstewart@rgrdlaw.com
hstakem@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com
msonney@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

VANOVERBEKE, MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel for Lead Plaintiffs

- 29 -

4906-1909-0048.v1

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing memorandum of law complies with the formatting and word-count limitations pursuant to Rule 7.1(c) of the United States District Court for the Southern District of New York as it contains 8,738 words.

s/ Hillary B. Stakem
HILLARY B. STAKEM

4906-1909-0048.v1