**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAN ANTONIO FIRE AND POLICE PENSION FUND, CITY OF BIRMINGHAM RETIREMENT AND RELIEF SYSTEM, EL PASO FIREMEN & POLICEMEN'S PENSION FUND, and WAYNE COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>DENTSPLY SIRONA INC., DONALD M. CASEY, JR., and JORGE GOMEZ,<br><br>Defendants. | Civil Action No. 22-cv-06339-AS<br><br>Hon. Arun Subramanian<br><br>**[REDACTED]** |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'**
**MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY**
**<u>AND OPINIONS OF DR. ALLEN FERRELL</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .................................................................................................................... 3

LEGAL STANDARD............................................................................................................. 6

ARGUMENT ....................................................................................................................... 7

I.      Dr. Ferrell's Rebuttal Analysis Is Not A Legal Opinion. .................................................... 7

II.     Dr. Ferrell's Rebuttal Analysis Is Consistent With Second
        Circuit Law On Loss Causation and Damages. ................................................. 10

        A.      Dr. Ferrell's Critique of Dr. Cain's Loss Causation Opinions Is
                Consistent With Second Circuit Law. ................................................... 10

        B.      Dr. Ferrell's Critique of Dr. Cain's Damages Opinions Is
                Consistent With Second Circuit Law. ................................................... 14

III.    Dr. Ferrell's Rebuttal Analysis Should Not Be Excluded Under Rule 403. ..................... 16

IV.     Dr. Ferrell Properly Disclosed the Basis For His Factual Understanding About ███████
        ███████ ........................................................................................................... 17

CONCLUSION..................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Bus. Grp. Int'l, LLC v. Refresco Beverages US Inc.*,
2023 WL 8280139 (S.D.N.Y. Nov. 30, 2023) .................................................................... 7, 10

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
692 F.3d 34 (2d Cir. 2012) ...................................................................................................... 14

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) ...................................................................................................... 15

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
666 F. Supp. 3d 328 (S.D.N.Y. 2023) ...................................................................................... 6

*Capri Sun GmbH v. Am. Beverage Corp.*,
595 F. Supp. 3d 83 (S.D.N.Y. 2022) ...................................................................................... 18

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .................................................................................................................. 6

*Doe 3 v. Indyke*,
2025 WL 2642114 (S.D.N.Y. Sept. 15, 2025) ....................................................................... 10

*Feinberg v. Katz*,
2007 WL 4562930 (S.D.N.Y. Dec. 21, 2007) ....................................................................... 19

*Fleming v. Vill. of Rockville Ctr.*,
2025 WL 2774808 (E.D.N.Y. Sept. 24, 2025) ...................................................................... 17

*Freudenberg v. E\*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010) ............................................................................. 13–14

*Gruber v. Gilbertson*,
628 F. Supp. 3d 472 (S.D.N.Y. 2022) .................................................................................... 14

*Highland Cap. Mgmt., L.P. v. Schneider*,
551 F. Supp. 2d 173 (S.D.N.Y. 2008) .............................................................................. 16–17

*In re Apple Inc. Sec. Litig.*,
2023 WL 4556765 (N.D. Cal. July 17, 2023) ........................................................................ 11

*In re Digit. Music Antitrust Litig.*,
　321 F.R.D. 64 (S.D.N.Y. 2017) .............................................................................. 6

*In re Joint E. & S. Dist. Asbestos Litig.*,
　52 F.3d 1124 (2d Cir. 1995).................................................................................. 7

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
　2025 WL 354671 (S.D.N.Y. Jan. 30, 2025) ......................................................... 16

*In re Kirkland Lake Gold Ltd. Sec. Litig.*,
　2024 WL 1342800 (S.D.N.Y. Mar. 29, 2024) ........................................................ 7

*In re Mylan NV Sec. Litig.*,
　666 F. Supp. 3d 266 (S.D.N.Y. 2023).............................................................. 11, 13

*In re Nat'l Instruments Sec. Litig.*,
　2025 WL 2682172 (S.D.N.Y. Sept. 19, 2025)...................................................... 15

*In re Novatel Wireless Sec. Litig.*,
　846 F. Supp. 2d 1104 (S.D. Cal. 2012)................................................................ 11

*In re Omnicom Grp., Inc. Sec. Litig.*,
　597 F.3d 501 (2d Cir. 2010)................................................................................ 13

*In re Pfizer Inc. Sec. Litig.*,
　819 F.3d 642 (2d Cir. 2016)............................................................... 8, 9, 14, 15

*In re Rezulin Prods. Liability Litig.*,
　309 F. Supp. 2d 531 (S.D.N.Y. 2004)............................................................ 10, 17

*In re Signet Jewelers Ltd. Sec. Litig.*,
　2019 WL 3001084 (S.D.N.Y. July 10, 2019) ................................................. 13–14

*In re Terrorist Attacks on Sept. 11, 2001*,
　2025 WL 2383768 (S.D.N.Y. Aug. 18, 2025)...................................................... 17

*In re Veon Ltd. Sec. Litig.*,
　2025 WL 66444 (S.D.N.Y. Jan. 10, 2025) .......................................................... 11

*In re Vivendi, S.A., Sec. Litig.*,
　765 F. Supp. 2d 512 (S.D.N.Y. 2011).................................................................. 14

*In re Vivendi, S.A. Sec. Litig.*,
　838 F.3d 223 (2d Cir. 2016)........................................................................... 11, 12

*In re Xerox Corp. Sec. Litig.*,
　2009 WL 8556135 (D. Conn. Apr. 22, 2009) ........................................................................... 9

*Jinghong Song v. Yao Bros. Grp. LP*,
　2012 WL 1557372 (S.D.N.Y. May 2, 2012) ........................................................................... 20

*Lentell v. Merrill Lynch & Co.*,
　396 F.3d 161 (2d Cir. 2005) .................................................................................................. 11

