# EXHIBIT 2

## [Redacted]

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - -x

SAN ANTONIO FIRE AND POLICE

PENSION FUND, CITY OF BIRMINGHAM

RETIREMENT AND RELIEF SYSTEM,

EL PASO FIREMEN & POLICEMEN'S

PENSION FUND, and WAYNE COUNTY

EMPLOYEES' RETIREMENT SYSTEM,

Individually and on Behalf of All

Others Similarly situated,

                    Plaintiffs,

              vs.

DENTSPLY SIRONA INC., DONALD

M. CASEY, JR., and JORGE GOMEZ,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - -x

          Remote deposition of WAYNE COUNTY EMPLOYEES'
RETIREMENT SYSTEM, by Gerard J. Grysko, taken pursuant to
Notice, was held via videoconference, commencing December
4, 2024, at 11:18 a.m., on the above date, before Amanda
McCredo, a Court Reporter and Notary Public in the State
of New York.

Page 2

A P P E A R A N C E S: (via videoconference)

Appearing on behalf of the plaintiffs:

LUKE O. BROOKS, ESQ.
HILLARY B. STAKEM, ESQ.
JESSICA E. ROBERTSON, ESQ.
Robbins Geller Rudman & Dowd LLP
655 West Broadway
Suite 1900
San Diego, California 92101
lukeb@rgrdlaw.com
hstakem@rgrdlaw.com
jrobertson@rgrdlaw.com
619.231.1058

and

THOMAS C. MICHAUD, ESQ.
ROBERT J. ABB, ESQ.
VanOverbeke, Michaud & Timmony, P.C.
79 Alfred Street
Detroit, Michigan 48201
tmichaud@vmtlaw.com
rabb@vmtlaw.com
313.578.1200

Appearing on behalf of the defendants:

ANDREW WEAVER, ESQ.
AMIRA PERRYMAN, ESQ.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
aweaver@cgsh.com
aperryman@cgsh.com
212.225.2000

and

CHAD P. ALBERT, ESQ.
Levine Lee LLP
400 Madison Avenue, 8th Floor
New York, New York 10017
calbert@levinlee.com
212.257.5926

Page 3

A P P E A R A N C E S: (continued)

Appearing on behalf of DONALD M. CASEY, JR.:

TALIAH I. RODRIGUEZ, ESQ.
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York 10017
taliah.rodriguez@stblaw.com
212.455.2997

ALSO PRESENT:

Joshua Bostic - Veritext concierge

Page 4

I N D E X

WITNESS          EXAMINATION BY          PAGE
Gerard J. Grysko    Mr. Weaver               5

EXHIBITS

EXHIBIT                         PAGE
Exhibit 1    Amended 30(b)(6) Notice          11
Exhibit 2    WCERS0000396                23
Exhibit 3    WCERS0000397 through 690          25
Exhibit 4    Lead Plaintiffs' Amended Initial   38
             Disclosures Pursuant to Fed. R.
             Civ. P. 26(a)(1)
Exhibit 5    WCERS0000381 through 395          41
Exhibit 6    WCERS0000357 through 365          48
Exhibit 7    WCERS0000366 through 380          51
Exhibit 8    Certification Pursuant to Federal 57
             Securities Laws

Exhibit 9    WCERS0000032 through 059          60

Exhibit 10   Letter dated November 27, 2024,    72
             from Robbins Geller Rudman & Dowd
             LLP

Exhibit 11   Declaration of Gerard Grysko in    78
             Support of Plaintiffs' Motion for
             Class Certification

Page 5

G. Grysko

GERARD GRYSKO, the witness herein, after having been first duly sworn by a Notary Public of the State of New York, was examined and testified as follows:

EXAMINATION BY

MR. WEAVER:

Q   Good morning, Mr. Grysko.

A   Good morning.

Q   My name is Andrew Weaver. I am a lawyer at Cleary Gottlieb, and we are counsel to defendant Dentsply Sirona in this action.

I just want to formally apologize for our delayed start this morning and thank you for your patience and I appreciate you working with us to make sure the technology today is working.

Will you please state and spell your full name for the record, please.

A   Gerard, G-E-R-A-R-D; Joseph, J-O-S-E-P-H; Grysko, G-R-Y-S-K-O.

Q   And what is your business address?

A   28 West Adams, Detroit, Michigan, Grand Park Centre Building, 20th floor.

Q   Today we're conducting this deposition remotely over Zoom. I just want to confirm you can

2 (Pages 2 - 5)

Page 6

G. Grysko

see and hear me clearly.

A    Yes.

Q    If you have any technical issues today or if there's any other problem with the setup, please just let me know, and we'll take a pause and we'll get that addressed.

Okay?

A    Okay.

Q    And where are you physically located today?

A    I'm in my office on the 20th floor.

Q    Can you confirm that you are alone in your room and there is no one else in the room off camera?

A    I can confirm that.

Q    And during the deposition today, while we are on the record, I would just ask you not to communicate with others via chat, phone, email, et cetera.

Your counsel are here in the deposition with us and obviously we'll be taking breaks throughout today.

A    Okay.  My phone is in back of me.

Q    Fair enough.

Mr. Grysko, have you ever been deposed

Page 7

G. Grysko

before?

A    Yes, I have.

Q    Okay.

Approximately how many times?

A    For security litigation cases or in total?

Q    Well, let's start with just the total number, a ballpark, of how many times you've been deposed?

A    Maybe 10.

Q    Ten, okay.

And how many of those have been in the context of securities litigations?

A    About five, I believe.  Four or five.

Q    Four or five.

And in those four or five, was that in the context of Wayne County as a lead plaintiff in the securities litigation?

A    Yes.

Q    And in those depositions, in those four or five, were you testifying as a 30(b)(6) corporate representative or in your individual capacity?

A    30(b)(6) --

Q    So you've done --

A    -- I believe.

Page 8

G. Grysko

Q    So you believe you've been a 30(b)(6) witness before?

A    Yes.

Q    Okay.

Do you remember which cases you testified as a 30(b)(6) witness?

A    I believe the most recent case was the Unity case, and I'm not sure about the other cases right now.

Q    Okay.

And how long ago was the Unity case?

A    I think that was last year.

Q    And the other cases, do you know approximately when those depositions occurred?

A    Maybe within the last -- I'm not sure.  I started in 2011, so it had to be between 2011 and now.

Q    But, sitting here today, you cannot remember which specific cases those were?

A    No.

Q    Is there any reason today that you're not able to provide truthful testimony?

A    No.

Q    Is there any reason today that your memory

Page 9

G. Grysko

could be impacted in such a way that you may not provide accurate testimony?

A    No.

Q    You've been deposed before, but let me just remind you of a few of the ground rules for today's proceeding.

As you know, there is a court reporter here taking down everything we say.  So I will ask you to allow me to finish asking a question, and I will allow you to answer completely so we're not speaking over each other so the court reporter doesn't have a terrible day today.

Okay?

A    Yes.

Q    If I ask a question that you do not understand, please let me know, and I'll try to clarify it.

Is that okay?

A    Yes.

Q    If you answer a question today, I will assume that you understood the question.

Okay?

A    Yes.

Q    We will take breaks today.  But, obviously,

3 (Pages 6 - 9)

Page 10

G. Grysko

if you need a break for any reason during the course of the deposition, just let me know, and I'm happy to take it. All I would ask is if there is a question pending, that you answer the question unless it involves an issue of privilege in which you need to consult with your counsel.

Okay?

A   Okay.

Q   Are you represented by counsel here today?

A   Yes.

Q   And who is that?

A   The Robbins Geller law firm and the VMT law firm.

Q   I just want to make sure we're speaking the same language today to make things a little more efficient.

When I say "Dentsply," I'm referring to Dentsply Sirona Inc.

Is that okay?

A   Yes.

Q   And when I refer to "Wayne County," unless I say otherwise, I'm referring to Wayne County Employees' Retirement System.

Is that okay?

Page 11

G. Grysko

A   Well, we're separate from Wayne County. I guess, as long as you can distinguish that, that we're not Wayne County, we're separate by charter.

Q   Understood.

It's for the convenience of being able to talk today. If there is another name that you prefer, to shorten it, I'm happy to use it. But, for purposes of today, just referring to the Retirement System as "Wayne County" for shorthand.

A   If there are no objections from my attorneys, I don't have a problem with it.

MR. BROOKS:  That's fine.

BY MR. WEAVER:

Q   If I need to ask a question about any other aspect of the county of Wayne County, I'll be sure to clarify it in my question.

A   Okay.

Q   When I refer to "Robbins Geller," I'm referring to Robbins Geller Rudman & Dowd LLP.

A   Yes.

Q   We've already marked the first exhibit as Exhibit 1.

(Amended 30(b)(6) Notice was marked as Exhibit 1 for

Page 12

G. Grysko

identification, as of this date.)

BY MR. WEAVER:

Q   Do you have access to that, Mr. Grysko?

A   Yes.

Q   And, for the record, this is Defendants' Amended Notice of Videotaped Deposition to Lead Plaintiff Wayne County Employees' Retirement System Pursuant to Rule 30(b)(6).

Have you seen this document before?

A   Yes.

Q   Is this the notice pursuant to which you are appearing today?

A   Yes.

Q   Turn to page 7.

A   Okay.

Q   You'll see at the bottom of page 7, there is a list of matters on which examination is requested, and what follows is a list of 19 topics.

Do you see that?

A   Yes.

Q   Are you aware that Wayne County has filed responses and objections to these topics of deposition?

Page 13

G. Grysko

A   Yes.

Q   Have you seen those responses and objections?

A   Yes.

Q   Are you also aware that counsel for Wayne County and counsel for the defendants have had further discussions and negotiations about the topics for today's deposition?

A   Yes.

Q   Are you, as a representative of Wayne County, prepared today to testify as to the topics listed in Exhibit 1 subject to the responses and objections and further negotiations amongst the parties?

A   Yes.

Q   Is there anyone else at Wayne County more knowledgeable about the topics listed in Exhibit 1?

MR. BROOKS:  Objection to form.

A   No.

BY MR. WEAVER:

Q   You might just want to give your counsel a moment to object, if necessary.

A   Understood.

Q   Is there any topic listed in Exhibit 1 that

4 (Pages 10 - 13)

Page 14

G. Grysko

you're not prepared to testify about today?

MR. BROOKS: Objection to form.

A   Any of the attorney-client privilege portions.

BY MR. WEAVER:

Q   Understood. Today I will not be asking for attorney-client information.

But, as to the topics, you are prepared to testify as to these topics?

MR. BROOKS: Same objection.

A   Yeah. I mean, as -- yes.

BY MR. WEAVER:

Q   And you've stated that you have been a 30(b)(6) deponent before.

Do you understand, Mr. Grysko, that today you are testifying as a corporate representative of Wayne County, the retirement system?

A   Yes.

Q   And your testimony today is, in fact, the testimony of the Wayne County Retirement System?

A   Yes.

Q   Mr. Grysko, just some background on you.

How long have you been at Wayne County?

A   I started -- well, I started in the

Page 15

G. Grysko

sheriff's department 6/18/84, so...

Q   When did you begin to work for the Retirement System?

A   In February of 2011.

Q   And what was your role when you joined the Retirement System?

A   Deputy director.

Q   Is that your role today?

A   Yes, it is.

Q   What are your responsibilities as the deputy director?

A   My responsibilities are to the board of retirement commissioners. The staff reports to me.

There's four components of the Retirement System. We have the accounting department, we have the retirement plans department, the payroll department, and the benefits department. You know, I'm responsible for a list of duties that I can keep going until you stop me.

Q   Is one -- I'm sorry. I didn't mean to interrupt.

A   No, go ahead.

Q   Is one of your responsibilities to supervise litigation where Wayne County Retirement

Page 16

G. Grysko

System is a lead plaintiff?

A   Yes.

Q   And what activities -- well, take that back for a second.

Who do you report to?

A   I report to the board of retirement commissioners and I report to the executive director.

Q   And who is the executive director?

A   Robert Grden.

Q   And you say you also report to the commission?

A   Yes.

Q   Is that a direct report?

A   Yes.

Q   And how many commissioners are there?

A   There's eight retirement commissioners.

Q   And how are those commissioners appointed?

A   There are four active retirement commissioners that are elected by the active employees.

There are two retiree retirement commissioners that are elected by the retirees.

There is one retirement commissioner that,

Page 17

G. Grysko

by virtue of being the chairperson of the county commission, the Wayne County commission, they have a seat at the table.

And the county executive, he is a retirement commissioner, and he is the only person that can appoint somebody to come to the meetings in his stead and vote on his behalf. Nobody else could do that.

Q   And does the retirement commission have any supervisory authority above it?

A   No.

Q   As part of your duties in supervising litigation where Wayne County is a named party or lead plaintiff, do you report to the retirement commission on the status and progress of those litigations?

MR. BROOKS: Objection.

THE WITNESS: I'm sorry?

MR. BROOKS: From time to time, Gerard, I'll make objections. Unless I instruct you not to answer, just go ahead and answer. They're just for the record.

THE WITNESS: Yeah, I apologize, I answered too quickly.

5 (Pages 14 - 17)

Page 18

G. Grysko

Can you repeat the question for me, please?

BY MR. WEAVER:

Q   Certainly.

In your role in supervising litigation where Wayne County is a lead plaintiff, do you report information concerning those litigations to the retirement commission?

A   I mean, I've been delegated with the decision-making authority by the board to run the program. But, yeah, I mean, I report and give summaries to the board.

Q   And what form do those summaries take? Are they written? Oral?

A   Sometimes they're written; they're sometimes verbal.

Q   Is there any deck or material provided to the board as a part of those updates?

MR. BROOKS: Objection to form.

A   Is there any -- any what?

BY MR. WEAVER:

Q   Any written materials provided as a part of those updates?

MR. BROOKS: Objection to form.

A   There's only what I provide them in

Page 19

G. Grysko

writing.

BY MR. WEAVER:

Q   And that's what I'm trying to understand. What is it that you provide them in writing?

MR. BROOKS: Same objection.

A   Yeah, basically it just says that this is the -- you know, this is a case. I gave a deposition on it and the case is either active or not active and what the results are or the recovery, if there was a recovery. Pretty much that's about it.

BY MR. WEAVER:

Q   During your updates, is it a situation where the board asks questions about specific litigation?

MR. BROOKS: Objection to form.

A   They could. I don't recall a lot of questions about this topic.

BY MR. WEAVER:

Q   And you noted that the board has delegated you authority for this program. What is the program that you're referring to?

Page 20

G. Grysko

A   The securities litigation.

Q   Is there a formal program for managing securities litigations on behalf of Wayne County?

A   Well, I'm not sure what you mean by -- you know, it's part of our practice to participate in governance. And part of the governance is to participate in these securities litigation programs or securities litigation lawsuits.

Q   And is this delegation formalized in any written form?

A   I believe it is. I believe it's in our policy.

Q   Do you need to seek authority from the commission each time Wayne County seeks to become a lead plaintiff in a securities class action?

A   No.

Q   Does anyone else at Wayne County besides yourself participate in the supervision of securities class actions?

MR. BROOKS: Objection to form.

A   The executive director has the same authority that I do to participate in the program or to testify and supervise counsel.

Page 21

G. Grysko

BY MR. WEAVER:

Q   How do you and the executive director divide up responsibilities for this program?

MR. BROOKS: Same objection.

A   Pretty much I do it. He's on the calls and he keeps up to date with everything that's going on, just like I do. In case for some reason I wouldn't be able to testify, he would be able to.

BY MR. WEAVER:

Q   When you say "testify," are you describing situations like today where you're testifying as part of the process to become lead plaintiff?

MR. BROOKS: Objection; lacks foundation.

A   Yes.

BY MR. WEAVER:

Q   After testifying, does the executive director participate in supervising securities litigation going forward in a particular manner?

MR. BROOKS: Objection to form.

A   He knows everything I know.

BY MR. WEAVER:

Q   And how does he know everything you know?

A   Well, I discuss it with him and he participates in the calls sometimes.

6 (Pages 18 - 21)

Page 22

G. Grysko

Q   Okay.

And those are calls with whom?

A   With our attorneys.

Q   Is there a regular cadence to your reports to the executive director on securities class actions?

MR. BROOKS:  Objection to form.

A   He gets all the communications I get.

