**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SAN ANTONIO FIRE AND POLICE PENSION FUND, CITY OF BIRMINGHAM RETIREMENT AND RELIEF SYSTEM, EL PASO FIREMEN & POLICEMEN'S PENSION FUND, and WAYNE COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>DENTSPLY SIRONA INC., DONALD M. CASEY, JR., and JORGE GOMEZ,<br><br>                Defendants. | Civil Action No. 22-cv-06339-AS<br><br>CLASS ACTION<br><br>Hon. Arun Subramanian |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................iii

PRELIMINARY STATEMENT ........................................................................................1

LEGAL STANDARD .......................................................................................................2

ARGUMENT......................................................................................................................3

I.   PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE
     RELIANCE ELEMENT OF THEIR MISSTATEMENT AND OMISSION CLAIM...........3

     A.   Plaintiffs Are Not Entitled to Summary Judgment Because They Conceded That
          Materiality Is Subject To Genuine Dispute.......................................................5

     B.   Plaintiffs' Materiality Argument Has Been Widely Rejected............................5

     C.   Defendants Reserve The Right To Rebut The Presumption Of Reliance On A
          Class-Wide And An Individualized Basis..........................................................8

II.  PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON RELIANCE
     AS TO THEIR "SCHEME" LIABILITY CLAIM............................................................9

     A.   Plaintiffs Do Not Have A Viable Scheme Liability Claim As A Matter Of Law. ...........10

          i.    The Second Circuit has expressly rejected Plaintiffs' reading of *Lorenzo*...................10

          ii.   The facts in *Lorenzo* are nothing like the facts here.....................................12

          iii.  Plaintiffs cannot show Defendants engaged in any deceptive conduct separate
                from the alleged misstatements and omissions.........................................................12

     B.   Plaintiffs Are Not Entitled To A Presumption Of Reliance On Summary Judgment
          For Their Scheme Claim....................................................................................14

CONCLUSION.................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................................. 3

*Ark. Teachers Ret. Sys. v. Goldman Sachs Group, Inc.*,
879 F.3d 474 (2d Cir. 2018) ..................................................................... 4

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .......................................................................... *passim*

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................... 2, 4

*Cohen Lans LLP v. Naseman*,
2017 WL 477775 (S.D.N.Y. Feb. 3, 2017) ............................................. 4–5

*Cypress Creek Intermediaries, Inc. v. Westport Ins. Corp.*,
2025 WL 2675898 (S.D.N.Y. Sept. 18, 2025) ......................................... 3

*GAMCO Inv., Inc. v. Vivendi Universal, S.A.*,
838 F.3d 214 (2d Cir. 2016) ..................................................................... 4

*Glover v. Austin*,
289 F. App'x 430 (2d Cir. 2008) .............................................................. 7

*Goldman Sachs Group, Inc. v. Ark. Teacher Ret. Sys.*,
594 U.S. 113 (2021) .................................................................................. 5

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ......................................................................... *passim*

*Hawaii Ironworkers Annuity Trust Fund v. Cole*,
296 F.R.D. 549 (N.D. Ohio 2013) ...................................................... 17–18

*HsingChing Hsu v. Puma Biotech, Inc.*,
2018 WL 4945703 (C.D. Cal. Oct. 5, 2018) ........................................... 6–8

*In re CarLotz, Inc. Sec. Litig.*,
2024 WL 3924708 (S.D.N.Y. Aug. 23, 2024) ......................................... 18

*In re Galena Biopharma, Inc. Sec. Litig.*,
  117 F. Supp. 3d 1145 (D. Or. Aug. 5, 2015)........................................ 12–14, 16–17

*In re Mindbody Inc. Sec. Litig.*,
  489 F. Supp. 3d 188 (S.D.N.Y. 2020)........................................... 14

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  625 F. Supp. 3d 164 (S.D.N.Y. 2022)........................................... 11

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011)........................................... 9

*Janus Capital Group, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011)........................................... 10–11

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005)........................................... 9, 11

*Lorenzo v. SEC*,
  587 U.S. 71 (2019)........................................... 10–12

*Matsuhita Elec. Indus. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)........................................... 2–3

*SEC v. Kelly*,
  817 F. Supp. 2d 340 (S.D.N.Y. 2011)........................................... 14

*SEC v. Patel*,
  794 F. Supp. 3d 111 (E.D.N.Y. 2025)........................................... 11

*SEC v. Rio Tinto*,
  41 F.4th 47 (2d Cir. 2022)........................................... 11–12, 14

*Spitalieri v. New York City Transit Auth.*,
  1996 WL 254980 (S.D.N.Y. May 14, 1996), *aff'd* (2d Cir. 1997)........................................... 2

*St. Clair Cnty. Employees' Ret. Sys. v. Acadia Healthcare Co., Inc.*,
  2025 WL 2940714 (M.D. Tenn. Oct. 16, 2025)........................................... 7–8, 14

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008)........................................... 3, 15–19

*Strougo v. Tivity Health, Inc.*,
  No. 20-CV-00165, (M.D. Tenn. Feb. 20, 2025), Dkt. No. 281........................................... 8

*Superintendent of Ins. of State of N. Y. v. Bankers Life & Cas. Co.,*
  404 U.S. 6 (1971)........................................................................................ 18

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.,*
  57 F. Supp. 3d 950 (D. Minn. Sept. 29, 2014)........................................... 19

*Woods v. Martuscello,*
  2024 WL 3567149 (N.D.N.Y. July 29, 2024) ............................................ 8

