UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

SAN ANTONIO FIRE AND POLICE
PENSION FUND, CITY OF BIRMINGHAM
RETIREMENT AND RELIEF SYSTEM, EL
PASO FIREMEN & POLICEMEN'S
PENSION FUND, and WAYNE COUNTY
EMPLOYEES' RETIREMENT SYSTEM,
Individually and on Behalf of All Others
Similarly Situated,

                         Plaintiffs,

      vs.

DENTSPLY SIRONA INC., DONALD M.
CASEY, JR., and JORGE GOMEZ,

                  Defendants.

———————————————————— x

: Civil Action No. 1:22-cv-06339-AS
: (Consolidated)
:
: <u>CLASS ACTION</u>
:
: PLAINTIFFS' MEMORANDUM OF LAW
: IN SUPPORT OF THEIR OPPOSITION TO
: DEFENDANTS' MOTION FOR PARTIAL
: SUMMARY JUDGMENT

**[REDACTED]**

4933-4925-0174.v2

**INDEX OF DEFINED TERMS**

**10-K**: Form 10-K – an annual report required to be filed with the SEC (defined below) pursuant to §13 or §15(d) of the Securities Exchange Act of 1934 (15 U.S.C. §78m or §78o(d))

**10-Q**: Form 10-Q – a quarterly report required to be filed with the SEC (defined below) pursuant to §13 or §15(d) of the Securities Exchange Act of 1934 (15 U.S.C. §78m or §78o(d))

**1H21**: First half of fiscal year 2021 (at Dentsply (defined below), January 1, 2021-June 30, 2021)

**1Q21**: First fiscal quarter of 2021 (at Dentsply, January 1, 2021-March 31, 2021)

**2H21**: Second half of fiscal year 2021 (at Dentsply, July 1, 2021-December 31, 2021)

**2Q21**: Second fiscal quarter of 2021 (at Dentsply, April 1, 2021-June 30, 2021)

**3Q21**: Third fiscal quarter of 2021 (at Dentsply, July 1, 2021-September 30, 2021)

**4Q21**: Fourth fiscal quarter of 2021 (at Dentsply, October 1, 2021-December 31, 2021)

**1Q22**: First fiscal quarter of 2022 (at Dentsply, January 1, 2022-March 31, 2022)

**2H22**: Second half of fiscal year 2022 (at Dentsply, July 1, 2022-December 31, 2022)

**2Q22**: Second fiscal quarter of 2022 (at Dentsply, April 1, 2022-June 30, 2022)

**3Q22**: Third fiscal quarter of 2022 (at Dentsply, July 1, 2022-September 30, 2022)

**AC**: Amended Complaint for Violations of the Federal Securities Laws (ECF 72)

**AS 2401:** The professional auditing standard that addresses the consideration of fraud in a financial statement audit

**Asamoah**: Jerry Asamoah, Dentsply's VP, CFO – NA RCO (defined below) until November 2021 (then VP, CFO – Global Supply Chain & Procurement until May 2022)

**ASC-605**: The predecessor to ASC-606 (defined below)

**ASC-606**: Accounting Standards Codification 606, which provides the accounting standard under GAAP for accounting for revenue from contracts with customers, effective January 1, 2018

**Brooks Declaration**: Declaration of Luke O. Brooks in Support of Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment, filed herewith

**Bruno**: Eric Bruno, Senior Vice President, North America Regional Commercial Organization

4933-4925-0174.v2

**CAD/CAM**: Computer-Aided Design/Computer-Aided Manufacturing, a category of products manufactured and sold in the T&E segment

**Cain**: Matthew D. Cain, Ph.D., Plaintiffs' proffered expert on loss causation and damages

**Cain Report**: The Expert Report of Matthew D. Cain, Ph.D., submitted September 5, 2025

**Casey**: Defendant Donald M. Casey, former CEO (defined below) of Dentsply

**CBCTs**: Cone-beam X-ray machine products (*e.g.*, Orthophos)

**Cease-and-Desist Order**: *In the Matter of Dentsply Sirona, Inc.*, Admin. Proc. File No. 3-20170, Exchange Act Release No. 90681, Order Instituting Cease-and-Desist Proceedings (Dec. 16, 2020), attached to the Brooks Declaration as Ex. 18

**CEREC**: Chairside Economical Restoration of Esthetic Ceramic system, an integrated CAD/CAM system combining one or more Dentsply CAD/CAM products (often Primemill and Primescan) with Dentsply's proprietary software

**CEO**: Chief Executive Officer

**CFO**: Chief Financial Officer

**Chadha**: Ranjit Chadha, Dentsply's Chief Accounting Officer

**Channel**: Dentsply's North America distributor channel for T&E, comprised of Patterson (defined below) and Schein (defined below)

**Ciulla**: Ken Ciulla, former Director – National Accounts for Dentsply's NA RCO (defined below), with responsibility for Patterson

**Class Period**: June 9, 2021-November 13, 2022, inclusive

**Code**: Dentsply's Code of Ethics and Business Conduct

**Consumables**: Small equipment or single-use products such as medical drills, files, artificial teeth, restorative and impression materials, and sealant products

**Defendants**: Dentsply, Casey, and Gomez (defined below)

**Dentsply or Company**: Defendant Dentsply Sirona Inc.

**Distributors**: Patterson (defined below) and Schein (defined below)

**EO**: Dentsply's extra-oral imaging equipment, such as Axeos or Orthophos

4933-4925-0174.v2

**FY21**: Fiscal year 2021 (at Dentsply, January 1, 2021-December 31, 2021)

**FY22**: Fiscal year 2022 (at Dentsply, January 1, 2022-December 31, 2022)

**GAAP**: Generally Accepted Accounting Principles

**Gomez**: Jorge Gomez, defendant and former Dentsply CFO

**ICFR**: Internal Controls Over Financial Reporting

**Internal Investigation or Investigation**: An internal investigation performed by Hogan Lovells LLP on behalf of the Audit Committee beginning in March 2022, into, *inter alia*: (i) "allegations regarding certain financial reporting matters submitted by current and former employees…focused on the Company's use of incentives to sell products to certain distributors in North America in the third and fourth quarters of 2021, whether those incentives were appropriately accounted for, and whether the impact of the sales to which they were applied were adequately disclosed in the Company's periodic reports filed" with the SEC; (ii) "allegations that certain former members of senior management may have directed" the "use of these incentives and other actions to achieve executive compensation targets in 2021"; and (iii) revenue recognition issues in its China office. The conclusions of the Internal Investigation were announced in Dentsply's November 1, 2022 Form 8-K filed with the SEC.