*Oleg Cassini, Inc. v. Electrolux Home Prods., Inc.*,
　2014 WL 1468118 (S.D.N.Y. Apr. 15, 2014) ........................................................................ 20

*Riegel v. Medtronic, Inc.*,
　451 F.3d 104 (2d Cir. 2006) .................................................................................................. 20

*Scott v. Chipotle Mexican Grill, Inc.*,
　315 F.R.D. 33 (S.D.N.Y. 2016) ............................................................................................... 6

*SEC v. AT&T, Inc.*,
　626 F. Supp. 3d 703 (S.D.N.Y. 2022) ...................................................................................... 7

*SEC v. Revelation Cap. Mgmt., Ltd.*,
　215 F. Supp. 3d 267 (S.D.N.Y. 2016) .................................................................................... 16

*SEC v. Yorkville Advisors, LLC*,
　305 F. Supp. 3d 486 (S.D.N.Y. 2018) .................................................................................... 18

*SLSJ, LLC v. Kleban*,
　277 F. Supp. 3d 258 (D. Conn. 2017) .................................................................................... 17

*State of N.Y. v. United Parcel Serv., Inc.*,
　2016 WL 4735368 (S.D.N.Y. Sept. 10, 2016) ....................................................................... 15

*Tang Cap. Partners, LP v. BRC Inc.*,
　757 F. Supp. 3d 363 (S.D.N.Y. 2024) .................................................................................... 16

*U.S. Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*,
　112 F. Supp. 3d 122 (S.D.N.Y. 2015) .................................................................................... 18

*United States v. Bilzerian*,
　926 F.2d 1285 (2d Cir. 1991) .................................................................................................. 9

*United States v. Gushlak*,
　728 F.3d 184 (2d Cir. 2013) ............................................................................................. 8, 15

*Washington v. Kellwood Co.*,
105 F. Supp. 3d 293 (S.D.N.Y. 2015)..................................................................... 10

**Rules**

Fed. R. Civ. P. 26.......................................................................... 3, 18, 19, 20

Fed. R. Evid. 403 ............................................................................ 6, 7, 16, 17

Fed. R. Evid. 702 ................................................................................ 6, 7, 16

**Other Authorities**

Allen Ferrell & Atanu Saha, *The Loss Causation Requirement for Rule 10b-5*
*Causes of Action: The Implications of Dura Pharmaceuticals v. Broudo*,
63 Bus. L. 163 (2007) ................................................................................. 8

Andrew R. Gray et al., *Counterfactuals in Securities Class Actions-An*
*Illustration Using Third-Party Corrective Disclosures*,
23 Hou. Bus. & Tax L. J. 104 (2023)........................................................... 9

Barbara Black, *Reputational Damages in Securities Litigation*,
35 J. Corp. L. 169 (2009)............................................................................ 8

Bradford Cornell & James C. Rutten, *Collateral Damage and Securities Litigation*,
3 Utah L. Rev. 717 (2009) ......................................................................... 8

Bradford Cornell & R. Gregory Morgan, *Using Finance Theory to Measure*
*Damages in Fraud On The Market Cases*,
37 UCLA L. Rev. 883 (1990) ..................................................................... 8

Frederick C. Dunbar & Arun Sen, *Counterfactual Keys to Causation and*
*Damages in Shareholder Class-Action Lawsuits*,
2009 Wis. L. Rev. 199 (2009)..................................................................... 9

Janet Alexander, *The Value of Bad News in Securities Class Actions*,
41 UCLA L. Rev. 1421 (1994)..................................................................... 9

Jon Koslow, *Estimating Aggregate Damages in Class-Action Litigation Under*
*Rule 10b-5 for Purposes of Settlement*,
59 Fordham L. Rev. 811 (1991)................................................................... 8

Michael Barclay & Frank C. Torchio, *A Comparison of Trading Models
Used for Calculating Aggregate Damages in Securities Litigation*,
64 L. & Contemp. Probs. 105 (2001)....................................................................................... 8

Dentsply Sirona Inc. ("Dentsply" or the "Company"), Donald M. Casey, Jr. ("Casey"), and Jorge Gomez ("Gomez") (collectively, "Defendants"), respectfully submit this memorandum of law in opposition to Plaintiffs' motion to exclude certain expert opinions and testimony of Dr. Allen Ferrell ("Dr. Ferrell"). *See* Mem. of L. in Supp. of Pls.' Mot. to Exclude Certain Expert Test. and Ops. of Dr. Allen Ferrell (the "Motion"), Dkt. No. 191; Expert Report of Allen Ferrell, Ph.D. ("Ferrell Report"), Dkt. No. 192-2.[1]

## PRELIMINARY STATEMENT

Plaintiffs seek to exclude two opinions of Defendants' rebuttal damages expert, Dr. Allen Ferrell, a Harvard professor with an economics Ph.D. from MIT, who criticizes the loss causation and damages opinions of Plaintiffs' damages expert, Dr. Matthew Cain ("Dr. Cain").  Plaintiffs first try to dismiss as a "legal conclusion" Dr. Ferrell's well-reasoned opinion that Dr. Cain fails to identify what information Defendants should have, but failed to, disclose during the class period.  According to Dr. Ferrell, without determining what an accurate disclosure would have been, Dr. Cain lacks an economic basis to opine that later disclosures were corrective and caused Plaintiffs to suffer damages.  Contrary to Plaintiffs' argument, this opinion is rooted in sound economic analysis and extensive academic literature, not legal analysis, and follows Second Circuit law.  Plaintiffs next seek to exclude Dr. Ferrell's criticism of Dr. Cain for using the ███████████████████████ as part of his damages analysis without connecting that termination to the alleged fraud.  Plaintiffs claim Dr. Ferrell failed to properly disclose the basis for his criticism—but the factual basis for Dr. Ferrell's opinion was fully disclosed to, and

---

[1]    References to "Ex." are to exhibits to the Declaration of Andrew Weaver in Support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Exclude Certain Expert Testimony and Opinions of Dr. Allen Ferrell, submitted herewith.

subject to examination by, Plaintiffs' counsel.  For these reasons and those that follow, Defendants respectfully submit that Plaintiffs' Motion should be denied.