BY MR. WEAVER:

Q   And when you say "all the communications," what are you referring to?

MR. BROOKS:  Objection to form.

Just, Mr. Grysko, obviously you can talk about types of communications, but do not reveal the contents of communications relating to litigation with your lawyers.

BY MR. WEAVER:

Q   What types of communications are you referring to?

A   The communications that the attorneys send us.

Q   Okay.

Do those come directly to you, or to you and the executive director?

Page 23

G. Grysko

A   Both.

MR. WEAVER:  Can we mark tab 2 as Exhibit 2.

(WCERS0000396 was marked as Exhibit 2 for identification, as of this date.)

BY MR. WEAVER:

Q   Mr. Grysko, you have Exhibit 2, which is an org chart for the Wayne County Employees' Retirement System.

Do you see that?

A   Yes.

A   Yes.

Q   And then there are the four subdivisions that you mentioned earlier.

Page 24

Q   So does this org chart accurately represent your understanding of the structure of the retirement system?

A   Yes.

So are your reports the same, the executive director and the deputy director, the same reports?

A   I'm not sure what you're asking me.

Q   And this is -- this org chart, as far as you understand, is current; is that fair?

A   Yes.

Q   At a high level, how would you describe the purpose of the Wayne County Employees' Retirement System?

A   We invest the assets of the retirement system, the retirement commission.  And through the

Page 25

G. Grysko

assets, we pay pensions to retirees and their beneficiaries.

Q   And you said the retirement commission invests the assets.

Do they have ultimate investment authority for the Retirement System?

MR. BROOKS:  Objection to form.

A   They vote on the investments, investment manager choices.

BY MR. WEAVER:

Q   I just want to be cheer.

Do they vote on the investments or the investment manager?

A   The investment manager choices.

Q   Does the retirement commission have any role in investment decisions that are made related to the purchase or sale of securities?

A   No.

MR. BROOKS:  Objection.

BY MR. WEAVER:

Q   I get nervous every time we go to a document, but tab 4, which is the policy manual.

(WCERS0000397 through 690 was marked as Exhibit 3 for

7 (Pages 22 - 25)

Page 26

G. Grysko
identification, as of this
date.)

BY MR. WEAVER:

Q   Mr. Grysko, we've just marked as Exhibit 3 the Wayne County Employees' Retirement System policy manual, Bates number WCERS0000397 through 690.

Do you have that document on the screen?

A   Yes, I do.

Q   Are you familiar with this document?

A   Yes.

Q   What is it?

A   It's the Wayne County Employees' Retirement System Policy Manual.  It looks like the codified version.

Q   If you could turn or scroll to page 232, Bates number ending in 631.

A   What was the Bates number?

Q   It ends in 631.  It's page 232 of the document.

Page 27

A   Yes.

Q   Is that your understanding of the purpose of the policy statement?

A   Yes.

Q   Does the Wayne County Employees' Retirement System have an investment strategy?

MR. BROOKS:  Objection to form.

A   Yes.

BY MR. WEAVER:

Q   What is the investment strategy for the Retirement System?

A   To maximize its earnings, to pay pensions,

Page 28

G. Grysko
act as a fiduciary.

Q   And I don't want to be -- get caught up in semantics.

Those sound like goals and investment objectives.

Does Wayne County Employees' Retirement System have a strategy for their investments to achieve those objectives?

MR. BROOKS:  Objection to form.

A   Well, they have to comply with Michigan Public Act 314.  So, you know, we can only do what the law allows us to do.  And we invest partially -- well, we invest in accordance with what the consultant recommends.

BY MR. WEAVER:

Q   And what is the consultant?

A   Well, there's -- inside the policy, there is an asset allocation, which says what baskets we're going to put the money into.

Q   And you mentioned an investment consultant.

Who is the investment consultant?

Page 29

G. Grysko

Q   What is the investment advisor's role?

A   He does due diligence and helps to pick the investment managers, recommends them.

Q   Anything else?

A   Well, he comes to the board meetings, he gives reports, he enforces the guidelines in the investment policy statement when it comes to the money managers.

Q   Anything else?

A   Let me see.  Due diligence reporting.  There may be something I'm missing.  I don't know.  There is a section in the investment policy statement for him, too.

Q   We'll probably come to that.

Does the commission make investment decisions as to the purchase and sale of securities?

MR. BROOKS:  Objection to form.

A   No.

BY MR. WEAVER:

Q   Does the investment consultant make decisions as to the purchase and sales of securities on behalf of the Wayne County Retirement System?

A   No.  He chooses -- he assists in the choosing of the money managers that we invest with.

8 (Pages 26 - 29)

Page 30

G. Grysko

Q   If you turn to page 235 ending in Bates number 634, it should be the next page.

A   Okay.



Q   Does that mean that ultimate authority to invest and reinvest the assets rests with the commission?

MR. BROOKS:  Objection to form.

A   The retirement commissioners do not pick the stocks.  They pick the managers and the managers pick the stocks.

BY MR. WEAVER:

Q   I understand that's how it's done.  I just want to be clear.

Page 31

G. Grysko

As I understand it, the authority itself rests with the commission.  You're saying they delegate that authority.

Is that fair?

MR. BROOKS:  Object to form.

A   No.  I don't believe they delegate their fiduciary responsibilities.  I think that -- I think that we have a process and we follow that process.

BY MR. WEAVER:

Q   Describe that process.

A   Well, the process is the investment consultant works with the retirement commission and they identify the areas where we need to invest.  There might be a time when -- like, if interest rates are high or low, they might decide it's a good time to get in or out of bonds.  So they figure that out.

And if an asset class grows and it's outside of our allocation, then we may have money available to invest in an area that we're short in.  And they'll search for a manager to invest that excess money and rebalance our portfolio to target.

Page 32



How does the executive director satisfy the role as primary contact between the commission and the investment managers?

A   Well, he communicates with the investment managers.

Q   Is he the primary individual who communicates with the investment managers?

MR. BROOKS:  Objection to form.

A   Well, we both communicate with the managers when they need things.

BY MR. WEAVER:

Q   Does anyone else, as part of their day-to-day activity, communicate with the investment managers within Wayne County?

A   Most work through the consultant.  The consultant communicates with the investment managers and they'll communicate back with him and then he'll

Page 33

G. Grysko

tell us what's going on.

Q   And who primarily communicates with the investment manager -- or investment consultant, sorry?

A   Well, he communicates with the board and the executive director and me.

Q   Anyone else?

A   Our finance accounting staff.  We have a lot of interaction with the consultant, also.

Q   Are you copied on those communications?

A   Yes.

Does that mean that the executive director has no authority to purchase or sell securities on behalf of the commission?

A   Could you repeat that question for me, please?

9 (Pages 30 - 33)

Veritext Legal Solutions

212-267-6868          www.veritext.com          516-608-2400

Page 34

securities?

A    Yes, I think -- I think that would be accurate. He can't buy or sell things on his own. The commission would have to vote on terminating a manager.

Q    And is that how investment decisions really get done at the commission level, is through the hiring and termination of investment managers?

A    Could you repeat that question?

Q    Is that how the commission manages the investment of the Retirement System's assets? Is it through the hiring and firing of investment managers?

MR. BROOKS:  Objection to form.

A    Well, they also monitor the performance of the managers. So the investment consultant comes in monthly and gives reports on our portfolio and they follow along and pay attention.

BY MR. WEAVER:

Is this the section of the policy you were referring to earlier?

Page 35

G. Grysko

MR. BROOKS:  Object to form.

A    Yeah, these are guidelines for the investment consultant, what the board expects of the investment consultant.

BY MR. WEAVER:

Q    If you turn to page 239, Bates number 638.

A    Okay.

Page 36

G. Grysko

Do you know if the investment consultant reviews 10-Ks of equity securities within the existing portfolio?

A    I believe that's part of the responsibilities. I'm not 100 percent on that one.

Q    Putting aside the policy language itself, is it Wayne County's understanding that the investment consultant reviews the 10-Ks of equity securities within the current portfolio?

MR. BROOKS:  Objection; outside the scope.

You can answer.

A    Yeah, I'm not really 100 percent on that one. It says he reviews 10-Ks, but I don't know.

Sorry, go ahead.

BY MR. WEAVER:

Page 37

Q    And that discretion includes decisions to buy, hold, or sell securities?

A    Yes.

Q    Is that your understanding of the discretion given to investment managers?

A    Yes.

Q    Does the Retirement System's -- strike that.

Are you aware of situations where the investment managers for the Retirement System have ever sought approval from the commission for specific purchases or sales of securities?

MR. BROOKS:  Objection; outside the scope.

10 (Pages 34 - 37)

Page 38

G. Grysko

A    Could you rephrase that question for me?

BY MR. WEAVER:

Q    Are you aware of any situation or circumstance when an investment manager for the Retirement System has sought approval from the commission for the purchase or sale of a specific security?

MR. BROOKS:  Objection; outside the scope.

A    No.

MR. WEAVER:  We've been going about an hour.  Not smoothly, but an hour.

Do you want to take a five-minute break?

THE WITNESS:  Sure, we can take a break.

(Recess taken.)

BY MR. WEAVER:

Q    Mr. Grysko, we're going to look at Exhibit 4.

(Lead Plaintiffs' Amended Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) was marked as Exhibit 4 for identification, as of this date.)

A    Okay.

Page 39

G. Grysko

BY MR. WEAVER:

Q    This is the Lead Plaintiffs' Amended Initial Disclosures Pursuant to Federal Rule Civil Procedure 26(a)(1).

Is that the document you have?

A    Yes.

Q    Have you seen this document before?

A    Yes.

Q    I'd like you to turn to page 5.

You'll see in the middle, under number 3, there is a list of investment managers for Wayne County Employees' Retirement System.

Do you see that?

A    Yes.

Q    And, for the record, it lists Mariner Institutional, Cooke & Bieler, EARNEST Partners, and Reinhart Partners.

Are these the investment managers for the Wayne County Employees' Retirement System that sold or purchased Dentsply securities on behalf of the retirement system?

A    Yeah.  Actually, Mariner, a/k/a AndCo, they were actually the consultant back at that time.

Q    I see.

Page 40

G. Grysko

That's an investment consultant there.

Q    So Mariner was the investment consultant during the relevant time period; is that right?

A    We called them AndCo.  I think they changed their name after they left.  I just wanted to clarify that.

Q    I appreciate that.

Why did you change investment consultants?

MR. BROOKS:  Objection; outside the scope.

THE WITNESS:  Are you done?

MR. BROOKS:  Yes, you can answer.

A    We have a periodic review of managers, of vendors, service providers, I guess you would call it, service providers, and they were our service provider and they had been there for quite a while.  And it was time for a review, and the board decided to see what else was out there.  So they engaged in an RFP process and selected a new consultant.

BY MR. WEAVER:

Q    The other three entities listed are the investment managers?

MR. BROOKS:  Objection.

Page 41

G. Grysko

A    Correct.

BY MR. WEAVER:

Q    Were there any other investment managers during the class period that purchased or sold Dentsply securities on behalf of the Retirement System?

A    No.

Q    I'd like to look at Exhibit 5.

(WCERS0000381 through 395 was marked as Exhibit 5 for identification, as of this date.)

BY MR. WEAVER:

Q    Are you there?

A    Yes.

Q    Exhibit 5, do you have it open?

A    Yes.

Q    This is, for the record, an investment management agreement by and between Wayne County Employees' Retirement System and Cooke & Bieler, LP, Bates number WCERS0000381 through 395.

Are you familiar with this document?

A    Yes.

Q    What is it?

11 (Pages 38 - 41)

G. Grysko

A    It's the investment manager agreement between Wayne County Retirement System and Cooke & Bieler.

Q    Who's responsible for negotiating these types of agreements?

MR. BROOKS:  Objection to form.

A    I'm not really sure what you mean by "negotiating."

BY MR. WEAVER:

Q    Let me rephrase.

Who is responsible for coming to an agreement with an investment manager that's as reflected in the agreement before us?

MR. BROOKS:  Objection to form.  Outside the scope.

A    Well, like I said before, we follow a process and, you know, the process is that we pick the investment space.  Then we pick the -- then the consultant vets the investment managers, due diligence and such, and the board votes on it.

And then -- but what has to happen is they're subject to a legal review and written recommendation from the investment consultant.  So they have a 314 Michigan Public Act compliance

G. Grysko

letter, and then they have to have the recommendation from the investment consultant, and then they have to vote on approval and execution of that document.

So, sometimes I read these over, prepare them for the board's signature after our attorney looks at it.

There may be some discussion on fees.  And sometimes the executive director and the investment consultant will, you know, say, "Hey, look, you have a really good product here, but we would rather have a lower fee."  So if that's what you're concerned with in an investment consultant, that's how I would describe the process.

But that's the best answer I can give.

BY MR. WEAVER:

A    That's the space that this manager has the authorization to invest in.

Q    Is anything done to ensure that the manager invests consistent with the specific portfolio?

MR. BROOKS:  Objection to form.

A    Yes.  The monitoring by the investment consultant will tell us if there is a style drift or not.

BY MR. WEAVER:

Does this mean that the manager can buy or sell securities without further approval of the commission?

G. Grysko

MR. BROOKS:  Object to form.

A    Yes.

BY MR. WEAVER:

A    Yes.

Q    Does Cooke & Bieler provide such quarterly reports to the Retirement System?

A    Yes.

Q    Who receives those reports?

A    Well, the investment consultant receives the reports and he usually breaks them down and reports that to the retirement board of commissioners.  The executive director, I think he receives the reports, also.

Q    And you said that the consultant breaks them down and makes a report to the commission; is that right?

A    Yeah.  He does a monthly and quarterly reporting.

Q    Is that in writing?

12 (Pages 42 - 45)

Page 46

G. Grysko

A   Yes.

Q   Do you review the quarterly reports?

A   Yes.

MR. BROOKS:  Object to form.

BY MR. WEAVER:

Q   And for what purpose do you review the quarterly reports?

A   It's part of my job.  I attend the meetings, I review the reports, I see the presentations.

Q   When you review the reports, what are you looking for?

MR. BROOKS:  Objection to form.

Andrew, I don't want to interject, but I do think -- I'm confused as to whether you're talking about the consultant's reports or the Cooke & Bieler reports.

MR. WEAVER:  Fair point.

BY MR. WEAVER:

Q   Do you review the Cooke & Bieler quarterly reports?

A   I'm referring to the consultant's reports that he gives to the board.  He goes over the reports at the meetings.

Page 47

G. Grysko

Q   So you do not review the quarterly reports from the investment managers?

A   I could.  Sometimes I do; sometimes I don't.  It depends.

Q   What does it depend on?

A   It depends if I've had time to look at it.

Q   So there are occasions when you do review the quarterly reports from the investment managers?

A   Sometimes.

Q   But not every quarter?

A   No.  I rely mostly on the consultant.

Q   When you have time to review the quarterly reports from the investment managers, what are you looking for?

A   I just look for performance.  I just take a look at them.  I like the way the consultant breaks them down.

Q   How does the consultant break them down?

A   Well, he breaks them down to overall portfolio performance and whether they've beaten the benchmark.

Q   Does the breakdown reports from the consultant include specific securities in the report?

Page 48

G. Grysko

MR. BROOKS:  Object to form.

A   No.  He goes by asset class, manager, and then total performance and whether they've beaten the benchmark.

And then he would go into whether or not somebody is grossly underperforming, and he holds them in compliance with the investment policy statement.

BY MR. WEAVER:

Q   I'd like to go to the next document, which is Exhibit 6.

(WCERS0000357 through 365 was marked as Exhibit 6 for identification, as of this date.)

BY MR. WEAVER:

Q   Let me know when you're there.

A   I'm there.

Q   Exhibit 6, for the record, is Investment Management Agreement with EARNEST Partners, LLC, Bates number WCERS0000357 through 365.

Are you familiar with this document?

A   Yes, I've seen it before.

Q   What is it?

Page 49

G. Grysko

A   It's the investment management agreement with EARNEST Partners, LLC.

Q   And if you turn to page 3, Bates number 359.

A   Okay.

A   Yes.

Q   Does that mean that EARNEST can purchase and sell securities without further approval from the commission?

A   Yes.

Q   If you turn back to page 2, Bates number 358.

13 (Pages 46 - 49)

Page 50

A    Yes.