## Rules and Statutes

15 U.S.C. § 77q(b)......................................................................................... 13

15 U.S.C. § 78u-4 ......................................................................................... 11

Fed. R. Civ. P. 56 ......................................................................................... *passim*

17 C.F.R. § 240.10b-5 .................................................................................. *passim*

Dentsply Sirona Inc. ("Dentsply" or the "Company"), Donald M. Casey, Jr. ("Casey"), and Jorge Gomez ("Gomez") (collectively, "Defendants"), respectfully submit this memorandum of law in opposition to Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 163).[1]

## PRELIMINARY STATEMENT

Plaintiffs' motion for partial summary judgment on one element of their securities fraud claims—reliance—is improper and should be denied. The law is clear: to invoke the fraud-on-the-market presumption of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988), Plaintiffs must establish an absence of any genuine factual dispute on all four of the *Basic* prerequisites, including materiality. Plaintiffs concede they cannot do so because materiality is disputed. This is fatal to their motion, and their attempt to nonetheless sidestep this requirement—arguing that materiality need not be proven for summary judgment on the element of reliance because materiality will remain an element of their Section 10(b) claims to be addressed at trial—has been rejected by multiple courts, including where Plaintiffs' own counsel previously advanced the identical, meritless argument.

Plaintiffs cite no controlling authority permitting summary judgment on reliance based on only three of the four *Basic* prerequisites. That is because none exists. In *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014) ("*Halliburton II*"), the Supreme Court enumerated four prerequisites to invoke the *Basic* presumption, one of which is materiality, and Federal Rule of Civil Procedure 56 forecloses summary judgment where, as is the case here, a genuine dispute exists as to that element or any other essential element of a party's claim. The record shows that

---

[1] Capitalized terms not defined in this memorandum of law shall have the same meanings as in Defendants' Rule 56.1 Statement of Undisputed Material Facts in Support of Their Motion for Partial Summary Judgment, Dkt. No. 174. References to "Ex." are to exhibits to the Declaration of Victoriya Levina in Support of Defendants' Motion for Partial Summary Judgment, Dkt. No. 175.

1

Plaintiffs will fail to prove materiality at trial, making their premature motion for partial summary judgment on the element of reliance particularly inappropriate.

Plaintiffs' motion for partial summary judgment on the element of reliance as to their scheme liability claim likewise fails. First, Plaintiffs' scheme claim is not viable to begin with, as it is impermissibly based exclusively on misstatements and omissions. Defendants have separately moved for summary judgment on this claim and it should be dismissed as duplicative of Plaintiffs' Rule 10b-5(b) claim. Further, even if their scheme claim were viable, Plaintiffs are not entitled to invoke the *Basic* presumption of reliance to support it. Cases examining the invocation of *Basic* in a scheme liability context make clear that the allegedly fraudulent scheme-related conduct must have been publicly known for the presumption to be available. Here, the only thing that was publicly known about Defendants' supposed scheme is the foundation of Plaintiffs' Rule 10b-5(b) claim—the alleged misstatements about Dentsply's business. Therefore, the *Basic* presumption is unavailable.

Plaintiffs' motion is a transparent attempt to obtain an improper tactical advantage on a single element of their claims while avoiding their burden of proof on materiality. The Court should deny the motion in its entirety.

### **LEGAL STANDARD**

Plaintiffs are permitted under Federal Rule of Civil Procedure 56(a) to move for summary judgment on a claim or defense, or "an element essential to [Plaintiffs'] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P 56(a). On a motion for summary judgment, the Court must view the facts in the light most favorable to Defendants, as the nonmoving parties, and draw all reasonable inferences in their favor. *See Matsuhita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Spitalieri v. New York City Transit Auth.*, 1996 WL 254980 *2 (S.D.N.Y. May 14, 1996), *aff'd* 107 F.3d 4 (2d Cir. 1997). Courts grant summary judgment when

"there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A genuine dispute exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As Plaintiffs would have the burden of proving reliance at trial, Plaintiffs cannot obtain summary judgment on this element unless their "'own submissions in support of the motion . . . entitle [them] to judgment as a matter of law.'" *Cypress Creek Intermediaries, Inc. v. Westport Ins. Corp.*, 2025 WL 2675898 *5 (S.D.N.Y. Sept. 18, 2025) (citing *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998)).

## ARGUMENT

**I.    PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE RELIANCE ELEMENT OF THEIR MISSTATEMENT AND OMISSION CLAIM**

To prevail on their Section 10(b) claim, Plaintiffs carry the burden of proving each of the elements required to sustain that claim: "(1) a material misrepresentation or omission by the defendant[s]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). Plaintiffs seek summary judgment only as to reliance—the element that ensures that the "'requisite causal connection between a defendant's misrepresentation and a plaintiff's injury' exists as a predicate for liability." *Id*. at 159 (quoting *Basic*, 485 U.S. at 243). But even on this one element, Plaintiffs move only as to some, but not all, of the prerequisites they must establish to meet their burden of proof on summary judgment. Their piecemeal approach fails as a matter of law.