**IO**: Dentsply's intra-oral imaging equipment, such as Schick sensors

**Killian**: Josh Killian, Vice President – Marketing, Patterson Dental (a business unit of Patterson)

**MD&A**: Management's Discussion and Analysis of Financial Condition and Results of Operations section of certain SEC filings, including 10-Ks and 10-Qs

**MSJ**: Defendants' Memorandum of Law in Support of Their Motion for Partial Summary Judgment (ECF 173)

**NA**: North America

**NALT**: North America Leadership Team

**Patterson**: Patterson Companies, Inc.

**Petersohn**: Walter Petersohn, Dentsply's former Chief Commercial Officer

**Plaintiffs**: Lead Plaintiffs and Class Representatives City of Birmingham Retirement and Relief System, El Paso Firemen & Policemen's Pension Fund, and Wayne County Employees' Retirement

4933-4925-0174.v2

System and the Class as defined in the Court's Opinion and Order (ECF 153), filed July 10, 2025, granting class certification

**PwC**: PricewaterhouseCoopers LLP

**RCO**: Regional Commercial Organization

**Restatement**: Dentsply's amendment of its previously issued 3Q21 10-Q and FY21 10-K as a result of the Company's and its Audit Committee's determination that the Company's consolidated financial statements and related disclosures for the three and nine months ended September 30, 2021 and FY21 should no longer be relied upon because of certain misstatements contained in those financial statements

**SAB-99**: SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150-01 (Aug. 12, 1999)

**Schein**: Henry Schein, Inc.

**SEC**: United States Securities and Exchange Commission

**Seymour**: Lauren Seymour, Dentsply's former Vice President of Sales, North America Commercial

**SOX Certification**: Certification submitted by a public company's CEO and CFO pursuant to §302 of the Sarbanes-Oxley Act of 2002

**Staehler**: Cord Staehler, Dentsply's former Chief Technology Officer

**T&E**: Dentsply's Technology & Equipment segment, including, *inter alia*, its CAD/CAM and imaging equipment

**Yankie**: Lisa Yankie, Dentsply's former Chief Human Resources Officer

**Zeljkovic**: Ivan Zeljkovic, Dentpsly's VP of Commercial Finance during the Class Period

**Zhu**: Mavis Zhu, a former Dentsply controller for its China group ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Emphasis is added and citations are omitted throughout unless otherwise indicated.

4933-4925-0174.v2

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...............................................................................................1

II.   STATEMENT OF FACTS ..................................................................................2

    A.    Dentsply's Business .................................................................................2

    B.    Extraordinary Challenges Threatened Dentsply's Financial Results in
        2021 and 2022 ..........................................................................................3

        1.    Dentsply's ▮▮▮▮▮▮ Product Defects ...............................3

        2.    Supply Constraints Caused an ▮▮▮▮▮▮▮ ................5

    C.    Casey and Gomez Fostered a ▮▮▮▮ Environment and ▮▮▮
        ▮▮▮▮▮▮▮▮▮▮ ....................6

    D.    Defendants Resort to Channel-Stuffing to Conceal Dentsply's Challenges
        and Achieve Financial Targets .................................................................7

        1.    3Q21: Defendants Provide Distributors ▮▮▮▮
            Incentives ...................................................................................7

        2.    4Q21: Defendants Go ▮▮▮▮▮▮ .................................9

    E.    Accounting Improprieties Further Concealed Operational Problems ▮
        ▮▮▮▮▮▮▮ ..................................................9

II.   LEGAL STANDARD..........................................................................................11

IV.   TRIABLE ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ..........11

    A.    Unchallenged Misstatements ...................................................................11

    B.    Challenged Misstatements .......................................................................12

        1.    June 9, 2021 Misstatements ........................................................12

        2.    August 5, 2021 Misstatements.....................................................13

        3.    September 15, 2021 Misstatements .............................................15

        4.    November 4, 2021 Misstatements................................................15

        5.    November 11, 2021 Misstatements..............................................16

        6.    December 1, 2021 Misstatements ................................................17

4933-4925-0174.v2

**Page**

7.    February 28, 2022 Misstatements ...........................................................18

8.    March 1, 2022 Misstatements .................................................................19

9.    Accounting Misstatements ......................................................................19

10.   Defendants Waived Their "Inactionable Opinion" and Scienter
      Arguments ...............................................................................................20

C.    Accounting Misstatements .................................................................................20

1.    Motive and Opportunity ..........................................................................21

2.    Magnitude of the Fraud ...........................................................................21

3.    Tone at the Top and Executive Terminations .........................................22

4.    Revenue Manipulation Through Warranty Returns .................................24

5.    Incentive Accounting ..............................................................................25

6.    Fraud and Retaliation in China ...............................................................26

D.    Scheme Liability .................................................................................................26

E.    Loss Causation ....................................................................................................27

1.    Loss Causation Evidence ........................................................................28

2.    Defendants' Motion Is Non-Dispositive and Procedurally Improper ........28

3.    February 28, 2022 ...................................................................................29

4.    April 19, 2022 .........................................................................................29

5.    May 10, 2022 ..........................................................................................30

6.    November 14, 2022 .................................................................................31

F.    Control-Person Liability .....................................................................................31

V.    CONCLUSION ..............................................................................................................32

4933-4925-0174.v2

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Allegheny Cnty. Emps' Ret. Sys. v. Energy Transfer LP*,
532 F. Supp. 3d 189 (E.D. Pa. 2021) ......................................................................19

*Alpha Cap. Anstalt v. Schwell Wimpfheimer & Assocs. LLP*,
2018 WL 1627266 (S.D.N.Y. Mar. 30, 2018) ........................................................27

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) .....................................................................................23

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .................................................................................................27

*Bishins v. CleanSpark, Inc.*,
2023 WL 112558 (S.D.N.Y. Jan. 5, 2023) .............................................................14

*Chill v. Gen. Elec. Co.*,
101 F.3d 263 (2d Cir. 1996) ....................................................................................25

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
477 F. Supp. 3d 123 (S.D.N.Y. 2020) .....................................................................14

*Cofimco USA, Inc. v. Mosiewicz*,
2016 WL 1070854 (S.D.N.Y. Mar. 16, 2016) .................................................14, 15

*Eden Alpha CI LLP v. Polished.com Inc.*,
763 F. Supp. 3d 270 (E.D.N.Y. 2025) .....................................................................17

*Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017) ...............................................................22, 25

*Gimpel v. Hain Celestial Grp., Inc.*,
156 F.4th 121 (2d Cir. 2025) .......................................................................12, 14, 15

*Ideal Steel Supply Corp. v. Anza*,
652 F.3d 310 (2d Cir. 2011) ....................................................................................11

*In re Allergan PLC Sec. Litig.*,
2022 WL 17584155 (S.D.N.Y. Dec. 12, 2022) .......................................................15

*In re Am. Realty Cap. Props., Inc. Litig.*,
2019 WL 2082508 (S.D.N.Y. May 10, 2019) .........................................................22

4933-4925-0174.v2

**Page**

*In re Am. Serv. Grp., Inc.*,
  2009 WL 1348163 (M.D. Tenn. Mar. 31, 2009) ....................................................................23

*In re Cannavest Corp. Sec. Litig.*,
  307 F. Supp. 3d 222 (S.D.N.Y. 2018)..............................................................................22, 27

*In re Celestica Inc. Sec. Litig.*,
  2014 WL 4160216 (S.D.N.Y. Aug. 20, 2014).................................................................11, 21

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
  2021 WL 3727095 (S.D.N.Y. Aug. 23, 2021)........................................................................20

*In re Dentsply Sirona, Inc. Sec. Litig.*,
  665 F. Supp. 3d 255 (E.D.N.Y. 2023) ....................................................................................16

*In re E. Palestine Train Derailment*,
  2025 WL 581003 (N.D. Ohio Feb. 21, 2025)..........................................................................30

*In re Galena Biopharma, Inc. Sec. Litig.*,
  117 F. Supp. 3d 1145 (D. Or. 2015) .......................................................................................27