*First*, Plaintiffs' case is premised in significant part on Defendants allegedly omitting material information from investors, and Dr. Ferrell has opined that Dr. Cain should have determined what the information is that Defendants allegedly omitted—what Dr. Ferrell refers to as the "but-for" disclosure—as part of assessing loss causation and damages.  As Dr. Cain himself states, he opines on ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████  Expert Report of Matthew D. Cain, Ph.D. ¶ 2 (Sep. 5, 2025), Dkt. No. 192-1 ("Cain Report") (emphasis added).  But because Dr. Cain does not explain what that "but-for" disclosure of the "relevant truth" should have been, his analysis of the later disclosures and opinions that they were corrective and caused damages lack an economic basis and are unreliable.

Dr. Ferrell's rebuttal analysis is rooted in, and extensively supported by, economic academic literature, not legal analysis—and it is entirely consistent with Second Circuit law on loss causation and damages.  Dr. Ferrell's testimony will assist the jury in sorting through Dr. Cain's vague assertions and help jurors to assess, from an economic perspective, whether the stock drops on the alleged corrective disclosure dates reliably approximate alleged inflation during the class period.  For that matter, Dr. Cain himself purports to link his estimate of stock price inflation to the revelation of the "relevant truth," no different in practice than what Dr. Ferrell dubs the "but-for disclosure."  Thus, Plaintiffs' objection to Dr. Ferrell's reference to a "but-for disclosure" is simply semantics.

*Second*, Plaintiffs' argument that Dr. Ferrell failed to disclose the basis for his understanding that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is similarly baseless. Dr. Ferrell's report clearly sets out the basis for his factual understanding: a factual assumption ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This satisfies the disclosure obligations of Federal Rule of Civil Procedure 26. And at his deposition, Dr. Ferrell provided all the testimony required under Rule 26 in response to Plaintiffs' questions, a point he confirms in a declaration attached here. Dr. Ferrell is an economic expert, not a fact witness—he disclosed to Plaintiffs that his factual understanding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and nothing more is required.

## BACKGROUND

Dr. Ferrell's Report responds to Dr. Cain's opinions. He concludes that Dr. Cain's analyses of loss causation and calculation of damages lack any economic basis and are flawed and unreliable. *See* Ferrell Report ¶¶ 27–28.

Dr. Cain analyzed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Cain Report ¶¶ 20, 70–123, 129. ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id.* ¶¶ 20, 129, 138.[2] Dr. Ferrell opines that ▮▮▮▮▮▮▮▮▮

---

[2] Here, "back-end" refers to "the alleged corrective disclosures" that Plaintiffs claim caused the stock price to drop, thereby dissipating the purported inflation caused by earlier



*See* Ferrell Report ¶¶ 45–52.  Dr. Ferrell explains that ███████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████  *See id.* ¶¶ 46–48.

One of Dr. Ferrell's opinions is that Dr. Cain's opinion lacks support because he fails to identify what disclosure Defendants could or should have made (what Dr. Cain calls the "relevant truth") as of the start of the class period, which would have allegedly reduced the stock price at that time by the full amount that Dr. Cain claims the stock was artificially inflated.  *See id.* ¶ 49.  Dr. Ferrell refers to this as a "but-for disclosure."  *Id.*  As Dr. Ferrell explains,

████████████████████████████████████████████ ████████████████████████████████████████  *Id.*

¶ 42.  In other words, an expert must understand what could and should have been disclosed on the date of the alleged misrepresentation to determine whether the information released on the corrective disclosure date actually corrects that alleged misrepresentation.  *See id.* ████████ ████████████████████████████████████████████  If not, then there is no reliable economic basis to conclude that the back-end price movement on the corrective disclosure date reflects the dissipation of inflation in the stock price attributable to the alleged fraud.  *See id.* ¶ 43.  And if the stock price movement does not accurately reflect the

---

alleged misstatements or omissions.  Ferrell Report ¶ 47.  This is in contrast to "front-end" statements, which are the misstatements or omissions that allegedly introduced this inflation earlier in the class period.  *See id.* ¶ 43.

dissipation of fraud-related inflation, the back-end stock drop "cannot be used to reliably measure artificial inflation" in the stock or to calculate damages. *Id.*

Dr. Ferrell opines that Dr. Cain's failure to explain how the alleged corrective disclosures relate to the but-for disclosures (or "relevant truth") ████████████████████████████ ██████████   *See* Ferrell Report ¶¶ 61, 69 ████████████████████████; *id.* ¶ 79 ██████████; *id.* ¶ 88 ████████████. ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████   He therefore cannot, as an economic matter, reliably use the stock price movements on the corrective disclosure dates to measure supposed artificial inflation in Dentsply's stock price earlier in the class period. *See id.* ¶¶ 61, 69, 79, 88.

Dr. Ferrell also points out several additional flaws with Dr. Cain's analyses of the claimed corrective disclosure dates. *See id.* ¶¶ 59–98. For instance, Dr. Cain ████████████████ ████████████████████████████████████████████████ ████████████████████████   *See id.* ¶ 76; Cain Report ¶ 88. Dr. Ferrell opines that ████ ████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████

████████   Ferrell Report ¶ 76.

Dr. Ferrell's report cites ████████████████████████ ████████████████████   *See id.* at n.113. When asked at his deposition about the basis for his understanding, Dr. Ferrell ████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████ *See* Ex. 1, Declaration of Frank Allen Ferrell, Ph.D. ¶ 2 ("Ferrell Decl."); Tr. of the Videotaped Dep. of Frank Allen Ferrell, Ph.D. ("Ferrell Dep. Tr.") at 154:9–155:16, Dkt. No. 192-3. Dr. Ferrell testified ██████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████ Dr. Ferrell has made clear: "There was nothing more that ██████████████████ that related to ████████

████████ I could have testified about." Ex. 1, Ferrell Decl. ¶ 2.