Q    Does EARNEST provide quarterly reports to the Retirement System?

A    Yes.

Q    Who receives those reports?

A    The same people that receive -- as I previously testified.

Do you know why?

MR. BROOKS:  Objection to form.

A    What do you mean "particular fund"?

BY MR. WEAVER:

MR. BROOKS:  Same objection.

A    Well, I'm trying to see when this thing was

time ago.  I really don't know why.

Page 51

G. Grysko

BY MR. WEAVER:

Q    Okay.

Just so the record is clear, I think you were looking at the fax time and date at the top. The date of the actual agreement itself is December 11, 2003.  I just wanted to be clear for the record.

A    Yeah, you're probably right.  I was looking for the date on the last page and I didn't see --

Q    It's on the front page.

A    There we go.  Yeah, documents are a little different now.

I see it.  There it is.

Q    Can we go to Exhibit 7.

(WCERS0000366 through 380 was marked as Exhibit 7 for identification, as of this date.)

BY MR. WEAVER:

Q    Let me know when you're there, Mr. Grysko.

A    Okay.

Q    For the record, it's an email with attachment emails dated January 27, 2011, Bates number WCERS0000366 through 380.

Page 52

G. Grysko

I'm mainly focused on the attachment, Mr. Grysko, but do you recognize this document?

A    Yes, I've seen it before.

Q    And what is it?

A    Yeah, this is a little blurry of a document, but I can see it.

Q    If you need me to read it, I can.

I was going to ask if this discretionary

Page 53

G. Grysko

authority provision means that Reinhart Partners can purchase and sell securities on behalf of the Retirement System without seeking specific authority from the commission?

A    Yes.

Does Reinhart Partners provide reports to the Retirement System?

MR. BROOKS:  Objection to form.

A    I am not 100 percent on that one.  I can't remember right now.

I know that they have to provide the material to the investment consultant so he can do his reports.  I just don't have a recollection of that right now.

BY MR. WEAVER:

Q    But your understanding is that Reinhart Partners provides information to the investment consultant?

A    Yes, he does -- yes, they do, I mean.

Q    How does the Retirement System ensure that the investment managers are complying with the

14 (Pages 50 - 53)

Page 54

G. Grysko

appropriate guidelines provided by the commission?

MR. BROOKS: Objection to form.

A   Yeah, I believe that I already answered that question.

And the responsibility of monitoring the style, performance, and if they're playing in the correct space is the investment consultant, and he would report it to the board.

BY MR. WEAVER:

Q   We've discussed and referenced certain quarterly reports from the investment managers, some of which are required under the investment manager agreement.

Where does the Retirement System keep and maintain those reports?

A   I believe we follow our record retention policy.

Q   What is your record retention policy?

A   Eight years, or seven years plus the fiscal year, which amounts to eight years.

Q   And what does that cover?

A   What do you mean "what does it cover"?

Q   What type of documents? Does that apply to email correspondence?

Page 55

G. Grysko

A   Yes, it does.

Q   Does it apply to hard copy documents?

A   Well, let me take that -- I'm not sure about -- I'm not sure about the emails, no. I would have to look at our policy to see about the emails.

Because now that I'm thinking about it, I don't think we keep emails for eight years. I think just the documents provided to the Retirement System.

Q   And what do you mean by "documents provided to the Retirement System"?

A   Reports and documents provided to the Retirement System.

Q   Anything else?

A   I'm not sure what else there is.

Q   What is your understanding as to the email retention policy for the Retirement System?

A   I can't remember how far back that goes.

Q   Who would know?

A   It's in our investment -- you know what? I think the county -- county of Wayne, controls the emails. I'm not really sure.

Q   Who would know?

A   I believe -- let me see. I'm thinking

Page 56

G. Grysko

about that.

I would have to look at my record retention policy to see if it's there. If not, then the County will control it, probably. I'm just not sure right now.

Q   So, sitting here today, you do not know how long the Retirement System preserves email communications?

MR. BROOKS: Object to form.

A   Yeah, I'm just not -- I'm just not -- I can't remember.

MR. BROOKS: Do you want to show him the policy, Andrew?

MR. WEAVER: We can come back to that.

BY MR. WEAVER:

Q   Do you know if there's auto-delete for emails at the commission?

MR. BROOKS: Objection to form.

A   No, I don't think so.

BY MR. WEAVER:

Q   We talked about reports and documents that are maintained for eight years.

How are they maintained? How are things stored?

Page 57

G. Grysko

For example, let's use a practical example. The quarterly reports from investment managers, how are they maintained?

A   Electronically.

Q   Are they organized in any particular way?

A   I would have to ask my IT guy.

Q   If you wanted to go and pull a historic report from an investment manager, what would you do?

MR. BROOKS: Object to form.

A   I would have to go to the document management system and search for it.

BY MR. WEAVER:

Q   But you would be able to do it by searching?

A   Yeah.

Q   We're going to mark another document. This will be tab 12.

(Certification Pursuant to Federal Securities Laws was marked as Exhibit 8 for identification, as of this date.)

15 (Pages 54 - 57)

Page 58

G. Grysko

BY MR. WEAVER:

Q   Exhibit 8, do you have it?

A   Yes.

Q   For the record, this is the Certification Pursuant to Federal Securities Law, document 72, filed August 1, 2023, pages 138 to 143.

Are you familiar with this document?

A   Yes.

Q   And if we go to page 2, is that your signature?

A   Yes.

Q   And there is an attachment, a Schedule A, which is page 140.

Do you see that?

A   Yes.

Q   What is this schedule?

A   That's the schedule of the purchases, it looks like, of Dentsply.

Q   And this is on behalf of Wayne County Retirement System?

A   Yes.

Q   Does this also reflect the sale of Dentsply securities?

A   It looks like the only date acquired -- oh,

Page 59

G. Grysko

date disposed?  Yeah, I guess that does, then. Right.

Q   Is this the complete list of Dentsply securities purchased and sold on behalf of the Retirement System during the class period?

A   Class period is June 9 of '21 through November 13 of '22, so there's some outside the class period there.

Q   What is the source for the information reflected in the Schedule A?

A   Most likely it was pulled from Northern Trust.

Q   Do you know?

A   I believe that's where it was from, compiled from Northern Trust.

Q   And each of these purchases and sales were done by one of the investment managers, correct?

A   Yes.

Q   Were any of the purchase or sales listed here in Schedule A discussed with Wayne County Retirement System?

MR. BROOKS:  Objection to form.

A   No.

Page 60

G. Grysko

BY MR. WEAVER:

Q   Did Wayne County Retirement System play any role in the decision to purchase or sell the securities listed in Schedule A?

MR. BROOKS:  Objection to form.

A   No.

BY MR. WEAVER:

Q   We'll come back to this exhibit.

MR. WEAVER:  Let's post tab 8.

(WCERS0000032 through 059 was marked as Exhibit 9 for identification, as of this date.)

BY MR. WEAVER:

Q   This will be Exhibit 9.  Let me know when you have it.

A   Okay.

Q   This is a document from Cooke & Bieler dated October 15, 2021, Bates number WCERS0000032 through 59.

Do you recognize this document?

A   I've seen this document before.

Q   What is it?



Page 61

A   I can barely read it.  It's pretty small.

I can tell you, without reading it, that I

Veritext Legal Solutions

212-267-6868          www.veritext.com          516-608-2400

Page 62

G. Grysko

would not have a recollection of reading that last page of this report.

MR. BROOKS: For the future, there is a zoom function.

THE WITNESS: Oh, I see.

A   I have not read that before.

BY MR. WEAVER:

Q   Prior to this lawsuit, do you recall any discussion of Dentsply Sirona within --

A   No.

Q   -- that --

A   I'm sorry. I thought you were done.

MR. BROOKS: And I'll interpose an objection that it's outside the scope.

BY MR. WEAVER:

Q   Does Wayne County Employees' Retirement System have any understanding as to the reasoning behind an investment manager's decision to buy or sell Dentsply Sirona securities?

MR. BROOKS: Objection to form. And objection to the extent that it's outside the scope.

A   No.

Page 63

G. Grysko

BY MR. WEAVER:

Q   Do you know whether the investment consultant would have information about the reasoning behind an investment manager's purchase or sale of Dentsply Sirona securities?

MR. BROOKS: Same objections.

A   I'm not really sure what you're asking.

BY MR. WEAVER:

Q   Do you know whether the investment consultant knows why an investment manager purchases or sold Dentsply securities on a particular day?

MR. BROOKS: Same objections.

A   Well, I think you're asking me to -- you're asking me to get into somebody else's head and why they did something and I would have to say no. I mean, I'm sure they know what they're doing, but I don't know.

BY MR. WEAVER:

Q   And the "they" in your answer is the investment manager, correct?

A   Correct.

Q   Does Wayne County know what information the investment managers relied upon before making a decision to purchase or sell Dentsply securities?

Page 64

G. Grysko

MR. BROOKS: Same objections.

A   No.

MR. WEAVER: I think this is a good moment to take a brief break.

(Recess taken.)

BY MR. WEAVER:

Q   Mr. Grysko, who made the decision for Wayne County Employees' Retirement System to seek to be a lead plaintiff in this case?

A   Who made the decision?

Q   That Wayne County would seek to be a lead plaintiff in this case.

A   The executive director and myself did.

Q   And how did that come about?

A   Like I previously testified to, we're a system that believes in good governance. So we have instructed Robbins Geller to let us know if they see anything, any kind of funny business going on.

And they notified us about this case, Dentsply, and they let us -- and we looked at it and realized we had a significant loss. And so, we decided to move forward.

Q   When you said you asked Robbins Geller to let you know if they see any funny business, is

Page 65

G. Grysko

there a formal arrangement with Robbins Geller?

MR. BROOKS: Object to form.

A   Yes. We have a portfolio monitoring agreement with them.

BY MR. WEAVER:

Q   When did you enter into the portfolio monitoring agreement with Robbins Geller?

MR. BROOKS: I'll object as outside the scope.

You can answer.

A   I don't remember.

BY MR. WEAVER:

Q   Does it predate your time --

MR. BROOKS: Same objection.

BY MR. WEAVER:

Q   -- at Wayne County?

A   You know, I really -- I really can't remember. I don't know if they did cases before I got here or not. I believe they did, though, but I don't know.

Q   And you said that you and the executive director looked at it.

What did you look at?

A   We looked at the losses.

17 (Pages 62 - 65)

Page 66

G. Grysko

MR. BROOKS: I just want to interject here that, Mr. Grysko, you can answer in general terms, but I just caution you not to reveal any attorney-client communications, information you learned from the lawyers, et cetera.

BY MR. WEAVER:

Q   Did Wayne County look at any information about the losses that were not provided by counsel?

A   No.

Q   Did Wayne County do any investigation of the allegations asserted in the complaint independent of counsel?

A   No.

Q   Did any other law firms reach out to you to raise the possibility of potentially serving as a lead plaintiff in an action against Dentsply Sirona?

MR. BROOKS: Objection; outside the scope.

A   I don't remember.

BY MR. WEAVER:

Q   Did you discuss the possibility of bringing a lawsuit against Dentsply Sirona with the Retirement System's investment consultant?

A   No.

I'm sorry, he was going to object and I

Page 67

G. Grysko

said no.

MR. BROOKS: Please wait.

THE WITNESS: I will.

BY MR. WEAVER:

Q   Did Wayne County Employees' Retirement System discuss the possibility of bringing a lawsuit against Dentsply Sirona with any investment manager?

A   No.

Q   If you can go back to Exhibit 8. This is the Certification Pursuant to Federal Securities Laws.

A   Okay.

Q   Do you see, paragraph 5, there's a list of four cases where Wayne County was appointed to serve as a representative party in a class action?

Do you see that?

A   Yes.

Q   There are four cases listed there, correct?

A   Yes.

Q   Were you responsible for supervising each of those litigations on behalf of Wayne County Retirement System?

A   I think I can say that -- I don't even know if they're still -- Bioventus, yes.

Page 68

G. Grysko

FirstCash, I'm not sure. I would say yes. I'm just not sure what stage some of these are at right now.

Q   I'm not asking.

I just want to know if you're the one responsible at Wayne County for supervising these litigations.

A   Yes.

Q   Were you deposed in each of these litigations?

A   Bioventus.

Q   Any others?

A   I don't believe so. I know that Bioventus was within the last year, I think.

Q   And you see in subsection (b) there is a case listed at the time Wayne County was seeking to serve as a representative party, the Signature Bank matter?

Do you see that?

A   Yes.

Q   Did you also supervise that litigation on behalf of Wayne County?

A   Yes.

Q   Section (c) lists where Wayne County

Page 69

G. Grysko

initially sought to serve as a representative party, and there are four matters listed.

Do you see that?

A   Yes.

Q   Did you supervise each of those litigations on behalf of Wayne County?

MR. BROOKS: Object to form. Lacks foundation.

A   I'm the person that handles these matters, so, yes. I mean, some of these cases, you know, are dismissed.

BY MR. WEAVER:

Q   In section (c), where Wayne County Retirement System initially sought to serve as a representative party, do you know in any of those four instances whether a court denied a motion to serve -- for Wayne County to serve as a representative party?

MR. BROOKS: Objection as to scope and vague and ambiguous.

A   I can't remember. I mean...

Q   In any of the actions listed in subparts (a), (b), (c), did Wayne County Employees' Retirement System ever oppose the appointments of

18 (Pages 66 - 69)

Page 70

G. Grysko

Robbins Geller as class counsel in any of those actions?

MR. BROOKS: Objection to form. Objection that it calls for a legal conclusion. And objection that it's outside the scope.

A   I'm not sure I understand the question.

BY MR. WEAVER:

Q   Did Wayne County -- in any of those actions that's listed in paragraph 5 -- subsection (a), (b), or (c) -- did Wayne County Employees' Retirement System ever file a motion that opposed the appointment of Robbins Geller as class counsel in a particular action?

MR. BROOKS: Same objections.

A   I don't remember that.

BY MR. WEAVER:

Q   Is that you don't remember one way or the other, or you don't remember it happening?

MR. BROOKS: Same objections.

A   I don't remember it happening.

BY MR. WEAVER:

Q   In any of the matters listed in paragraph 5 -- section (a), (b), or (c) -- did Wayne County Employees' Retirement System ever oppose the

Page 71

G. Grysko

appointment of the City of Birmingham Retirement and Relief System as a lead plaintiff or class representative?

A   I don't remember that, either.

MR. BROOKS: And I interpose the same objections.

BY MR. WEAVER:

Q   In any of the actions listed in paragraph 5(a), (b), and (c), did Wayne County Employees' Retirement System ever oppose the appointment of El Paso Firemen and Policemen Pension Fund as lead plaintiff or class representative?

MR. BROOKS: Same objections.

A   Same answer.

BY MR. WEAVER:

Q   Is that you don't know one way or the other?

A   Yeah, I can't remember.

Q   If you can look -- I'm going to ask you to look back and forth. Let's quickly just look at where you're at right now on Exhibit 8.

Number 5, paragraph 5(a) that we were just looking at, the first case is Monroe County Employees Retirement System.

Page 72

G. Grysko

Do you see that?

A   Yes.

Q   Then if you can look at Exhibit 10. If you can go back in and find that exhibit.

A   Okay.

(Letter dated November 27, 2024, from Robbins Geller Rudman & Dowd LLP, was marked as Exhibit 10 for identification, as of this date.)

BY MR. WEAVER:

Q   And this is a letter dated November 27, 2024, from your counsel, Robbins Geller.

Turning to the third page, do you see the third bullet point listing matters where Wayne County has been appointed a class rep since November 15, 2021? Do you see that?

A   I'm sorry, can you repeat what you said?

Q   Do you see on page 3, the third bullet point, there is a list that says "From November 15, 2021, until the present, Wayne County has been appointed as a class representative or lead plaintiff in the following securities actions"?

Do you see that?

Page 73

G. Grysko

A   Okay, okay, I was looking at the wrong paragraph. Yes, go ahead.

Q   Does that list look complete to you?

MR. BROOKS: Objection; outside the scope. It lacks foundation and mischaracterizes the document.

A   Does this look like -- I'm sorry, repeat that question for me.

BY MR. WEAVER:

Q   It's indicated by your counsel that this list is the matters since November 15, 2021, when Wayne County has been appointed as the class rep or lead plaintiff.