Where, as here, there is no direct evidence that Plaintiffs relied on any of the alleged misstatements, Plaintiffs may seek to invoke the rebuttable fraud-on-the-market presumption of

3

reliance. *Basic*, 485 U.S. at 245–47. The presumption rests on the premises that "the market price of shares traded on well-developed markets reflects all publicly available information," and that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price." *Id.* at 246–47; *see GAMCO Inv., Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214, 217 (2d Cir. 2016). This means that in an efficient market, the price of stock reflects "all public, material information—including material misstatements," and that "anyone who buys or sells the stock at the market price may be considered to have relied on those misstatements." *Halliburton II*, 573 U.S. at 263; *see Ark. Teachers Ret. Sys. v. Goldman Sachs Group, Inc.*, 879 F.3d 474, 483 (2d Cir. 2018).

To successfully "invoke the *Basic* presumption, a plaintiff must prove that: (1) the alleged misrepresentations were publicly known, (2) they were material, (3) the [defendant's] stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed." *Halliburton II*, 573 U.S. at 277–78; *see GAMCO*, 838 F.3d at 217 n.2. However, Plaintiffs make no effort to establish that materiality (the second prerequisite) is not genuinely disputed. To the contrary, Plaintiffs concede that materiality *is* disputed and must be decided by the jury. *See* Mem. of Law ISO Pls.' Mot. for Partial Summ. J. at 1, Dkt. No. 168 ("Pls.' MOL"). This concession is fatal to their motion. Plaintiffs cannot satisfy their burden of proof at summary judgment by satisfying only three of the four prerequisites to invoke the *Basic* presumption of reliance. *See Cohen Lans LLP v. Naseman*, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) ("On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense."); *Celotex*, 477 U.S. at 322–23. Plaintiffs' motion for summary judgment should be denied.

**A.    Plaintiffs Are Not Entitled To Summary Judgment Because They Conceded That Materiality Is Subject To Genuine Dispute.**

As a preliminary matter, Plaintiffs concede that there are genuine issues of material fact as to materiality.  As they state: "[T]here is no genuine issue of material fact as to *any* prerequisite required to invoke the *Basic* presumption, aside from materiality."  Pls.' MOL at 1, Dkt. No. 168 (emphasis in original).  Indeed, Defendants have moved for summary judgment on materiality as to more than 20 disclosures that Plaintiffs challenge in the AC, while recognizing that there are disputed issues of fact on others.  *See* Mem. of Law ISO Defs.' Mot. for Partial Summ. J. at 14–25, Dkt. No. 173 ("Defs.' MOL"); *see also* Ex. A1.  To the extent Defendants' motion is *granted* on that basis for any of those disclosures, reliance would be lacking as a matter of law.  And even if Defendants' motion is *denied* as to all of those disclosures, then the materiality of those alleged misstatements is disputed and will go to a jury.  The same is true of the alleged misstatements as to which Defendants have conservatively *not* moved for summary judgment.  *See* Defs.' MOL at 1, Dkt. No. 173.  At trial, it will be Plaintiffs' burden to prove materiality for each of the alleged misstatements that remain in the case (which Defendants will rebut).  *See Goldman Sachs Group, Inc. v. Ark. Teachers Ret. Sys.*, 594 U.S. 113, 118 (2021) ("To recover damages, a private plaintiff must prove, among other things, a *material* misrepresentation or omission by the defendant . . .") (emphasis added); *Basic*, 485 U.S. at 238 ("[A] plaintiff must show that the statements were *misleading* as to a *material fact*.").  Having admitted that they cannot demonstrate a lack of a genuine issue for trial on all essential prerequisites for reliance, Plaintiffs cannot obtain summary judgment on that element.  *See Cohen*, 2017 WL 477775, at *3.

**B.    Plaintiffs' Materiality Argument Has Been Widely Rejected.**

Plaintiffs cite no controlling authority for the proposition that they can obtain summary judgment on reliance based on only three of the four *Basic* prerequisites and where materiality is

5

specifically disputed. There is none. Rule 56 and *Halliburton II* preclude summary judgment on reliance where there is a genuine dispute as to materiality, and all of the other district courts to have considered Plaintiffs' contrary argument have rejected it, including where that argument was made by Plaintiffs' counsel in this case.

*HsingChing Hsu v. Puma Biotechnology, Inc.*, 2018 WL 4945703 (C.D. Cal. Oct. 5, 2018), is instructive. There, the same Plaintiffs' counsel made the same meritless argument as to the *Basic* presumption of reliance. They argued that the court should grant summary judgment as to reliance even though materiality was a disputed issue for trial. *Id.* at \*5. The court rejected the argument, holding: "Because of the parties' genuine dispute about whether [defendants'] misstatements were material, the Court declines to enter summary judgment on the fraud-on-the-market presumption or the broader issue of Plaintiffs' reliance." *Id.* The court reasoned that the Supreme Court "clearly included" materiality "in the presumption's enumerated elements" in *Halliburton II*, and that based on "Rule 56's clear parameters for summary judgment[,] [i]f there is a genuine dispute of material fact—as there is here on materiality—the Court can't enter summary judgment." *Id.* The Court should follow the same reasoning here and deny summary judgment on a straightforward application of *Halliburton II* and Rule 56.

Plaintiffs also propound the argument that because materiality is not only an element of the fraud-on-the-market presumption of reliance but also an element of Plaintiffs' Section 10(b) claim, "there is no need for Plaintiffs to separately prove, or for a jury to separately consider, materiality for reliance purposes." Pls.' MOL at 1, Dkt. No. 168. Plaintiffs are wrong. The fact that Plaintiffs carry the burden of proof on materiality at *trial* does not absolve Plaintiffs of meeting their burden of proof on *summary judgment*, particularly where Plaintiffs admit that there is a genuine dispute of fact as to that issue. The court rejected that same argument in *Puma Biotechnology*, noting that

6

"[t]his argument, though creative, doesn't address Rule 56's clear parameters for summary judgment." 2018 WL 4945703 *5; *see also Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief.").