*In re Lehman Bros. Sec. & Erisa Litig.*,
  131 F. Supp. 3d 241 (S.D.N.Y. 2015)....................................................................................16

*In re Mylan N.V. Sec. Litig.*,
  666 F. Supp. 3d 266 (S.D.N.Y. 2023).....................................................................................31

*In re N. Telecom Ltd. Sec. Litig.*,
  116 F. Supp. 2d 446 (S.D.N.Y. 2000)..............................................................................14, 25

*In re Omnicom Grp., Inc. Sec. Litig.*,
  597 F.3d 501 (2d Cir. 2010).....................................................................................................31

*In re Refco Inc. Sec. Litig.*,
  2011 WL 13261982 (S.D.N.Y. Apr. 11, 2011)........................................................................20

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001).................................................................................................25, 26

*In re Scottish Re Grp. Sec. Litig.*,
  524 F. Supp. 2d 370 (S.D.N.Y. 2007).....................................................................................23

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018).........................................................................19

4933-4925-0174.v2

**Page**

*In re Taleo Corp. Sec. Litig.*,
  2010 WL 597987 (N.D. Cal. Feb. 17, 2010) ..........................................................................25

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  625 F. Supp. 3d 164 (S.D.N.Y. 2022) ....................................................................................13

*In re Veon Ltd. Sec. Litig.*,
  2025 WL 66444 (S.D.N.Y. Jan. 10, 2025) ..............................................................................30

*In re Virtu Fin., Inc. Sec. Litig.*,
  770 F. Supp. 3d 482 (E.D.N.Y. 2025) .....................................................................................16

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016) .........................................................................................14, 27, 28

*In re Vivendi Universal, S.A., Sec. Litig.*,
  634 F. Supp. 2d 352 (S.D.N.Y. 2009) ........................................................................28, 29, 31

*In re WorldCom, Inc. Sec. Litig.*,
  352 F. Supp. 2d 472 (S.D.N.Y. 2005) .....................................................................................20

*Lentell v. Merrill Lynch & Co., Inc.*,
  396 F.3d 161 (2d Cir. 2005) ....................................................................................................27

*Lickteig v. Cerberus Cap. Mgmt., L.P.*,
  589 F. Supp. 3d 302 (S.D.N.Y. 2022) ........................................................................12, 17, 18

*Lorenzo v. SEC*,
  587 U.S. 71 (2019) .............................................................................................................26, 27

*McClellan v. Smith*,
  439 F.3d 137 (2d Cir. 2006) ....................................................................................................11

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
  277 F. Supp. 3d 500 (S.D.N.Y. 2017) .....................................................................................27

*Meyer v. Jinkosolar Holdings Co., Ltd.*,
  761 F.3d 245 (2d Cir. 2014) ....................................................................................................16

*Norris v. Goldner*,
  2023 WL 5477229 (S.D.N.Y. Aug. 24, 2023) ...................................................................28, 29

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ....................................................................................................21

4933-4925-0174.v2

**Page**

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
367 F. Supp. 3d 16 (S.D.N.Y. 2019)..................................................................................15

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)..........................................................................................................20

*Ont. Tchrs.' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
432 F. Supp. 3d 131 (D. Conn. 2019)................................................................................30

*Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*,
595 F.3d 86 (2d Cir. 2010).................................................................................................13

*Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*,
89 F. Supp. 3d 602 (S.D.N.Y. 2015)..................................................................................24

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
207 F. Supp. 2d 292 (S.D.N.Y. 2002)................................................................................21

*Robeco Cap. Growth Funds SICAV v. Peloton Interactive, Inc.*,
665 F. Supp. 3d 522 (S.D.N.Y. 2023)................................................................................14

*SEC v. Caserta*,
75 F. Supp. 2d 79 (E.D.N.Y. 1999) ...................................................................................22

*SEC v. Egan*,
994 F. Supp. 2d 558 (S.D.N.Y. 2014)................................................................................22

*SEC v. Farnsworth*,
692 F. Supp. 3d 157 (S.D.N.Y. 2023)................................................................................27

*SEC v. Gabelli*,
653 F.3d 49 (2d Cir. 2011).................................................................................................13

*SEC v. Kelly*,
817 F. Supp. 2d 340 (S.D.N.Y. 2011)................................................................................27

*SEC v. MiMedx Grp., Inc.*,
2022 WL 902784 (S.D.N.Y. Mar. 28, 2022) .....................................................................26

*SEC v. Rio Tinto,*
41 F.4th 47, 49 (2d Cir. 2022) .............................................................................................6

*SEC v. Sequential Brands Grp., Inc.*,
2021 WL 4482215 (S.D.N.Y. Sep. 30, 2021).....................................................................26

4933-4925-0174.v2

**Page**

*SEC v. Yorkville Advisors, LLC*,
  305 F. Supp. 3d 486 (S.D.N.Y. 2018)..................................................................21

*St. Clair Cnty. Emps.'Ret. Sys. v. Acadia Healthcare Co., Inc.*,
  2025 WL 2940714 (M.D. Tenn. Oct. 16, 2025) ...................................................27

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
  552 U.S. 148 (2008)..............................................................................................27

*Tolbert v. Queens Coll.*,
  242 F.3d 58 (2d Cir. 2001).....................................................................................20

*Vivenzio v. City of Syracuse*,
  611 F.3d 98 (2d Cir. 2010).....................................................................................11

*Wartluft v. Milton Hershey Sch. & Sch. Tr.*,
  2020 WL 1285332 (M.D. Pa. Mar. 18, 2020).......................................................28

*Yoshikawa v. Exxon Mobil Corp.*,
  2024 WL 3802997 (N.D. Tex. Aug. 12, 2024).......................................................27

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78j(b) ...................................................................................................................31

Federal Rules of Civil Procedure
  Rule 56(a).........................................................................................................11, 29

17 C.F.R.
  240.10b-5(a)...........................................................................................................26
  240.10b-5(c)...........................................................................................................26

4933-4925-0174.v2

## I.    INTRODUCTION

In the midst of widespread operational failures, Casey and Gomez assured investors demand was strong, supply was stable, and Dentsply was well-positioned.  In truth, Dentsply suffered from

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████     Meanwhile, Dentsply's supply-chain was in crisis.    █████

████████████████████████████████████████████████████████████

████████████████████████████████████     Casey acknowledged    ████████

████████████████████████████████████████████████     but publicly

claimed: "We have a terrific supply chain."

████████████████████████████████████████████████████████████

█████    Nevertheless, Casey    ████████████████████████████████████

████████████████     Casey and Gomez were motivated by a personal jackpot –    ████████

████████████████████████████████████████████████████████████

████████████████████████████

To hit the targets, Defendants engaged in channel-stuffing.  When distributors told Dentsply

████████████████████████████████     Defendants offered    ████████    incentives, which generated tens of millions in sales and inflated distributor inventory levels, harming future sales.  Defendants also violated GAAP, manipulated returns,    ████████████████████████

████, and maintained defective internal controls, including a coercive "tone at the top" that rewarded

- 1 -

4933-4925-0174.v2

fraud and punished compliance.   Ultimately, Dentsply had to restate virtually every financial account.  ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████

████████████████████████ to establishing they are entitled to partial summary judgment. They fail to challenge many misstatements and analyze others in isolation.  But statements must be considered in context, and a reasonable jury could easily find Defendants' statements materially misleading given Dentsply's ████████████████████ channel-stuffing, and accounting manipulations.  Defendants also ignore extensive scienter evidence: ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Defendants' loss-causation arguments are makeweight.  Plaintiffs' expert identifies four statistically significant declines and links them to the fraud.  Defendants challenge only some disclosures and improperly dispute facts related to others, which is a classic jury question.