Plaintiffs argue that Dr. Ferrell's but-for analysis should be excluded under Federal Rules of Evidence 702 and 403 because such analysis is improper legal opinion that additionally conflicts with Second Circuit law. Mot. at 6–12. Plaintiffs also argue that Dr. Ferrell's opinion regarding ████████ should be excluded because he improperly withheld the basis for his factual understanding of ██████████████████████████. *Id.* at 12–15.

## LEGAL STANDARD

Rule 702 and the *Daubert* standard govern the admissibility of expert opinions. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). As a rebuttal expert, Dr. Ferrell "ha[s] a less demanding task," as he need not "produce models or methods of [his] own; [he] need only attack those of" Dr. Cain. *In re Digit. Music Antitrust Litig.*, 321 F.R.D. 64, 78 (S.D.N.Y. 2017) (quotations omitted); *see also Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 381 (S.D.N.Y. 2023) (declining to preclude rebuttal damages expert "from offering testimony to rebut [opposing expert's] analysis or the authorities on which he relies"); *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) ("Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party.") (quotations omitted). So long as Dr. Ferrell's "testimony falls within 'the range

where experts might reasonably differ,' [it] should go to the jury to decide its weight." *Access Bus. Grp. Int'l, LLC v. Refresco Beverages US Inc.*, 2023 WL 8280139, at *2 (S.D.N.Y. Nov. 30, 2023) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999)); *see also In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d 1124, 1135 (2d Cir. 1995) ("battle of the experts" is for the fact-finder to resolve) (quotations omitted).  Furthermore, Rule 403 may be used to exclude expert evidence that satisfies Rule 702 only where the evidence's "probative value as to matters at issue is substantially outweighed by the risks of unfair prejudice, confusion, misleading the jury, or delay." *SEC v. AT&T, Inc.*, 626 F. Supp. 3d 703, 734 (S.D.N.Y. 2022).

## ARGUMENT

### I.     Dr. Ferrell's Rebuttal Analysis Is Not A Legal Opinion.

Plaintiffs argue that Dr. Ferrell's critiques of Dr. Cain do not "apply[] economics to facts" but instead "speak to and decide a legal issue (what is required to establish loss causation and damages)." *See* Mot. at 6–7.  That is incorrect.  Dr. Ferrell conducts an economic analysis that has extensive support in academic literature.  And, based on that well-supported analysis, Dr. Ferrell concludes as a matter of economics that Dr. Cain's loss causation and damages opinions are unreliable.

Contrary to Plaintiffs' assertion, *see* Mot. at 7, academic literature strongly supports Dr. Ferrell's discussion of a but-for disclosure as part of a reliable assessment of loss causation and damages.  *See In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2024 WL 1342800, at *9 (S.D.N.Y. Mar. 29, 2024) (crediting rebuttal expert's "critique of the [plaintiff's] damages methodology" where "academic literature" supported that critique).  Indeed, Dr. Cain █████████████████

██████████████████████████████████

For example, Bradford Cornell and R. Gregory Morgan, in an article the Second Circuit has cited approvingly, discuss the need to calculate an "equivalent disclosure price" at which

"the security would have traded if the omitted and misrepresented information—and *only* that information—were accurately disclosed at the start of the class period."  Ex. 2, Bradford Cornell & R. Gregory Morgan, *Using Finance Theory to Measure Damages in Fraud On The Market Cases*, 37 UCLA L. Rev. 883, 894 (1990); *see also United States v. Gushlak*, 728 F.3d 184, 197 (2d Cir. 2013) (citing this article); *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 649 (2d Cir. 2016) (same).[3]  Similarly, Michael Barclay and Frank Torchio state that it is necessary to estimate what "the true value of the stock would have been *but for* the false or misleading information" in order to calculate artificial inflation.  Ex. 7, Michael Barclay & Frank C. Torchio, *A Comparison of Trading Models Used for Calculating Aggregate Damages in Securities Litigation*, 64 L. & Contemp. Probs. 105, 106 n.3 (2001) (emphasis added); *see also Gushlak*, 728 F.3d at 197 (citing this article).  And the calculation of artificial inflation is the basis for determining damages.

This is the same analysis Dr. Ferrell faults Dr. Cain for not performing here.  *See* Ferrell Report ¶ 43 ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

Other economists discuss the concept of a "counterfactual" analysis to ensure that investor losses determined using an event study are actually attributable to the alleged

---

[3]    *See also* Ex. 3, Jon Koslow, *Estimating Aggregate Damages in Class-Action Litigation Under Rule 10b-5 for Purposes of Settlement*, 59 Fordham L. Rev. 811, 822 (1991); Ex. 4, Allen Ferrell & Atanu Saha, *The Loss Causation Requirement for Rule 10b-5 Causes of Action: The Implications of Dura Pharmaceuticals v. Broudo*, 63 Bus. L. 163, 185 (2007); Ex. 5, Barbara Black, *Reputational Damages in Securities Litigation*, 35 J. Corp. L. 169, 173 (2009); Ex. 6, Bradford Cornell & James C. Rutten, *Collateral Damage and Securities Litigation*, 3 Utah L. Rev. 717, 720 (2009).

misrepresentations.  *See* Ex. 8, Frederick C. Dunbar & Arun Sen, *Counterfactual Keys to Causation and Damages in Shareholder Class–Action Lawsuits*, 2009 Wis. L. Rev. 199, 231 (2009); *In re Pfizer*, 819 F.3d at 649–50 (citing this article).[4]  That is, the economist "assumes . . . in the counterfactual, [that] the same (i.e., economically equivalent) information were disclosed by the subject company on an earlier date" and that the stock price would have declined as it did on the eventual corrective disclosure date.  Ex. 10, Andrew R. Gray et al., *Counterfactuals in Securities Class Actions—An Illustration Using Third-Party Corrective Disclosures*, 23 Hou. Bus. & Tax L. J. 104, 109 (2023).  Dr. Ferrell's rebuttal analysis highlights that Dr. Cain ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████.  *See* Ferrell Report ¶¶ 49, 69, 79, 88.