I'm asking can you think of any others from that time period, or do you think this list is complete?

MR. BROOKS: Objection to the mischaracterization of the document.

Answer, if you can.

A   I think there was -- I think there may have been another case. I'm not 100 percent on that.

BY MR. WEAVER:

Q   Any idea what that case was?

MR. BROOKS: Same objections.

19 (Pages 70 - 73)

Page 74

G. Grysko

A   This is three years ago.  I can't be sure.

BY MR. WEAVER:

Q   Is Wayne County Employees' Retirement System familiar with the allegations in the complaint in this action?

A   Yes.

Q   What is Wayne County Employees' Retirement System's understanding, at a general level, of the allegations asserted in the complaint?

A   Well, early in 2021, apparently Dentsply was having some -- I guess I would put it as quality control issues with their products, and they were experiencing warranty issues and a number of -- I believe there were some returns.

That was complicated with some supply chain issues.  And the CEO Casey and the CFO Gomez decided, starting in June of 2021, to do channel stuffing and putting a lot of pressure on their distributors.

Dentsply is one of the largest or the largest manufacturer of dental products and imaging machines and the end users are the dentists' offices.  And the machines that they sell, the imaging machines, they sell to distributors and

Page 75

G. Grysko

those, in turn, go to the dentists in the end.

Generally, the dentists would -- the suppliers would only buy the machines that they need.

And the CEO Casey and the CFO Gomez were putting pressures on their employees.  They were violating the ethics of their company and having them do this pressure to purchase these machines that were not needed at the time.

And then they were not following the generally accepted practices for accounting for all of these special rebates and special deals that they were offering these distributors that they were pressuring into taking their products and they wanted to inflate the number of sales so they could get their bonuses.

So the third and fourth quarter statements were inflated, and they later had to admit that they did this.  And it resulted in the termination of Casey, and Gomez had left.  And I think the SEC opened up an investigation, which is still ongoing.

And I already mentioned that the class period was from June 13 of '21 to November 13 of '22.

Page 76

G. Grysko

So the 1934 10-B, I believe, and 20-A for the fraudulent statements, they were reporting that they weren't affected by the supply chain issues.  They had to admit that they were channel stuffing and it caused a drop in the stock market.

Q   Based on any information that Wayne County Employees' Retirement System reviewed independent of what was provided by counsel?

A   No.

Q   What is Wayne County Employees' Retirement System's understanding of the class that it's seeking to represent?

A   We're seeking to represent the persons or systems that purchased the stock during the class period.

Q   Does Wayne County Employees' Retirement System know whether investors in Dentsply's preferred stock would have different interests in this lawsuit than investors in common stock?

MR. BROOKS:  Objection; outside the scope of the deposition.

A   Please ask me that question again.

BY MR. WEAVER:

Q   Does Wayne County understand or know if

Page 77

G. Grysko

investors in Dentsply's preferred stock would have a different interest than investors in Dentsply's common stock within this lawsuit?

MR. BROOKS:  Objection; outside the scope of the deposition.

A   I don't know.

BY MR. WEAVER:

Q   Has Wayne County Employees' Retirement System communicated with any other members of the alleged class with regard to the class action?

MR. BROOKS:  Object to form.

A   I'm not sure.  Can you be more specific?

BY MR. WEAVER:

Q   I'm just curious if the Retirement System has communicated with other potential class members regarding this lawsuit.

MR. BROOKS:  Objection; outside the scope and object to form.

A   Well, the joint declaration would be the only thing I can think of leading up to that.  Is that what you're asking me?

BY MR. WEAVER:

Q   I'm just asking the question.  If you don't understand it, I can try to form it better.

20 (Pages 74 - 77)

Page 78

G. Grysko

A    Well, that's my answer.  The joint declaration and what transpired to get that declaration.

Q    Can we look at Exhibit 11.

(Declaration of Gerard Grysko in Support of Plaintiffs' Motion for Class Certification was marked as Exhibit 11 for identification, as of this date.)

BY MR. WEAVER:

Q    Do you have the document in front of you?

A    I have it now.

Q    For the record, it is Exhibit 13.  It's the motion for class certification, specifically the Declaration of Gerard Grysko in Support of Plaintiffs' Motion for Class Certification.

Are you familiar with this document?

A    Yes, I am.

Q    Turn to page 3 of the declaration.  Is that your signature at the end?

A    Yes, it is.

Q    Turning back to page 1, paragraph 4 notes that WCERS purchased tens of thousands of shares of

Page 79

G. Grysko

Dentsply Sirona common stock during the period January 9, 2021, through November 13, 2022, the class period, and suffered a substantial loss as a result of the alleged violations of the Federal Securities Law in this action.

What is the basis for your statement that the retirement commissions suffered a substantial loss as a result of the alleged violations of the Federal Securities Law in this action?

MR. BROOKS:  Object to form.

A    The document that was provided.

BY MR. WEAVER:

Q    Provided by whom?

A    Well, I think that's -- is that attorney-client privilege?

MR. BROOKS:  You can answer to the extent that you have information that was provided outside of attorney-client communications.

If you need to ask a question about that, we can go off the record and discuss it.

THE WITNESS:  Yeah, I'd like to see what I can say.

MR. WEAVER:  That's fine.

Off the record.

Page 80

G. Grysko

(Recess taken.)

BY MR. WEAVER:

Q    So the question is pending.  Do you need it read back to you, Mr. Grysko?

A    Yes, go ahead.

(Record read.)

A    Okay.

So, as I previously stated in the deposition, we initially reviewed the case with Robbins Geller and they provided information that the loss was substantial.  And that would be based on the trades that was provided already in the documents.

BY MR. WEAVER:

Q    So the basis for the substantial loss in your statement is information from counsel; is that what I understand?

MR. BROOKS:  Objection to form.

A    Yes.

BY MR. WEAVER:

Q    And that relates to the purchase and sale information that we've already looked at today?

A    Yes.

Q    Staying on that document, if we go to

Page 81

G. Grysko

paragraph 6, it says that "As lead plaintiff, WCERS, has reviewed and monitored the progress of this litigation, the active participation of lead counsel, Robbins Geller Rudman & Dowd LLP, and will continue to do so if appointed a class representative."

How -- what has Wayne County Employees' Retirement System done to review and monitor the progress of this litigation?

A    We reviewed documents, phone calls, participated in discussions.

Q    Discussions with whom?

A    Discussions with our legal counsel.

Q    Anything else?

A    Well, we're going to act as a fiduciary to the case, we're going to aggressively pursue the matter, we've hired competent legal counsel, and we're not going to seek anything other than what the other class members get.

Q    Is there anything else that Wayne County Employees' Retirement System has done to review or monitor the progress of the case?

MR. BROOKS:  Objection to form.

A    Well, we also participated in discovery,

21 (Pages 78 - 81)

Page 82

G. Grysko

continue to monitor the case.

BY MR. WEAVER:

Q   When you said "participated in discovery," what do you mean?

A   I participated in the gathering of documents, electronic.

Q   What did you do to gather electronic documents?

A   Mr. Abb came to my office, and I put him in touch with the IT department and showed him where to -- assisted him in downloading the documents.

Q   Who is Mr. Abb?

A   Mr. Abb is legal counsel from VanOverbeke, Michaud & Timmony.

Q   So legal counsel came to your office to collect documents?

A   Yes.

Q   Did you participate in the actual collection of the documents?

MR. BROOKS:  Objection to form.

A   Yes.  He asked me questions.  I answered them.  Anything he needed, I provided for him.

BY MR. WEAVER:

Q   Did you do anything independent of working

Page 83

G. Grysko

with counsel to collect documents in this case?

MR. BROOKS:  Objection to form.

A   Not that I recall, no.

BY MR. WEAVER:

Q   If you turn to page 2 of your declaration, the document we're in, in paragraph 7, it says, at the end of paragraph 7, that Wayne County Employees' Retirement System was "searching for and producing documents to defendants."

Did Wayne County Employees' Retirement System search for documents themselves to produce to defendants?

MR. BROOKS:  Objection to form.

A   Well, yeah, I think that's what I described.

BY MR. WEAVER:

Q   I'm just trying to understand was it counsel that was searching or was it Wayne County Employees' Retirement System that was searching?

MR. BROOKS:  Same objection.

A   Mr. Abb is more technically savvy than I am, so he came and assisted me in the search, as you can probably see in the way I'm operating this Zoom call.

Page 84

G. Grysko

BY MR. WEAVER:

Q   Above, from that same paragraph, paragraph 7, it says that "Wayne County Employees' Retirement System has also received and reviewed key documents in this case," and it lists a number of documents.

Do you see that?

A   Sure.

Q   Subsection (f) says "the Court's Order denying defendants' motion to dismiss."

Do you see that?

A   Yes.

Q   Did you review the Court's Order denying defendants' motion to dismiss?

A   Yes, I believe Judge -- I think a different judge handled that one.  Yeah, I did review it, yes.

Q   Did the judge grant, in part, defendants' motion to dismiss?

MR. BROOKS:  Objection; outside the scope.

A   Yes, I believe he did.  I believe it was a small part.

BY MR. WEAVER:

Q   Mr. Grysko, what did you do to prepare for today's deposition?

Page 85

G. Grysko

A   I reviewed documents, I participated in a meeting with legal counsel, and I participated in the review of the whole case, which helped prepare for this deposition.

Q   How often did you meet with counsel to prepare for this deposition?

A   Specifically for the deposition?  One time.

Q   When was that?

A   Yesterday.

Q   And how long?

A   Maybe three hours.  Two, three hours.

Q   Who was there?

A   Luke, Hailey, Nicole, Mario, Tom, and Robert.

Q   Are all of those outside counsel?

A   Some are Robbins Geller and some are VMT.

Q   Was anyone else present for the meeting yesterday?

A   I don't think I'm missing anybody.

Q   Was anyone other than outside counsel present during the meeting yesterday?

A   I don't think so.  I mean, I think I got everybody.  I can only see so many people on these screens.

22 (Pages 82 - 85)

Page 86

G. Grysko

Q   I understand entirely.
    Did you speak to anyone at the Wayne County Employees' Retirement System in preparation for today's deposition?

A   No.

Q   You said you reviewed documents.
    Did that review of documents take place with counsel?

A   Yes.

Q   Did you review any documents outside the presence of counsel?

A   You know, I had to read most of the documents when I did my declaration and stuff like that.  Is that what you're --

Q   I'm asking in preparation for today's deposition.

A   In preparation for today...

Q   Did you read documents?

A   No.

Q   Do you know whether, in reviewing documents with counsel, you reviewed any document that was either not produced in this litigation or not a publicly filed document on the docket?

A   I don't know.  I mean, most of the stuff

Page 87

G. Grysko

that I can think of is everything that's been filed.  I don't think I -- you know, the complaint, the motions, the declarations, the exhibits.

MR. WEAVER:  Let me just take a moment, Mr. Grysko, to look over my notes.

(Recess taken.)

MR. WEAVER:  Mr. Grysko, we're done for the day.  I appreciate your time.

(Time adjourned: 2:06 p.m. ET)

Page 88

CERTIFICATE

I, AMANDA McCREDO, a Shorthand Reporter and Notary Public of the State of New York, do hereby certify:
That the witness whose examination is hereinbefore set forth was duly sworn, and that such examination is a true record of the testimony given by such witness.
I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

_Amanda McCredo_

AMANDA McCREDO

Page 89

ERRATA SHEET FOR THE TRANSCRIPT OF:

Case Name:       San Antonio Fire and Police
                 Pension Fund et al. v. Dentsply
                 Sirona Inc. et al.
Dep. Date:       December 4, 2024
Deponent:        Gerard J. Grysko

CORRECTIONS:

Pg.  Ln.  Now Reads      Should Read      Reason
___  ___  _____    _____     _____
___  ___  _____    _____     _____
___  ___  _____    _____     _____
___  ___  _____    _____     _____
___  ___  _____    _____     _____
___  ___  _____    _____     _____
___  ___  _____    _____     _____
___  ___  _____    _____     _____
___  ___  _____    _____     _____
___  ___  _____    _____     _____

                 _____
                 Signature of Deponent
SUBSCRIBED AND SWORN BEFORE ME
THIS___DAY OF_____, 20__
_____
(Notary Public) MY COMMISSION EXPIRES:_____

23 (Pages 86 - 89)

Page 90

ACKNOWLEDGMENT OF DEPONENT

I, _____, do hereby certify that I have read the foregoing pages, and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.

_____
GERARD J. GRYSKO

Subscribed and sworn to
before me on this_____ day
of _____, _____.

_____
Notary Public

24 (Page 90)

**[& - 51]**

| & | | | |
|---|---|---|---|
| **&** 1:6 2:5,12,18 3:4 4:19 11:20 39:17 41:21 42:3 45:11 46:18,21 60:19 61:12,23 72:8 81:5 82:15 | **13** 59:8 75:24 75:24 78:15 79:3 | **212.257.5926** 2:25 | **313.578.1200** 2:14 |

**0**

**059** 4:17 60:11

**1**

**1** 4:8,12 11:23 11:25 13:13,18 13:25 27:2,5 38:21 39:5 43:18 58:7 78:24

**1/23/2006** 50:22

**10** 4:18 7:10 35:17,23 36:3 36:7,11,16 72:4,10 76:2

**100** 36:6,15 53:13 73:22

**10006** 2:19

**10017** 2:24 3:5

**11** 4:8,20 51:7 78:5,9

**11:18** 1:20

**12** 57:19

**13** 59:8 75:24 75:24 78:15 79:3

**138** 58:7

**140** 58:14

**143** 58:7

**15** 60:20 72:18 72:21 73:12

**19** 12:20

**1900** 2:6

**1934** 76:2

**2**

**2** 4:9 23:3,4,6,9 30:5 44:16 49:18 58:10 83:6

**20** 76:2 89:23

**2003** 51:7

**2010** 52:14

**2011** 8:17,17 15:5 51:24

**2021** 60:20 72:18,22 73:12 74:11,18 79:3

**2022** 79:3

**2023** 40:3 58:7

**2024** 1:20 4:18 72:7,14 89:5

**20th** 5:23 6:11

**21** 59:7 75:24

**212.225.2000** 2:20

**212.257.5926** 2:25

**212.455.2997** 3:6

**22** 59:8 75:25

**23** 4:9 40:3

**232** 26:16,19

**234** 26:25

**235** 30:2

**236** 31:24

**237** 33:13 34:22

**239** 35:7

**240** 36:19

**241** 37:3

**25** 4:10

**26** 4:12 38:21 39:5

**27** 4:18 51:24 72:7,13

**28** 5:22

**28363** 88:17

**2:06** 87:10

**3**

**3** 4:10 25:25 26:5 39:11 44:13,14 49:4 72:20 78:21

**3.1.** 52:21

**30** 4:8 7:21,23 8:2,7 11:24 12:10 14:15

**313.578.1200** 2:14

**314** 28:12 42:25

**358** 49:19

**359** 49:5

**365** 4:14 48:13 48:22

**367** 52:17

**38** 4:11

**380** 4:15 51:16 51:25

**382** 43:18

**395** 4:13 41:10 41:22

**4**

**4** 1:20 4:11 25:23 38:18,22 45:5 78:24 89:5

**400** 2:23

**41** 4:13

**425** 3:5

**48** 4:14

**48201** 2:13

**5**

**5** 4:4,13 39:10 41:9,11,17 50:11,18 67:14 70:10,24 71:10 71:23,23

**51** 4:15

**[57 - allow]**                                                    Page 2

| | | | |
|---|---|---|---|
| **57**  4:16 | 60:10 67:10 | **acquired**  58:25 | **advisor's**  29:2 |
| **59**  60:21 61:15 | 71:22 | **act**  28:2,12 | **advisors**  28:23 |
| **6** | **8th**  2:23 | 42:25 49:11 | 28:25 |
| **6**  4:8,14 7:21 | **9** | 81:16 | **affected**  76:4 |
| 7:23 8:2,7 | **9**  4:17 59:7 | **action**  5:12 | **aggressively** |
| 11:24 12:10 | 60:12,16 79:3 | 20:16 66:17 | 81:17 |
| 14:15 48:12,14 | **92101**  2:7 | 67:16 70:14 | **ago**  8:12 50:24 |
| 48:20 81:2 | **a** | 74:6 77:11 | 74:2 |
| **6/18/84**  15:2 | **a.m.**  1:20 | 79:6,10 88:12 | **agree**  44:19 |
| **60**  4:17 | **a4**  49:20 | **actions**  20:20 | 49:23 |
| **619.231.1058** | **abb**  2:11 82:10 | 22:7 69:23 | **agreement** |
| 2:9 | 82:13,14 83:22 | 70:3,9 71:9 | 41:20 42:2,13 |
| **631**  26:17,19 | **able**  8:23 11:6 | 72:24 | 42:14 48:21 |
| **634**  30:3 | 21:9,9 57:15 | **active**  16:20,21 | 49:2 50:10 |
| **635**  31:24 | **above**  1:20 | 19:10,11 81:4 | 51:6 52:8 53:8 |
| **636**  33:13 | 17:11 84:3 | **activities**  16:4 | 54:14 65:5,8 |
| **638**  35:7 | **accepted**  75:12 | **activity**  32:21 | **agreements** |
| **639**  36:20 | **access**  12:5 | **actual**  51:6 | 42:6 |
| **640**  37:4 | **accordance** | 82:19 | **ahead**  15:23 |
| **655**  2:6 | 28:14 | **actually**  39:23 | 17:22 35:11 |
| **690**  4:10 25:24 | **account**  43:22 | 39:24 | 36:17 73:3 |
| 26:7 | 44:21 49:24 | **adams**  5:22 | 80:6 |
| **7** | **accounting** | **address**  5:21 | **al**  89:3,4 |
| **7**  4:15 12:16,18 | 15:16 24:3 | **addressed**  6:7 | **albert**  2:22 |
| 51:15,17 83:7 | 33:9 45:6 | 61:2 | **alfred**  2:12 |
| 83:8 84:4 | 75:12 | **adjourned** | **allegations** |
| **72**  4:18 58:6 | **accurate**  9:3 | 87:10 | 66:12 74:5,10 |
| **78**  4:20 | 34:5 | **administration** | **alleged**  77:11 |
| **79**  2:12 | **accurately**  24:4 | 23:17 26:23 | 79:5,9 |
| **8** | **achieve**  28:9 | **administrative** | **allocation** |
| **8**  4:16 36:20 | **acknowledg...** | 33:15 | 28:19 31:20 |
| 57:22 58:3 | 90:2 | **admit**  75:19 | 37:6 |
| | | 76:5 | **allow**  9:10,11 |