Here, in support of their argument, Plaintiffs cite a single out-of-Circuit district court case, which, without being presented with the instant issue, granted summary judgment to plaintiffs on the presumption of reliance under *Basic* "as to any misstatements that Plaintiffs show to be material at trial." *St. Clair Cnty. Emps. Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2025 WL 2940714, at *5 (M.D. Tenn. Oct. 16, 2025). But in that case, the defendants did not oppose on the ground that *Halliburton II* and Rule 56 preclude summary judgment on reliance where one of the essential prerequisites—materiality—remains in dispute. Instead, the court based its reasoning on the "single argument" the defendants did raise in opposition, which was that summary judgment was unwarranted because "they have evidence that rebuts the *Basic* presumption." *Id.* at *4. Specifically, the defendants argued they had evidence "showing that the alleged misrepresentation had no impact on [the company's] stock price and that at least one of the [p]laintiffs would have bought [company] stock irrespective of the alleged fraud." *Id.* The court disagreed that defendants' evidence raised a triable issue, and granted the motion. The *Acadia* court never addressed the key legal question here—whether it is appropriate under Rule 56 or *Halliburton II* for Plaintiffs to seek summary judgment on reliance (based on the *Basic* presumption) where a genuine dispute of fact exists as to one of the prerequisites for that presumption—materiality. The courts to have considered that issue have all held just the opposite. *See Puma Biotech., Inc.*, 2018 WL 4945703, at *5; Order, *Strougo v. Tivity Health, Inc.*, No. 20-CV-165 (M.D. Tenn. Feb. 20, 2025), Dkt. No. 281 (summarily denying same argument propounded by the same Plaintiffs'

7

counsel in motion for partial summary judgment).  Moreover, unlike the conditional ruling in *Acadia*, Plaintiffs have requested a presumption of reliance as to *all* of the purported misstatements in this case, not just those they show to be material at trial.  *See* Pls.' MOL at 1–2, Dkt. No. 168.

At base, it is fundamentally improper for Plaintiffs to seek summary judgment on the element of reliance where they admit an essential prerequisite for a presumption of reliance is disputed.  *See* Fed. R. Civ. P. 56.  The entire motion is a waste of judicial and party resources because the jury will still have to hear all the same evidence at trial regarding materiality, meaning that granting judgment now on the element of reliance will do nothing to simplify or shorten the trial.  *See Woods v. Martuscello*, 2024 WL 3567149 at *24 (N.D.N.Y. July 29, 2024) (denying plaintiff's motion for partial summary judgment and noting "[i]n general, this Court tends to agree that motions for summary judgment seeking the adjudication of only certain elements of a claim are a waste of judicial resources.").

### C. Defendants Reserve The Right To Rebut The Presumption Of Reliance On A Class-Wide And An Individualized Basis.

Because Plaintiffs fail to establish all prerequisites of the fraud-on-the-market presumption of reliance as a matter of law, Defendants do not need to show that there is a genuine dispute of material fact as to Defendants' ability to rebut the presumption.  *See Puma Biotech.*, 2018 WL 4945703 *5 ("Plaintiffs haven't established beyond dispute all elements of the fraud-on-the-market presumption, so the Court need not address whether Defendants have sufficient evidence to rebut that presumption at this time.").  It is Plaintiffs who bear the burden of proof on reliance at trial, and at this stage, Plaintiffs have failed to marshal sufficient evidence even as to the remaining prerequisites of the *Basic* presumption.  For example, their scant evidence on market efficiency is by and large in genuine dispute.  *See* Defs.' Resp. to Pls.' Statement of Undisputed Material Facts ISO Pls.' Mot. for Partial Summ. J. ("Defs.' SOF Response"), submitted herewith, ¶¶ 16, 19–24.

To that end, Defendants should be entitled, and reserve the right, to rebut the presumption at trial by showing that "the asserted misrepresentation (or its correction) did not affect the market price of [defendant] stock," *Halliburton II*, 573 U.S. at 280, and by showing that Plaintiffs "did not rely on the integrity of the market price in trading [defendant] stock." *Id.* at 276. Defendants also reserve the right to rebut the presumption as to individual class members after trial on the common issues. *See id.* ("[A] defendant might . . . pick off the occasional class member . . . through [an] individualized rebuttal"); *see also In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 584 (S.D.N.Y. 2011) ("certain means of rebutting the presumption of reliance require an individualized inquiry into the buying and selling decisions of particular class members"); Defs.' SOF Response ¶¶ 27–28 (disputing Plaintiffs' purported evidence as to whether Plaintiffs or any other member of the Class "would have purchased Dentsply stock had they known Dentsply's stock price was inflated by fraud").

## II.    PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON RELIANCE AS TO THEIR "SCHEME" LIABILITY CLAIM

Plaintiffs also argue that they are entitled to the *Basic* presumption on their scheme liability claim and that summary judgment is warranted "[f]or substantially the same reasons" as it is for their Rule 10b-5(b) claim. *See* Pls.' MOL at 6, Dkt. No. 168. Not so. As Defendants set out in their motion for partial summary judgment, Plaintiffs have failed to establish a scheme. *See* Defs.' MOL at 25–27, Dkt. No. 173. Plaintiffs' "sole basis" for their scheme claim is "alleged misrepresentations or omissions," which are not, without more, actionable under Rule 10b-5(a) or (c). *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005). Because Defendants are entitled to summary judgment on the scheme liability claim, Plaintiffs' motion for summary judgment as to the reliance element should be denied as both improper and moot.