## II.     STATEMENT OF FACTS

### A.     Dentsply's Business

Dentsply sells dental equipment, including T&E and Consumables.  ¶241.[1]  T&E includes CAD/CAM and imaging devices, and Consumables are single-use items.  *Id*.  Dentsply's CAD/CAM products included Primescan and Primemill, and its imaging equipment included EO x-ray machines (Axeos and Orthophos) and IO sensors (Schick).  ¶¶242, 244.  T&E featured prominently in Dentsply's growth-story.  ¶245.  For example, when reporting on Dentsply's plan "to accelerate

---

[1]   All "¶__" references are to Plaintiffs' Response to Defendants' 56.1 Statement, filed concurrently herewith.

4933-4925-0174.v2

growth [and] improve margins," Defendants highlighted "accelerating growth behind new products, including Primescan and Primemill." *Id.*

Dentsply sold its T&E in North America through distributors – Patterson and Schein – which then sold to end-users (dentists). ¶247. ███████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████

Dentsply has a history of channel-stuffing. In 2020, the SEC issued a Cease-and-Desist Order against Dentsply because it had sold "more of its dental technologies equipment to its exclusive distributor…than the distributor could sell to retail purchasers" and didn't make "required disclosure[s] of known trends" related to channel-stuffing. ¶¶260-267.

**B.    Extraordinary Challenges Threatened Dentsply's Financial Results in 2021 and 2022**

The Class Period begins on June 9, 2021, when Gomez told investors that CAD/CAM was seeing a "good rebound of…sales" and making "good progress." ¶105. On August 5, 2021, Casey told investors Dentsply was "confident that the underlying fundamentals of our business are strong and that we are well positioned." ¶108. Unknown to investors, ███████████████████████████

████████████████████████████████████████████████████████████

██████████ ¶¶268-289, 290-302.

**1.    Dentsply's ████████████ Product Defects**

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

- 3 -



4933-4925-0174.v2

2.    **Supply Constraints Caused an** ████████████████
████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████ Casey told

investors: "To date, we've been able to make everything we need to make….We have a terrific

supply chain." ¶294.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

- 5 -

4933-4925-0174.v2

████████████████████████████████████████████████████████

████████████████████████████████████████    Casey told investors: "We're not seeing huge

delays…we can get stuff." ¶298.

    **C.**    **Casey and Gomez Fostered a** ███████████ **Environment and** ███████

████████████████████████████

Casey and Gomez created a toxic culture conducive to fraud. ¶¶423, 427-459 ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████    Dentsply admitted Casey and Gomez violated Dentsply's Code, including by

fostering "a culture where employees did not feel comfortable raising concerns without fear of

- 6 -

retaliation" and failing to "promote an appropriate control environment focused on compliance."
¶¶170, 423, 442.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

**D.    Defendants Resort to Channel-Stuffing to Conceal Dentsply's Challenges and Achieve Financial Targets**

**1.    3Q21: Defendants Provide Distributors ████████ Incentives**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

With the OMPRSU Award at stake, Casey, Gomez, Bruno, and others ████████

████████████████████████████████████████████████████

4933-4925-0174.v2



Through the scheme, Dentsply drove $38M of net sales, achieved market expectations,

4933-4925-0174.v2

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███

     2.     **4Q21: Defendants Go** ██████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████

This time, the scheme wasn't enough. While it drove $70M of sales, Dentsply missed 4Q21 and FY21 expectations. ¶¶346, 462. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████

E.     **Accounting Improprieties Further Concealed Operational Problems**
     ████████████████████████████

In November 2022, Dentsply restated its 3Q21 10-Q and FY21 10-K due to prolific GAAP violations, misstated MD&A disclosures, and material weaknesses in ICFR. ¶¶374-386. Dentsply restated *nearly every* financial account and amended its MD&A to include channel-stuffing-related disclosures. ¶¶375-379. The accounting misstatements were material because they, *e.g.*, "masked a

4933-4925-0174.v2

failure to meet internal financial targets and external financial analyst expectations for [3Q21] and due to the material weaknesses." ¶¶380, 400.

The accounting improprieties further concealed Dentsply's channel-stuffing and operational challenges. Dentsply: (i) improperly accounted for return-related warranty credits, which overstated revenue and hid increasing quality-related returns; (ii) inadequately accrued for Distributor and end-user incentives, which inflated 4Q21 revenues; and (iii) omitted from its MD&A information regarding incentives, inflated inventory, and their likely, negative impact on future sales, ███████████ ████████████████████████████████████████████ ¶¶160, 376-379, 398, 401-402, 407-409. Casey, Gomez, and Chadha ██████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████

Dentsply admitted its accounting misstatements were caused by material weaknesses, including: (i) Casey's and Gomez's deficient "tone at the top" and participation "in conduct that was inconsistent with the Company's culture of compliance"; and (ii) failure to "design and maintain effective controls associated with approving, communicating, and accounting for incentive arrangements with customers." ¶¶189, 192, 380-385, 418-422, 427-453. ████████████

- 10 -

████████████████████████████████████████████████████████

██████

The fraud inevitably collapsed, and the relevant truth emerged through a series of partial disclosures, ██████████████████████████████████████████████████ ¶¶460-484.

## II.    LEGAL STANDARD

Summary judgment should be denied unless "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  Defendants have "'the burden of establishing that no genuine issue of material fact exists.'" *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  Summary judgment is inappropriate "'if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party.'" *In re Celestica Inc. Sec. Litig.*, 2014 WL 4160216, at \*4 (S.D.N.Y. Aug. 20, 2014).  Courts "must construe the evidence in the light most favorable to the non-moving party and draw all inferences in that party's favor." *Id.*  Courts cannot "'weigh the evidence and determine the truth'" (*id.*), or "resolve disputed questions of fact." *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 326 (2d Cir. 2011).  "'Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'" *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006).

## IV.    TRIABLE ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT

### A.    Unchallenged Misstatements

Defendants fail to challenge multiple misstatements, including about CAD/CAM, demand, and inventory.  AC¶¶103-104, 113, 115, 120, 129, 141, 144.  They don't challenge Dentsply's MD&A misstatements (AC¶¶123-124, 128, 134), which Dentsply admitted were materially misleading by restating.  ¶¶376-379, 398.  Defendants also concede on their SOX certifications,

- 11 -

4933-4925-0174.v2

which represented Dentsply's controls were effective.  AC¶¶153, 209-210. ██████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████

### B.   Challenged Misstatements

Whether a statement was false or misleading is a "quintessential jury question[]" (*Lickteig v. Cerberus Cap. Mgmt., L.P.*, 589 F. Supp. 3d 302, 326 (S.D.N.Y. 2022)), and depends not on "'literal truth'" but on "'context and manner of presentation.'"  *Gimpel v. Hain Celestial Grp., Inc.*, 156 F.4th 121, 139 (2d Cir. 2025).