Dr. Ferrell offers economic analysis consistent with this robust literature, not legal opinions.  Experts may opine on "issue[s] of fact within the jury's province" but "may not give testimony stating ultimate legal conclusions based on those facts."  *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).  Dr. Ferrell offers no testimony about "ultimate legal conclusions"—instead, he properly rebuts Dr. Cain's opinions regarding loss causation and damages by ██████████████████████████████████████ *In re Xerox Corp. Sec. Litig.*, 2009 WL 8556135, at *5 (D. Conn. Apr. 22, 2009) (rejecting argument that damages expert was offering "impermissible legal conclusion" where challenged opinions were "supported by specific factual analysis" in expert report).  Dr. Ferrell's rebuttal opinions will help the jury understand the significant flaws in Dr. Cain's analysis, and they are admissible for that

---

[4]    *See also* Ex. 9, Janet Alexander, *The Value of Bad News in Securities Class Actions*, 41 UCLA L. Rev. 1421, 1434 (1994).

purpose. *See Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 328 (S.D.N.Y. 2015) (denying motion to exclude rebuttal expert testimony that would "assist the finder of fact in determining whether [the opposing expert] followed proper methodology and whether his conclusions were properly reached") (quotations omitted).

Plaintiffs' cited cases, *see* Mot. at 7, do not support their argument. The proffered expert rejected by the court in *In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531, 558 (S.D.N.Y. 2004), sought to testify about a company's legal "duty to warn patients," which the court held would "encroach on the court's prerogative to instruct on the law." And in *Doe 3 v. Indyke*, 2025 WL 2642114, at *2 (S.D.N.Y. Sept. 15, 2025), the excluded expert sought to offer the inherently legal conclusion that the defendants "knew or should have known" of criminal activity. Here, by contrast, Dr. Ferrell's opinions do not touch on legal duties or elements of Plaintiffs' claim, but rather explain why Dr. Cain's opinions are flawed as an economic matter and should not be relied upon by the jury.

## II.    Dr. Ferrell's Rebuttal Analysis Is Consistent With Second Circuit Law On Loss Causation and Damages.

Dr. Ferrell's economic critiques of Dr. Cain's loss causation and damages analyses comport with Second Circuit law. Because Dr. Ferrell's rebuttal analysis, at the minimum, "falls within 'the range where experts might reasonably differ,' [it] should go to the jury to decide its weight." *Access Bus. Grp.*, 2023 WL 8280139, at *2 (quoting *Kumho Tire*, 526 U.S. at 153). Plaintiffs' argument that Dr. Ferrell "imposes a nonexistent legal prerequisite to establishing loss causation and damages" is wrong. *See* Mot. at 1, 7–11.

### A. Dr. Ferrell's Critique of Dr. Cain's Loss Causation Opinions Is Consistent With Second Circuit Law.

While Dr. Ferrell's rebuttal analysis is not legal opinion, such analysis is consistent with Second Circuit law on loss causation requiring (1) that "the loss [be a] foreseeable result of the

defendant's conduct (*i.e.*, the fraud)," *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 261 (2d Cir. 2016) (quotations omitted), and (2) that a purported corrective disclosure "contains new fraud-related information," *In re Mylan NV Sec. Litig.*, 666 F. Supp. 3d 266, 325 (S.D.N.Y. 2023) (quotations omitted); *see also Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 n.4 (2d Cir. 2005) (loss causation requires that corrective disclosure "reveal to the market the falsity of" the alleged misstatements). Plaintiffs' arguments to the contrary, *see* Mot. at 9–10, miss the mark.[5]

*First*, Dr. Ferrell's rebuttal analysis implements *Vivendi*'s foreseeability standard by evaluating the economic relationship between the alleged fraud and the alleged loss. *Vivendi* requires a plaintiff to show a "sufficiently direct" "relationship between th[eir] investment loss and the information misstated or concealed by the defendant." 838 F.3d at 261. This requirement entails comparing front-end alleged misstatements or omissions to the back-end loss to determine whether the two are sufficiently connected. *See In re Veon Ltd. Sec. Litig.*, 2025 WL 66444, at *4 (S.D.N.Y. Jan. 10, 2025) ("If the connection is attenuated, or if the plaintiff fails to 'demonstrate a causal connection between the content of the alleged misstatements or omissions and the harm actually suffered' . . . a fraud claim will not lie.") (quoting *Lentell*, 396 F.3d at 174)). To determine whether losses are a foreseeable result of an alleged misstatement, one must first identify the specific information that should have been disclosed as of the date of

---

[5]    Plaintiffs' cited out-of-circuit authority, *see* Mot. at 7–8, does not advance their argument that Dr. Ferrell's opinions are inconsistent with Second Circuit law and is factually off point. The court in *In re Apple Inc. Sec. Litig.*, 2023 WL 4556765, at *10 (N.D. Cal. July 17, 2023), denied the plaintiffs' motion to exclude the defendants' damages expert save one sentence of the report, and that one sentence was excluded because it opined on the ultimate issue of whether "but-for causation" existed, which Dr. Ferrell does not do. Dr. Ferrell merely points out the flaws in Dr. Cain's methodology and conclusions. And *In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d 1104 (S.D. Cal. 2012), does not involve rebuttal analysis anything like that offered by Dr. Ferrell here.

the alleged misstatement.  Only then can a damages expert assess whether subsequent price declines foreseeably resulted from a defendant's purported failure to disclose that information earlier.