**allows** 28:13
**alluded** 24:8
**alternative** 35:18,25
**amanda** 1:20 88:4,18
**ambiguous** 69:21
**amended** 4:8 4:11 11:24 12:8 38:19 39:3
**amira** 2:17
**amounts** 54:21
**andco** 39:23 40:7 61:7,8
**andrew** 2:17 5:10 46:15 56:14
**answer** 9:11,21 10:5 17:22,22 36:14 40:14 43:16 63:20 65:11 66:3 71:15 73:20 78:2 79:17
**answered** 17:24 54:4 82:22
**answers** 90:6
**antonio** 1:5 89:3
**anybody** 85:20

**aperryman** 2:20
**apologize** 5:13 17:24
**apparently** 74:11
**appearing** 2:3 2:16 3:3 12:14
**applications** 24:2
**apply** 54:24 55:3
**appoint** 17:7
**appointed** 16:19 67:15 72:17,23 73:13 81:6
**appointment** 70:13 71:2,12
**appointments** 69:25
**appraisals** 45:7
**appreciate** 5:15 40:10 87:9
**appropriate** 35:18,24 54:2
**approval** 37:23 38:6 43:4 44:24 49:15
**approximately** 7:5 8:15
**area** 31:21
**areas** 31:14

**arrangement** 65:2
**aside** 36:9
**asked** 64:24 82:22
**asking** 9:10 14:7 24:13 63:8,14,15 68:5 73:15 77:22,24 86:16
**asks** 19:16
**aspect** 11:16
**asserted** 66:12 74:10
**asset** 28:19 31:19 37:5 48:3
**assets** 24:24 25:2,5 27:13 30:9,13,17 34:13
**assisted** 82:12 83:23
**assists** 29:24
**assume** 9:22
**attached** 90:10
**attachment** 51:24 52:2,17 58:13
**attend** 46:9
**attention** 34:20
**attorney** 14:4,8 43:7 66:5 79:16,19

**attorneys** 11:12 22:4,21
**august** 40:3 58:7
**authority** 17:11 18:10 19:23 20:14,23 25:6 30:12,16 31:2 31:4 33:17,20 44:20,21 52:18 53:2,4
**authorization** 44:5
**authorized** 33:25
**auto** 56:17
**available** 31:21
**avenue** 2:23 3:5
**aware** 12:23 13:6 37:21 38:4
**aweaver** 2:19

**b**

**b** 2:4 4:8 7:21 7:23 8:2,7 11:24 12:10 14:15 37:4 68:16 69:24 70:10,24 71:10 76:2
**back** 6:23 16:4 32:25 39:24 49:18 50:23

**[back - c]**                                                                Page 4

52:13 55:19
56:15 60:9
67:10 71:21
72:5 78:24
80:5
**background**
14:23
**ballpark** 7:8
**bank** 68:18
**barely** 61:24
**bartlett** 3:4
**based** 76:7
80:12
**basically** 19:8
**basis** 79:7
80:16
**baskets** 28:19
**bates** 26:7,17
26:18 30:2
31:24 33:13
35:7 36:19
37:3 41:22
43:18 48:22
49:4,18 51:24
52:17 60:20
61:14
**beaten** 47:21
48:4
**beginning** 30:8
**behalf** 1:8 2:3
2:16 3:3 17:8
20:4 29:23
33:21 39:21
41:6 53:3

58:20 59:5
67:22 68:23
69:7
**believe** 7:14,25
8:2,8 20:12,12
31:7 36:5 54:4
54:17 55:25
59:15 61:6
65:20 68:14
74:15 76:2
84:16,21,21
**believes** 64:17
**benchmark**
47:22 48:5
**beneficiaries**
25:3 32:7
**benefit** 24:3
27:2,10
**benefits** 15:18
24:2
**best** 43:16
**better** 77:25
**bieler** 39:17
41:21 42:4
45:11 46:18,21
60:19 61:12,23
**bioventus**
67:25 68:12,14
**birmingham**
1:5 71:2
**blood** 88:12
**blurry** 52:22
**board** 15:13
16:7 18:10,12

18:18 19:16,22
29:6 33:6 35:4
40:19 42:21
44:18 45:17
46:24 54:9
**board's** 43:7
**bonds** 31:17
**bonuses** 75:17
**bostic** 3:10
**bottom** 12:18
52:17
**box** 24:10
**break** 10:2
38:13,14 47:19
64:5
**breakdown**
47:23
**breaks** 6:21
9:25 45:16,20
47:17,20
**brief** 64:5
**bringing** 66:21
67:7
**broadway** 2:6
**brooks** 2:4
11:13 13:19
14:3,11 17:18
17:20 18:19,24
19:7,18 20:21
21:5,14,20
22:8,13 25:8
25:20 27:20
28:10 29:18
30:19 31:6

32:16 34:16
35:2 36:13
37:25 38:9
40:12,14,25
42:7,15 44:8
45:2 46:5,14
48:2 50:13,19
53:12 54:3
56:10,13,19
57:11 59:23
60:6 62:4,14
62:21 63:7,13
64:2 65:3,9,15
66:2,18 67:3
69:8,20 70:4
70:15,20 71:6
71:14 73:5,18
73:25 76:21
77:5,12,18
79:11,17 80:19
81:24 82:21
83:3,14,21
84:20
**building** 5:23
**bullet** 72:16,20
**business** 5:21
64:19,25
**buy** 34:5 37:14
44:21,23 62:19
75:4

**c**

**c** 2:2,11 3:2
32:4 49:7

**[c - commissioners]**

68:25 69:14,24 70:11,24 71:10 88:2,2

**cadence** 22:5

**calbert** 2:24

**california** 2:7

**call** 40:16 83:25

**called** 40:7 61:17

**calls** 21:6,25 22:3 70:5 81:11

**camera** 6:14

**cap** 43:23 44:2 50:17,23 61:15

**capacity** 7:22

**carries** 44:15

**case** 8:8,9,12 19:9,10 21:8 64:10,13,20 68:17 71:24 73:22,24 80:10 81:17,23 82:2 83:2 84:6 85:4 89:3

**cases** 7:6 8:6,9 8:14,20 65:19 67:15,19 69:11

**casey** 1:12 3:3 74:17 75:6,21

**caught** 28:3

**caused** 76:6

**caution** 66:4

**cc** 61:7

**centre** 5:23

**ceo** 74:17 75:6

**certain** 54:11

**certainly** 18:4

**certification** 4:16,21 57:20 58:5 67:11 78:8,16,18

**certify** 88:6,11 90:4

**cetera** 6:19 45:9 66:6

**cfo** 74:17 75:6

**cgsh.com** 2:19 2:20

**chad** 2:22

**chain** 74:16 76:4

**chairperson** 17:2

**change** 40:11

**changed** 40:7

**changes** 90:8

**channel** 74:18 76:5

**chapter** 27:2

**chart** 23:10,20 23:24 24:4,16 24:18

**charter** 11:4

**chat** 6:18

**cheer** 25:12

**choices** 25:10 25:15

**chooses** 29:24

**choosing** 29:25

**circumstance** 38:5

**city** 1:5 71:2

**civ** 4:12 38:21

**civil** 39:4

**clarence** 52:7 52:11,12

**clarify** 9:18 11:17 40:9

**class** 4:21 20:16,20 22:6 31:19 41:5 48:3 59:6,7,9 67:16 70:2,13 71:3,13 72:17 72:23 73:13 75:23 76:12,15 77:11,11,16 78:8,16,18 79:4 81:6,20

**clause** 43:19

**clear** 30:25 51:4,7

**clearly** 6:2

**cleary** 2:18 5:11

**client** 14:4,8 49:21,22 66:5 79:16,19

**codified** 26:14

**collect** 82:17 83:2

**collection** 82:20

**come** 17:7 22:24 29:15 56:15 60:9 64:15

**comes** 29:6,8 34:18

**coming** 42:12

**commencing** 1:19

**commission** 16:13 17:3,3 17:10,16 18:8 20:15 23:15 24:15,25 25:4 25:16 29:16 30:6,9,18 31:3 31:13 32:6,10 33:14,21 34:6 34:9,12 37:23 38:7 44:25 45:21 49:16 53:5 54:2 56:18 89:25

**commissioner** 16:25 17:6

**commissioners** 15:14 16:8,17 16:18,19,21,24 30:20 45:18

**[commissions - county]** Page 6

| commissions 79:8 | complying 53:25 | 63:11 66:23 | corresponden... 54:25 |
| common 76:20 77:4 79:2 | components 15:15 | consultant's 46:17,23 | counsel 5:11 6:20 10:7,10 |
| communicate 6:18 32:17,21 32:25 | computer 24:2 concerned 43:13 | consultants 40:11 consulting 40:2 61:7,8 | 13:6,7,22 20:24 66:9,13 70:2,13 72:14 |
| communicated 77:10,16 | concerning 18:7 | contact 32:5,10 | 73:11 76:9 80:17 81:5,14 |
| communicates 32:12,15,24 33:3,6 | concierge 3:10 conclusion 70:5 conditions | contents 22:16 context 7:13,17 continue 81:6 82:2 | 81:18 82:14,16 83:2,19 85:3,6 85:16,21 86:9 |
| communicati... 22:9,11,15,16 22:19,21 33:11 56:9 66:5 79:19 | 30:13 conducting 5:24 confirm 5:25 6:12,15 | continued 3:2 control 33:17 33:25 56:5 74:13 | 86:12,22 county 1:7,17 7:17 10:22,23 11:2,4,10,16,16 |
| company 75:8 | confused 46:16 | controls 55:22 | 12:9,23 13:7 |
| competent 81:18 | consistent 44:7 consult 10:7 | convenience 11:6 | 13:12,17 14:18 14:21,24 15:25 |
| compiled 59:16 | consultant | cooke 39:17 | 17:2,3,5,14 |
| complaint 66:12 74:6,10 87:3 | 28:15,17,21,22 29:21 31:13 32:8,23,24 | 41:21 42:3 45:11 46:18,21 60:19 61:12,23 | 18:6 20:4,15 20:18 23:10 24:22 26:6,13 |
| complete 44:20 59:4 73:4,17 | 33:4,10 34:18 34:23 35:4,5 | copied 33:11 copy 55:3 61:4 | 26:21 27:10,18 28:7 29:23 |
| completely 9:11 | 35:13 36:2,11 39:24 40:4,5 | corporate 7:21 14:17 | 32:22 39:13,20 41:20 42:3 |
| compliance 42:25 48:8 | 40:21 42:20,24 43:3,11,14 | correct 37:11 41:2 54:8 | 52:9 55:22,22 56:5 58:20 |
| complicated 74:16 | 44:10 45:15,20 47:12,17,19,24 | 59:18 61:3 63:21,22 67:19 | 59:21 60:3 62:17 63:23 |
| comply 28:11 | 52:13 53:16,22 54:8 61:5 63:4 | 90:5 corrections 89:8 90:8 | 64:9,12 65:17 66:8,11 67:6 67:15,22 68:7 |

68:17,23,25
69:7,14,18,24
70:9,11,25
71:10,24 72:17
72:22 73:13
74:4,8 76:7,11
76:17,25 77:9
81:8,21 83:8
83:11,19 84:4
86:3
**county's** 36:10
**course** 10:2
**court** 1:2,21
9:8,12 69:17
**court's** 84:10
84:14
**cover** 54:22,23
**curious** 77:15
**current** 24:19
36:12 61:21

**d**

**d** 4:2 5:19
**date** 1:20 12:3
21:7 23:7 26:3
38:24 41:13
48:16 51:5,6
51:10,19 57:24
58:25 59:2
60:14 72:11
78:11 89:5
**dated** 4:18
50:21 51:24
60:20 72:7,13

**day** 9:13 32:21
32:21 63:12
87:9 89:23
90:16
**deals** 75:13
**december** 1:19
51:7 89:5
**decide** 31:16
**decided** 40:19
64:23 74:18
**decision** 18:10
60:4 62:19
63:25 64:8,11
**decisions** 25:17
29:17,22 34:8
37:13 49:8,11
**deck** 18:17
**declaration**
4:20 77:20
78:3,4,6,17,21
83:6 86:14
**declarations**
87:4
**defendant** 5:11
**defendants**
1:13 2:16 12:7
13:7 83:10,13
84:11,15,18
**defined** 27:2,10
**delayed** 5:14
**delegate** 31:4,7
44:18
**delegated** 18:9
19:22 33:15,16

**delegation**
20:10
**delete** 56:17
**denied** 69:17
**dental** 74:22
**dentists** 74:23
75:2,3
**dentsply** 1:11
5:12 10:18,19
39:21 41:6
58:19,23 59:4
61:18,23 62:10
62:20 63:6,12
63:25 64:21
66:17,22 67:8
74:11,21 79:2
89:3
**dentsply's**
76:18 77:2,3
**denying** 84:11
84:14
**dep** 89:5
**department**
15:2,16,17,18
15:18 82:11
**depend** 47:6
**depends** 47:5,7
**deponent** 14:15
89:6,21 90:2
**deposed** 6:25
7:9 9:5 68:10
**deposition** 1:17
5:24 6:16,20
10:3 12:8,25

13:9 19:10
76:22 77:6
80:10 84:25
85:5,7,8 86:5
86:17
**depositions**
7:20 8:15
**deputy** 15:8,12
23:18,19 24:9
24:12,15
**describe** 24:21
31:11 36:23
43:15
**described**
83:16
**describing**
21:11
**determine** 37:9
**detroit** 2:13
5:22
**diego** 2:7
**different** 35:12
51:13 76:19
77:3 84:16
**diligence** 29:3
29:11 42:21
**direct** 16:15
24:14
**directly** 22:24
**director** 15:8
15:12 16:9,10
20:22 21:3,18
22:6,25 23:18
23:18,19 24:9