9

But even if the scheme liability claim were to survive for trial (it should not), denial of Plaintiffs' motion for summary judgment on reliance is required for two independent reasons. First, as described above, the fraud-on-the-market presumption is not available where, as here, there is a genuine dispute as to materiality.  Second, while few courts have examined how the *Basic* presumption applies to scheme claims, those that have make clear that the conduct alleged to be manipulative or deceptive must have been publicly known for the presumption to be invoked. Because none of the allegedly deceptive conduct here was publicly known, Plaintiffs cannot invoke *Basic* to raise a presumption of reliance in support of their Rule 10b-5(a) or (c) scheme liability claim, and their motion for summary judgment fails for this additional reason.

## A.    Plaintiffs Do Not Have A Viable Scheme Liability Claim As A Matter Of Law.

Plaintiffs admit that their scheme claim is premised on alleged misstatements and omissions, but a viable scheme claim requires more.  *See* Pls.' MOL at 6–7, Dkt. No. 168. Plaintiffs' scheme claim mirrors other scheme claims that courts have routinely rejected for failing to show deceptive *conduct* that is distinct from the alleged misstatements and omissions made to investors.  Plaintiffs' scheme claim should be dismissed on that basis and Plaintiffs' motion as to reliance denied as moot.

### i.    The Second Circuit has expressly rejected Plaintiffs' reading of *Lorenzo*.

Plaintiffs contend that under the Supreme Court's decision in *Lorenzo v. SEC*, 587 U.S. 71 (2019), "scheme liability is 'sufficiently broad to include within [its] scope the dissemination of false or misleading information with the intent to defraud.'" Pls.' MOL at 7, Dkt. No. 168 (quoting *Lorenzo*, 587 U.S. at 79).  But Plaintiffs' selective quoting misconstrues the case.  In *Lorenzo*, the Supreme Court built off its decision in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011), which held that liability for misstatements and omissions under Rule 10b-5(b)

10

(*i.e.*, not scheme liability) is limited to the "maker of a statement" (*i.e.*, an individual who has the "ultimate authority" over a statement's content and if it is made). *Janus*, 564 U.S. at 142. The *Lorenzo* Court, extending the *Janus* decision, held only that "those who disseminate false statements with the intent to cheat investors" but do not have ultimate authority over the statements at issue (*i.e.*, are *not* "makers of a statement" under *Janus*) may still be held liable under Rule 10b-5(a) or (c). *Lorenzo*, 587 U.S. at 81. The Court did not hold, as Plaintiffs assert, that scheme claims based solely on misstatements or omissions are viable.

To the contrary, the Second Circuit has expressly rejected Plaintiffs' reading of *Lorenzo*, holding that *Lorenzo* does not alter the longstanding requirement that misstatements or omissions "cannot form the 'sole basis' for liability under the scheme subsections." *SEC v. Rio Tinto plc*, 41 F.4th 47, 53 (2d Cir. 2022) (citing *Lentell*, 396 F.3d at 177). "Where the only fraudulent conduct that is alleged is the making of a false statement to the investing public, a defendant in a private civil action is either liable as a maker under Rule 10b-5(b) or is not liable to investors at all." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 248–49 (S.D.N.Y. Sept. 2, 2022); *see SEC v. Patel*, 794 F. Supp. 3d 111, 125 (E.D.N.Y. July 17, 2025) (holding that characterizing the making of "*one's own* false statements" as "'dissemination' distinct from the statement itself is nonsensical and runs contrary to the Supreme Court's understanding of what it means to make a statement."). Moreover, the Second Circuit has warned against Plaintiffs' interpretation of *Lorenzo*—an interpretation that would allow private litigants to sidestep the heightened pleading requirements for misstatements or omissions under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4. *See Rio Tinto*, 41 F.4th at 55; *see also* Defs.' MOL at 25–26, Dkt. No. 173. Plaintiffs are employing a tactic courts have routinely rejected, as "*Lorenzo* did not announce a rule contravening [the] principle" that misstatement or omission claims cannot be recast as scheme

11

liability claims. *Rio Tinto*, 41 F.4th at 55.

### ii.    The facts in *Lorenzo* are nothing like the facts here.

Nor do the unique facts that prompted the Supreme Court's decision in *Lorenzo* exist here. Plaintiffs' allegations of scheme liability center on allegedly false or misleading public statements issued by Defendants on which Plaintiffs supposedly relied in deciding to purchase the Company's stock. *See, e.g.*, AC ¶¶ 110–16 (tying allegations of Defendants' "channel stuffing and accounting scheme" to allegations that statements regarding Defendants' T&E business were "false and misleading"). *Lorenzo*, by contrast, involved emails sent directly by defendant Lorenzo, an investment banking director, to prospective investors seeking some $15 million in loans for a client. *Lorenzo*, 587 U.S. at 75. Lorenzo asserted in those emails that his client had "$10 million in 'confirmed assets[,]'" but knowingly failed to disclose that the client had elsewhere publicly "stated that its assets were in fact worth less than $400,000." *Id.* That is, the conduct at issue involved a particularized, private solicitation where investors were encouraged to provide loans on the basis of false information. What is more, the content of that solicitation and the decision to send it were dictated by Lorenzo's supervisor—factors that the Court noted would, under Rule 10b-5(b) and *Janus*, allow Lorenzo to "escape liability." *Id.* at 81. In contrast, Plaintiffs' theory of liability here is a paradigmatic Rule 10b-5(b) disclosure claim that does not engage the concerns of the *Lorenzo* Court. The only alleged fraud is through disclosures made publicly by the Company, Casey, and Gomez to the market as a whole and there are no concerns that Defendants might escape liability under Rule 10b-5(b).