### 1.   June 9, 2021 Misstatements

Gomez assured investors that CAD/CAM and imaging demand was strong and T&E trends were positive.  ¶105.  But by June 2021, ████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

Gomez's statement that Dentsply aimed "to match end-customer demand with our sales" was misleading because ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

4933-4925-0174.v2

Defendants' arguments about literal truth ignore that "'half-truths' – literally true statements that create a materially misleading impression" – are actionable. *SEC v. Gabelli*, 653 F.3d 49, 57 (2d Cir. 2011); *see also Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92 (2d Cir. 2010). Gomez represented that CAD/CAM and imaging demand was strong and T&E trends were positive, ███████████████████

### 2. August 5, 2021 Misstatements

The Court confirmed that whether Casey's statements that the "underlying fundamentals of our business are strong and that we are well positioned" (¶108) and Dentsply was "well positioned to deliver sustainable growth" (¶109) were misleading is a jury question, holding they could be misleading if "(as alleged) the company was having trouble getting the materials to make the products, many of the products it did make didn't work, and much of its sales were due to channel stuffing." ECF 106 at 7.



---

2  *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164 (S.D.N.Y. 2022), is inapt. There, plaintiffs abandoned certain puffery statements and didn't identify known facts contradicting other statements. *Id.* at 221-22.

- 13 -

4933-4925-0174.v2

Defendants' argument that Casey discussed "Dentsply's **global** business" fails. It was misleading for Casey to state Dentsply was well-positioned while concealing ██████████████ – which comprised **1/3** of Dentsply's sales – and related to T&E, which comprised **60%** of its business. ¶¶243, 246.

Casey's statements aren't forward-looking; they misrepresented then-current facts. ¶108 ("the underlying fundamentals of our business **are** strong"; "we **are** well positioned"); ¶109 ("Dentsply Sirona **is** well positioned"); *cf. Gimpel*, 156 F.4th at 143 n.15; (safe-harbor "not applicable to…representations of present fact"); *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, 477 F. Supp. 3d 123, 135 (S.D.N.Y. 2020).

Regardless, Defendants' "boilerplate" cautionary language is inadequate. *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 247 (2d Cir. 2016) (rejecting "kitchen-sink disclaimer, listing garden-variety business concerns that could affect any company[]"); *Bishins v. CleanSpark, Inc.*, 2023 WL 112558, at *6 (S.D.N.Y. Jan. 5, 2023) (cautionary language insufficient where not directly fraud-related). Defendants' boilerplate language fails: it doesn't discuss Dentsply's quality problems, shortages, or channel-stuffing.[3]

Investor Relations' involvement is irrelevant.[4] When Casey spoke, ████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████ Casey's self-serving declaration cannot eliminate all triable scienter issues. *Cofimco USA, Inc. v. Mosiewicz*, 2016 WL

---

[3]    The *Robeco Cap. Growth Funds SICAV v. Peloton Interactive, Inc.*, 665 F. Supp. 3d 522, 538-39 (S.D.N.Y. 2023), disclosures "warned of the very risk that was alleged to have occurred."

[4]    In *In re N. Telecom Ltd. Sec. Litig.*, 116 F. Supp. 2d 446, 464 (S.D.N.Y. 2000), defendants made predictions of future performance proven inaccurate in hindsight – not statements of present status contradicted by known facts.

- 14 -

4933-4925-0174.v2

1070854, at *4 & n.36 (S.D.N.Y. Mar. 16, 2016) (giving "little weight" to "self-serving declarations"; collecting cases).

### 3.     September 15, 2021 Misstatements

When Gomez stated CAD/CAM and digital products were strong and had positive momentum (¶115), they didn't.  Nor was Dentsply positioned to sustainably reach 4%-5% growth. ¶¶116-117.

[5]

The safe harbor doesn't apply because Gomez stated Dentsply was **currently** well-positioned for growth.  ¶117.  His self-serving declaration is meritless.  *Cofimco*, 2016 WL 1070854, at *4 & n.36.

### 4.     November 4, 2021 Misstatements

Defendants' pronouncements that they raised guidance based on 3Q21 results, "solid performance of our business year-to-date," and "current market trends" (¶¶122-123) were misleading because they omitted that

"By 'put[ting] the reasons for [Dentsply's] success at issue, but fail[ing] to disclose a material source of its success, specifically the practice of channel stuffing, the[se] statement[s] [were] materially misleading.'"  *Gimpel*, 156 F.4th at 141; *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 33 (S.D.N.Y. 2019).

---

[5]    Unlike in *In re Allergan PLC Sec. Litig.*, 2022 WL 17584155, at *10 (S.D.N.Y. Dec. 12, 2022), Gomez didn't share the "'whole truth'" about Dentsply's performance.

- 15 -

Gomez's inventory-statement (¶¶124-127) omitted that inventory levels had ballooned. ¶¶335-336. Defendants' fact-bound argument that Gomez spoke about internal – not distributor – inventory is a jury-question. Regardless, Gomez referenced "internal inventory, [and] *inventory in the channel*." ¶125. Later the same call, an analyst asked Gomez: "I think *you touched on this a little bit earlier*...Do you feel like inventory levels at all – have changed *with your distribution partners*?" Gomez asserted: "We don't think so. We track that closely and we manage our inventory levels in a disciplined way." ¶¶125-127. Resolving contested interpretations is inappropriate at summary judgment. *In re Lehman Bros. Sec. & Erisa Litig.*, 131 F. Supp. 3d 241, 258 (S.D.N.Y. 2015).

Gomez's inventory-statement isn't forward-looking; it misleadingly omitted a then-existing fact: channel-stuffing had swelled Distributor inventory levels by *$80M*. ¶335; *cf. Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 250 (2d Cir. 2014) ("[O]nce a company speaks on an issue or topic, there is a duty to tell the whole truth.").

### 5.    November 11, 2021 Misstatements

Casey's statements that "we've been able to make everything that we need to make" and "we have a terrific supply chain" were misleading. ¶¶132, 294. ████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████ These statements were material. *In re Dentsply Sirona, Inc. Sec. Litig.*, 665 F. Supp. 3d 255, 284 (E.D.N.Y. 2023) (statements about "'very strong and terrific'" relationship material where made to reassure investors and contradicting facts). Casey was directly responding to an analyst question about Covid-era trends (like supply-chain) the market was concerned about. ¶132; *see In re Virtu Fin., Inc. Sec. Litig.*, 770 F. Supp. 3d 482, 502 (E.D.N.Y.

4933-4925-0174.v2

2025) (statements responding "to direct questions by analysts are materially misleading when 'made in an effort to soften the significant financial impact'" of issues).

Casey's statements were also materially misleading ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Even if Casey spoke in the aggregate, materiality is a jury-question (*Lickteig*, 589 F. Supp. 3d at 326), and ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ More, Casey knew ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ ¶¶76, 130, 281, 283-287, 290-293, 324-327, 335-337, 341. Casey's statements weren't forward-looking ("as we sit here *today*…growth prospects *are* good and that 4% to 5% *is* definitely attainable" and "business going forward *is* sustainable"); the "cautionary" language wasn't meaningful (*see* §IV.B.2); and Casey's self-serving declaration is meritless (*id.*).[6]



### 6.  December 1, 2021 Misstatements

Answering another question about supply-chain, Casey stated:

> **We're not seeing huge delays.  We're seeing increased costs associated with that…we're basically – what we're learning is we can get stuff**.