Dr. Ferrell faults Dr. Cain for ███████████████████████████████████

███████████████████████████████████████████████  *See, e.g.*, Ferrell Report

¶¶ 28, 49–52, 69.  While the losses need only be the "foreseeable result of the defendant's conduct," *Vivendi*, 838 F.3d at 260–61 (quotations omitted), identifying the but-for disclosure is necessary to determine what losses are foreseeable from the failure to disclose that information.

*See* Ferrell Report ¶ 42 ██████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████.  Dr. Ferrell's criticism that ███████████████████████

████████████████████████████████████████████████████████████

████████████  therefore puts *Vivendi*'s foreseeability standard into practice as an economic matter.

Plaintiffs' use of cherry-picked quotes from Dr. Ferrell's report misconstrues and overstates his opinions.  *See* Mot. at 9.  Dr. Ferrell's opinion is █████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████  *See, e.g.*, Ferrell Report ¶¶ 28, 49, 69.  Nothing about that analysis is inconsistent with the foreseeability standard—again, Dr. Ferrell is simply noting

that

*Cf.* Mot. at 9

Rather, Dr. Ferrell opines that Dr. Cain's analysis is unreliable because

*See* Ferrell Report ¶ 28.

*Second*, Dr. Ferrell does not insist on a particular "form" of corrective disclosure. *See* Mot. at 10. Rather, he merely opines that,

*See* Ferrell Report ¶¶ 28, 45. Establishing that a disclosure is corrective requires an understanding of what the disclosure purportedly corrects—*i.e.*, what was not disclosed but should have been. *See Mylan*, 666 F. Supp. 3d at 325 (S.D.N.Y. 2023) ("[T]o qualify as a corrective disclosure, Plaintiffs must show that such a disclosure contains new fraud-related information.") (quotations omitted)); *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010) (corrective disclosure must "reveal some then-undisclosed fact with regard to the specific misrepresentations alleged in the complaint"). In contrast to Dr. Cain, Dr. Ferrell's rebuttal analysis properly focuses on the comparison between the alleged front-end failure to disclose and the back-end disclosure that purportedly corrects it, whatever form the latter might take. *See* Ferrell Report ¶ 41.[6]

---

[6]    Plaintiffs' reliance on *In re Signet Jewelers Ltd. Securities Litigation*, 2019 WL 3001084, at *14 (S.D.N.Y. July 10, 2019), and *Freudenberg v. E*Trade Financial Corp.*, 712 F. Supp. 2d

-13-

### B.  Dr. Ferrell's Critique of Dr. Cain's Damages Opinions Is Consistent With Second Circuit Law.

Securities fraud damages are measured by "the difference between what [plaintiffs] should have paid for [the defendant's] shares but-for the alleged fraud, and what they actually paid." *In re Pfizer*, 819 F.3d at 650.[7]  Contrary to Plaintiffs' contention, *see* Mot. at 10–11 ███████████████████████████████████████████████████  Dr. Ferrell's opinions are entirely consistent with that rule.  Plaintiffs say that their "losses . . . need not be proved with mathematical precision."  *Id.* at 11 (quoting *Liberty Media Corp. v. Vivendi Universal, S.A.*, 923 F. Supp. 2d 511, 532 (S.D.N.Y. 2013)).[8]  That may be so, but Dr. Ferrell's opinion is that ██████████████████████████████████████ ███████████████████████████████

Dr. Ferrell explains why ██████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████

---

171, 202 (S.D.N.Y. 2010), is misplaced.  *See* Mot. at 10.  As an initial matter, neither case addressed a motion to exclude expert testimony.  And in those cases, the defendants had argued that a corrective disclosure must be the "mirror image" of the alleged misrepresentation.  However, Dr. Ferrell was clear that ███████████████.  *See* Ferrell Dep. Tr. at 49:9–13 ████ ██████████████████████████████████████████████ ████.

[7]    *See also In re Vivendi, S.A., Sec. Litig.*, 765 F. Supp. 2d 512, 563 (S.D.N.Y. 2011) (damages are typically measured by "the difference between the price plaintiffs paid for each share of [the company's] stock and the price the share would have cost if no false or misleading statement or omission of material fact had occurred—in other words, the inflation in the stock price"); *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 38 (2d Cir. 2012) ("[E]conomic loss in Section 10(b) cases [is] determined by use of the 'out-of-pocket' measure for damages . . . [which] is the difference between the fair value of all that the [plaintiff] received and the fair value of what he would have received had there been no fraudulent conduct.") (quotations omitted).

[8]    Plaintiffs cite *Gruber v. Gilbertson*, 628 F. Supp. 3d 472, 483 (S.D.N.Y. 2022), but quote from its discussion of loss causation, not damages.  *See* Mot. at 8.

-14-

██████████████████████████████████████████████████████████

████████████████████   *See* Ferrell Report ¶¶ 42–52, 69, 79, 88.

The Second Circuit recognizes the importance of this counterfactual analysis in calculating damages: "artificial inflation . . . is . . . the difference between what those investors should have paid for the shares *but-for* the alleged fraud, and what they actually paid." *In re Pfizer*, 819 F.3d at 650 (emphasis added); *see also Gushlak*, 728 F.3d at 197 (calculating the artificial inflation when the shares were sold requires an analysis of "what the aggregate price of the investor's shares would have been on a given date *but for* the fraud") (emphasis added); *State of N.Y. v. United Parcel Serv., Inc.*, 2016 WL 4735368, at *10 (S.D.N.Y. Sept. 10, 2016) ("[T]he use of but-for worlds is commonplace in assessing damages in many different scenarios.").[9] Indeed, though Plaintiffs here suggest this analysis runs contrary to the law, Mot. at 10–11, Dr. Cain himself has elsewhere endorsed it. *See In re Nat'l Instruments Sec. Litig.*, 2025 WL 2682172, at *5 (S.D.N.Y. Sept. 19, 2025) ("According to Dr. Cain, the 'but-for' stock price that would have existed had the relevant truth been exposed can be conservatively estimated as $48 per share . . . This provides a foundational model for determining damages that result from the asserted theory of injury[.]").[10]

---

[9]    The Second Circuit's caselaw on price impact at the class certification stage accords with this principle—it requires a "close[] fit (even if not precise) between the front- and back-end statements." *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 99 n.11 (2d Cir. 2023). Without identifying what should have been disclosed at the front-end, an expert cannot establish a link with the back-end price decline, much less demonstrate a "close fit" between them.