**[director - engaged]** Page 8

24:9,12,12,15
31:25 32:5,9
33:7,16,19,25
43:10 45:18
61:2 64:14
65:23
**disclosures**
4:11 38:20
39:4
**discovery**
81:25 82:4
**discretion** 37:9
37:13,17 49:12
**discretionary**
33:17 44:20
52:18,25
**discuss** 21:24
66:21 67:7
79:21
**discussed** 54:11
59:21
**discussion** 43:9
62:10
**discussions**
13:8 81:12,13
81:14
**dismiss** 84:11
84:15,19
**dismissed**
69:12
**disposed** 59:2
**distinguish**
11:3

**distributors**
74:20,25 75:14
**district** 1:2,3
**divide** 21:4
**docket** 86:24
**document**
12:11 25:23
26:8,10,20
27:11 39:6,8
41:23 43:5
48:11,23 50:21
52:3,23 57:12
57:18 58:6,8
60:19,22,23
73:7,19 78:13
78:19 79:12
80:25 83:7
86:22,24
**documents**
51:12 54:24
55:3,9,11,13
56:22 80:14
81:11 82:7,9
82:12,17,20
83:2,10,12
84:6,7 85:2
86:7,8,11,14,19
86:21
**doing** 63:17
**domestic** 43:23
44:2
**donald** 1:11 3:3
**dowd** 2:5 4:19
11:20 72:9

81:5
**downloading**
82:12
**drift** 44:10
**drop** 76:6
**due** 29:3,11
42:20
**duly** 5:3 88:8
**duties** 15:19
17:13

**e**

**e** 2:2,2,5 3:2,2
4:2 5:19,19
88:2,2
**earlier** 23:23
34:25
**early** 74:11
**earnest** 39:17
48:21 49:3,10
49:14,21,22
50:4
**earnings** 27:25
**effect** 44:22
**efficient** 10:17
**eight** 16:18
54:20,21 55:8
56:23
**either** 19:10
34:2 71:5
86:23
**el** 1:6 71:12
**elected** 16:21
16:24

**electronic** 82:7
82:8
**electronically**
57:5
**else's** 63:15
**email** 6:18
51:23 52:6
54:25 55:17
56:8
**emailed** 61:9
**emails** 51:24
55:5,6,8,23
56:18
**employee** 24:3
**employees** 1:7
1:17 10:24
12:9 16:22
23:10 24:22
26:6,13,22
27:10,18 28:7
39:13,20 41:21
52:9 62:17
64:9 67:6
69:24 70:11,25
71:11,25 74:4
74:8 75:7 76:8
76:11,17 77:9
81:8,22 83:8
83:11,20 84:4
86:4
**ends** 26:19
**enforces** 29:7
**engaged** 40:20

| | | f | |
|---|---|---|---|
| ensure 44:6 53:24 | 24:9,11 31:25 32:5,9 33:7,16 33:19,25 43:10 45:18 61:2 64:14 65:22 | f 84:10 88:2 | finish 9:10 |
| enter 65:7 | | fact 14:20 | fire 1:5 89:3 |
| entirely 86:2 | | fair 6:24 24:19 31:5 46:19 | firemen 1:6 71:12 |
| entities 40:23 | | | firing 34:14 |
| entity 28:24 | exhibit 4:7,8,9 4:10,11,13,14 4:15,16,17,18 4:20 11:22,23 11:25 13:13,18 13:25 23:4,6,9 25:25 26:5 38:18,22 41:9 41:11,17 48:12 48:14,20 50:11 50:18 51:15,17 57:22 58:3 60:9,12,16 67:10 71:22 72:4,5,10 78:5 78:9,15 | familiar 26:10 41:23 48:23 58:8 74:5 78:19 | firm 10:13,14 |
| equity 36:3,11 43:23 44:3 50:17 61:15 | | | firms 66:15 |
| | | far 24:18 55:19 | first 5:3 11:22 44:14 52:6,16 71:24 |
| errata 89:2 90:10 | | fax 51:5 | |
| esq 2:4,4,5,11 2:11,17,17,22 3:4 | | february 15:5 | firstcash 68:2 |
| | | fed 4:11 38:21 | fiscal 54:20 |
| | | federal 4:16 39:4 57:21 58:6 67:11 79:5,10 | five 7:14,14,15 7:16,21 38:13 |
| et 6:18 45:9 66:6 87:10 89:3,4 | | | floor 2:23 5:23 6:11 |
| | | fee 43:13 | focused 52:2 |
| ethics 75:8 | | fees 43:9 | follow 31:9 34:20 42:17 54:17 |
| everybody 85:24 | | fiduciary 28:2 31:8 81:16 | |
| examination 4:3 5:6 12:19 88:7,9 | exhibits 4:6 87:4 | figure 31:17 | following 72:24 75:11 |
| | | file 70:12 | |
| | existing 35:9 36:4 | filed 12:23 58:7 86:24 87:2 | follows 5:5 12:20 |
| examined 5:4 | | | foregoing 90:4 |
| example 50:16 57:2,2 61:11 | expects 35:4 | finance 24:3 33:9 | form 13:19 14:3 18:13,19 18:24 19:18 20:11,21 21:20 22:8,13 25:8 27:20 28:10 29:18 30:19 31:6 32:16 34:16 35:2 |
| | experiencing 74:14 | financials 35:18,24 | |
| except 90:8 | | | |
| exceptions 37:8 | expires 89:25 | find 72:5 | |
| excess 31:23 | extent 62:22 79:17 | fine 11:13 79:24 | |
| execution 43:4 | | | |
| executive 16:8 16:10 17:5 20:22 21:3,17 22:6,25 23:18 | | | |

42:7,15 44:8 45:2 46:5,14 48:2 50:13 53:12 54:3 56:10,19 57:11 59:23 60:6 61:11 62:21 65:3 69:8 70:4 77:12,19,25 79:11 80:19 81:24 82:21 83:3,14 90:9

**formal** 20:3 65:2

**formalized** 20:10

**formally** 5:13

**forth** 71:21 88:8

**forward** 21:19 64:23

**foundation** 21:14 69:9 73:6

**four** 7:14,15,16 7:20 15:15 16:20 23:22 67:15,19 69:3 69:17

**fourth** 75:18

**fraudulent** 76:3

**frequently** 49:25

**front** 51:11 78:13

**full** 5:17 44:19 44:21 49:10

**function** 62:5

**functions** 33:15

**fund** 1:5,7 49:12 50:11,14 50:23 71:13 89:3

**funny** 64:19,25

**furnish** 45:7

**further** 13:8,14 44:24 49:15 88:11

**future** 62:4

**g**

**g** 5:1,19,20 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1

52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1

**gather** 82:8

**gathering** 82:6

**geller** 2:5 4:19 10:13 11:19,20 64:18,24 65:2 65:8 70:2,13 72:8,14 80:11 81:5 85:17

**general** 66:3 74:9

**generally** 75:3 75:12

**gerard** 1:18 4:4 4:20 5:2,19 17:20 78:6,17 89:6 90:13

**give** 13:22 18:11 43:16

**given** 37:17 88:10 90:6

**gives** 29:7 34:19 46:24

**go** 15:23 17:22 25:22 35:11 36:17 48:6,11 51:12,15 57:8 57:12 58:10 67:10 72:5 73:3 75:2 79:21 80:6,25

**goals** 27:9 28:5

**goes** 46:24 48:3 55:19

**going** 15:20 21:7,19 28:20 33:2 38:11,17 52:25 57:18 64:19 66:25 71:20 81:16,17 81:19

**gomez** 1:12 74:17 75:6,21

**good** 5:8,9 31:16 43:12 64:4,17

**gottlieb** 2:18 5:11

**governance** 20:7,7 64:17

**grand** 5:22

**grant** 84:18

**grden** 16:11

**grossly** 48:7

**ground** 9:6

**group** 40:2

**grows** 31:19
**grysko** 1:18 4:4 4:20 5:1,2,8,20 6:1,25 7:1 8:1 9:1 10:1 11:1 12:1,5 13:1 14:1,16,23 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1,14 23:1,9 24:1 25:1 26:1,5 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 38:17 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 51:21 52:1,3 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 64:8 65:1 66:1 66:3 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1,6,17 79:1 80:1,5 81:1 82:1 83:1 84:1 84:24 85:1 86:1 87:1,6,8 89:6 90:13
**guess** 11:3 40:16 59:2 74:12
**guidelines** 27:12 29:7 35:3 36:24 54:2
**guy** 57:7

**h**

**h** 5:19
**hailey** 85:14
**hamilton** 2:18
**handled** 84:17
**handles** 69:10
**happen** 42:22
**happening** 70:19,21
**happy** 10:3 11:8
**hard** 53:7 55:3
**he'll** 32:25
**head** 63:15
**hear** 6:2
**held** 1:19
**helped** 85:4
**helps** 29:3
**hereinbefore** 88:8
**hey** 43:11

**high** 24:21 31:16
**hillary** 2:4
**hired** 52:12 81:18
**hiring** 34:10,14
**historic** 57:8
**hold** 37:14
**holds** 48:7
**hour** 38:12,12
**hours** 85:12,12
**hstakem** 2:8

**i**

**idea** 73:24
**identification** 12:2 23:6 26:2 38:23 41:12 48:15 51:18 57:23 60:13 72:10 78:10
**identify** 31:14
**imaging** 74:22 74:25
**impacted** 9:2
**include** 47:24
**includes** 37:13
**independent** 66:13 76:8 82:25
**indicated** 73:11
**individual** 7:22 32:14 37:10

**individually** 1:8
**inflate** 75:16
**inflated** 75:19
**information** 14:8 18:7 53:21 59:10 63:4,23 66:5,8 76:7 79:18 80:11,17,23
**initial** 4:11 38:20 39:4
**initially** 69:2 69:15 80:10
**initiations** 61:17
**inside** 28:18
**instances** 69:17
**institutional** 39:17
**instruct** 17:21
**instructed** 64:18
**intended** 27:11
**interaction** 33:10
**interest** 31:15 77:3
**interested** 88:13
**interests** 76:19
**interject** 46:15 66:2

**interpose** 62:14 71:6
**interrupt** 15:22
**introduction** 27:5
**invest** 24:24 28:13,14 29:25 30:12,17 31:14 31:21,22 44:5
**investigation** 66:11 75:22
**investment** 25:6,9,14,15,17 26:22 27:3,9 27:19,23 28:5 28:21,22 29:2 29:4,8,13,16,21 31:12 32:7,8 32:11,12,15,21 32:24 33:4,4 34:8,10,13,14 34:18,23 35:4 35:5,13 36:2 36:11,20,24 37:17,22 38:5 39:12,19 40:4 40:5,11,24 41:4,19 42:2 42:13,19,20,24 43:3,10,14,22 44:9,22 45:15 47:3,9,14 48:8 48:20 49:2,7 49:11 52:8,12

53:16,21,25 54:8,12,13 55:21 57:3,9 59:18 61:5 62:19 63:3,5 63:10,11,21,24 66:23 67:8
**investments** 25:9,13 28:8 33:18 34:2 35:18,25 49:24
**investors** 76:18 76:20 77:2,3
**invests** 25:5 44:7
**involves** 10:6
**issue** 10:6
**issues** 6:4 74:13 74:14,17 76:4
**iv** 26:22

**j**

**j** 1:18 2:11 4:4 5:19 89:6 90:13
**january** 51:24 79:3
**jessica** 2:5
**job** 46:9
**joined** 15:6
**joint** 77:20 78:2
**jorge** 1:12

**joseph** 5:19
**joshua** 3:10
**jr** 1:12 3:3
**jrobertson** 2:8
**judge** 84:16,17 84:18
**june** 59:7 74:18 75:24

**k**

**k** 5:20 35:20 39:23
**k's** 35:17,23
**keep** 15:19 54:15 55:8
**keeps** 21:7
**kevin** 28:23 40:2
**key** 84:5
**kind** 64:19
**know** 6:6 8:14 9:8,17 10:3 15:18 19:9 20:6 21:21,23 21:23 28:12 29:12 36:2,16 42:18 43:11 48:18 50:12,24 51:21 53:15 55:20,21,24 56:7,17 59:14 60:16 61:4 63:3,10,17,18 63:23 64:18,25

65:18,19,21 67:24 68:6,14 69:11,16 71:17 76:18,25 77:7 86:13,21,25 87:3
**knowledgeable** 13:18
**knows** 21:21 63:11
**ks** 36:3,7,11,16

**l**

**lacks** 21:14 69:8 73:6
**language** 10:16 35:19 36:9
**large** 43:23 44:2 50:17 61:15
**largest** 74:21 74:22
**law** 10:13,13 28:13 58:6 66:15 79:6,10
**laws** 4:16 57:21 67:12
**lawsuit** 61:21 62:9 66:22 67:7 76:20 77:4,17
**lawsuits** 20:9
**lawyer** 5:10

**lawyers** 22:17 66:6
**lead** 4:11 7:17 12:8 16:2 17:15 18:6 20:16 21:13 38:19 39:3 64:10,12 66:17 71:3,13 72:23 73:14 81:2,4
**leading** 77:21
**learned** 66:6
**lee** 2:23
**left** 40:8 75:21
**legal** 42:23 70:5 81:14,18 82:14,16 85:3
**letter** 4:18 43:2 72:7,13
**level** 24:21 34:9 74:9
**levine** 2:23
**levinlee.com** 2:24
**lewis** 52:7,11 52:12
**lexington** 3:5
**liberty** 2:18
**likely** 59:12
**limitations** 30:14
**limited** 35:17 35:23 36:7

**line** 24:10 61:7
**list** 12:19,20 15:19 39:12 59:4 67:14 72:21 73:4,12 73:16
**listed** 13:13,18 13:25 34:23 40:23 59:20 60:5 67:19 68:17 69:3,23 70:10,23 71:9
**listing** 72:16
**lists** 35:12 39:16 68:25 84:6
**litigation** 7:6 7:18 15:25 17:14 18:5 19:17 20:2,8,9 21:19 22:17 68:22 81:4,10 86:23
**litigations** 7:13 17:17 18:7 20:4 67:22 68:8,11 69:6
**little** 10:16 51:12 52:22
**llc** 48:21 49:3
**llp** 2:5,18,23 3:4 4:19 11:20 72:9 81:5

**ln** 89:9
**located** 6:10
**long** 8:12 11:3 14:24 50:23 56:8 85:11
**look** 38:17 41:9 43:11 47:7,16 47:17 55:6 56:3 65:24 66:8 71:20,21 71:21 72:4 73:4,8 78:5 87:6
**looked** 50:10 64:21 65:23,25 80:23
**looking** 33:13 43:18 44:13 45:5 46:13 47:15 51:5,9 52:16 71:24 73:2
**looks** 26:14 43:8 58:19,25 61:9
**loss** 64:22 79:4 79:9 80:12,16
**losses** 65:25 66:9
**lot** 19:19 33:10 74:19
**low** 31:16
**lower** 43:13

**lp** 41:21
**luke** 2:4 85:14
**lukeb** 2:7

**m**

**m** 1:12 3:3
**machines** 74:23 74:24,25 75:4 75:9
**made** 25:17 64:8,11
**madison** 2:23
**maintain** 54:16
**maintained** 56:23,24 57:4
**make** 5:16 10:15,16 17:21 29:16,21 49:11
**makes** 45:21
**making** 18:10 63:24
**management** 41:20 48:21 49:2 52:8 57:13
**manager** 25:10 25:14,15 31:22 33:4 34:7 38:5 42:2,13 43:22 44:4,6,19,19,23 45:7 48:3 54:13 57:9 63:11,21 67:8

**manager's** 62:19 63:5
**managers** 29:4 29:9,25 30:21 30:21 32:7,11 32:13,15,17,22 32:24 34:10,15 34:18 36:21,24 37:9,17,22 39:12,19 40:15 40:24 41:4 42:20 47:3,9 47:14 53:25 54:12 57:3 59:18 63:24
**manages** 34:12
**managing** 20:3 27:12
**manner** 21:19
**manual** 25:23 26:7,14
**manufacturer** 74:22
**mariner** 39:16 39:23 40:5
**mario** 85:14
**mark** 23:3 57:18
**marked** 11:22 11:25 23:5 25:25 26:5 38:22 41:11 48:14 51:17 57:22 60:12