### iii.    Plaintiffs cannot show Defendants engaged in any deceptive conduct separate from the alleged misstatements and omissions.

The other out-of-Circuit cases Plaintiffs cite likewise do not support their scheme liability claim. *Galena* involved allegations of a comprehensive "'pump and dump' insider trading

12

scheme" that allowed certain officers and directors of a pharmaceutical company to profit from selling their personal holdings at artificially high prices. *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1156 (D. Or. Aug. 5, 2015). The court there noted that "a significant portion of the conduct alleged [was] not independently actionable misrepresentations or omissions," *id.* at 1195, but rather separate "actions" taken by defendants to inflate the stock price, *id.* at 1193–94. For example, the defendants entered into agreements with third-party media companies to post articles online touting the company's stock, actively reviewed and approved those articles, and timed the release of the articles to inflate the company's stock price, all without disclosing defendants' involvement. *Id.* at 1158–59. Importantly, the promotional campaign was, itself, deceptive and unlawful, irrespective of any alleged misstatements or omissions by the company, and designed to reach investors and influence their purchasing decisions. *See, e.g.*, *id.* at 1159 ("Many different fraudulent aliases . . . were used . . . to convince investors that there was a broad base of independent and professional investors supporting Galena . . . and that there was heavy demand for Galena's stock."); *id.* at 1156 & n.3, 1158 (describing the "unlawful promotional scheme" as "including having authors publish articles using false aliases, without including the required disclosure that they were being paid by Galena to try to inflate its stock price," in violation of 15 U.S.C. § 77q(b)). The court found that the plaintiffs' allegations were sufficient to state a claim for a manipulative scheme under those circumstances, *id.* at 1156, and that the plaintiffs were entitled to the *Basic* presumption on their scheme claim, *id.* at 1199.

By contrast, here, Plaintiffs allege only that "Defendants engaged in a scheme to defraud that included misleading statements and omissions," Pls.' MOL at 7, Dkt. No. 168, but do not allege any deceptive actions comprising that scheme. *See, e.g.*, AC ¶¶ 110, 145, 210. Indeed, the only "conduct" alleged is entering into purchase agreements with Dentsply's distributors, which

13

Plaintiffs do not contend were deceptive or manipulative in and of themselves. It is only the public *statements* the Company made about its sales channel and financial prospects that Plaintiffs contend were false and misleading. Thus, *Galena* provides no support to Plaintiffs here.[2]

As noted, courts within this Circuit have consistently rejected scheme liability allegations like Plaintiffs' "[w]here the primary purpose and effect of a purported scheme is to make a public misrepresentation or omission . . ." *SEC v. Rio Tinto*, 2019 WL 1244933 *15 (S.D.N.Y. Mar. 18, 2019) (quoting *SEC v. Kelly*, 817 F. Supp. 2d 340, 343 (S.D.N.Y. Sept. 22, 2011)), *aff'd*, 41 F.4th 47; *In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 217 (S.D.N.Y. Sept. 25, 2020) (dismissing scheme liability allegations that relied entirely on "dissemination of misleading information")). Far from showing any deceptive scheme that defrauded investors, Plaintiffs' offhand references to "channel stuffing and fraudulent accounting scheme" are part and parcel with their allegations of alleged misstatements and omissions. *See, e.g.*, AC ¶ 224. Defendants' motion for partial summary judgment should be granted on this basis as to Plaintiffs' scheme liability claim, *see* Defs.' MOL at 25–27, Dkt. No. 173, and Plaintiffs' motion for partial summary judgment as to reliance for that claim should be denied for this same reason.

### B. Plaintiffs Are Not Entitled To A Presumption Of Reliance On Summary Judgment For Their Scheme Claim.

Even if Plaintiffs had alleged a plausible scheme claim, they still could not invoke *Basic*'s fraud-on-the-market presumption. First, as described in Section I(A) above, Plaintiffs concede there is a genuine dispute as to materiality, which is fatal to their invocation of *Basic* as to their Section 10(b) claim. Plaintiffs do not provide any argument or authority for their assertion that summary judgment can be granted piecemeal as to the reliance element of their scheme claim,

---

[2] Nor does *Acadia.* The court there did not even engage with the scheme liability claim, confining its discussion to alleged "*misstatements* that Plaintiffs show to be material at trial." *Acadia*, 2025 WL 2940714, at *5 (emphasis added).

apart from incorporating the same flawed rationale offered for their Rule 10b-5(b) claim.  Pls.'
MOL at 6–7, Dkt. No. 168.  That rationale fails for the same reasons here.

Second, Plaintiffs' conclusory argument that they are entitled to a presumption of reliance
for their scheme claim ignores that they must point to "deceptive acts [that were] communicated
to the public" to gain the benefit of the presumption.  *Stoneridge*, 552 U.S. at 159.  Plaintiffs have
not, and cannot, point to deceptive or manipulative conduct that was "publicly known,"
*Halliburton II*, 573 U.S. at 268, and their motion as to their scheme claim should be denied on this
basis as well.