¶¶136-137, 298.  These statements aren't forward-looking; Defendants' cautionary-language argument is irrelevant. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮

---

[6]   Casey addressed past and current performance, while the statements in *Eden Alpha CI LLP v. Polished.com Inc.*, 763 F. Supp. 3d 270, 308-10 (E.D.N.Y. 2025), "'relate[d] to future expectations.'"

4933-4925-0174.v2

### 7.    February 28, 2022 Misstatements

Gomez stated Dentsply's "acute supply chain…constraints" were a "temporary headwind" that would "remain challenging for at least 1 or 2 quarters," ███████████████████

███████████████████████████████ ¶¶143, 290-293, 296-297, 299-302.  Dentsply's "cautionary" language wasn't meaningful (see §IV.B.2), and Defendants don't argue the safe harbor otherwise applies.[7]

Gomez stated "retail demand for Primemill is solid" and distributors "have sufficient inventory to meet that demand." ¶144. ███████████████████ In discussing the "trade-off" between spare and production parts, Gomez omitted ███████ ████████████████ ¶¶144, 299-300.  Gomez's inventory-statement misleadingly implied distributor inventory was stable, omitting that at FY21-end, ███████████████ ██████████████████████████████ ¶¶144, 354.

Casey's statement that Dentsply's 2021 performance reflected "the strength of [Dentsply's] global portfolio, and our team's ability to execute well" and Dentsply had "a well-positioned portfolio" were materially misleading ███████████████████ ███████████████████████████ ¶¶140, 283-288, 295, 299-302, 334-336, 340, 346, 354, 356-358.  Gomez's statement that Covid-related, short-term issues were "probably the 2 main constraints" impacting demand was misleading because ███ ███████████████████████████ Id.  Defendants' interpretation that the statement concerned only Covid impacts is unsuitable for summary judgment.

---

[7]    Defendants claim AC¶¶122, 143 are forward-looking.  But they don't challenge knowledge or materiality, and they don't identify cautionary language.

4933-4925-0174.v2

### 8.    March 1, 2022 Misstatements

Code-of-ethics statements are actionable when they "are directly at odds with the conduct alleged in a complaint." *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *17 (S.D.N.Y. Nov. 26, 2018); *Allegheny Cnty. Emps' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 223-24 (E.D. Pa. 2021).

Dentsply's Code statements (¶152) are actionable.  Statements that "tone at the top" was important, and managers implemented "financial controls to identify and prevent fraud," "[e]ncourage[d] employees to speak up and report integrity or compliance issues," and "promptly implement[ed] corrective action to fix identified compliance weaknesses" were materially misleading because, as Dentsply admitted, Casey and Gomez created an "inappropriate tone at the top"; "did not maintain and promote an appropriate control environment focused on compliance"; and "created a culture where employees did not feel comfortable raising concerns."  ¶¶423, 442. Further, while claiming "Dentsply absolutely prohibits retaliation against anyone who" raised "compliance concern[s]," ████████████████████████████████████ ████████████████████████████████████  ¶¶152, 454-459.

### 9.    Accounting Misstatements

Defendants' argument that Dentsply's financial statements didn't create a duty to disclose is a strawman.  Dentsply's affirmative statements about, *e.g.*, inventory levels and Dentsply's success, created a duty to disclose, which Defendants ignore (*see* §IV.A).  Regardless, Dentsply admitted its financial statements were materially false when it restated them, and Defendants don't argue otherwise.  ¶¶376-379, 398.

4933-4925-0174.v2

### 10.    Defendants Waived Their "Inactionable Opinion" and Scienter Arguments

Defendants suggest, in one line, that various statements "contain inactionable opinions." MSJ at 16.  Defendants don't explain their argument or provide evidence precluding fact-questions regarding knowledge of falsity.  Their argument is waived.  *Tolbert v. Queens Coll.*, 242 F.3d 58, 75-76 (2d Cir. 2001).

Regardless, the Court held AC¶¶111 and 143 aren't opinions.  ECF 106 at 6-7.  Nor are the remaining statements opinions.  If they were, summary judgment would still be inappropriate because fact-issues exist regarding whether they (i) omitted information rendering them misleading, which (ii) the speaker could have known through reasonable inquiry; or (iii) contained embedded statements of fact the speaker knew were untrue.  *See* §IV.B.4; *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-86 (2015); *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2021 WL 3727095, at *5 (S.D.N.Y. Aug. 23, 2021).  Defendants' conclusory scienter argument is also waived.  *Tolbert*, 242 F.3d at 75-76.  Regardless, there is significant evidence that Defendants knew or recklessly disregarded their statements were misleading.

### C.    Accounting Misstatements

Dentsply admitted its financial statements were materially false and violated GAAP, and its ICFR had material weaknesses.  ¶¶189, 373-381, 409.  Defendants concede Dentsply's financial results and GAAP-compliance-statements were false.  They challenge scienter only.

Scienter is "'generally a question of fact, appropriate for resolution by the trier of fact.'"  *In re WorldCom, Inc. Sec. Litig.*, 352 F. Supp. 2d 472, 500 (S.D.N.Y. 2005).  Accordingly, it's "an unlikely candidate for summary judgment." *In re Refco Inc. Sec. Litig.*, 2011 WL 13261982, at *4 (S.D.N.Y. Apr. 11, 2011).  "A plaintiff may prove scienter by showing (1) that the defendants had both the motive and opportunity to commit fraud, or (2) by alleging facts that constitute strong

4933-4925-0174.v2

circumstantial evidence of conscious misbehavior or recklessness." *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 207 F. Supp. 2d 292, 298 (S.D.N.Y. 2002). Scienter is established when Defendants: (i) "'benefitted in a concrete and personal way from the purported fraud'"; (ii) "'engaged in deliberately illegal behavior'"; (iii) "'knew facts or had access to information suggesting that their public statements were not accurate'"; or (iv) "'failed to check information they had a duty to monitor.'" *Celestica*, 2014 WL 4160216, at *10.

### 1.    Motive and Opportunity

Defendants "benefitted in [a] concrete and personal way from" their fraud. *Novak v. Kasaks*, 216 F.3d 300, 307-08 (2d Cir. 2000). ██████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████.[8]

### 2.    Magnitude of the Fraud

Dentsply restated nearly *every* key financial account by as much as 24%. ¶375. Although Defendants contend ASC-606 errors *alone* caused the Restatement, ████████████████

████



---

[8]    Defendants' payoff was the "'concrete benefit[]'" missing in *SEC v. Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 512 (S.D.N.Y. 2018).

- 21 -

4933-4925-0174.v2

- ███████████████████████████████

These "egregious violations of GAAP" and "GAAP violations together with other evidence" support scienter. *SEC v. Caserta*, 75 F. Supp. 2d 79, 94 (E.D.N.Y. 1999); *In re Am. Realty Cap. Props., Inc. Litig.*, 2019 WL 2082508, at *2 (S.D.N.Y. May 10, 2019) (denying summary judgment for accounting errors where "issues relating to defendants' scienter require a fact-intensive inquiry").