[10]    *See also* Corrected Expert Report of Matthew D. Cain, Ph.D., *Int'l Bhd. of Elec. Workers Loc. 98 Pension Fund v. Deloitte & Touche, LLP*, No. 3:19-cv-03304-JDA, Dkt. No. 285-3 ¶ 17 (D.S.C. Mar. 14, 2025) ("[I]f a company omits important information or provides misleading information to shareholders, the stock price will become distorted and either inflated or deflated

Dr. Ferrell's criticisms of Dr. Cain's damages analysis are entirely consistent with this law. There is thus no basis to exclude his opinions. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2025 WL 354671, at \*46–\*47 (S.D.N.Y. Jan. 30, 2025) (denying motion to exclude rebuttal damages expert opinions because "it is a permissible critique of an expert's damages opinion that the expert failed to account for" other "lawful factors that might impact the jury's assessment of damages.").

### III.    Dr. Ferrell's Rebuttal Analysis Should Not Be Excluded Under Rule 403.

Plaintiffs' effort to exclude Dr. Ferrell's rebuttal analysis under Rule 403, *see* Mot. at 11–12, merely repackages their other arguments and fails for the same reasons.[11] Plaintiffs cannot contest the relevance of Dr. Ferrell's analysis, as it is "highly relevant and probative to [two] central issue[s] in the case"—loss causation and damages. *SEC v. Revelation Cap. Mgmt., Ltd.*, 215 F. Supp. 3d 267, 281 (S.D.N.Y. 2016) (refusing to exclude under Rule 403 expert opinions that "[met] the indicia of reliability required to be admissible under Rule 702").

Plaintiffs also cannot show that any of the other factors in Rule 403 would "substantially outweigh[]" the probative value of Dr. Ferrell's opinions. Fed. R. Evid. 403; *see also Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 177 (S.D.N.Y. 2008) ("Because Rule 403 excludes relevant evidence, 'it is an extraordinary remedy that must be used sparingly.'")

---

relative to the price at which the stock would trade but-for the misleading or omitted information."); Expert Report of Matthew D. Cain, Ph.D., *In re Vaxart, Inc. Sec. Litig.*, No. 3:20-cv-05949-VC, Dkt. No. 438-2 ¶ 24 (N.D. Cal. July 30, 2024) ("Based on a common formula, which can accommodate any modification deemed necessary by a factfinder, at any point in the Class Period, the level of artificial inflation was equal to the actual stock price at the time an investor purchased less the but-for stock price.").

11    Even if the Court were inclined to agree with Plaintiffs, the "balancing process contemplated by [Rule 403] is best undertaken at the trial itself," rather than "at the summary judgment stage." *Tang Cap. Partners, LP v. BRC Inc.*, 757 F. Supp. 3d 363, 374 (S.D.N.Y. 2024) (quotations omitted).

(quoting *George v. Celotex Corp.*, 914 F.2d 26, 31 (2d Cir. 1990)).  As discussed above, Dr. Ferrell's opinions are not legal opinions, are widely supported by academic literature, and square with applicable law on loss causation and damages.  *See supra* Parts I–II.  The extraordinary remedy of exclusion under Rule 403 is thus inappropriate, and the jury should be permitted to consider Dr. Ferrell's opinions alongside Dr. Cain's.  *See* Fed. R. Evid. 403.

Plaintiffs' contrary cases are not on point and do not support exclusion in this case.  In *Fleming v. Village of Rockville Center*, 2025 WL 2774808, at *8 (E.D.N.Y. Sept. 24, 2025), the court precluded expert testimony consisting of legal conclusions about police conduct where the expert also could not identify the legal provisions he purported to apply.  The excluded expert in *In re Rezulin* tried to offer "rhetoric" about ethical standards as a substitute for the "pertinent legal standards."  309 F. Supp. 2d at 545, n.37.  Dr. Ferrell does nothing similar here.  *See supra* Part I.  Plaintiffs additionally cite to *SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258 (D. Conn. 2017), only for the non-controversial point that an expert may not offer legal conclusions.[12]  Finally, in *In re Terrorist Attacks on Sept. 11, 2001*, 2025 WL 2383768, at *20–*21 (S.D.N.Y. Aug. 18, 2025), the court rejected a Rule 403 challenge.  None of these cases support exclusion of Dr. Ferrell's opinions here.

IV. **Dr. Ferrell Properly Disclosed the Basis For His Factual Understanding About** ███████████████

Dr. Ferrell critiques Dr. Cain's analysis of ████████████████████████████

████████████████████████████████████████████████████████████████████

---

[12]    The *SLSJ* court excluded some expert opinions because they "assumed" certain facts which in actuality the jury needed to resolve, 277 F. Supp. 3d at 283–84, but Plaintiffs do not levy that criticism at Dr. Ferrell.

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████        *See* Ferrell Report ¶ 76.  Dr. Ferrell

based his critique on his understanding that ████████████████████████████████

████████████████████████████████████████        *Id.*  Dr. Ferrell fully explained the basis for that

factual understanding in his report and testimony, and there is accordingly no reason to exclude

any of his opinions.  *See* Mot. at 12–15.