72:9 78:9
**market** 76:6
**marriage** 88:13
**material** 18:17 53:16
**materials** 18:22
**matter** 68:19 81:18 88:14
**matters** 12:19 69:3,10 70:23 72:16 73:12
**maximize** 27:25
**mccredo** 1:21 88:4,18
**mean** 14:12 15:21 18:9,11 20:5 30:16 33:19,24 42:8 44:23 49:14 50:14 53:23 54:23 55:11 63:17 69:11,22 82:5 85:23 86:25
**means** 53:2
**meet** 85:6
**meeting** 85:3 85:18,22
**meetings** 17:7 29:6 46:10,25
**members** 32:6 77:10,16 81:20

**memory** 8:25
**mentioned** 23:23 28:21 75:23
**michaud** 2:11 2:12 82:15
**michigan** 2:13 5:22 28:11 42:25
**mid** 50:23
**middle** 35:16 35:21 37:4 39:11 49:20
**minute** 38:13
**mischaracteri...** 73:19
**mischaracteri...** 73:6
**missing** 29:12 85:20
**moment** 13:23 64:4 87:5
**money** 28:20 29:9,25 31:20 31:23
**monitor** 34:17 35:13 81:9,23 82:2
**monitored** 81:3
**monitoring** 44:9 54:6 65:4 65:8
**monroe** 71:24

**monthly** 34:19 45:23
**morning** 5:8,9 5:14
**motion** 4:21 69:17 70:12 78:7,16,18 84:11,15,19
**motions** 87:4
**move** 64:23
**moving** 34:22
**mutually** 49:22

**n**

**n** 2:2 3:2 4:2
**name** 5:10,18 11:7 28:24 40:8 89:3
**named** 17:14
**necessary** 13:23
**need** 10:2,7 11:15 20:14 31:14 32:18 52:24 75:5 79:20 80:4
**needed** 75:10 82:23
**negotiating** 42:5,9
**negotiations** 13:8,14
**nervous** 25:22

| | | | |
|---|---|---|---|
| **new** 1:3,22 2:19 2:19,24,24 3:5 3:5 5:4 40:21 88:5 | 52:17 60:20 61:15 71:23 74:14 75:16 84:6 | 73:18 76:21 77:5,18 80:19 81:24 82:21 83:3,14,21 84:20 | 67:13 72:6 73:2,2 80:8 |
| **nicole** 85:14 | **o** | | **ongoing** 75:22 |
| **northern** 59:12 59:16 | **o** 2:4 5:19,20 | **objections** 11:11 12:24 | **open** 41:17 |
| **notary** 1:21 5:3 88:5 89:25 90:19 | **object** 13:23 31:6 35:2 45:2 46:5 48:2 56:10 57:11 65:3,9 66:25 69:8 77:12,19 79:11 | 13:4,14 17:21 63:7,13 64:2 70:15,20 71:7 71:14 73:25 | **opened** 75:22 **operating** 83:24 |
| **note** 33:24 | | **objectives** 27:9 28:6,9 | **oppose** 69:25 70:25 71:11 |
| **noted** 19:22 90:9 | | **obviously** 6:21 9:25 22:14 | **opposed** 70:12 |
| **notes** 30:8 32:4 33:14 35:16 37:8 44:18 45:6 78:24 87:6 | **objection** 13:19 14:3,11 17:18 18:19,24 19:7 19:18 20:21 21:5,14,20 22:8,13 25:8 25:20 27:20 28:10 29:18 30:19 32:16 34:16 36:13 37:25 38:9 40:12,25 42:7 42:15 44:8 46:14 50:13,19 53:12 54:3 56:19 59:23 60:6 62:15,21 62:22 65:15 66:18 69:20 70:4,4,6 73:5 | **occasions** 47:8 | **oral** 18:14 |
| **notice** 1:19 4:8 11:24 12:8,13 | | **occurred** 8:15 | **order** 84:10,14 |
| **noticed** 24:8 | | **october** 52:14 60:20 | **org** 23:10,20,24 24:4,16,18 |
| **notified** 64:20 | | **offering** 75:14 | **organized** 57:6 |
| **november** 4:18 59:8 72:7,13 72:18,21 73:12 75:24 79:3 | | **office** 6:11 82:10,16 | **outcome** 88:14 |
| **number** 7:8 26:7,17,18 30:3 33:13 35:7 36:19 37:3 39:11 41:22 43:18 44:13 48:22 49:4,18 51:25 | | **offices** 74:24 | **outlines** 27:8 |
| | | **oh** 58:25 62:6 | **outside** 31:20 36:13 37:25 38:9 40:12 42:15 59:8 62:15,22 65:9 66:18 70:6 73:5 76:21 77:5,18 79:19 84:20 85:16,21 86:11 |
| | | **okay** 6:8,9,23 7:4,11 8:5,11 9:14,19,23 10:8,9,20,25 11:18 12:17 22:2,23 26:24 30:4 35:8,22 38:25 44:17 49:6 51:3,22 60:18 61:20 | **overall** 47:20 |
| | | | **own** 34:5 |
| | | | **p** |
| | | | **p** 2:2,2,22 3:2,2 4:12 5:19 38:21 |

**p.c.** 2:12
**p.m.** 87:10
**page** 4:3,7
12:16,18 26:16
26:19,21,25
30:2,3 31:24
31:24 33:13,14
34:22 35:7
36:19,19 37:3
37:5 39:10
43:18 44:13,14
44:15,16 45:6
49:4,18,21
51:10,11 52:16
58:10,14 61:14
62:3 72:15,20
78:21,24 83:6
**pages** 26:25
58:7 90:5
**paragraph**
45:5 61:18,22
67:14 70:10,24
71:10,23 73:3
78:24 81:2
83:7,8 84:3,4
**park** 5:23
**part** 17:13
18:18,22 20:6
20:7 21:13
32:20 36:5
46:9 84:18,22
**partially** 28:13
**participants**
32:6

**participate**
20:6,8,19,23
21:18 82:19
**participated**
81:12,25 82:4
82:6 85:2,3
**participates**
21:25
**participation**
81:4
**particular**
21:19 50:11,14
50:21 57:6
63:12 70:14
**parties** 13:15
88:12
**partners** 39:17
39:18 48:21
49:3 52:9 53:2
53:8,10,21
**partnership**
35:17,24 36:7
**party** 17:14
67:16 68:18
69:2,16,19
**paso** 1:6 71:12
**patience** 5:15
**pause** 6:6
**pay** 25:2 27:25
34:20
**payroll** 15:17
24:2
**pending** 10:5
80:4

**pension** 1:5,7
71:12 89:3
**pensions** 25:2
27:25
**people** 50:8
85:24
**percent** 36:6,15
53:13 73:22
**performance**
34:17 45:8
47:16,21 48:4
54:7
**period** 40:6
41:5 59:6,7,9
73:16 75:24
76:16 79:2,4
**periodic** 40:15
49:22
**perryman** 2:17
**person** 17:6
69:10
**persons** 76:14
**pg** 89:9
**phone** 6:18,23
81:11
**physically** 6:10
**pick** 29:3 30:20
30:21,22 42:18
42:19
**place** 86:8
**plaintiff** 7:17
12:9 16:2
17:15 18:6
20:16 21:13

64:10,13 66:17
71:3,13 72:24
73:14 81:2
**plaintiffs** 1:9
2:3 4:11,21
38:19 39:3
78:7,18
**plan** 27:2 52:13
**plans** 15:17
24:3 27:11
**plawecki** 52:7
**play** 60:3
**playing** 54:7
**plaza** 2:18
**please** 5:17,18
6:5 9:17 18:2
33:23 67:3
76:23
**plus** 54:20
**point** 46:19
72:16,21
**police** 1:5 89:3
**policemen**
71:12
**policemen's** 1:6
**policies** 26:23
**policy** 20:13
25:23 26:6,14
27:3,8,16
28:18 29:8,13
33:24 34:24
36:9,23 48:8
54:18,19 55:6
55:18 56:4,14

**portfolio** 31:23 34:19 35:9 36:4,12 43:24 44:3,7 47:21 50:17 65:4,7

**portfolios** 37:10

**portions** 14:5

**possibility** 66:16,21 67:7

**post** 60:10

**potential** 77:16

**potentially** 66:16

**power** 44:21 49:11

**practical** 57:2

**practice** 20:6

**practices** 75:12

**predate** 52:15 65:14

**predates** 50:21 52:14

**prefer** 11:8

**preferred** 76:19 77:2

**preparation** 86:4,16,18

**prepare** 43:6 84:24 85:4,7

**prepared** 13:12 14:2,9

**presence** 86:12

**present** 3:9 72:22 85:18,22

**presentations** 46:11

**preserves** 56:8

**pressure** 74:19 75:9

**pressures** 75:7

**pressuring** 75:15

**pretty** 19:12 21:6 61:24

**previously** 50:9 64:16 80:9

**primarily** 33:3

**primary** 32:5 32:10,14

**prior** 61:21 62:9

**privilege** 10:6 14:4 79:16

**probably** 29:15 51:9 56:5 83:24

**problem** 6:5 11:12

**procedure** 39:5

**proceeding** 9:7

**process** 21:13 31:9,9,11,12 40:21 42:18,18 43:15

**produce** 83:12

**produced** 86:23

**producing** 83:9

**product** 43:12

**products** 74:13 74:22 75:15

**program** 18:11 19:23,24 20:3 20:23 21:4

**programs** 20:8

**progress** 17:16 81:3,10,23

**propounded** 90:7

**provide** 8:23 9:3 18:25 19:5 27:11 45:11 49:21 50:4 53:9,10,15

**provided** 18:17 18:22 49:23,25 54:2 55:9,11 55:13 61:12,23 66:9 76:9 79:12,14,18 80:11,13 82:23

**provider** 40:18

**providers** 40:16,17

**provides** 53:21

**provision** 53:2 53:8

**public** 1:21 5:3 28:12 42:25

88:5 89:25 90:19

**publicly** 86:24

**pull** 57:8

**pulled** 59:12

**purchase** 25:18 29:17,22 33:20 34:2 38:7 45:8 49:14 53:3 59:20 60:4 63:5,25 75:9 80:22

**purchased** 39:21 41:5 59:5 76:15 78:25

**purchases** 37:24 58:18 59:17 63:11

**purpose** 24:22 27:6,15 46:7

**purposes** 11:9 43:22

**pursuant** 1:18 4:11,16 12:10 12:13 38:20 39:4 57:20 58:6 67:11

**pursue** 81:17

**put** 28:20 74:12 82:10

**putting** 36:9 74:19 75:7

**[quality - rephrase]**                                    Page 18

**q**

**quality** 74:12
**quarter** 47:11
  75:18
**quarterly** 45:7
  45:11,23 46:3
  46:8,21 47:2,9
  47:13 49:25
  50:4 54:12
  57:3 60:25
  61:11
**question** 9:10
  9:16,21,22
  10:5,5 11:15
  11:17 18:2
  33:22 34:11
  38:2 54:5 70:7
  73:9 76:23
  77:24 79:20
  80:4
**questions** 19:16
  19:20 82:22
  90:7
**quickly** 17:25
  71:21
**quite** 40:18

**r**

**r** 2:2 3:2 4:11
  5:19,19,20
  38:21 88:2
**rabb** 2:14
**raise** 66:16

**rates** 31:16
**rather** 43:12
**reach** 66:15
**read** 43:6 52:24
  53:7 61:24
  62:7 80:5,7
  86:13,19 89:9
  90:4
**reading** 61:25
  62:2
**reads** 89:9
**realized** 64:22
**really** 34:8
  36:15 42:8
  43:12 50:24
  55:23 63:8
  65:18,18
**reason** 8:22,25
  10:2 21:8 89:9
**reasoning**
  62:18 63:5
**rebalance**
  31:23
**rebates** 75:13
**recall** 19:19
  62:9 83:4
**receive** 50:8
**received** 84:5
**receives** 45:14
  45:15,19 50:7
**recent** 8:8
**recess** 38:15
  64:6 80:2 87:7

**recognize** 52:3
  60:22
**recollection**
  53:17 61:22
  62:2
**recommendat...**
  42:24 43:3
**recommends**
  28:15 29:4
**record** 5:18
  6:17 12:7
  17:23 39:16
  41:19 48:20
  51:4,8,23
  54:17,19 56:3
  58:5 78:15
  79:21,25 80:7
  88:9
**recovery** 19:11
  19:12
**refer** 10:22
  11:19
**referenced**
  54:11
**referring** 10:18
  10:23 11:9,20
  19:24 22:12,20
  34:25 46:23
**reflect** 58:23
**reflected** 23:24
  24:16 42:14
  59:11
**regard** 77:11

**regarding**
  77:17
**regular** 22:5
**reinhart** 39:18
  52:8 53:2,8,10
  53:20
**reinvest** 30:12
  30:17
**related** 25:17
  61:18 88:11
**relates** 80:22
**relating** 22:16
**relationships**
  35:17,24 36:8
**relevant** 40:6
**relied** 63:24
**relief** 1:6 71:3
**rely** 47:12
**remember** 8:6
  8:20 53:14
  55:19 56:12
  65:12,19 66:19
  69:22 70:16,18
  70:19,21 71:5
  71:19
**remind** 9:6
**remote** 1:17
**remotely** 5:25
**rep** 72:17 73:13
**repeat** 18:2
  33:22 34:11
  72:19 73:8
**rephrase** 38:2
  42:11

**report** 16:6,7,8
16:12,15 17:15
18:7,11 24:14
45:21 47:25
54:9 57:9
60:25 62:3
**reporter** 1:21
9:8,12 88:4
**reporting**
24:10 29:11
45:24 76:3
**reports** 15:14
22:5 24:11,12
29:7 34:19
45:6,12,14,16
45:17,19 46:3
46:8,10,12,17
46:18,22,23,25
47:2,9,14,23
49:22,23 50:4
50:7 53:9,10
53:17 54:12,16
55:13 56:22
57:3 61:12
**represent** 24:4
76:13,14
**representative**
7:22 13:11
14:17 67:16
68:18 69:2,16
69:19 71:4,13
72:23 81:7
**represented**
10:10

**requested**
12:20
**required** 54:13
**respect** 49:12
**responses**
12:24 13:3,13
**responsibilities**
15:11,13,24
21:4 31:8 36:6
**responsibility**
54:6
**responsible**
15:19 42:5,12
67:21 68:7
**restrictions**
30:14
**rests** 30:17 31:3
**result** 79:5,9
**resulted** 75:20
**results** 19:11
**retaining** 43:21
**retention** 54:17
54:19 55:18
56:3
**retiree** 16:23
**retirees** 16:24
25:2
**retirement** 1:6
1:7,18 10:24
11:10 12:9
14:18,21 15:4
15:7,14,15,17
15:25 16:7,18
16:20,23,25

17:6,10,15
18:8 23:10,14
24:6,15,22,24
24:25 25:4,7
25:16 26:6,13
26:22 27:10,12
27:18,24 28:7
29:23 30:6,10
30:20 31:13
33:18 34:13
36:25 37:19,22
38:6 39:13,20
39:22 41:6,21
42:3 45:12,17
50:5 52:9 53:4
53:9,11,24
54:15 55:9,12
55:14,18 56:8
58:21 59:6,22
60:3 62:17
64:9 66:23
67:6,23 69:15
69:25 70:11,25
71:2,11,25
74:4,8 76:8,11
76:17 77:9,15
79:8 81:9,22
83:9,11,20
84:5 86:4
**returns** 74:15
**reveal** 22:16
66:4
**review** 35:13
35:16,23 40:15