The most instructive binding precedent on how *Basic* applies in a scheme liability context
is the Supreme Court's decision in *Stoneridge*.  There, investors in a cable company, Charter,
brought suit against the company's two outside vendors, alleging that the vendors entered into an
arrangement with Charter whereby Charter overpaid the vendors for digital cable converter boxes
and the vendors returned that overpayment by purchasing advertising from Charter.  *Stoneridge*,
552 U.S. at 153–54.  This arrangement allowed Charter to record the advertising purchases as
revenue and "enable[d] Charter to fool its auditor into approving a financial statement showing it
met projected revenue and operating cashflow numbers."  *Id.* at 154.  The *Stoneridge* petitioners
argued, unsuccessfully, that they were entitled to the *Basic* presumption of reliance because "the
financial statement Charter released to the public was a natural and expected consequence of
respondents' deceptive acts"—that without the deceptive conduct, "the financial statement would
have been a more accurate reflection of Charter's financial condition."  *Id.* at 160.  The *Stoneridge*
allegations mirror Plaintiffs' scheme allegations in the present case, that as a consequence of the
purported "channel stuffing and accounting scheme," Dentsply "inflate[d] revenues" and delivered
better financial results than it would have absent the conduct.  AC ¶¶ 110, 217.  In *Stoneridge*,

15

however, the Supreme Court held—as should the Court here—that the fraud-on-the-market presumption did not apply to the scheme claim because "[the vendors'] deceptive acts were not communicated to the public" and "[n]o member of the investing public had knowledge, either actual or presumed, of [the vendors'] deceptive acts during the relevant times." *Stoneridge*, 552 U.S. at 159.

Likewise, here, apart from the financial results and disclosures that comprise the basis for Plaintiffs' Rule 10b-5(b) claim, the alleged scheme itself was not communicated to the public. Indeed, Plaintiffs themselves emphasize that the alleged "channel stuffing and accounting scheme remained *undisclosed*," AC ¶ 110 (emphasis added), with "the incentives . . . largely or entirely not accounted for on the financial statements *at all*," *id.* at ¶ 63 (emphasis in original). This is vital to a determination of whether the *Basic* presumption applies. As the Supreme Court has explained:

> In effect [the] petitioner contends that in an efficient market investors rely not only upon the public statements relating to a security but also upon the transactions those statements reflect. Were this concept of reliance to be adopted, the implied cause of action would reach the whole marketplace in which the issuing company does business; and there is no authority for this rule. *Stoneridge*, 552 U.S. at 160.

As such, the undisclosed conduct Plaintiffs allege supports their scheme liability claim cannot form the basis for a presumption of reliance under *Basic*.

*Galena*, discussed in Section II(A)(iii) above, also does not support Plaintiffs on this point. There, the court found that the plaintiffs were entitled to the *Basic* presumption on their scheme claim, *Galena*, 117 F. Supp. 3d at 1199, but crucial to the analysis was the alleged "additional conduct" that went beyond the misstatements, *id.* at 1193, and "resulted in allegedly misleading information being *disseminated* to the public," *id.* at 1198 (emphasis added). The conduct essential to plaintiffs' scheme claim—such as drafting allegedly false and misleading articles, hiring authors to draft the articles, approving the articles, and publishing them—was "publicly known and

16

affect[ed] the market," as the contents of the articles at issue and their existence were *public*. *Id.* at 1193. Therefore, this conduct could be presumed to be reflected in Galena's stock price and relied upon by the market.

In sharp contrast here, the purported channel stuffing and accounting that Plaintiffs allege helped "hide the massive incentives given to distributors," AC ¶ 63, did not disseminate misleading information to the public. Even taking Plaintiffs' allegations as true that Defendants stuffed the channel and fudged Dentsply's financials such that the incentives were hidden and revenues were higher (which is disputed, *see generally* Defs.' MOL, Dkt. No. 173), that alleged conduct did not disseminate misleading information to the public in a way that is additional to or separate from the challenged statements at the heart of Plaintiffs' Rule 10b-5(b) claim. Defendants dispute that their conduct comprised any part of a "scheme," but even taking Plaintiffs' pleading at face value, the alleged conduct would be akin to the "generally unknown" actions of the *Stoneridge* vendors—the "behind-the-scenes" transactions unknown to the market—and therefore cannot support the *Basic* presumption of reliance. *Galena*, 117 F. Supp. 3d at 1199. Here, only the alleged misstatements and omissions underlying Plaintiffs' Rule 10b-5(b) claim could have been relied on by Plaintiffs or other investors; not the transactions that the Company entered into with its distributors.

*Hawaii Ironworkers Annuity Trust Fund v. Cole*, 296 F.R.D. 549 (N.D. Ohio 2013), where plaintiffs were denied the *Basic* presumption even on class certification, illustrates why Plaintiffs' *Basic* presumption argument fails here. In *Hawaii Ironworkers*, the plaintiffs alleged that a company's former corporate officers engaged in deceptive conduct, including negotiating and entering into one-off sales transactions that inflated the company's earnings. *Id.* at 557. The inflated earnings were reflected in press releases disseminated to the public. *Id.* The court held that on those facts the plaintiffs could not invoke the *Basic* presumption, reasoning that because

17

the company's "press releases do not refer to the deceptive conduct in which defendants allegedly engaged, they are insufficient to communicate that conduct to the public." *Id.*  As the court explained, "absent public disclosure of a defendant's own deceptive conduct, the market cannot have taken that conduct into account when pricing the company's securities." *Id.* at 558.  Here, the market could not have relied on the alleged channel stuffing because it involved internal mismanagement and was not disclosed to the market.   And it is long established that mismanagement cannot be challenged under the federal securities laws. *See Superintendent of Ins. of State of N. Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12 (1971) ("Congress by [Section] 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement."); *see also In re CarLotz, Inc. Sec. Litig.*, 2024 WL 3924708, at \*5 (S.D.N.Y. Aug. 23, 2024) ("[I]t's clear that an act must be 'inherently deceptive' to give rise to scheme liability . . . allegations of 'corporate mismanagement' do not suffice.").