Defendants also omitted channel-stuffing-related-information from Dentsply's MD&A. ¶¶376-379. ██████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████ supports a "strong inference of fraudulent intent." *SEC v. Egan*, 994 F. Supp. 2d 558, 566 (S.D.N.Y. 2014); *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 551-52 (S.D.N.Y. 2017).

### 3.    Tone at the Top and Executive Terminations

Tone at the top "is *the most important factor* contributing to the integrity of the financial reporting process." SAB-99.  Dentsply's tone created a breeding ground for fraud.  ¶¶427-459. Defendants' inappropriate conduct, improper tone at the top, and "weak internal controls…support an inference of scienter." *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 246 (S.D.N.Y. 2018).

---

[9]    AS 2401.09 states "side agreement[s] that management…has not disclosed" to the auditor are examples of fraudulent financial reporting.

- 22 -

Executive departures further bolster scienter. ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ "'Such house-cleaning

and reforms do not follow innocent mistakes,'" but "'customarily, even if not invariably,'" follow

fraud. *In re Am. Serv. Grp., Inc.*, 2009 WL 1348163, at \*58 (M.D. Tenn. Mar. 31, 2009); *In re*

*Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 394 n.176 (S.D.N.Y. 2007).

Defendants didn't "'immediate[ly]'" investigate and "'remediat[e]'" Dentsply's issues. MSJ

at 11. ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ Casey and

Gomez also failed to "'build an infrastructure to prevent, detect and respond to compliance issues.'"

¶442. ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

Defendants' contention that they lacked knowledge of accounting errors is unsupported and

ignores that recklessness suffices. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d

Cir. 2007); ECF 106 at 8. Defendants' argument regarding increased revenue in 4Q21 also fails.

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████

4933-4925-0174.v2

The ASC-606 violations were straightforward.  Like its predecessor, ASC-605, ASC-606 requires revenue reduction at wholesale, *not* later upon return approval.  ¶406. ████████

████████████████████████████████████████████████████

████████████████████████████████.  Casey and Gomez also signed Dentsply's SEC filings, which falsely described Dentsply's revenue-recognition practices.  ¶¶410-413.[10]  Violation of "basic accounting principles" supports scienter.  *Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 618 (S.D.N.Y. 2015).

### 4.    Revenue Manipulation Through Warranty Returns

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Dentsply was required to make warranty-related revenue-reductions *at the time of wholesale* ██

████████████████████████████████████████  ¶¶407-408.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[10]   Gomez also signed a January 2022 SEC comment letter agreeing to revise future filings to provide additional revenue disclosures, including regarding returns, rebates, and discounts.  ¶417.

- 24 -

support scienter. *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 73 (2d Cir. 2001); *comScore*, 268 F. Supp. 3d at 551-52.[11]

### 5.    Incentive Accounting

Defendants' argument that certain "wholesale incentive" accounting errors were quantitatively insignificant fails. ███████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████ Third, Defendants claim Plaintiffs' expert "present[s] no separate analysis" of the wholesale incentive errors, ██████████████████████████

██████████████████████████████████████████ as SAB-99 instructs.    ¶389.

██████████████████████████████████████████████████████████████████████

██████████████████████████████████ Dentsply also violated GAAP by failing to properly accrue for certain wholesale incentives.    ¶402.

Defendants' argument that ███████████████████ aren't "related to…channel stuffing" (MSJ at 13), fails ████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

███████████████[2]

---

[11]  *N. Telecom*, 116 F. Supp. 2d at 462-65, is inapposite because motive-evidence was "unequivocally" lacking. Defendants' other cases are unpersuasive. *See In re Taleo Corp. Sec. Litig.*, 2010 WL 597987, at *10 (N.D. Cal. Feb. 17, 2010) (defendants "publicly disclosed their [disputed revenue recognition] methods in SEC filings"); *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 264, 268 (2d Cir. 1996) (no scienter based on misconduct at subsidiary).

[12]  Defendants' one-sentence footnote that loss causation cannot be shown for these issues fails. ██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

4933-4925-0174.v2

### 6.    Fraud and Retaliation in China

The China fraud supports scienter. ██████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

### D.    Scheme Liability

Scheme liability covers "a wide range of conduct." *Lorenzo v. SEC*, 587 U.S. 71, 79 (2019). Defendants note scheme liability "requires something beyond misstatements and omissions" but ignore "misstatements and omissions can form part of a scheme liability claim." *SEC v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022). The Supreme Court has rejected the notion that scheme liability cannot involve misstatements. *See Lorenzo*, 587 U.S. 71.

Plaintiffs allege substantial conduct beyond misstatements: Defendants engaged in channel-stuffing. ¶¶324-350. They also engaged in accounting manipulations, maintained deficient controls, fostered an inappropriate tone-at-the-top, ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

Defendants' scheme falls squarely within Rule 10b-5(a) and (c). *Rio*, 41 F.4th at 49; *SEC v. MiMedx Grp., Inc.*, 2022 WL 902784, at *3-*4, *11 (S.D.N.Y. Mar. 28, 2022) (upholding scheme involving "concealment of material facts from [the] Audit Committee and auditors" including signing "management representation letter[s]" falsely stating "there were no undisclosed side agreements"); *SEC v. Sequential Brands Grp., Inc.*, 2021 WL 4482215, at *5-*6 (S.D.N.Y. Sep. 30,

4933-4925-0174.v2

2021) (upholding scheme where defendant "covered up quantitative evidence of an impairment" that "resulted in regular misleading statements on public filings"); *SEC v. Farnsworth*, 692 F. Supp. 3d 157, 189 (S.D.N.Y. 2023).[13]

Defendants' reliance argument fails.  Plaintiffs are entitled to the *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), presumption of reliance, which applies to scheme claims involving misstatements. *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2025 WL 2940714, at *5 (M.D. Tenn. Oct. 16, 2025); *Yoshikawa v. Exxon Mobil Corp.*, 2024 WL 3802997, at *5 (N.D. Tex. Aug. 12, 2024) ("*Basic*'s fraud-on-the-market presumption of reliance applies to scheme liability claims"); *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1199 (D. Or. 2015) (same).  Defendants' assertion that Plaintiffs "never contend – nor is there proof" of reliance on the scheme is false.  ECF 168-169.[14]

### E.    Loss Causation

"Loss causation 'is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff.'"  *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005).  Plaintiffs can prove loss causation by showing "'the ***subject*** of the fraudulent statement or omission was the cause of the actual loss suffered.'"  *Vivendi*, 838 F.3d at 261.  Plaintiffs may establish a loss-causing event or "series of events" that (i) "constructively" disclose the relevant truth or (ii) were a foreseeable "'materialization'" of the risk concealed by the fraud.  *Id.* at 262.  The two don't "create fundamentally different pathways for proving loss causation, such that a specific corrective disclosure is the only method by which a plaintiff may prove" loss causation.  *Id.* at 261.

---

[13]    *SEC v. Kelly*, 817 F. Supp. 2d 340 (S.D.N.Y. 2011), *Cannavest*, 307 F. Supp. 3d 222, and *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 277 F. Supp. 3d 500 (S.D.N.Y. 2017), pre-date and contradict *Lorenzo* and *Rio*.

[14]    The defendants in *Alpha Cap. Anstalt v. Schwell Wimpfheimer & Assocs. LLP*, 2018 WL 1627266 (S.D.N.Y. Mar. 30, 2018), and *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148 (2008), didn't make actionable misrepresentations related to the scheme.