Plaintiffs largely ignore Dr. Ferrell's report, in which ████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████        *See* Ferrell Report ¶ 76 nn.113–14.  His numerous citations to

support his understanding regarding ██████████████        fully satisfied the disclosure

obligation set forth in Rule 26.  *See, e.g.*, *U.S. Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*,

112 F. Supp. 3d 122, 134 (S.D.N.Y. 2015) (denying motion to exclude expert testimony where

exhibit to expert report "contained all the underlying data supporting [the] report").[13]  More

generally, Dr. Ferrell is an economic expert, not a fact witness—he took the fact about ███

█████████████        as given and performed his economic analysis accordingly.[14]  It is not

uncommon for a technical expert to apply expertise to assumed facts provided by counsel.  The

---

[13]    In any event, even if the Court were to find that Dr. Ferrell lacked factual foundation for his opinion, that shortcoming would go to weight, not admissibility.  *See SEC v. Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 508 (S.D.N.Y. 2018) (challenge that expert "testimony . . . lacks adequate factual foundations" goes to weight rather than admissibility); *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 135 (S.D.N.Y. 2022) (challenge that expert "cherry-pick[ed]" facts to support analysis goes to weight and not admissibility).
[14]    *See* Ferrell Dep. Tr. at 157:2–8 ████████████████████████████████████
████████████████████████████████████████████████████████████████████████

Federal Rules of Civil Procedure contemplate that experts will do so, calling on them to "identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed" or "identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(C)(ii)–(iii). Dr. Ferrell was applying expertise to an assumed fact, not asserting that the assumed fact had occurred or making factual findings of his own. Plaintiffs miss this basic point, judging by their lengthy footnote seeking to litigate the facts on which Dr. Ferrell relied. *See* Mot. at 14 n.4.

Furthermore, Plaintiffs cross-examined Dr. Ferrell about this factual understanding during his deposition. Dr. Ferrell testified that his understanding that ██████████ ███████████████████████████████████████████████████ ██████████████████████ *See* Ferrell Dep. Tr. at 154:9–157:25. Dr. Ferrell additionally added that ██████████████████████████████ ██████████████████████ *See id.* at 154:18–19.[15] Plaintiffs asked him ████████ ██████████████████████ *See id.* at 155:4–16. ████████ ██████████████████████████████████████████████████████ ██████████████████████████ As Dr. Ferrell confirms in an attached declaration, all he could have said in response was what he testified already—that ████████████████ *See* Ex. 1, Ferrell Decl. ¶ 2. Dr. Ferrell provided exactly the disclosure required under Rule 26, identifying any facts, data, or assumptions provided by

---

[15]    *See also Feinberg v. Katz*, 2007 WL 4562930, at *4 (S.D.N.Y. Dec. 21, 2007) ("Counsel routinely ask their expert witness to 'assume' various facts as the basis for his opinion; and trial judges routinely instruct juries to disregard the expert's opinion if the jury finds that those assumptions were not established by or are contrary to the evidence.").

-19-

counsel, and once they have been identified, all other communications are protected under the Rule. *See* Fed. R. Civ. P. 26(b)(4)(C). This provides no reason to exclude his testimony.

Plaintiffs' cases are readily distinguishable. In *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006), the court excluded the opinion of an expert who "essentially provided no explanation as to how he had reached his conclusion" and "seem[ed] to have backed away from th[e] conclusion in his deposition." And the expert reports at issue in *Jinghong Song v. Yao Brothers Group LP*, 2012 WL 1557372, at *1–*2 (S.D.N.Y. May 2, 2012), and *Oleg Cassini, Inc. v. Electrolux Home Products, Inc.*, 2014 WL 1468118, at *8 (S.D.N.Y. Apr. 15, 2014), contained no references at all to specific sources or materials relied upon. Dr. Ferrell is nothing like those experts, given that his report is replete with specific support for his conclusions.

Finally, Plaintiffs' lengthy complaint about Defendants' amended interrogatory responses has nothing to do with Dr. Ferrell. *See* Mot. at 14–15 (arguing that Defendants' amendment of interrogatory responses before Dr. Ferrell's deposition rendered "critical" Dr. Ferrell's ███████ ███████████████████████████████████ Defendants amended their interrogatory responses to correct a factual error, and there is nothing "improper" about doing so. *See* Fed. R. Civ. P. 26(e)(1)(A) (imposing ongoing duty to timely correct a discovery response that is "incomplete or incorrect"). And there was nothing for Plaintiffs to ask Dr. Ferrell about with respect to Defendants' amendment anyway—he is not a fact witness, and the change in the interrogatories did not affect the factual assumption he made, which is explained in his report. *See* Ferrell Report ¶ 76.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be denied.

Dated: December 19, 2025
       New York, New York

Respectfully submitted,

*/s/ Roger A. Cooper*
Roger A. Cooper
racooper@cgsh.com
Andrew Weaver
aweaver@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
T: 212-225-2283

Angela L. Dunning
adunning@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Rd
Palo Alto, CA 94304
T: 650-815-4131

Thomas A. Bednar
tbednar@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, D.C. 20037
T: 202-974-1836

*Counsel for Defendant Dentsply Sirona Inc.*

*/s/ Meredith D. Karp*
Bryce L. Friedman
Craig S. Waldman
Meredith D. Karp
Isabel R. Mattson
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
bfriedman@stblaw.com
cwaldman@stblaw.com
meredith.karp@stblaw.com

-21-

isabel.mattson@stblaw.com

*Counsel for Defendant Donald M. Casey, Jr.*


*/s/ Seth L. Levine*
Seth L. Levine
Chad P. Albert
Adam M. King
slevine@levinelee.com
calbert@levinelee.com
aking@levinelee.com
LEVINE LEE LLP
400 Madison Avenue
New York, NY 10017
T: 212-223-4400

*Counsel for Defendant Jorge M. Gomez*

-22-

-23-

**Certificate of Compliance**

I hereby certify that the foregoing memorandum of law complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York because, excluding the parts of the document exempted by Rule 7.1(c), it contains 6,745 words as calculated by Microsoft Word.

*/s/ Roger A. Cooper*
Roger A. Cooper