40:19 42:23
46:3,7,10,12,21
47:2,8,13 81:9
81:22 84:14,17
85:4 86:8,11
**reviewed** 76:8
80:10 81:3,11
84:5 85:2 86:7
86:22
**reviewing**
61:22 86:21
**reviews** 36:3,7
36:11,16
**rfp** 40:21
**rgrdlaw.com**
2:7,8,8
**rick** 52:7
**right** 8:10 40:6
45:22 51:9
53:14,18 56:6
59:3 61:9,20
68:4 71:22
**robbins** 2:5
4:19 10:13
11:19,20 64:18
64:24 65:2,8
70:2,13 72:8
72:14 80:11
81:5 85:17
**robert** 2:11
16:11 85:15
**robertson** 2:5
**rodriguez** 3:4

| | | | |
|---|---|---|---|
| **role** 15:6,9 18:5 23:19 25:17 29:2 32:10 60:4 | 59:21 60:5 | 36:3,12 37:5 37:14,24 39:21 41:6 44:24 47:24 49:15 53:3 57:21 58:6,24 59:5 | **seeking** 53:4 68:17 76:13,14 |
| **room** 6:13,13 | **scope** 36:13 37:25 38:9 40:12 42:16 62:15,23 65:10 66:18 69:20 70:6 73:5 76:21 77:5,18 84:20 | 60:5 62:20 63:6,12,25 67:11 72:24 79:6,10 | **seeks** 20:15 |
| **rudman** 2:5 4:19 11:20 72:8 81:5 | | | **seen** 12:11 13:3 39:8 48:24 52:4 60:23 |
| **rule** 12:10 39:4 | | | **selected** 40:21 |
| **rules** 9:6 | **screen** 26:8 | **security** 7:6 37:10 38:8 | **selection** 37:5 |
| **run** 18:10 | **screens** 85:25 | | **selections** 37:10 |
| **s** | **scroll** 26:16,25 | **see** 6:2 12:18 12:21 23:12,14 27:2 29:11 30:5 32:2 34:22 35:14,19 36:20 37:5 39:11,14,25 40:20 43:19 46:10 49:7,20 50:2,20 51:10 51:14 52:19,23 55:6,25 56:4 58:15 61:15,19 62:6 64:18,25 67:14,17 68:16 68:20 69:4 72:2,15,18,20 72:25 79:22 83:24 84:8,12 85:24 | **sell** 33:20 34:5 37:14 44:22,24 49:15 53:3 60:4 62:20 63:25 74:24,25 |
| **s** 2:2 3:2 5:19 5:20 | **search** 31:22 57:13 83:12,23 | | **semantics** 28:4 |
| **sale** 25:18 29:17 34:2 38:7 58:23 63:6 80:22 | **searching** 57:16 83:9,19 83:20 | | **send** 22:21 |
| | **seat** 17:4 | | **sent** 61:4 |
| **sales** 29:22 37:24 45:9 59:17,20 75:16 | **sec** 75:21 | | **separate** 11:2,4 61:4 |
| | **second** 16:5 43:19 | | **serve** 67:15 68:18 69:2,15 69:18,18 |
| **san** 1:5 2:7 89:3 | **section** 27:5 29:13 30:5 31:25 34:24 35:21 36:20,23 49:7 52:21 61:17 68:25 69:14 70:24 | | **service** 40:16 40:17,17 |
| **satisfy** 32:9 | | | **services** 43:21 |
| **savvy** 83:22 | | | **serving** 66:16 |
| **saying** 31:3 | | | **set** 88:8 |
| **says** 19:8 26:21 28:19 36:7,16 37:12 43:21 49:21 52:18 72:21 81:2 83:7 84:4,10 | | | **setup** 6:5 |
| | **securities** 4:16 7:13,18 20:2,4 20:8,9,16,20 21:18 22:6 25:18 29:17,22 33:20 34:3 | **seven** 54:20 | |
| | | | **shares** 78:25 |
| **schedule** 58:13 58:17,18 59:11 | | **seek** 20:14 64:9 64:12 81:19 | **sheet** 89:2 90:10 |

**[sheriff's - supervising]**

**sheriff's** 15:2
**short** 31:21
**shorten** 11:8
**shorthand** 11:10 88:4
**show** 56:13
**showed** 82:11
**signature** 43:7 58:11 68:18 78:22 88:17 89:21
**significant** 64:22
**similarly** 1:8
**simpson** 3:4
**sirona** 1:11 5:12 10:19 61:18,23 62:10 62:20 63:6 66:17,22 67:8 79:2 89:4
**sitting** 8:19 56:7
**situated** 1:8
**situation** 19:15 38:4
**situations** 21:12 37:21
**small** 61:24 84:22
**smoothly** 38:12
**sold** 39:20 41:5 59:5 63:12

**sole** 49:12
**somebody** 17:7 48:7 63:15
**sorry** 15:21 17:19 33:5 36:17 62:13 66:25 72:19 73:8
**sought** 37:23 38:6 69:2,15
**sound** 28:5
**source** 59:10
**southern** 1:3
**space** 42:19 44:4 54:8
**speak** 86:3
**speaking** 9:11 10:15
**special** 75:13 75:13
**specific** 8:20 19:16 37:24 38:7 44:7 47:24 53:4 77:13
**specifically** 52:21 78:16 85:8
**specification** 50:16
**specify** 50:11
**spell** 5:17
**staff** 15:14 33:9

**stage** 68:3
**stakem** 2:4
**start** 5:14 7:7
**started** 8:17 14:25,25
**starting** 74:18
**state** 1:21 5:4 5:17 88:5
**stated** 14:14 80:9
**statement** 27:3 27:8,16 29:8 29:14 48:9 79:7 80:17
**statements** 75:18 76:3
**states** 1:2 27:8 49:10
**status** 17:16 49:24
**staying** 80:25
**stblaw.com** 3:6
**stead** 17:8
**steen** 2:18
**stock** 76:6,15 76:19,20 77:2 77:4 79:2
**stocks** 30:21,22
**stop** 15:20
**stored** 56:25
**strategy** 27:19 27:23 28:8 43:23 44:3 50:17,23

**street** 2:12
**strike** 37:19
**structure** 24:5
**stuff** 86:14,25
**stuffing** 74:19 76:5
**style** 44:10 54:7
**subdivisions** 23:22
**subject** 13:13 30:13 42:23
**subpart** 27:6
**subparts** 69:23
**subscribed** 89:22 90:15
**subsection** 32:4 35:20 37:4 44:14,16 68:16 70:10 84:10
**substance** 90:9
**substantial** 79:4,8 80:12 80:16
**suffered** 79:4,8
**suite** 2:6
**summaries** 18:12,13
**summary** 45:8
**supervise** 15:25 20:24 68:22 69:6
**supervising** 17:13 18:5 21:18 67:21

**[supervising - three]**                                   Page 22

68:7
**supervision**
  20:19
**supervisory**
  17:11
**suppliers**  75:4
**supply**  74:16
  76:4
**support**  4:21
  78:7,17
**sure**  5:16 8:9
  8:16 10:15
  11:16 20:5
  24:13 38:14
  42:8 50:22
  52:20 55:4,5
  55:16,23 56:5
  63:8,17 68:2,3
  70:7 74:2
  77:13 84:9
**sworn**  5:3 88:8
  89:22 90:15
**system**  1:6,7,18
  10:24 11:10
  12:9 14:18,21
  15:4,7,16 16:2
  23:11 24:6,23
  24:25 25:7
  26:6,14,22
  27:10,19,24
  28:8 29:23
  30:10 36:25
  37:22 38:6
  39:13,20,22

41:7,21 42:3
45:12 50:5
52:10 53:4,9
53:11,24 54:15
55:10,12,14,18
56:8 57:13
58:21 59:6,22
60:3 62:18
64:9,17 67:7
67:23 69:15,25
70:12,25 71:3
71:11,25 74:5
76:8,18 77:10
77:15 81:9,22
83:9,12,20
84:5 86:4
**system's**  27:12
  33:18 34:13
  37:19 66:23
  74:9 76:12
**systems**  76:15

**t**

**t**  88:2,2
**tab**  23:3 25:23
  57:19 60:10
**table**  17:4
**tabulations**
  45:8
**take**  6:6 9:25
  10:4 16:4
  18:13 38:13,14
  47:16 55:4
  64:5 86:8 87:5

**taken**  1:18
  38:15 64:6
  80:2 87:7
**taliah**  3:4
**taliah.rodrigu...**
  3:6
**talk**  11:7 22:14
**talked**  56:22
**talking**  46:17
**talks**  35:23
**target**  31:23
**technical**  6:4
**technically**
  83:22
**technology**
  5:16
**tell**  33:2 44:10
  61:25
**ten**  7:11
**tens**  78:25
**terminating**
  34:6
**termination**
  34:10 75:20
**terms**  30:13
  66:4
**terrible**  9:13
**testified**  5:5 8:6
  50:9 64:16
**testify**  13:12
  14:2,10 20:24
  21:9,11
**testifying**  7:21
  14:17 21:12,17

**testimony**  8:23
  9:3 14:20,21
  88:10
**thacher**  3:4
**thank**  5:14
**thing**  50:20
  77:21
**things**  10:16
  32:18 34:5
  35:12 56:24
**think**  8:13 31:8
  31:8 34:4,4
  40:7 45:18
  46:16 51:4
  52:13 55:8,8
  55:22 56:20
  61:10 63:14
  64:4 67:24
  68:15 73:15,16
  73:21,21 75:21
  77:21 79:15
  83:15 84:16
  85:20,23,23
  87:2,3
**thinking**  55:7
  55:25
**third**  72:15,16
  72:20 75:18
**thomas**  2:11
**thought**  62:13
**thousands**
  78:25
**three**  40:23
  74:2 85:12,12

**[time - vs]**                                                                    Page 23

| | | **u** | **v** |
|---|---|---|---|
| **time** 17:20,20 20:15 25:22 31:15,17 39:24 40:6,19 47:7 47:13 50:24 51:5 65:14 68:17 73:16 75:10 85:8 87:9,10 | **topic** 13:25 19:20 | **ultimate** 25:6 30:16 | **v** 89:3 |
| **times** 7:5,8 | **topics** 12:20,24 13:9,12,18 14:9,10 | **under** 35:20 39:11 49:20 54:13 | **vague** 69:21 |
| **timmony** 2:12 82:15 | **total** 7:6,7 48:4 | **underperfor...** 48:7 | **value** 43:23 44:2 50:17 61:15 |
| **titan** 28:23,25 | **touch** 82:11 | **understand** 9:17 14:16 19:4 24:19 30:24 31:2 70:7 76:25 77:25 80:18 83:18 86:2 | **vandenhaute** 28:23 40:2 |
| **title** 26:22 | **trades** 80:13 | | **vanoverbeke** 2:12 82:14 |
| **tmichaud** 2:13 | **transactions** 44:22 | | **vendors** 40:16 |
| **today** 5:16,24 6:4,10,16,22 8:19,22,25 9:13,21,25 10:10,16 11:7 11:9 12:14 13:12 14:2,7 14:16,20 15:9 21:12 56:7 80:23 86:18 | **transcript** 89:2 | | **verbal** 18:16 |
| | **transcription** 90:6 | **understanding** 24:5 27:15 36:10 37:16 53:20 55:17 62:18 74:9 76:12 | **veritext** 3:10 |
| | **transpired** 78:3 | | **version** 26:15 |
| | **true** 88:9 | | **vets** 42:20 |
| | **trust** 59:13,16 | | **videoconfere...** 1:19 2:2 |
| | **trustee** 30:9 | | **videotaped** 12:8 |
| | **truthful** 8:23 | **understood** 9:22 11:5 13:24 14:7 | **violating** 75:8 |
| | **try** 9:17 77:25 | | **violations** 79:5 79:9 |
| **today's** 9:6 13:9 84:25 86:5,16 | **trying** 19:4 50:20 83:18 | **united** 1:2 | **virtue** 17:2 |
| | **turn** 12:16 26:16 30:2 35:7 37:3 39:10 49:4,18 61:14 75:2 78:21 83:6 | **unity** 8:9,12 | **vmt** 10:13 85:17 |
| **together** 45:7 | | **updates** 18:18 18:23 19:15 | **vmtlaw.com** 2:13,14 |
| **tom** 85:14 | | **use** 11:8 57:2 | **vote** 17:8 25:9 25:13 34:6 43:4 |
| **took** 40:3 | **turning** 72:15 78:24 | **users** 74:23 | |
| **top** 23:14 33:14 35:9 44:16 51:5 | **two** 16:23 26:25 85:12 | **usually** 45:16 | **votes** 42:21 |
| | **type** 54:24 | | **vs** 1:10 |
| | **types** 22:15,19 42:6 | | |

| w |
|---|

**wait** 67:3
**want** 5:13,25
  10:15 13:22
  25:12 28:3
  30:25 38:13
  46:15 52:14
  56:13 66:2
  68:6
**wanted** 40:8
  51:7 57:8
  75:16
**warranty** 74:14
**way** 9:2 47:17
  57:6 70:18
  71:17 83:24
  88:13
**wayne** 1:7,17
  7:17 10:22,23
  11:2,4,10,16
  12:9,23 13:6
  13:11,17 14:18
  14:21,24 15:25
  17:3,14 18:6
  20:4,15,18
  23:10 24:22
  26:6,13,21
  27:9,18 28:7
  29:23 32:22
  36:10 39:12,20
  41:20 42:3
  52:9 55:22
  58:20 59:21

60:3 62:17
63:23 64:8,12
65:17 66:8,11
67:6,15,22
68:7,17,23,25
69:7,14,18,24
70:9,11,24
71:10 72:16,22
73:13 74:4,8
76:7,11,17,25
77:9 81:8,21
83:8,11,19
84:4 86:3
**wcers** 78:25
  81:2
**wcers0000032**
  4:17 60:11,20
**wcers0000357**
  4:14 48:13,22
**wcers0000366**
  4:15 51:16,25
**wcers0000381**
  4:13 41:10,22
**wcers0000396**
  4:9 23:5
**wcers0000397**
  4:10 25:24
  26:7
**we've** 11:22
  26:5 38:11
  54:11 80:23
  81:18
**wealth** 28:23
  28:25

**weaver** 2:17
  4:4 5:7,10
  11:14 12:4
  13:21 14:6,13
  18:3,21 19:3
  19:14,21 21:2
  21:10,16,22
  22:10,18 23:3
  23:8 25:11,21
  26:4 27:22
  28:16 29:20
  30:23 31:10
  32:19 34:21
  35:6 36:18
  38:3,11,16
  39:2 40:22
  41:3,14 42:10
  43:17 44:12
  45:4 46:6,19
  46:20 48:10,17
  50:15 51:2,20
  53:19 54:10
  56:15,16,21
  57:14 58:2
  60:2,8,10,15
  62:8,16 63:2,9
  63:19 64:4,7
  65:6,13,16
  66:7,20 67:5
  69:13 70:8,17
  70:22 71:8,16
  72:12 73:10,23
  74:3 76:24
  77:8,14,23

78:12 79:13,24
80:3,15,21
82:3,24 83:5
83:17 84:2,23
87:5,8
**west** 2:6 5:22
**witness** 4:3 5:2
  8:3,7 17:19,24
  38:14 40:13
  62:6 67:4
  79:22 88:7,10
**work** 15:3
  32:23
**working** 5:15
  5:16 82:25
**works** 31:13
**writing** 19:2,6
  45:25
**written** 18:14
  18:15,22 20:11
  42:23
**wrong** 73:2

| x |
|---|

**x** 1:4,14 4:2

| y |
|---|

**y** 5:20
**yeah** 14:12
  17:24 18:11
  19:8 35:3
  36:15 39:23
  45:23 51:9,12
  52:22 54:4
  56:11 57:17

**[yeah - zoom]**                                                    Page 25

| |
|---|
| 59:2 71:19 79:22 83:15 84:17 |
| **year**  8:13 54:21 68:15 |
| **years**  54:20,20 54:21 55:8 56:23 74:2 |
| **yesterday** 85:10,19,22 |
| **york**  1:3,22 2:19,19,24,24 3:5,5 5:4 88:5 |
| **z** |
| **zoom**  5:25 62:5 83:24 |

Federal Rules of Civil Procedure

Rule 30


(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.


DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

Page 89

ERRATA SHEET FOR THE TRANSCRIPT OF:

Case Name:            San Antonio Fire and Police

                      Pension Fund et al. v. Dentsply

                      Sirona Inc. et al.

Dep. Date:            December 4, 2024

Deponent:             Gerard J. Grysko

CORRECTIONS:

| Pg. | Ln. | Now Reads | Should Read | Reason |
|-----|-----|-----------|-------------|--------|
| 25 | 12 | "cheer" | "clear" | correct transcription error |
| 85 | 14 | "Luke, Hailey" | "Luke, Hillary" | conform testimony to facts |

_____

Signature of Deponent

SUBSCRIBED AND SWORN BEFORE ME

THIS 10th DAY OF January , 20 25

_____

(Notary Public)   MY COMMISSION EXPIRES: 06 10 2029

JARED STEELE
Notary Public - State of Michigan
County of Wayne
My Commission Expires Jun 10, 2029
Acting in the County of _____