Additionally, the court in *Hawaii Ironworkers* rejected the argument that the press releases disclosed the conduct alleged to be deceptive by announcing the company's performance results, which had been allegedly inflated by the scheme, including an alleged "massive accounting fraud." 296 F.R.D. at 557–58 (explaining that one of the press releases specifically highlighted the profit increase in defendants' own business unit).  The court emphasized that contention as "inconsistent with *Stoneridge* . . . which rejected the argument 'that in an efficient market investors rely not only upon public statements relating to a security but also upon the transactions those statements reflect.'"  *Id.* at 557 (quoting *Stoneridge*, 552 U.S. at 160).  On this basis, any of the public statements Plaintiffs allege in this case—including press releases, earnings calls, and other public materials—are not enough to sustain a presumption of reliance for Plaintiffs' scheme claim. Even if those statements "flowed from" the purported inflated financial results stemming from the

18

alleged channel stuffing or accounting fraud schemes, those statements nonetheless do not satisfy the public-disclosure requirement under *Stoneridge*. *Id*. at 558.

Other courts that have analyzed the *Basic* presumption in the context of scheme liability have similarly concluded that *Stoneridge* precludes the presumption of reliance unless the "conduct alleged had another way of reaching the public," through means "which are not the basis of Plaintiffs' Rule 10b-5(b) claim." *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 57 F. Supp. 3d 950, 982 (D. Minn. Sept. 29, 2014). In *Medtronic*, for instance, plaintiffs alleged that Medtronic collaborated with consulting physicians to design early clinical studies that overstated the efficacy and understated the risks of a new product and resulted in "explosive" sales and revenue growth for the company after the studies were published through journal articles. *Id*. at 983. For example, plaintiffs alleged that Medtronic paid authors who wrote the articles and "heavily edited the articles." *Id*. at 965. The court allowed plaintiffs to invoke the *Basic* presumption for their scheme claim because the alleged conduct reached the public through certain studies that were not the basis of plaintiffs' Rule 10b-5(b) claim. *See id*. at 982.

In contrast here, Plaintiffs have not identified how Defendants' alleged channel stuffing or accounting fraud were "presented to the public" beyond general statements regarding the Company's performance, "which [are] the basis of a separate claim." *Id*. The alleged channel stuffing and accounting fraud had no way of reaching (and did not reach) the public through any means other than the disclosures at the heart of Plaintiffs' Rule 10b-5(b) claim. To the extent Plaintiffs are entitled to the *Basic* presumption of reliance (which they are not), it could only be as to statements that were publicly known, and not as to the non-public conduct.

In light of *Stoneridge* and the cases that follow it, Plaintiffs could not benefit from the *Basic* presumption of reliance on their scheme liability claim, even if their scheme liability claim were

19

viable (it is not) and even if materiality were undisputed (it is not). Accordingly, Plaintiffs' motion for partial summary judgment on reliance on their scheme liability claim should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment should be denied in its entirety.


Dated: December 19, 2025          Respectfully submitted,
       New York, New York

                                  /s/ Roger A. Cooper
                                  Roger A. Cooper
                                  racooper@cgsh.com
                                  Andrew Weaver
                                  aweaver@cgsh.com
                                  CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                  One Liberty Plaza
                                  New York, New York 10006
                                  T: 212-225-2283

                                  Angela L. Dunning
                                  adunning@cgsh.com
                                  CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                  1841 Page Mill Rd
                                  Palo Alto, CA 94304
                                  T: 650-815-4131

                                  Thomas A. Bednar
                                  tbednar@cgsh.com
                                  CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                  2112 Pennsylvania Avenue, NW
                                  Washington, D.C. 20037
                                  T: 202-974-1836

                                  *Counsel for Defendant Dentsply Sirona Inc.*

                                  /s/ Meredith D. Karp
                                  Bryce L. Friedman
                                  Craig S. Waldman
                                  Meredith D. Karp
                                  Isabel R. Mattson
                                  SIMPSON THACHER & BARTLETT LLP
                                  425 Lexington Avenue

20

New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
bfriedman@stblaw.com
cwaldman@stblaw.com
meredith.karp@stblaw.com
isabel.mattson@stblaw.com

*Counsel for Defendant Donald M. Casey, Jr.*

/s/ Seth L. Levine
Seth L. Levine
Chad P. Albert
Adam M. King
slevine@levinelee.com
calbert@levinelee.com
aking@levinelee.com
LEVINE LEE LLP
400 Madison Avenue
New York, NY 10017
T: 212-223-4400

*Counsel for Defendant Jorge M. Gomez*

21

## Certificate of Compliance

I hereby certify that the foregoing memorandum of law complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York because, excluding the parts of the document exempted by Rule 7.1(c), it contains 6,417 words as calculated by Microsoft Word.

*/s/ Roger A. Cooper*
Roger A. Cooper

22