4933-4925-0174.v2

"Whether the truth comes out by way of a corrective disclosure describing the precise fraud inherent in the alleged misstatements, or through events constructively disclosing the fraud, does not alter the basic loss-causation calculus." *Id.* at 262.  "[I]n most cases, 'the chain of causation…is a matter of proof at trial.'" *In re Vivendi Universal, S.A., Sec. Litig.*, 634 F. Supp. 2d 352, 370-72 (S.D.N.Y. 2009).

### 1.    Loss Causation Evidence

Plaintiffs submitted the Cain Report on loss causation and damages.



Defendants don't dispute Cain's methodology or his conclusions that

### 2.    Defendants' Motion Is Non-Dispositive and Procedurally Improper

Defendants' motion doesn't dispose of a claim or element.  As they don't challenge February 28 and attack only pieces of April 19 and May 10, they concede summary judgment is inappropriate for three corrective disclosures.  Granting summary judgment on "parts of a decline" or some – but not all – reasons for a decline wouldn't eliminate loss causation; it would trim quantum, a quintessential jury function.  *See Vivendi*, 634 F. Supp. 2d at 364-65 ("it is important not to confuse causation with damages when comparing competing causes for a stock decline"; plaintiffs need only establish "some rough percentage" attributable to fraud).  Summary judgment on these declines is unwarranted.  *Norris v. Goldner*, 2023 WL 5477229, at *13 n.13 (S.D.N.Y. Aug. 24, 2023) ("summary judgment is used to resolve claims, not non-dispositive legal theories"); *Wartluft v.*

- 28 -

4933-4925-0174.v2

*Milton Hershey Sch. & Sch. Tr.*, 2020 WL 1285332, at *5 (M.D. Pa. Mar. 18, 2020) ("summary judgment under Rule 56(a) may not be used to render judicial determinations on purely factual questions").

### 3.    February 28, 2022

Defendants concede on this disclosure. Dentsply announced 4Q21 revenue and 2022 guidance below expectations. ¶462. Dentsply attributed the results to "significant component shortages ████████████████████████████████████████████████

████████████████████████████████████████████████████

### 4.    April 19, 2022

Dentsply announced Casey's termination and disappointing preliminary 1Q22 results, including a net-sales decline. ¶465. ████████████████████████

████████████████████████████████████████████ Dentsply later revealed that, in 1Q22, "'**80%** of US decline was related to [distributor] inventory burn.'" ¶469.

Defendants don't dispute that Casey's termination was a substantial factor in the price decline. The inquiry ends there: "plaintiffs need only prove that they suffered some damage from the fraud." *Vivendi*, 634 F. Supp. 2d at 364; *Norris*, 2023 WL 5477229, at *13 n.13.

Defendants' claim that April 19 revealed only previously disclosed supply-chain and dealer-inventory issues ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████ and stated supply-constrains were "to a large extent, captured" in Dentsply's guidance. ¶¶143, 290-293, 296-297, 299-302, 469. Dentsply also admitted the March 1

- 29 -

4933-4925-0174.v2

inventory-disclosure was materially misleading when it restated it to disclose previously omitted information, including that incentivized distributor-sales drove the elevated inventory, which would *"likely"* harm 2022 sales. ¶¶376-379.[15]

5.    **May 10, 2022**

At 7:00 a.m., Dentsply announced the Investigation and that it couldn't timely file its 10-Q. ¶470. At 7:05 a.m., Dentsply announced 1Q22 results along with revised FY22 guidance,



Defendants don't challenge causation for the Investigation/delay, so they concede on causation for May 10. Defendants merely argue that the revised guidance didn't cause the decline, but "summary judgment on a particular fact" is inappropriate. *In re E. Palestine Train Derailment*, 2025 WL 581003, at *6 (N.D. Ohio Feb. 21, 2025).[16] Cain didn't concede that the revised guidance had no impact.

Whether and how much those results impacted Dentsply's stock price is a jury question.

---

[15]  The disclosure in *In re Veon Ltd. Sec. Litig.*, 2025 WL 66444, at *6 (S.D.N.Y. Jan. 10, 2025), concerned financial impact on a co-conspirator, while the disclosures here concerned the fraud's direct financial impact. Regardless, Plaintiffs may establish loss causation through a "sequence of events…[that] constructively disclose[] the fraud," including disclosures that "reveal[] disappointing financial numbers" and that "high-level executives were fired." *Ont. Tchrs.' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 432 F. Supp. 3d 131, 174 (D. Conn. 2019).
[16]  Defendants say Plaintiffs "abandoned" November 1, 2022,

4933-4925-0174.v2

**6.      November 14, 2022**

Dentsply announced 3Q22 results (in-line with preliminary results announced November 1) and decreased 2022 guidance.  ¶479.  ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

Defendants claim Cain "concedes" that because 3Q22 results matched the preliminaries, November 14 isn't corrective.  ███████████████████████████

███████████████████████████████████████████████

██████████████████████████████  Dentsply itself identified – U.S. sales softness and volume-deleveraging.  ¶¶480-483.

Incremental disclosures can prove loss causation; whether they "added something new" and how much of a decline is fraud-related are jury issues.  *See Vivendi*, 634 F. Supp. 2d at 364-65. Because the November 14 guidance-reduction contained new, fraud-related information, *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511-14 (2d Cir. 2010), doesn't apply.  Plaintiffs also satisfy *In re Mylan N.V. Sec. Litig.*, 666 F. Supp. 3d 266 (S.D.N.Y. 2023), which only requires "new fraud-related information" and disaggregation – ██████████████

**F.      Control-Person Liability**

Defendants say Plaintiffs' control-person claim fails "to the same extent" as their §10(b) claim, but Defendants move on only portions of the §10(b) claim, so the control-person claim survives.  Regardless, Defendants' control-person arguments rest on their §10(b) arguments, so they fail for the same reasons.

4933-4925-0174.v2

## V.    CONCLUSION

Defendants fail to challenge key misstatements and disclosures, and the arguments they do make fail.  Their motion should be denied.

DATED:  December 19, 2025                Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SCOTT H. SAHAM (admitted *pro hac vice*)
LUKE O. BROOKS (admitted *pro hac vice*)
DARRYL J. ALVARADO (admitted *pro hac vice*)
CHRISTOPHER D. STEWART (admitted *pro hac vice*)
HILLARY B. STAKEM (admitted *pro hac vice*)
NICOLE Q. GILLILAND (admitted *pro hac vice*)
JESSICA E. ROBERTSON (admitted *pro hac vice*)
MEGAN M. SONNEY (admitted *pro hac vice*)


                                s/ Luke O. Brooks
                                LUKE O. BROOKS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
scotts@rgrdlaw.com
lukeb@rgrdlaw.com
dalvarado@rgrdlaw.com
cstewart@rgrdlaw.com
hstakem@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com
msonney@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

VANOVERBEKE, MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

- 32 -

Additional Counsel for Lead Plaintiffs

4933-4925-0174.v2

**CERTIFICATE OF WORD COUNT**

I hereby certify that the foregoing memorandum of law complies with the formatting and word-count limitations pursuant to Rule 7.1(c) of the United States District Court for the Southern District of New York as it contains 8,696 words.

s/ Luke O. Brooks

LUKE O. BROOKS

4933-4925-0174.v2